UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GO NEW YORK TOURS, INC.,<br><br>                              Plaintiff,<br><br>          -against-<br><br>GRAY LINE NEW YORK TOURS, INC.,<br>TWIN AMERICA, LLC, SIGHTSEEING PASS<br>LLC, BIG BUS TOURS GROUP LIMITED,<br>BIG BUS TOURS LIMITED, OPEN TOP<br>SIGHTSEEING USA, INC., TAXI TOURS,<br>INC., LEISURE PASS GROUP HOLDINGS<br>LIMITED, THE LEISURE PASS GROUP<br>LIMITED, and LEISURE PASS GROUP, INC.,<br><br>                              Defendants. | C.A. No. 1:23-cv-04256-ER<br>Hon. Edgardo Ramos, U.S.D.J.<br><br>ORAL ARGUMENT REQUESTED |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## JOINT MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

WILSON SONSINI GOODRICH &
ROSATI, Professional Corporation
1301 Avenue of the Americas
40th Floor
New York, New York, 10019
(212) 999-5800

*Attorneys for defendants Twin America, LLC,
Gray Line New York Tours, Inc., and
Sightseeing Pass LLC*

OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York, 10019
(212) 451-2300

*Attorneys for defendants Big Bus Tours
Group Limited, Big Bus Tours Limited, Open
Top Sightseeing USA, Inc., Taxi Tours, Inc.,
Leisure Pass Group Holdings Limited (n/k/a
Go City Holdings Limited), The Leisure Pass
Group Limited (n/k/a Go City Limited), and
Leisure Pass Group, Inc. (n/k/a Go City, Inc.)*

## Table of Contents

Page

Preliminary Statement ...................................................................................................1

Statement of Facts ......................................................................................................4

    The Parties ...........................................................................................................4

    The Parties' Businesses in New York City ..............................................................5

    The Allegations .....................................................................................................6

    Plaintiff's Prior Federal Action against Defendants ..................................................9

    Plaintiff's Prior New York State Action against Defendants ...................................11

Legal Standard .........................................................................................................12

Argument .................................................................................................................13

    I       PLAINTIFF'S CLAIMS ARE BARRED BY RES JUDICATA .........................13

           A.     The Judgment in the Prior Federal Action Bars Plaintiff's Claims
                   in This Action .........................................................................................13

    II     THE COMPLAINT FAILS TO STATE VIABLE ANTITRUST CLAIMS.........17

           A.     As Before, Go New York's Section 1 Claim Must Fail ...........................17

                 1.     Go New York Has Still Not Plausibly Alleged an
                        Agreement in Restraint of Trade.....................................................17

                 2.     As a Competitor, Go New York Does Not Have Antitrust
                        Standing to Bring a Claim Based on Higher Consumer
                        Prices or Price-Fixing ....................................................................20

           B.     As Before, Go New York's Section 2 Claim Must Fail Because It
                  Has Not Plausibly Alleged Monopoly Power ...........................................21

           C.     As Before, Go New York's Donnelly Act Claim Must Fail....................23

    III   THE COMPLAINT DOES NOT STATE A CLAIM FOR UNFAIR
           COMPETITION ..........................................................................................24

    IV   THE COMPLAINT DOES NOT STATE A CLAIM FOR TORTIOUS
           INTEFERENCE............................................................................................25

Conclusion ...............................................................................................................28

i

Table of Authorities

Page

CASES

*Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC,*
    56 F. Supp. 3d 436 (S.D.N.Y. 2014)............................................................................ passim

*Anheuser-Busch, Inc. v. Abrams,*
    71 N.Y.2d 327 (1988) ........................................................................................................24

*Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.,*
    48 F.3d 576 (1st Cir.1995)................................................................................................15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)....................................................................................................12, 18

*Capitol Recs., Inc. v. MP3tunes, LLC,*
    611 F. Supp. 2d 342 (S.D.N.Y. 2009)...............................................................................25

*Carvel Corp. v. Noonan,*
    350 F.3d 6 (2d Cir. 2003)............................................................................................27, 28

*Casto v. Arkansas-Louisiana Gas Co.,*
    597 F.2d 1323 (10th Cir. 1979) ........................................................................................14

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)..............................................................................................12

*Colliton v. Donnelly,*
    399 F. App'x 619 (2d Cir. 2010) ......................................................................................12

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991)..................................................................................................8

*Dayton Superior Corp. v. Marjam Supply Co.,*
    No. 07-cv-5215 (DRH), 2011 WL 710450 (E.D.N.Y. Feb. 22, 2011) ...................................25

*Dentsply Int'l Inc. v. Dental Brands for Less LLC,*
    No. 15 Civ. 8775, 2016 WL 6310777 (S.D.N.Y. Oct. 27, 2016) ...........................................21

*Electrolux Corp. v. Val-Worth, Inc.,*
    6 N.Y.2d 556 (N.Y. 1959) ................................................................................................24

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.,*
    41 F. Supp. 3d 395 (S.D.N.Y. 2014), *aff'd*, 809 F.3d 737 (2d Cir. 2016) ..............................14

Table of Authorities
(continued)

Page

*Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*,
    141 S. Ct. 2571 (2021) ................................................................................11

*Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*,
    831 F. App'x 584 (2d Cir. 2020) ........................................11, 16, 17, 18

*Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*,
    C.A. No. 19-cv-02832 (LAK) ......................................................................9

*Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*,
    No. 1:19-cv-02832 (LAK) (S.D.N.Y. Mar. 4, 2020) ..............................23

*Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*,
    No. 19 Civ. 02832, 2019 WL 8435369 (S.D.N.Y. Nov. 7, 2019) ..............17, 21, 22

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
    50 N.Y.2d 183 (1980) ..........................................................................27, 28

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007)........................................................................12

*In re Inclusive Access Course Materials Antitrust Litig.*,
    No. 20-cv-6339, 2021 WL 2419528 (S.D.N.Y. June 14, 2021) ............22

*In re Zinc Antitrust Litig.*,
    155 F. Supp. 3d 337 (S.D.N.Y. 2016)......................................................21

*Int'l Audiotext Network v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995).............................................................................8

*ITC Ltd. v. Punchgini, Inc.*,
    9 N.Y.3d 467 (2007) ...................................................................................24

*Klickads, Inc. v. Real Estate Bd. of New York, Inc.*,
    No. 04 Civ. 8042, 2007 WL 2254721 (S.D.N.Y. Aug. 6, 2007) ............21

*Kramer v. Pollock-Krasner Found.*,
    890 F. Supp. 250 (S.D.N.Y. 1995) .....................................................22, 27

*LaFlamme v. Société Air France*,
    702 F. Supp. 2d 136 (E.D.N.Y. 2010) .....................................................18

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).....................................................................................21

iii

Table of Authorities
(continued)

Page

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,
    709 F.3d 129 (2d Cir. 2013)..........................................................................17, 18

*Medtech Prods. Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008)......................................................................26

*Meghan Beard, Inc. v. Fadina*,
    82 A.D.3d 591 (1st Dep't 2011) ................................................................................25

*Miller v. Austin*,
    No. 20-CV-1958, 2021 WL 1226770 (S.D.N.Y. Mar. 31, 2021) ............................13

*Monahan v. New York City Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000)......................................................................................13

*N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*,
    No. 12 Civ. 3584, 2013 WL 1500333 (S.D.N.Y. Apr. 12, 2013) ............................26

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir.1986).........................................................................................14

*Ruder & Finn Inc. v. Seaboard Surety Co.*,
    52 N.Y.2d 663 (1981) ...............................................................................................24

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993)..................................................................................................22

*Taxi Tours Inc. v. Go N.Y. Tours, Inc.*,
    210 A.D.3d 451 (1st Dep't 2022) ......................................................................11, 28

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014)......................................................................................14

*Waldman v. Vill. of Kiryas Joel*,
    207 F.3d 105 (2d Cir. 2000)......................................................................................15

*Watson v. City of New York*,
    No. 92 CIV. 8779, 1998 WL 13841 (S.D.N.Y. Jan. 14, 1998)................................14

*Woods v. Dunlop Tire Corp.*,
    972 F.2d 36 (2d Cir. 1992)........................................................................................15

*Worldhomecenter.com, Inc. v. KWS America, Inc.*,
    No. 10 Civ. 7781, 2011 WL 4352390 (S.D.N.Y. Sept. 15, 2011) ............................24

iv

<u>Table of Authorities</u>
(continued)

<u>Page</u>

STATUTES

N.Y. Gen. Bus. L. § 340 ................................................................................................... *passim*

15 U.S.C.
  § 1............................................................................................................................. *passim*
  § 2............................................................................................................................. *passim*

28 U.S.C.
  § 1337......................................................................................................................... 23
  § 1367......................................................................................................................... 23

Fed. R. Civ. P.
  8(a)(2) ....................................................................................................................... 25
  12(b)(6) ................................................................................................................... 1, 14

OTHER AUTHORITIES

Restatement (Second) of Judgments § 24(2) (1982) ................................................... 15

Defendants Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc. (collectively, the "Big Bus Defendants"), Leisure Pass Group Holdings Limited (n/k/a Go City Holdings Limited), The Leisure Pass Group Limited (n/k/a Go City Limited), Leisure Pass Group, Inc. (n/k/a Go City, Inc.) (collectively the "Go City Defendants")[1], and Twin America, LLC ("Twin America"), Gray Line New York Tours, Inc. ("Gray Line") and Sightseeing Pass LLC ("Sightseeing Pass") (collectively the "Gray Line Defendants," and collectively with the entities listed above, the "Defendants"), respectfully submit this memorandum of law in support of their joint motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[2]

## Preliminary Statement

Plaintiff Go New York alleges that it competes with Gray Line and the Big Bus Defendants in offering "hop-on, hop-off" bus tour services to customers in New York City. Go New York also alleges that it competes with Sightseeing Pass and the Go City Defendants in creating and selling "multi-attraction passes," which bundle admission to numerous New York City tourist attractions (including bus tours) for a single discounted price. Go New York, Gray Line, and Big Bus compete for customers for their bus tours; Go New York, Sightseeing Pass, and the Go City Defendants compete for customers for their multi-attraction passes, as well as for partnerships with tourist attractions to include in their respective passes.

---

[1] In July 2021, Leisure Pass Group Holdings Limited, The Leisure Pass Group Limited, and Leisure Pass Group, Inc. changed their names to Go City Holdings Limited, Go City Limited, and Go City, Inc., respectively. For ease of reference, this memorandum refers to those parties by the names used in the Complaint.

[2] Defendants Big Bus Tours Group Limited, Big Bus Tours Limited, Leisure Pass Group Holdings Limited, and The Leisure Pass Group Limited have moved separately to dismiss the Complaint because it does not plead a basis upon which to exercise personal jurisdiction over them. These defendants join this motion only in the alternative, in the event the Court determines it has personal jurisdiction.

12181702-11

Based on little more than its contention—recycled from prior complaints—that a handful of tourist attractions have declined to partner with it for inclusion in its multi-attraction pass, Go New York alleges that it is the target a conspiracy by Defendants to exclude Go New York from partnerships with tourist attractions. According to the Complaint, Defendants' alleged conduct constitutes violations of Federal and New York State antitrust laws.

This is the **second** time that Plaintiff has lodged these claims against Defendants in this Court. As described below, in March 2020, Judge Lewis A. Kaplan[3] dismissed Plaintiff's Federal antitrust claims—asserted by Plaintiff against these same Defendants and based on the same conduct by Defendants alleged in this new action—**with prejudice**, and declined to exercise supplemental jurisdiction over Plaintiff's related state law claims. Plaintiff's claims in this action are barred by res judicata and should be dismissed.

Even absent claim preclusion, Plaintiff's antitrust claims should be dismissed for failure to state a claim. The Complaint, without supporting facts, alleges a conspiracy between two of Go New York's competitors, but fails to plausibly allege an unlawful agreement between Defendants in restraint of trade—the same grounds upon which Judge Kaplan previously dismissed Plaintiff's Federal antitrust claims. Plaintiff alleges that Defendants entered into an express written agreement in the summer of 2020. But that agreement is a simple ticket reseller agreement, pursuant to which Gray Line agreed to re-sell tickets for Big Bus's tour buses in exchange for a commission. The Complaint alleges that the agreement memorializes a "pre-

---

[3] Defendants previously requested that this action be transferred to Judge Kaplan pursuant to Rule 13(b)(3) of the Rules for the Division of Business among District Judges, Southern District of New York, effective February 1, 2023 (the "Rules"). [Dkt. 37.] To Defendants' knowledge, that request remains pending as of the date of this motion. Defendants maintain that this action should be transferred to Judge Kaplan because it is clearly related to the Prior Federal Action (defined herein), and the Rules provide for transfer in these circumstances.

12181702-11

existing conspiracy" between and among Defendants "to deny Go New York access to critical trade partners within New York City"—the same allegation dismissed by Judge Kaplan—and fix prices for their respective multi-attraction pass products—a completely conclusory allegation without any factual support. (Compl. ¶ 55.) But the Summer 2020 MOU—which is incorporated by reference in the Complaint and may be properly considered by the Court on a motion to dismiss—contains no terms that remotely reflect Plaintiff's allegations. Plaintiff's accusations are instead fabricated out of whole cloth, a transparent attempt to overcome the pleading defects recognized by Judge Kaplan in dismissing Plaintiff's prior federal action. Go New York also attempts to move the needle by tacking on vague and conclusory allegations of conspiracy to allegations recycled from its prior complaints, but these fact-free additions to its previously dismissed claims make no difference under the applicable law.

Nor does the Complaint plausibly allege the existence of a "monopoly" by the Defendants in any market. To begin with, any such claim makes no sense, because "monopoly" refers to a single entity, and the antitrust laws do not cover theories that multiple defendants have "monopolized" a market; nor does the Complaint provide any facts suggesting that Defendants operate as a single entity. In fact, the Complaint alleges that Sightseeing Pass and the Go City Defendants compete with each other (in addition to competing with Go New York), for both customers and tourist attractions.

Plaintiff's state law claims similarly fail. The Complaint does not allege "palming off" or misappropriation by Defendants—the only two recognized theories of unfair competition under New York law. And although the Complaint alludes to a claim for tortious interference, it never actually asserts such a claim. Any such claim would necessarily fail in any case, because the Complaint does not allege Defendants' knowledge of any agreement between Plaintiff and any

12181702-11

tourist attraction (a fundamental requirement of a claim for tortious interference with contract under New York law), or "wrongful means" (a fundamental requirement of a claim for tortious interference with prospective business relations under New York law).

Defendants respectfully request that Plaintiff's claims be dismissed.

Statement of Facts

The Parties

Plaintiff Go New York launched its New York-based hop-on, hop-off double-decker bus tour business in 2012. (Compl. ¶ 26.) In the roughly eleven years since then, it has grown its bus tour business more than ten-fold, from four buses to more than 40, and also added other related business lines, such as bicycle and boat tours, bike rentals, and multi-attraction passes. (Compl. ¶¶ 23, 26.)

Defendant Twin America, LLC ("Twin America") is the parent company of defendants Gray Line New York Tours, Inc. ("Gray Line") and Sightseeing Pass LLC ("Sightseeing Pass"). (Compl. ¶¶ 3-5.) Gray Line previously operated hop-on, hop-off double-decker bus tours in New York City; Sightseeing Pass negotiates with operators of tourist attractions and bundles together multiple activities into multi-attraction passes that include bus tours and admission to other attractions. (Compl. ¶¶ 29, 42.)

The Complaint alleges that defendants Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., and Taxi Tours, Inc. (collectively, "Big Bus"), and defendants Leisure Pass Group Holdings Limited, The Leisure Pass Group Limited, and Leisure Pass Group, Inc. (collectively, "Leisure Pass"), are commonly owned and controlled by a non-party, U.K.-based private equity firm. (Compl. ¶¶ 7, 14.) The seven Big Bus / Leisure Pass companies include four entities that are incorporated in the United Kingdom. (Compl. ¶¶ 9, 10, 13, 15.) The remaining three entities—Open Top Sightseeing USA, Inc., Taxi Tours, Inc., and

4

Leisure Pass Group, Inc.—are incorporated in the United States and operate in New York. (Compl. ¶¶ 11, 12, 16.) Broadly speaking, Big Bus operates hop-on, hop-off double-decker tour buses, and Leisure Pass offers multi-attraction passes that include bus tours and admission to other tourist attractions for a single price. (Compl. ¶¶ 32, 42.)

        <u>The Parties' Businesses in New York City</u>

        The Complaint describes (but does not always clearly distinguish between) two types of services offered by the parties: "hop-on, hop-off" bus tours, and what the Complaint calls "Attraction Passes." (Compl. ¶ 41.)

        Big Bus and Go New York (and until summer of 2020, Gray Line) each operate hop-on, hop-off bus-tour businesses in New York City. (Compl. ¶¶ 28, 29.) Their ubiquitous double-decker tour buses operate in continuous circuits, transporting tourists to popular New York City attractions, allowing customers to "hop off" tour buses at the destinations of their choice, and later "hop on" other buses operated by the same tour company to resume their tour and visit other attractions. (Compl. ¶ 23.) The three competitors market their hop-on, hop-off tours through uniformed sales agents stationed near popular tourist attractions, through their respective websites, in their offices and visitor centers, and through hotel concierge services. (Compl. ¶¶ 35-38.)

        Sightseeing Pass, Leisure Pass, and Go New York each create and sell multi-attraction passes, which bundle admission to multiple tourist attractions and other services throughout New York City using a single ticket sold for a single price. (Compl. ¶¶ 41-42.) Some tourists choose to purchase this type of ticket which, in addition to a hop-on, hop-off bus tour, includes admission to multiple attractions and activities throughout the city. (Compl. ¶¶ 41-42, 45.) For each visitor admitted to a particular attraction, the creator of the multi-attraction pass later pays the attraction operator the admission fee for that visitor, minus a prearranged commission.

12181702-11

(Compl. ¶¶ 44-45.) The companies that create and market multi-attraction passes have an incentive to contract with many attractions, so they can offer the most attractive bundled pricing to tourists while still maximizing margins. (Compl. ¶¶ 41, 43-52.)

The Complaint alleges that—despite its rapid growth over approximately a decade—Go New York's ability to compete has been constrained by Defendants' conduct. (Compl. ¶¶ 46, 54-57.) The Complaint acknowledges, however, that competition is robust at every level. According to the Complaint, there are a multitude of attractions competing to attract customers directly without having to pay a commission to others (including those offering multi-attraction passes (Compl. ¶ 45)), and the Complaint highlights that Plaintiff and Defendants compete vigorously with each other for both tourist customers and partnerships with attraction operators (Compl. ¶¶ 35, 36, 52).

<u>The Allegations</u>

The Complaint alleges that Defendants conspired to restrain trade in violation of federal and state antitrust laws, and also raises an unfair competition claim under New York common law.

It first alleges a conspiracy to restrain trade unreasonably, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[4] (Compl. ¶ 1.) According to the Complaint, Defendants entered into horizontal and vertical agreements (with each other, and with tourist attractions and tourist-related services) to exclude Go New York from the New York City hop-on, hop-off bus tour and multi-attraction pass markets. (Compl. ¶¶ 1, 81-87.)

---

[4] Section 1 of the Sherman Act prohibits "[e]very contract, combination . . . or conspiracy" that unreasonably restrains trade or commerce. 15 U.S.C. § 1.

6

For example, the Complaint alleges that "[b]oth Gray Line and Big Bus have arrangements with hotels and/or concierge and guest service providers to market and sell" their tour tickets and multi-attraction passes; it then asserts that Go New York "has been largely shut out of such arrangements and improperly prevented from having its services and products marketed" in this way. (Compl. ¶¶ 38-39.)

The Complaint alleges that one or more Defendants have partnerships with numerous New York City tourist attraction operators, but identifies only nine attractions with which Go New York claims to have been unsuccessful in negotiating contracts or entering into partnerships. For example, the Complaint alleges that Gray Line and Big Bus include admission to the "Top of the Rock" tourist attraction in their multi-attraction pass offerings, but Go New York has been unable to negotiate for the inclusion of this attraction in its own multi-attraction pass. (Compl. ¶ 59.) According to the Complaint, the operator of "Top of the Rock" has "rebuffed repeated attempts by Go New York to establish a relationship with it" as a result of "deliberate pressure" by Gray Line and Big Bus to exclude Go New York as a trade partner. (Compl. ¶¶ 59, 60.) The Complaint also alleges that Gray Line or Big Bus partner with a number of other tourist attractions that are included in Defendants' multi-attraction passes, but have declined to do business with Go New York (Compl. ¶ 61 (Empire State Building Observatory), ¶ 63 (One World Observatory at the World Trade Center), ¶ 66 (Intrepid Sea, Air, and Space Museum), ¶ 69 (9/11 Memorial and Museum and the 9/11 Tribute Museum in Lower Manhattan), ¶ 71 (Madame Tussauds wax museum), ¶ 73 (Broadway Inbound, an online platform for travel service providers and groups to sell tickets to Broadway shows), and ¶ 75 (Coach USA and Short Line, which operate a shuttle bus service between New York City and the Woodbury Common Premium Outlet shopping center in New Jersey)), and concludes—without

7

any supporting facts—that Defendants "conspired" with each other and with these attractions to exclude Go New York "for the purpose of rendering Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market" (Compl. ¶ 74).

The Complaint further alleges—again without any supporting facts—that Big Bus and Leisure Pass have conspired with Gray Line and Sightseeing Pass, respectively, to prevent Go New York from "participating in" the multi-attraction passes sold by Leisure Pass and Sightseeing Pass, both of which are Go New York's competitors. (Compl. ¶ 83.)

The Complaint also contends that Defendants' alleged conduct resulted in their monopolization of the multi-attraction pass "market" in New York City in violation Section 2 of the Sherman Act, 15 U.S.C. § 2.

The Complaint alleges that, in July 2020, after the downturn in tourist activity in New York City as a result of the onset of the COVID-19 pandemic, Gray Line and Big Bus entered into a "joint venture" agreement (the "Summer 2020 MOU"[5]) pursuant to which Gray Line ceased its hop-on/hop-off tour bus business in New York City and began selling tickets for Big Bus's hop-on/hop-off bus tours. (Compl. ¶¶ 54-55.) The Complaint further alleges that the Summer 2020 MOU "formalize[d] and extend[ed] a pre-existing conspiracy" between and among Defendants "to deny Go New York access to critical trade partners within New York City" and fix prices for their respective multi-attraction pass products as described above.

---

[5] The Summer 2020 MOU is attached to the accompanying declaration of Julia Conway as Exhibit A. Because of its centrality to Plaintiffs' Complaint, the document is properly considered on a motion to dismiss. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (district court could properly consider documents on a motion to dismiss where they were "documents plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit"). Because the Summer 2020 MOU is "integral" to the complaint, the court may consider it on motion to dismiss. *See Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

(Compl. ¶ 55.) According to the Complaint, as a result of Defendants' alleged joint venture, "consumers have been forced to pay higher prices for Attraction Passes than would exist in the absence of this anti-competitive conduct, and Go New York has been unable to effectively and fairly compete in the Attraction Pass market." (Compl. ¶ 55.)

The Complaint concludes with New York statutory and common-law claims, neither of which relies on additional factual allegations. It contends that Defendants violated unspecified sections of New York's antitrust statute, the Donnelly Act, N.Y. G.B.L. § 340, *et seq.* (Compl. ¶¶ 88-93), and alleges that Defendants' alleged conduct constitutes "unfair competition" under New York common law (Compl. ¶¶ 94-96). The Complaint briefly mentions claims for tortious interference with contract and with prospective business relations under New York law (again without any supporting factual allegations), but does not actually assert a cause of action under either theory. (Compl. ¶ 1, p.27.)

<u>Plaintiff's Prior Federal Action against Defendants</u>

This is not the first time that Go New York has alleged antitrust violations against Defendants related to their hop-on/hop-off tour bus and multi-attraction pass businesses in New York City.

In March 2019, Go New York commenced a civil action against Defendants entitled *Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*, C.A. No. 19-cv-02832 (LAK) (the "Prior Federal Action"). On May 23, 2019, Go New York filed a first amended complaint in the Prior Federal Action (the "First Amended Complaint"). (Sartorius Dec. Ex. A.)

Just as in this action, Go New York's First Amended Complaint in the Prior Federal Action alleged that Defendants conspired to restrain trade in the hop-on / hop-off tour bus market and multi-attraction pass market in New York City by fixing prices for their products and preventing Go New York from securing "trade partner agreements" with certain popular New

York City tourist attractions—including Top of the Rock, Empire State Building, One World Observatory, the Intrepid Sea, Air, and Space Museum, and others. Just as in this action, Go New York's complaint in the Prior Federal Action asserted claims for alleged antitrust violations under the Sherman Act and Donnelly Act, and related claims under New York common law based on the same allegations.

In a Memorandum and Order dated November 7, 2019 (the "First Dismissal Order"), Judge Kaplan dismissed Go New York's First Amended Complaint in the Prior Federal Action for failure to state a claim and granted leave to replead, after concluding that the complaint had not pleaded facts demonstrating the existence of any unlawful restraint that would violate federal antitrust laws or the Donnelly Act. Instead, Judge Kaplan held that Go New York's claims rested on "conclusory allegation[s]," "faulty inference[s]," and "sparse details." (Sartorius Dec. Ex. B.)

On December 5, 2019, Go New York filed a second amended complaint in the Prior Federal Action (the "Second Amended Complaint") with virtually no new factual allegations and, this time, asserting three causes of action each premised on the Defendants' alleged conduct in the hop-on / hop-off tour bus and multi-attraction pass markets in New York City: violation of the Sherman Act, violation of the Donnelly Act, and unfair competition under New York law. (Sartorius Dec. Ex. C.)

In a Memorandum and Order dated March 4, 2020 (the "Second Dismissal Order"), Judge Kaplan dismissed the Second Amended Complaint in the Prior Federal Action. As for Go New York's federal antitrust claims under the Sherman Act, Judge Kaplan held that the Second Amended Complaint contained no new factual allegations in support of those claims and dismissed them again—this time "with prejudice." Judge Kaplan declined to exercise

supplemental jurisdiction over the remaining unfair competition claim under New York law, and dismissed that claim for lack of supplemental jurisdiction. (Sartorius Dec. Ex. D.)

The final judgment in the Prior Federal Action was entered by the Clerk on March 6, 2020. (Sartorius Dec. Ex. E.)

On December 22, 2020, the Second Circuit affirmed Judge Kaplan's dismissal. *See Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*, 831 F. App'x 584 (2d Cir. 2020). On April 26, 2021, the Supreme Court of the United States denied Go New York's petition for a writ of certiorari. *See Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*, 141 S. Ct. 2571 (2021).

<u>Plaintiff's Prior New York State Action against Defendants</u>

On May 28, 2021—approximately five months after the Second Circuit affirmed Judge Kaplan's dismissal of Go New York's federal claims with prejudice—Go New York filed counterclaims alleging the same antitrust theory in a pending New York state court case, initially against entities in the Big Bus and Leisure Pass corporate family, and then adding the Gray Line entities as additional counterclaim defendants. (Sartorius Dec. Ex. F.)

By Decision and Order dated December 2, 2021, the Commercial Division dismissed Go New York's antitrust and derivative tortious interference claims, holding that Go New York's claims "would be subject to dismissal regardless of whether it's federal or state [law] in terms of the sufficiency of the allegations." (Sartorius Dec. Exs. G, H.)

The Appellate Division, First Department affirmed the Commercial Division's dismissal of Go New York's antitrust claims, ruling that "[g]iven the lack of any allegations concerning specific conspiratorial acts or discussions by the alleged coconspirators, the [motion] court properly declined to infer the existence of a conspiracy or an unlawful arrangement among Gray Line, Taxi Tours, and the attractions." *Taxi Tours Inc. v. Go N.Y. Tours, Inc.*, 210 A.D.3d 451,

452 (1st Dep't 2022). Go New York's appeal to the New York Court of Appeals of the First Department's affirmance is currently pending. (Sartorius Dec. ¶ 11.)

<u>Legal Standard</u>

On a motion to dismiss for failure to state a claim, courts "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Colliton v. Donnelly*, 399 F. App'x 619, 620 (2d Cir. 2010) (*quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). But factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (*quoting Twombly*, 550 U.S. at 570); *see Colliton*, 399 F. App'x at 620 (the complaint must plead enough facts to state a claim to relief that is plausible on its face).

A plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and brackets omitted). While "a court must accept as true all well-pleaded facts . . . [t]his presumption of truth is not, however, accorded to a legal conclusion that is merely couched as a factual allegation." *Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC*, 56 F. Supp. 3d 436, 441 (S.D.N.Y. 2014) (internal citations and quotation marks omitted).

12181702-11

<u>Argument</u>

I

<u>PLAINTIFF'S CLAIMS ARE BARRED BY RES JUDICATA</u>

A.    <u>The Judgment in the Prior Federal Action Bars Plaintiff's Claims in This Action</u>

Plaintiff's claims in this action are barred by res judicata and should be dismissed. "The
doctrine of res judicata, or claim preclusion, holds that 'a final judgment on the merits of an
action precludes the parties or their privies from relitigating issues that were or could have been
raised in that action.'" *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir.
2000). Res judicata bars a subsequent action where the party asserting it demonstrates "that (1)
the previous action involved an adjudication on the merits; (2) the previous action involved the
plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or
could have been, raised in the prior action." *Miller v. Austin*, No. 20-CV-1958, 2021 WL
1226770, at \*5 (S.D.N.Y. Mar. 31, 2021). Each of these requirements is met here.

First, the parties in the Prior Federal Action and the parties in this action are identical.

Second, the Prior Federal Action involved an adjudication of Plaintiff's claims "on the
merits." As described above, Plaintiff's claims in the Prior Federal Action for violation of
Section 1 of the Sherman Act and for unfair competition were each specifically dismissed by
Judge Kaplan "with prejudice." *See* First Dismissal Order at 5 n.21 (dismissing unfair
competition claim "with prejudice"); Second Dismissal Order at p.1 (dismissing Sherman Act
claim "with prejudice"). "[D]ismissal [of a complaint] with prejudice has the effect of a final

12181702-11

adjudication on the merits favorable to [the] defendant and bars future suits brought by [the] plaintiff upon the same cause of action." *Nemaizer v. Baker*, 793 F.2d 58, 60–61 (2d Cir.1986).[6]

Plaintiff's claim in the Prior Federal Action for violation of Section 2 of the Sherman Act was also adjudicated on the merits. In the Prior Federal Action, Judge Kaplan held that Plaintiff abandoned that claim by declining to re-assert it in Plaintiff's Second Amended Complaint in the Prior Action. *See* Second Dismissal Order at 1 ("Plaintiff has abandoned the previously dismissed Sherman Act § 2 claim by not asserting it in the second amended complaint."). Res judicata bars Plaintiff from re-asserting its abandoned Sherman Act Section 2 claim in this action. *See Watson v. City of New York*, No. 92 CIV. 8779, 1998 WL 13841, at *4 (S.D.N.Y. Jan. 14, 1998) (holding that res judicata barred plaintiffs from relitigating a claim that was strategically dropped in a prior action); *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 41 F. Supp. 3d 395, 406 (S.D.N.Y. 2014), *aff'd*, 809 F.3d 737 (2d Cir. 2016) (finding that res judicata barred plaintiff from bringing claims that were included in a second amended complaint but dropped from the third amended complaint); *Casto v. Arkansas-Louisiana Gas Co.*, 597 F.2d 1323, 1326 (10th Cir. 1979) (holding that "where, as here, a plaintiff joins in a suit, includes multiple claims for his damages from the single tort on which the suit is based, and in silence drops one claim, he may not, after judgment in that suit, maintain a separate second suit on that dropped claim.").

Finally, Plaintiff's claims in this action are the same claims that were previously dismissed with prejudice in the Prior Federal Action. "Whether or not the first judgment will

---

[6] "A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014).

have preclusive effect depends in part on whether the same transaction or connected series of

transactions is at issue, whether the same evidence is needed to support both claims, and whether

the facts essential to the second were present in the first." *Woods v. Dunlop Tire Corp.*, 972 F.2d

36, 38 (2d Cir. 1992). "To ascertain whether two actions spring from the same 'transaction' or

'claim,' we look to whether the underlying facts are 'related in time, space, origin, or motivation,

whether they form a convenient trial unit, and whether their treatment as a unit conforms to the

parties' expectations . . . .'" *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)

(*quoting Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 583 (1st Cir.1995)) (*quoting*

Restatement (Second) of Judgments § 24(2) (1982)).

As described above, Go New York's claims in this action are premised on the same facts

it alleged in the Prior Federal Action: namely, an alleged conspiracy between Defendants to

freeze out Go New York from the multi-attraction pass market in New York City by, among

other things, persuading various New York City tourist attractions and service operators—

specifically "Top of the Rock" (Compl. ¶¶ 59-60), Empire State Building Observatory (Compl.

¶ 61), One World Observatory at the World Trade Center (Compl. ¶ 63), Intrepid Sea, Air, and

Space Museum (Compl. ¶ 66), 9/11 Memorial and Museum and the 9/11 Tribute Museum in

Lower Manhattan (Compl. ¶ 69), Madame Tussauds wax museum (Compl. ¶ 71), Broadway

Inbound (Compl. ¶ 73), and Coach USA and Short Line shuttle bus services (Compl. ¶ 75)—not

to do business with Go New York. In fact, a vast majority of the allegations in Go New York's

Verified Complaint in this action are copied word-for-word from Go New York's Second

Amended Complaint in the Prior Federal Action. (Sartorius Dec. Ex. I.)

15

The facts underlying the claims in this action are clearly "related in time, space, origin, or motivation" to the identical facts underlying Go New York's complaint in the Prior Federal Action.

In an attempt to distinguish the claims in this action from the near-identical claims in the Prior Federal Action, Plaintiff cites the Summer 2020 MOU—which is a simple reseller agreement and has nothing to do with multi-attraction passes (Conway Decl. Ex. A)—as purportedly memorializing the alleged conspiracy "to monopolize and fix prices within the market for Attraction Passes, and to effectively shut Go New York out of the Attraction Pass market." (Compl. ¶ 43.) Plaintiff presumably relies on this agreement because the Second Circuit, in affirming the District Court's dismissal of the Prior Federal Action, specifically emphasized Go New York's failure to "allege direct evidence of an agreement" between Big Bus and Gray Line (and, in the absence of such an agreement, its failure to plead "interdependent conduct by the conspirators, accompanied by circumstantial evidence and plus factors" sufficient to state a conspiracy claim under Section 1 of the Sherman Act). *Go New York Tours,* 831 F. App'x at 586. Accordingly, Plaintiff now cites the irrelevant Summer 2020 MOU in a transparent attempt to overcome this pleading defect and to distinguish its claims in this action from its claims in the Prior Federal action. However, because the Summer 2020 MOU has no relationship to the anticompetitive scheme alleged in the Complaint, the new allegation of its existence is not sufficient to distinguish Plaintiff's claims in this action from its prior claims which were dismissed with prejudice.

Because this action involves identical parties and claims to the Prior Federal Action, and because Plaintiff's relevant claims in that action were dismissed with prejudice, Go New York's same claims in this action are barred by res judicata and should be dismissed.

16

II

THE COMPLAINT FAILS TO STATE VIABLE ANTITRUST CLAIMS

As it did in the Prior Federal Action, Go New York alleges violations of Section 1 of the

Sherman Act, 15 U.S.C. § 1 ("Section 1"); Section 2 of the Sherman Act, 15 U.S.C. § 2

("Section 2"); and New York state antitrust law, N.Y. Gen. Bus. L. § 340 ("the Donnelly Act").

*See Go New York Tours, Inc.*, 831 F. App'x 584; *Go New York Tours, Inc. v. Gray Line New*

*York Tours, Inc.*, No. 19 Civ. 02832, 2019 WL 8435369 (S.D.N.Y. Nov. 7, 2019). Even if these

claims were not barred by res judicata, they would all still fail, largely for the same reasons they

failed in the Prior Federal Action.

A.    As Before, Go New York's Section 1 Claim Must Fail

Go New York's Section 1 claim should be dismissed because Go New York has still not

alleged facts sufficient to support an inference of conspiracy. In the alternative, the Court

should dismiss this claim to the extent it relies upon allegations of higher consumer prices,

because, as a competitor, Go New York does not have antitrust standing to bring such a claim.

1.    Go New York Has Still Not Plausibly Alleged an Agreement in Restraint
      of Trade

In any Section 1 case, the plaintiff's threshold burden is to plausibly allege the

challenged conduct stems from an "agreement, tacit or express," rather than independent

decisions. *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d

Cir. 2013) (internal quotation marks and citations omitted); *Go New York Tours, Inc.*, 831 F.

App'x 584. To "overcome a motion to dismiss" a Section 1 claim, a plaintiff must "allege

enough facts to support the inference that a conspiracy actually existed." *Citigroup, Inc.*, 709

F.3d at 136. A plaintiff can present either direct evidence of an agreement in violation of the

antitrust laws or "circumstantial facts supporting the inference that a conspiracy existed." *Id.*

17

(emphasis omitted). Allegations of direct evidence must include specific facts about the allegedly unlawful agreement; bald, conclusory allegations "are not entitled to the presumption of truth." *LaFlamme v. Société Air France*, 702 F. Supp. 2d 136, 147-48 (E.D.N.Y. 2010). Allegations of circumstantial evidence must go beyond consciously parallel competitive conduct; they must also include strong enough "plus factors" to make the inference of conspiracy plausible (such as "a common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of interfirm communications"). *Citigroup, Inc.*, 709 F.3d at 136 (internal quotation marks and citations omitted).

In the Prior Federal Action, the Second Circuit held that Go New York had "not alleged the existence of sufficiently powerful 'plus factors' to 'raise [Go New York's] right to relief above the speculative level.'" *Go New York Tours, Inc.*, 831 F. App'x at 586 (quoting *Citigroup, Inc.*, 709 F.3d at 134). Go New York does not add any new plus factors to circumvent this adverse ruling.

Go New York attempts to supplement its allegations in the Prior Federal Action by adding entirely conclusory allegations that at unspecified times, executives of Gray Line and Big Bus "agreed," "conspired," or "upon information and belief, conspired" to exclude Go New York from relationships with tourist attractions. (Compl. ¶¶ 60, 61, 63, 64, 70, 72, 73, 75.) But simply adding further conclusory allegations to its claims—already dismissed with prejudice—that Defendants' executives agreed or conspired is not sufficient, because "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557.

Instead of alleging additional plus factors, Go New York alleges that Gray Line and Big Bus executed a "written agreement" in restraint of trade in or about July 2020. According to Go New York:

> [I]n or about July 2020, Gray Line and Big Bus formed a joint venture pursuant to a formal written agreement, the effect of which was to monopolize and fix prices within the market for Attraction Passes, and to effectively shut Go New York out of the Attraction Pass market, making it difficult if not impossible for Go New York to offer and sell competitive attraction passes.
>
> …
>
> Pursuant to a written agreement entered into in late July 2020, Gray Line and Big Bus agreed that (a) Big Bus would operate its Hop-on, Hop-Off tour buses within New York City, (b) Gray Line would cease operating its fleet of Hop-on, Hop-Off tour buses within New York City, (c) Gray Line would continue to sell tickets on its web-site and otherwise under its "Gray Line" and "City Sightseeing" brand names for Hop-on, Hop Off tour buses, with Gray Line's ticket holders being directed to use their tickets to ride only buses operated by Big Bus, (d) Big Bus would continue to sell tickets to consumers for its Hop-on, Hop-Off tour buses, (e) Gray Line, Big Bus and Leisure Pass would continue to sell their respective Attraction Passes and in so doing, would cooperate with each other in provide access to trade partner attractions, while excluding Go New York from access to such attractions, and (f) Gray Line, Big Bus and Leisure Pass would not undercut each other on prices for Hop-on Hop-Off tour buses and Attraction Passes, essentially conspiring to fix the prices of such services.

(Compl. ¶¶ 43-54.)

This written agreement forms the centerpiece of Go New York's new allegations and attempt to remedy the pleading defects identified by Judge Kaplan and the Second Circuit in dismissing Go New York's prior Section 1 claim. The written agreement to which Go New York refers is the Summer 2020 MOU, which is a Memorandum of Understanding between Gray Line and Big Bus, dated August 27, 2020. (Conway Decl. Ex. A.) The interpretation of the Summer 2020 MOU in Go New York's Complaint is completely implausible. Notwithstanding the

12181702-11

Complaint's allegations, the Summer 2020 MOU does not contain any agreement for Gray Line to exit the New York City tour bus market, for Gray Line and Big Bus to exclude Go New York from trade partner attractions, for Gray Line and Big Bus to fix prices for tour bus tickets, or for Gray Line and Big Bus to fix prices for their respective multi-attraction passes—the Summer 2020 MOU simply does not address those matters at all. And the terms that do appear in the Summer 2020 MOU are not relevant to the allegations of conspiracy in Go New York's complaint. In reality, and by its plain terms, the Summer 2020 MOU created a reseller relationship pursuant to which Gray Line agreed to sell tickets for redemption on Big Bus's tour buses, and earn a commission for doing so. (Conway Dec. Ex. A.) Significantly, the Complaint does not allege—nor could it allege—that such a relationship violates Federal or state antitrust laws.

Because Go New York's new allegations of a written agreement in restraint of trade and its other conclusory allegations of agreement and conspiracy between Defendants' employees are implausible, and because it has still not alleged sufficiently powerful plus factors to create an inference of conspiracy, Go New York's Section 1 claim fails to state a claim and should be dismissed.

2. <u>As a Competitor, Go New York Does Not Have Antitrust Standing to Bring a Claim Based on Higher Consumer Prices or Price-Fixing</u>

Go New York's Section 1 claim relies, at least in part, on allegations that Gray Line's and Big Bus's "improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York and its affiliates in the New York City Attraction Pass market to maintain artificially high prices for consumers" (Compl. ¶ 84), as well as allegations of price fixing. As a competitor in the New York multi-attraction pass market, Go New York "stand[s] to gain from any conspiracy to raise the market price," so it has not incurred

antitrust injury from any such allegations. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83 (1986); *Dentsply Int'l Inc. v. Dental Brands for Less LLC*, No. 15 Civ. 8775, 2016 WL 6310777, at *3 (S.D.N.Y. Oct. 27, 2016). Therefore, Go New York's Section 1 claim should be dismissed to the extent it relies upon allegations of higher consumer prices or price-fixing.

      B.    <u>As Before, Go New York's Section 2 Claim Must Fail Because It Has Not Plausibly Alleged Monopoly Power</u>

In the Prior Federal Action, Go New York's Section 2 claim was dismissed because Go New York failed to allege that either defendant had monopoly power in any relevant market. *Gray Line New York Tours, Inc.*, 2019 WL 8435369, at *2. Although Go New York alleged that each of Gray Line and Big Bus "possesse[d] monopoly power in the New York City hop on hop off tour bus market," the Court explained that there cannot be two monopolists in one market because "Section 2 does not permit a 'shared monopoly' theory of the kind the plaintiff alleges." *Gray Line New York Tours, Inc.*, 2019 WL 8435369, at *2; *see also In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 382 (S.D.N.Y. 2016) ("The Second Circuit has stated that a shared monopoly theory may not support a monopolization or attempted monopolization claim under Section 2."). In this discussion, the Court referenced speculation by other courts that a Section 2 claim "may survive if the goal of a conspiracy was forming a single entity," although it "express[ed] no opinion on the viability of this theory." *Gray Line New York Tours, Inc.*, 2019 WL 8435369, at *2 n.12 (*citing Klickads, Inc. v. Real Estate Bd. of New York, Inc.*, No. 04 Civ. 8042, 2007 WL 2254721, at *9 (S.D.N.Y. Aug. 6, 2007)).

In its new Complaint in this action, Go New York once again brings a claim under Section 2, but this time it does not allege (not even in conclusory fashion) that either Gray Line or Big Bus has monopoly power in any relevant market. The words "monopoly power" do not

12181702-11

appear in the Complaint. This is fatal to Go New York's Section 2 claim. *See In re Inclusive Access Course Materials Antitrust Litig.*, No. 20-cv-6339, 2021 WL 2419528, at *12-14 (S.D.N.Y. June 14, 2021) (dismissing Section 2 claims where plaintiffs failed to allege that any defendant had monopoly power in the relevant market). Even if Go New York had renewed its conclusory allegations that both Gray Line and Big Bus have monopoly power, its claims would still fail because it remains true that "there can be only one monopolist." *Gray Line New York Tours, Inc.*, 2019 WL 8435369, at *2. "[T]he offense of monopolization under Section 2 refers to market dominance by a 'single firm.'" *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 256 (S.D.N.Y. 1995) (*citing Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993)) (dismissing Section 2 claims).

　　To the extent that Go New York is attempting to revive its "shared monopoly" theory by intentionally mischaracterizing the Summer 2020 MOU as creating a single entity, that attempt must fail. The Complaint interprets the Summer 2020 MOU as "a joint venture, the effect of which was to merge together their operations." (Compl. ¶ 54.) As discussed above, the Summer 2020 MOU created a simple ticket reseller relationship. (Conway Decl. Ex. A.) It was not a merger agreement, nor did it result in the formation of a new entity. Go New York's interpretation of the Summer 2020 MOU is implausible and not entitled to any presumption of truth.[7]

---

[7] Go New York also alleges in its Complaint that multi-attraction passes are an "essential facility." (Compl. ¶¶ 45, 51.) The essential facilities doctrine describes a type of monopolization claim that cannot apply in this case on the facts Go New York has alleged: the multi-attraction pass is not a resource controlled by one monopolist—plaintiff Go New York and defendants Sightseeing Pass and Leisure Pass each provide its own version of a multi-attraction pass—and there is no allegation that Go New York seeks to make use of any Defendants' multi-attraction pass offerings. (Compl ¶¶ 41-42, 46-50.) *See, e.g.*, *Pollock-Krasner Found.*, 890 F. Supp. at 257 (dismissing Donnelly Act and Sherman Act "essential facilities" claims and holding that "[t]he

C.      As Before, Go New York's Donnelly Act Claim Must Fail

The only jurisdictional basis that Go New York asserts for the state law claims is supplemental jurisdiction.[8] The supplemental jurisdiction statute provides that "district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In the Prior Federal Action, after dismissing the federal claims, the Court declined to exercise supplemental jurisdiction, explaining: "Other than the previous motion [to dismiss], there have been no substantial proceedings in this case. No useful purpose would be served by retaining the state law claims." *See* Second Dismissal Order at p.1. If the Court grants Defendants' motion to dismiss Plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over any remaining state law claims.

That being said, Go New York's Donnelly Act claim fails for the same reason as its Section 1 claim (failure to allege concerted action).[9] Go New York alleges that Gray Line and Big Bus have "engaged in unreasonable restraint of trade in violation of the Donnelly Act, New York Gen. Bus. L. § 340." The Donnelly Act is modeled after Section 1 of the Sherman Act and

---

'essential facilities' doctrine is not an independent cause of action, but rather a type of monopolization claim . . . [plaintiffs] must meet two prerequisites before the essential facilities doctrine comes into play. First, the defendant's facility must be 'essential,' or one for which there is no feasible alternative. Second, the plaintiff must be a competitor of the defendant monopolist whose facility it seeks to employ.") (citation omitted).

[8] As in the Prior Federal Action, Go New York cites 28 U.S.C. § 1337 for supplemental jurisdiction; however, that statute does not confer supplemental jurisdiction. *Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*, No. 1:19-cv-02832 (LAK) (S.D.N.Y. Mar. 4, 2020). The court in the Prior Federal Action presumed this was meant to be a reference to 28 U.S.C. § 1367. *Id.*

[9] As noted above, Go New York's Donnelly Act claims, modeled on those in the Prior Federal Action, have been dismissed in New York state court at the motion court and Appellate Division levels.

"'should generally be construed in light of federal precedent.'" *Worldhomecenter.com, Inc. v. KWS America, Inc.*, No. 10 Civ. 7781, 2011 WL 4352390, at *2 (S.D.N.Y. Sept. 15, 2011) (quoting *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 335 (1988)). "Like the Sherman Act [Section 1], the Donnelly Act proscribes only concerted action in the form of a contract, agreement, arrangement, or combination" and "unilateral actions are outside the scope of the Donnelly Act." *KWS America, Inc.*, 2011 WL 4352390, at *6. Go New York has not plausibly alleged concerted action in restraint of trade, as discussed above in reference to Go New York's Section 1 claim. Therefore, its Donnelly Act claim must be dismissed for the same reason.

III

THE COMPLAINT DOES NOT STATE A CLAIM FOR UNFAIR COMPETITION

Plaintiff's Third Claim for Relief for unfair competition alleges that

> [D]efendants have wrongfully prevented Go New York and its affiliates from offering a competitive Attraction Pass and otherwise competing in the Attraction Pass market, thereby increasing their own market share at the expense of Go New York and preventing Go New York from offering and selling its services and products.

(Compl. ¶ 95.)

New York courts have "long recognized two theories of common-law unfair competition: palming off and misappropriation." *Ace Arts*, 56 F. Supp. 3d at 453 (*quoting ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (2007)). "Palming off" is the "sale of the goods of one manufacturer as those of another." *ITC Ltd.*, 9 N.Y.3d at 476. "Misappropriation" in this context is the illicit use of "the skill, expenditures and labors of a competitor" by the defendant to compete with plaintiff—essentially, a claim for misappropriation of trade-secrets. *Id.* (*quoting Electrolux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d 556, 567 (N.Y. 1959). New York appellate courts, including the Court of Appeals, have rejected the invitation to expand the tort of unfair competition beyond these two theories. *See ITC Ltd.*, 9 N.Y.3d at 478; *Ruder & Finn Inc. v.*

24

*Seaboard Surety Co.*, 52 N.Y.2d 663, 671 (1981); *Meghan Beard, Inc. v. Fadina*, 82 A.D.3d 591, 593 (1st Dep't 2011). Federal courts in this Circuit have likewise declined to recognize new types of unfair competition claims under New York law. *See Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 454 (S.D.N.Y. 2014), *abrogated on other grounds by Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85 (2d Cir. 2023); *Dayton Superior Corp. v. Marjam Supply Co.*, No. 07-cv-5215 (DRH), 2011 WL 710450, at *18 (E.D.N.Y. Feb. 22, 2011); *Capitol Recs., Inc. v. MP3tunes, LLC*, 611 F. Supp. 2d 342, 347 (S.D.N.Y. 2009).

The Complaint does not allege that Defendants have palmed off Plaintiff's offerings as their own or misappropriated anything from Plaintiffs. "The absence of any allegations supporting a claim under either the palming off or misappropriation theory requires that Plaintiff's common-law claim for unfair competition be dismissed." *Ace Arts*, 56 F. Supp. 3d at 454.

IV

## THE COMPLAINT DOES NOT STATE A CLAIM FOR TORTIOUS INTEFERENCE

Go New York's Complaint also alludes to a claim for tortious interference under New York law (Compl. ¶¶ 2, 27.) But it does not set forth a separate cause of action or claim for relief under any such theory—whether denominated as tortious interference with contract or tortious interference with prospective business relations—as required by Fed. R. Civ. P. 8(a)(2). Nevertheless, out of an abundance of caution, Defendants also move to dismiss this illusory cause of action for failure to state a claim.

To state a claim for tortious interference with contract, a Plaintiff must plead: "(1) 'the existence of a valid contract between the plaintiff and a third party,' (2) 'defendant's knowledge of the contract,' (3) 'defendant's intentional inducement of the third party to breach the contract or otherwise render performance impossible,'(4) 'an actual breach' of the contract, and (5)

'damages to the plaintiff.'" *Ace Arts*, 56 F. Supp. 3d at 450 (citations omitted) (dismissing tortious interference with contract claim).

Go New York's only allegations regarding an existing contract relate to the Intrepid Sea, Air, and Space Museum, and these are insufficient to survive a motion to dismiss. (Compl. ¶¶ 66-68.) A claim for tortious interference with contract requires that Defendants have had "actual knowledge of the breached contract." *Medtech Prods. Inc. v. Ranir*, *LLC*, 596 F. Supp. 2d 778, 796 n.13 (S.D.N.Y. 2008) (dismissing tortious interference with contract claim). All Go New York offers in this regard is that "Gray Line and Big Bus were already trade partners of the Intrepid, and would necessarily have known of the new agreement with Go New York." (Compl. ¶ 66.) This does not cut it, because a "wholly conclusory allegation that [Defendants] knew of the contracts at issue" is insufficient to survive a motion to dismiss. *Medtech Prods. Inc.*, 596 F. Supp. 2d at 797. Moreover, this element requires allegations that defendants had knowledge of the specific provisions alleged to have been breached – information that is entirely absent from Go New York's Complaint. *See N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, No. 12 Civ. 3584, 2013 WL 1500333, at *4 (S.D.N.Y. Apr. 12, 2013) (collecting cases). Finally, Go New York's cursory allegation that its contract with the Intrepid was breached is also insufficient to survive a motion to dismiss. *See Ace Arts*, 56 F. Supp. 3d 436, 450 ("asserting in 'a conclusory manner that an agreement was breached' is not enough to survive a motion to dismiss") (citations omitted). Nor does Go New York allege damages.

To state a claim for tortious interference with prospective business relations, "a plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice,

or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" *Ace Arts*, 56 F. Supp. 3d at 452 (citation omitted).

For most of the tourist attractions named in the Complaint, the allegations are clear that Plaintiff never had a relationship with these entities—they declined in the first instance to do business with Go New York—so any claim for tortious interference with prospective business relations regarding these entities must fail. (*See* Compl. ¶¶ 59 (Top of the Rock), 61-2 (Empire State Building Observatory), 63-5 (One World Observatory); 69-70 (9/11 Memorial and Museum and the 9/11 Tribute Museum, the Museum of Modern Art).) There are no facts alleged in the Complaint to support a finding that Go New York would have partnered with these entities successfully absent any alleged conduct by Defendants. *Pollock-Krasner Found.*, 890 F. Supp. at 256-57.

Nor does the Complaint allege the requisite "wrongful means" necessary to state a claim for tortious interference with business relations where the parties are competitors. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 190 (1980); *Carvel Corp. v. Noonan*, 350 F.3d 6, 19 (2d Cir. 2003). Wrongful means include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Carvel Corp.*, 350 F.3d at 19. The Complaint alleges none of this. Instead, the Complaint merely alleges that Defendants "require[d] and/or … persuade[d] major New York City attractions to refuse to enter into trade partner agreements with Go New York" (Compl. ¶ 57), but "[p]ersuasion alone," even if it is "knowingly directed at interference with the

12181702-11

[prospective] contract," is insufficient to support a claim for tortious interference. *Carvel Corp.*, 350 F.3d at 19 (quoting *Guard-Life*, 50 N.Y.2d at 191).[10]

<u>Conclusion</u>

For the reasons set forth herein, Defendants respectfully request that the Court dismiss all claims in the Complaint.

Dated:  New York, New York
         September 20, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  */s/ Kenneth M. Edelson*
     Kenneth M. Edelson
     Jonathan M. Jacobson
     1301 Avenue of the Americas, 40th Floor
     New York, New York 10019
     Telephone: (212) 999-5800
     Facsimile: (866) 974-7329
     Email: kedelson@wsgr.com
     Email: jjacobson@wsgr.com

*Counsel for Defendants Gray Line New York Tours, Inc., Twin America LLC, and Sightseeing Pass LLC*

OLSHAN FROME WOLOSKY LLP

By:  */s/ Peter M. Sartorius*
     Peter M. Sartorius
     Natasha G. Menell
     Stephen P. Ross
     1325 Avenue of the Americas
     New York, New York, 10019
     Telephone: (212) 451-2300
     Facsimile: (212) 451-2222
     Email: psartorius@olshanlaw.com
     Email: nmenell@olshanlaw.com
     Email: spross@olshanlaw.com

*Attorneys for defendants Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc., Leisure Pass Group Holdings Limited (n/k/a Go City Holdings Limited), The Leisure Pass Group Limited (n/k/a Go City Limited), and Leisure Pass Group, Inc. (n/k/a Go City, Inc.)*

---

[10] In the pending New York State matter, both the Commercial Division of New York Supreme Court, and the Appellate Division, First Department found that Go New York had not stated a tortious interference with prospective business relations claim on allegations nearly identical to those pled here (save for the additional allegations regarding the reseller agreement). (Sartorius Dec. Exs. J, K.) *See also Taxi Tours Inc. v. Go N.Y. Tours, Inc.*, 210 A.D.3d 451, 452 (1st Dep't 2022).

12181702-11