**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GO NEW YORK TOURS, INC., <br><br> Plaintiff, <br><br> -against- <br><br> GRAY LINE NEW YORK TOURS, INC., TWIN AMERICA, LLC, SIGHTSEEING PASS LLC, BIG BUS TOURS GROUP LIMITED, BIG BUS TOURS LIMITED, OPEN TOP SIGHTSEEING USA, INC., TAXI TOURS, INC., LEISURE PASS GROUP HOLDINGS LIMITED, THE LEISURE PASS GROUP LIMITED, and LEISURE PASS GROUP, INC. <br><br> Defendants. | Civil Action No. 1:23-cv-04256-ER <br><br><br> **<u>AMENDED VERIFIED COMPLAINT</u>** <br><br><br><br> **JURY TRIAL DEMAND** |

Plaintiff Go New York Tours, Inc. ("Go New York"), by its undersigned counsel, hereby alleges, as against defendants Gray Line New York Tours, Inc., Twin America, LLC, Sightseeing Pass LLC, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc., Go City Holdings Limited, Go City Limited, and Go City, Inc., as follows:

## <u>NATURE OF ACTION</u>

1.      This is an action for anticompetitive antitrust violations by the two dominant companies in the New York City hop-on, hop-off sightseeing tour bus market targeted against the third and only other company currently operating in that market, Plaintiff Go New York. [1] As alleged below, the two dominant companies and their affiliates have formed a single operating entity and in so doing, have monopolized and/or attempted to monopolize the New York City hop-on, hop-off sightseeing tour bus market (the "New York City Hop-On, Hop-Off Market") and its

---

[1] Beginning in or about July 2022, Aurora Tourism Services LLC, operating under the brand name "Iconic", began to operate a small number of double-decker tour buses in the New York City market. However, because Iconic has operated only a small number of buses, it cannot offer "hop on hop off" sightseeing tours and is not currently considered a competitor in the relevant market.

sub-market, the "Attraction Pass Market". In pursuit of this illegal monopolistic scheme, the two dominant companies and their affiliates have expressly conspired with each other pursuant to an agreement formalized in late July, 2020 to exclude plaintiff Go New York and its affiliates from those markets, and in so doing, fix the prices at which tickets to hop-on, hop-off bus services as well as Attraction Passes are sold in the relevant market. Defendants' anticompetitive conduct has minimized competition in the New York City Hop-On, Hop-Off Market at the expense of consumers – meaning customers are being forced to pay higher prices than they would absent the anticompetitive behavior.  The anticompetitive behavior also directly damages Go New York because  (a) it has been unable to effectively compete in the New York City Hop-On, Hop-Off Market, as well as in one of that markets' subsets, the Attraction Pass market, (b) it has become less competitive in both those markets, (c) it has lost sales of  (i) its hop-on, hop-off tourist bus services, (ii) its bike rental services (which are facilitated through Go New York's commonly owned affiliate, ASK Standard Transit Corp d/b/a Bike Rental Central Park  ("ASK  Transit"), (iii) its boat tour services (which are provided by Go New York's commonly owned affiliate, New York Water Tours Inc, d/b/a Liberty Cruise and d/b/a Event Cruises New York City), and (iv) its "Attraction Pass" multi-attraction package offerings, and (d) has lost market share, customers, and revenues.  Defendants' anti-competitive conduct violates federal and New York state antitrust statutes and New York state common law.  Plaintiff Go New York asserts herein claims against defendants for violations of Sections 1 and 2 of the Sherman Act and Sections 4 and 7 of the Clayton Act, 15 U.S.C. §§ 1, 2, 15, and 18 and for violations of the Donnelly Act, New York General Business Law § 340, and for unfair competition under New York common law.  Plaintiff Go New York seeks damages from all defendants, including treble damages, costs and attorneys' fees under the Sherman, Clayton and Donnelly Acts.

## PARTIES

### *Go New York*

2.      Plaintiff Go New York is a New York corporation with its main offices located at 2 East 42nd Street, New York, New York.

### *Gray Line*

3.      Defendant Gray Line New York Tours, Inc. is a New York corporation with its executive office address, as indicated in the New York State Secretary of States's records, at 1430 Broadway, New York, New York., although upon information and belief it no longer maintains offices at that address.

4.      Defendant Twin America, LLC ("Twin America") is a Delaware limited liability company registered with the New York State Department of State to do business in New York State.  Upon information and belief, Twin America operates and controls Gray Line New York Tours, Inc.  (Hereinafter, Gray Line New York Tours, Inc. and Twin America are referred to herein collectively as "Gray Line".)

5.      Defendant Sightseeing Pass LLC ("Sightseeing Pass") is a Delaware limited liability company registered with the New York State Department of State to do business in New York State.  Upon information and belief, Sightseeing Pass shares common ownership and control with Gray Line, and/or is owned and/or controlled by Gray Line.

### *Big Bus*

6.      Non-party Big Bus Tours Group Holdings Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road, London, United Kingdom.

3

7.     Upon information and belief, non-party Exponent Private Equity LLP ("Exponent"), a London-based private equity firm organized and existing under the laws of the United Kingdom, owns, directly and/or indirectly, approximately 85 percent of and controls Big Bus Tours Group Holdings Limited.

8.     Upon further information and belief, non-party Merlin Entertainments plc ("Merlin"), a company organized and existing under the laws of the United Kingdom with its main offices located in Dorset, United Kingdom, owns, directly and/or indirectly, approximately 15 percent of and as such exerts control over Big Bus Tours Group Holdings Limited.  Upon further information and belief, Merlin owns and controls, directly and/or indirectly, various companies which own and operate "Madame Tussauds" wax museum tourist attractions located around the world, including the Madame Tussauds wax museum attraction located on West 42nd Street in the Times Square area of New York City.

9.     Defendant Big Bus Tours Group Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road, London, United Kingdom.  Upon information and belief, Big Bus Tours Group Limited is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited, and ultimately by Exponent and Merlin.

10.     Defendant Big Bus Tours Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road, London, United Kingdom. Upon information and belief, Big Bus Tours Limited is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited and/or Big Bus Tours Group Limited, and ultimately by Exponent and Merlin.

11.    Defendant Big Bus Tours Limited is the owner of United States Trademark Serial No. 86695035, a word mark for "Big Bus" (the "Big Bus Trademark"). Defendant Big Bus Tours Limited licenses the Big Bus Trademark to Defendant Taxi Tours, Inc., as well as Gray Line pursuant to their merger agreement.

12.    Defendant Open Top Sightseeing USA, Inc., is a Delaware corporation which is registered with the New York State Department of State to do business in New York State, and with its main office address at 723 Seventh Avenue, New York, New York.  Upon information and belief, Open Top Sightseeing USA, Inc. is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, and Big Bus Tours Limited, and ultimately by Exponent and Merlin.

13.    Defendant Taxi Tours, Inc. ("Taxi Tours") is a New York corporation with its main office address at 723 Seventh Avenue, New York, New York. Taxi Tours' CEO, Patrick Waterman, is also an officer and/or director of Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, and Big Bus Tours Limited, and resides in the United Kingdom.  Upon further information and belief, Taxi Tours, Inc. is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, and/or Open Top Sightseeing USA, Inc., and, ultimately, by Exponent and Merlin.  (Hereinafter, Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., and Taxi Tours are referred to herein collectively as "Big Bus".) Indeed, Julia Conway is the Treasurer and Director of both Taxi Tours and Open Top Sightseeing USA, Inc.   Conway was actively involved in the negotiating, drafting, and reviewing the Conduct Agreement.  She also signed the Conduct Agreement,  at the direction of Big Bus's attorneys, in the small space provided for that purpose underneath "BIG BUS TOURS, LTD." printed in all

5

caps on the agreement's signature page. On November 17, 2022, Conway was deposed in a state-court matter between the parties currently pending in New York Supreme Court, New York County, on November 17, 2022. *Taxi Tours, Inc. v. Go New York Tours, Inc.*, Index No. 653012/2019 (Sup. Ct. N.Y. Cty.). During that deposition, she testified that she had not been "careful enough," in affixing her signature on behalf of Big Bus Tours, Ltd., but nonetheless she admitted that she conferred with  Big Bus' attorneys in advance of signing the document.

### *Leisure Pass/Go City*

14.     Defendant Leisure Pass Group Holdings Limited a/k/a Go City Holdings Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 25 Soho Square, London, England, W1D 3QR.

15.     Upon information and belief, Go City Holdings Limited is controlled and principally owned directly and/or indirectly by Exponent, which, as alleged above, is also the principal owner and controller, directly or indirectly of Big Bus.  Upon further information and belief, Big Bus Tours Group Holdings Limited owns a significant minority stake in, and as such exerts control over, Go City Holdings Limited.

16.     Defendant the Leisure Pass Group Limited a/k/a Go City Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 25 Soho Square, London, England, W1D 3QR.  Upon information and belief, Go City Limited is owned and controlled, directly or indirectly, Go City Holdings Limited, Exponent, and Big Bus Tours Group Holdings Limited, and, ultimately, by Exponent.

17.     Defendant Leisure Pass Group, Inc. a/k/a Go City, Inc. is a company organized and existing under the laws of the State of Delaware, is registered with the New York State Department of State to do business in New York State, and maintains a registered office in New York City.

Upon information and belief, Go City Inc. is owned and controlled directly and/or indirectly by Go City Holdings Limited, Go City Limited, and Big Bus Tours Group Holdings Limited, and, ultimately, by Exponent. (Hereinafter, Go City Holdings Limited, Go City Limited, and Go City, Inc. are referred to collectively as "Go City".)

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 15 U.S.C. § 15 (action arising under Sherman and Clayton Acts), and 28 U.S.C. § 1337 (supplemental jurisdiction).

19.    Jurisdiction is proper over defendant Gray Line New York, Inc. because it is a New York corporation and maintains its principal offices in New York, New York. Jurisdiction is proper over defendant Twin America, LLC because it is registered with the New York State Department of State to do business in New York State and maintains its principal offices in New York, New York, and each of them regularly transacts business in New York State. Gray Line New York, Inc. and Twin America, LLC both operate using the brand names "Gray Line" and "City Sightseeing".

20.    Jurisdiction is proper over defendants Big Bus Tours Group Limited, and Big Bus Tours Limited because they regularly transact business in New York State and have engaged in conduct directed toward New York State which has caused and is causing injury in New York State. Indeed, Big Bus Tours Limited owns and licenses the

21.    Jurisdiction is proper over defendant Open Top Sightseeing USA, Inc. because it is registered to do business in New York State, maintains its offices in New York, New York, regularly transacts business in New York State, and has engaged in conduct directed toward New York State which has caused and is causing injury in New York State. Jurisdiction is proper over defendant Taxi Tours, Inc. because it is a New York corporation, maintains in New York, New

7

York, regularly transacts business in New York State, and has engaged in conduct directed toward New York State which has caused and is causing injury in New York State.

22.    Jurisdiction is proper over defendant Go City, Inc. because it is authorized to do business and regularly transacts business in New York State.  Jurisdiction is proper over defendants Go City Holdings Limited and Go City Limited because they regularly transact business in New York State and have engaged in conduct directed toward New York State which has caused and is causing injury in New York State.

23.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b)(1)-(2) and (c)(2) because each of defendants either has its offices and/or regularly transacts business in this district and is subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## BACKGROUND

24.    Go New York owns and operates a fleet of double-decker, "hop-on, hop-off" sightseeing tour buses in New York City under the brand name "TopView."  Hop-on, hop-off bus tours allow tourists and other customers to "hop off" a tour bus at attractions that interest them (such as Madame Tussaud's, for example) and then "hop on" another bus operated by the same company when they are ready to resume their tour.  Go New York also provides bike rentals through its commonly owned affiliate, ASK Standard Transit, Inc. and boat tours through its commonly owned affiliate, New York Water Tours Inc.

25.    Go New York is one of two major "hop-on, hop-off" sightseeing tour bus businesses presently operating in the New York City market, together with the joint venture between Big Bus and Gray Line. Prior to the Covid-19 pandemic which arose in or about March 2020, Go New York historically had been the smallest of the three businesses, in terms of both revenues and the number of buses in its fleet.

8

26.    Unlike Gray Line and Big Bus, which are affiliated with large, multi-national business operations, Go New York only has one affiliate in another location, which began doing business in September of 2023.

27.    Go New York began its operations in New York City in 2012, doing business under the name "Go New York Tours" with four double decker sightseeing tour buses, and has since increased its fleet to more than 80 buses and expanded its tourist offerings to include boat tours, bicycle rentals, attraction passes and other tourist-oriented services.

28.    Go New York is a member of New York City & Company, the official destination marketing organization for New York City, as are Gray Line, Big Bus, and Go City.

29.    Go New York, Gray Line, and Big Bus are direct competitors of each other, offering similar types of tourist-oriented services in addition to their hop-on, hop-off sightseeing bus tours. Although other companies may also operate sightseeing bus tours in New York City, they tend to focus on specialized markets and do not presently offer the same hop-on, hop-off services as Go New York and the joint venture between Gray Line and Big Bus.

***Gray Line's Pre-Pandemic Dominance in the New
York City Sightseeing Tour Bus Market***

30.    Prior to March 2020, when the pandemic disrupted markets worldwide, Gray Line had been the largest hop-on, hop-off sightseeing company operating in New York City, in terms of both sales revenues and the size of its bus fleet, and had been operating in New York City since the 1990s. The relevant market includes the New York City market for hop-on, hop-off sightseeing buses and a relevant sub-market for so-called "attraction passes" wherein as described in more detail below, tickets for hop-on, hop-off tour buses are combined in a single package with admission to various New York City tourist attractions.

9

31.    Gray Line is a licensee and/or franchisee of Gray Line Worldwide, which has promoted itself as "the largest provider of sightseeing tours on the planet", offering "thousands of tours and experiences in more than 700 locations, spanning six continents".[2]

32.    Gray Line had maintained its dominance in the New York City Hop-on, Hop-Off market in large part through acquisition and market consolidation.  In 2009, Gray Line joined forces with its then-largest competitor, CitySights, combining their assets and operations to form Twin America.  Gray Line is no stranger to anti-competitive activities.  In 2012, the United States Department of Justice and the New York State Attorney General jointly sued Twin America and related companies in the United States District Court for the Southern District of New York for various antitrust violations.[3]  The lawsuit resulted in a consent judgment issued on November 17, 2015, pursuant to which, among other things, Twin America was required to forfeit 47 sightseeing bus stops in Manhattan which the New York City Department of Transportation had previously assigned to CitySights, and to disgorge profits in the amount of $7.5 million.

### Big Bus's Pre-Pandemic Participation in the New York City Sightseeing Tour Bus Market

33.    Prior to the pandemic which disrupted markets world-wide as of March 2020, Big Bus had owned and operated the second largest hop-on, hop-off sightseeing tour bus business in New York City.  Big Bus is based in the United Kingdom and bills itself as "the largest operator of open-top sightseeing bus tours in the whole wide world. Inspiring the spirit of adventure in over 25 cities, across four continents. Beginning with a fleet of three, today hundreds of buses and guides are helping over four million tourists explore each year."[4]

---

[2]    *See* https://www.grayline.com/about-us (last viewed pre-pandemic on March 7, 2019).

[3]    *See United States of America, et al., v. Twin America, LLC, et al.*, S.D.N.Y., 12-CV-8989.

[4]    *See* https://www.bigbustours.com/about-big-bus-tours (last visited on October 11, 2023).

34.     Like Gray Line, Big Bus secured its pre-pandemic position in the New York City sightseeing tour bus market largely through acquisition and market consolidation.  In or about January 2014, Big Bus (via its predecessor) entered the New York City market by purchasing an existing company, Taxi Tours LLC d/b/a Big Taxi Tours.  About one year later, in March 2015, Big Bus acquired an existing tour bus operator, Skyline Tours LLC.  In 2017, Big Bus acquired Open Loop New York ("Open Loop"), making it the second largest of only three companies then offering "hop-on, hop-off" sightseeing tour bus services in New York City.

### *Relevant Markets within the New York City Sightseeing Tour Industry*

35.     "Hop-on, hop-off" tour bus services offer a convenient way for sightseers to visit numerous attractions while charting their own journey. Hop-on, hop-off tours operators differ from conventional sightseeing tour bus operators insofar that rather than staying on a single bus continuously for the length of the tour, hop-on, hop-off tours operate numerous busses in "loops" with numerous stops and allow customers to "hop-on" at any stop they like and "hop-off" at any stop they like, to explore attractions near the stop. Therefore, customers have more control over their sightseeing experience than they would on a conventional sightseeing bus tour. There is a separate, distinct and relevant market for the sale of hop-on, hop-off tour bus services within New York City

36.     Go New York attempts to compete against Gray Line and Big Bus for the same consumers, offering the same types of hop-on, hop-off sightseeing bus tours and tourist "attraction passes" in New York City.  The market for "hop-on, hop-off" sightseeing bus tours is separate from the market for tourist "attraction passes" although they are interrelated insofar as "hop-on, hop-off" sightseeing bus tours are one of the "attractions" offered in tourist "attraction passes".

37.    One substantial means employed by Go New York, Gray Line, and Big Bus to market and sell their services and products within New York City is through individual, uniformed sales representatives located near popular tourist attractions throughout Manhattan.   Sales representatives from each of the three companies often work side by side with representatives of the other companies on the streets of Manhattan, each promoting his or her company's services and products and trying to persuade tourists to choose to purchase the services and products of his or her company over those of the other two companies.

38.    Each of the three companies also markets and sells its services and products available in New York City online through their respective web sites, through which a consumer located virtually anywhere within or outside the United States can purchase a company's services and products to be enjoyed when the consumer visits New York City.

39.    In addition, each of the three companies sells its services and products to consumers at their respective offices and/or visitor centers in Manhattan.

40.    Another significant means of marketing and selling the companies' services and products is through the concierge services and guest service desks in hotels, which promote and arrange for the purchase of sightseeing and activities for hotel guests.  Both Gray Line and Big Bus have arrangements with hotels and/or concierge and guest service providers to market and sell their tourist-oriented services and products to hotel guests.

41.    Go New York has been largely shut out of such arrangements and improperly prevented from having its services and products marketed and sold through hotels and/or concierge and guest service providers.

### *The New York City Attraction Pass Sub-Market*

42.    The hop-on hop-off tour bus companies (through affiliates) sell their services, in part, via bundled attraction sightseeing passes (referred to generally hereinafter as the "Attraction

Pass"). Attraction Passes constitute a sub-market within the New York City Hop-on, Hop-Off Tour market. An Attraction Pass combines admissions to various New York City attractions and activities for a single price which is substantially discounted from the total cost of the attractions and activities if they were purchased separately, thereby reducing the overall expenses of and providing greater value to consumers who wish to sightsee in New York City.

43.     Prior to the pandemic, Go New York, Gray Line, and Big Bus each attempted to offer Attraction Passes which combine various New York City attractions with their own respective hop-on, hop-off sightseeing bus tours and other services for a single price.  Other companies that do not own attractions or operate their own tourist services, including Go City and Sightseeing Pass, also offer Attraction Passes which may (but do not necessarily) include sightseeing bus tours.

44.     However, in or about July 2020, Gray Line and Big Bus formed a single operating entity pursuant to a formal written agreement, the effect of which was to monopolize and fix prices within the market for New York City Hop-on, Hop-off tour bus services, and to effectively shut Go New York out of the Attraction Pass  sub-market, making it difficult if not impossible for Go New York to offer and sell competitive attraction passes. Go New York has attempted to offer its own version of attraction passes that combine together its "hop on hop off" bus services with the bike rental and boat tour services of its commonly owned affiliates (ASK Transit and Liberty Cruise New York City), and certain other tourist attractions within New York City, but the conspiracy between Gray Line and Big Bus described herein has made it extremely difficult, if not impossible, for Go New York to compete effectively in the "Attraction Pass" market, and therefore, the larger Hop-On, Hop-off market

13

45.    In general, companies that offer Attraction Passes must enter into "trade partner" agreements with the owners of attractions and activities that are bundled into the Attraction Passes. Generally, trade partners agree to make admission to their attractions or their services available at a discounted "net rate" when bundled into a partner's Attraction Pass, with the seller of the Attraction Pass paying its partner at the agreed net rate for each pass used at that attraction or to use its services. The net rate accounts for a commission-type fee retained by the seller of the Attraction Pass for each such use. The trade partner that owns the attraction or operates the service being used benefits by gaining additional customers, while the partner selling the Attraction Pass earns commissions.

46.    The Attraction Pass sub- market is a natural fit for hop-on, hop-off sightseeing tour bus companies, whose very business model involves transporting tourists comfortably and efficiently between tourist attractions. The sightseeing tour bus companies benefit not just from commissions from passes used at tourist attractions, but also from selling their own sightseeing tours and other services as a component of Attraction Passes. The Attraction Pass has become a primary and essential facility for Go New York, Gray Line, and Big Bus to offer and sell their services and to compete in the New York City Hop-on, Hop-off market. Further, the market for Attraction Passes has become a separate and distinct market within the New York City tourism industry.

47.    Go New York has attempted to offer Attraction Passes under various names, which allows the consumer to choose among various tourist attractions and activities offered with the pass, while traveling and sightseeing on Go New York's hop-on, hop-off tour buses during a determined period of time ranging from one to several days, at a price substantially less than it would cost the consumer to purchase them separately. Go New York has also bundled its affiliated

14

bike rental and tour boat services with attempted Attraction Pass offerings. However, once Gray Line and Big Bus formed their operating entity, it became apparent that Gray Line and Big Bus had expressly agreed to monopolize (or at least attempt to monopolize) the New York City Hop-on, Hop-off market by conspiring together to shut out Go New York from access to many of the most popular and valuable trade partners offering tourist attractions within New York City.

48.    Big Bus offers its "Big Pass", which allows the consumer to choose among various tourist attractions and activities while traveling and sightseeing on Big Bus's hop-on, hop-off tour buses during a determined period of time ranging from one to several days.

49.    Gray Line offers similar Attraction Passes that combine admissions to various New York City tourist attractions with Gray Line's tour bus (prior to the merger) and Big Bus's tour bus (after the merger) and other services during specific time periods, under various brand names, including "Freestyle", "Flexpass", "Citysightseeing", and "Sightseeingpass".

50.    Go City offers Attraction Passes in cities around the world.  In the New York City market, Go City offers Attraction Passes under the brand names "New York City Explorer Pass" and the "New York Pass", which allow the consumer to pick and choose among various attractions and services to bundle and pay for in a single pass.   Although Go City offers around 100 various attractions and activities to include in its passes, it offers the services of only one hop-on, hop-off sightseeing tour bus company, Big Bus, which shares common ownership and control with Go City.

51.    Sightseeing Pass offers Attraction Passes in various cities throughout the United States.  In the New York City market, Sightseeing Pass offers Attraction Passes under the same brand names used by Gray Line, with which it shares common ownership and control.  Sightseeing Pass offers around 100 various attractions and activities included in its various passes, but offers

the services of only one hop-on, hop-off sightseeing tour bus company, Gray Line, prior to the formation of the single entity, and Big Bus, after the merger.

52.     Attraction Passes are a popular, convenient, and economical means for consumers to plan their sightseeing and tourist activities in New York City and have become an essential facility for the hop-on, hop-off sightseeing tour bus companies in the New York City market to market and sell their services and products.

53.     Therefore, the ability of each of Go New York, Gray Line, and Big Bus to compete with each other in New York City, as well as with the multitude of other tourist attractions and activities from which tourists may choose when visiting New York City, depends in substantial part on each company's ability to establish trade partner relationships with other attractions so as be able to offer many popular attractions with their respective Attraction Passes at the best price, and to access the main distribution channels from which consumers learn about and purchase the passes.

### *Defendants' Anti-Competitive Conduct*

54.     For a relatively short period of time of approximately five months from March 2020 through July 2020, the Covid-19 pandemic effectively shut down the markets for Hop-On Hop-Off tour buses and Attraction Passes in New York City.

55.     In or about July 2020, while the tourism industry was shut down, Gray Line and Big Bus recognized an opportunity to form a profitable, monopolistic operating entity that would permit them to fix prices and prevent competition in the markets for Hop-on Hop-Off tour buses and Attraction Passes. Accordingly, they merged their operationsthe effect of which was to form a single operating entity. Pursuant to a written agreement entered into in late July 2020, Gray Line and Big Bus agreed that (a) Big Bus would operate its hop-on, hop-off tour buses within New York City, (b) Gray Line would cease operating its fleet of hop-on, hop-off tour buses within New York

16

City, except that on information and belief, certain buses owned by Gray Line would be operated by Big Bus, (c) Gray Line would continue to sell tickets on its web-site and otherwise under its "Gray Line" and "City Sightseeing" brand names for hop-on, hop-off tour buses, with Gray Line's ticket holders being directed to use their tickets to ride only buses operated by Big Bus, (d) Big Bus would continue to sell tickets to consumers for its hop-on, hop-off tour buses, (e) Gray Line, Big Bus and Go City would continue to sell their respective Attraction Passes and in so doing, would cooperate with each other in providing access to trade partner attractions, while excluding Go New York from access to such attractions, and (f) Gray Line, Big Bus and Go City would not undercut each other on prices for hop-on hop-off tour buses and Attraction Passes, essentially conspiring to fix the prices of such services. This merger was memorialized in a Summer 2020 Memorandum of Understanding (the "MOU"), which, for the purposes of the New York City Hop-on, Hop-off market, effectively turned Gray Line and Big Bus into a single entity.

56.    In order to implement the MOU, there have been several other agreements between Big Bus and Grey Line, both formal and informal. For instance, because Big Bus' UK based parent company, Big Bus Tours Limited, owns the Big Bus Trademark, it cross-licensed the Big Bus Trademark for use by Big Bus and Grey Line in connection with the merged entity.. Likewise, Grey Line cross-licensed its trademark rights for use by the merged entity and Big Bus. Indeed,, although the MOU contemplates *Gray Line* using *Big Bus'* intellectual property "solely to the extent necessary for the resale of tickets," the opposite has happened. Indeed, *Big Bus* has been putting *Gray Line's* logo in prominent places on its buses, publicly holding themselves out as one entity, or at the very least, a joint venture in the New York City Hop-on, Hop-off market:





57.    The above pictures clearly demonstrate that Big Bus is running buses in the name of both companies pursuant to cross-license agreements.

58.    Further, prior to the pandemic, the New York City Department of Transportation ("DOT") had assigned each of Gray Line, Big Bus and Go New York  exclusive access to designated Bus Stops where the companies can pick up and discharge passengers.  Access to these bus stops is extremely valuable.  When Big Bus and Gray Line combined operations, Gray Line permitted Big Bus to use its designated bus stops. In so doing, Gray Line ceased operating its buses, but falsely asserted to the Department of Transportation that it should not reassign access to bus stops that had been designated to Gray Line. Had Gray Line informed DOT that pursuant to its agreement with Big Bus, it had ceased operating buses, DOT would have fairly reassigned and apportioned designated bus stops among operating entities within New York City. Instead, Gray Line misrepresented its status for months, depriving Go New York and its affiliates from access to additional designated bus stops, and instead, allowing the newly merged entity to take

advantage of both the bus stops previously assigned to Big Bus and those previously assigned to Gray Line.

59.    In addition, each of Gray Line and Big Bus has adjusted its websites and other key marketing material in order to facilitate the merger. Indeed, it was necessary for Big Bus and Gray Line to make these changes to their marketing materials, as consumers might be confused as to why Gray Line customers were on a Big Bus.

60.    Furthermore, the process of ticket selling itself involves allocating money through several channels. Not only do Big Bus and Gray Line nwork together to fairly allocate revenue, but critically, as alluded to above one of the key sales channels for hop-on, hop-off tours and Attraction Passes are sales representatives who work on commission. Because the sales representatives' commissions are based on the amount of sales they make, Big Bus and Gray Line must work together in the merged entity in order to fairly allocate commissions to their uniformed salespeople.

61.    Another major impact of this merger was to formalize and extend a pre-existing conspiracy among Big Bus, Gray Line and Go City to deny Go New York access to critical trade partners within New York City, thereby (a) either shutting Go New York out of the Attraction Pass market or making it extremely difficult if not impossible for Go New York to compete in the Attraction Pass market, and (b) fixing the prices of Attraction Passes such that none of Big Bus, Gray Line or Leisure Pass would undercut each other on prices for comparable Attraction Passes. As a result of this monopolistic conspiracy and price fixing, consumers have been forced to pay higher prices for Attraction Passes than would exist in the absence of this anti-competitive conduct and Go New York has been unable to effectively and fairly compete in the Attraction Pass market.

62.     Pursuant to this conspiracy, Big Bus, Gray Line and Go City have expressly agreed to provide each other access to critical trade partners, while conspiring together to exclude Go New York from access to such trade partners.

63.     Thus, Gray Line and Big Bus, with the help of their respective affiliates Sightseeing Pass and Go City,  have conspired to leverage their substantial market power to require and/or to persuade major New York City attractions to refuse to enter into trade partner agreements with Go New York, and have regularly falsely disparaged TopView "inferior, low cost, low quality" service such that the attractions would risk harming their own reputations by entering into trade partner agreements with Go New York.  In addition, Go City and Sightseeing Pass each present themselves to the consuming public as separate and apart from their affiliated sightseeing tour bus company, but offer the hop-on, hop-off sightseeing tour bus services of only Big Bus and exclude Go New York.

64.     Gray Line and Big Bus, with the help of their respective affiliates, Sightseeing Pass and Go City, have been and are engaging in their aforesaid conduct with the intent to destroy the value and competitiveness of Go New York's Attraction Passes and to prevent Go New York from meaningfully competing in the market for Attraction Passes. Defendants have thereby harmed competition in the New York City market, to the detriment of consumers.

65.     For example, while both Gray Line and Big Bus include admission to "Top of the Rock", the observatory and tourist facility at Rockefeller Center in midtown Manhattan, in their respective bundled sightseeing passes, the operator of Top of the Rock has rebuffed repeated attempts by Go New York to establish a relationship with it.  Top of the Rock rejected Go New York notwithstanding Go New York's proposal that that it would not take any commission or fee

21

for admission of Go New York's customers, passing the entire discounted rate on to Top of the Rock's customers and allowing Top of the Rock to charge a higher net rate.

66.    Top of the Rock has consistently rejected Go New York as a trade partner, because of deliberate pressure by Gray Line and Big Bus to exclude Go New York.  There is no rational business reason for Top of the Rock to reject Go New York as a trade partner, other than that Gray Line and Big Bus conspired together to demand that it not do business with Go New York. Mark Marmurstein, Gray Line's chief executive officer, expressly conspired with Big Bus executives Julia Conway and Charles Nolan to share access to Top of the Rock, while jointly pressuring Top of the Rock to exclude Go New York.

67.    Go New York has also been shut out of the Empire State Building Observatory (the "ESB Observatory"), notwithstanding Go New York's proposal that it would not take any commission or fee for admission of Go New York's customers to the ESB Observatory, passing the entire discounted rate on to its customers and allowing ESB Observatory to charge a higher net rate. Yet Big Bus and Gray Line now share access to the ESB Observatory in their respective Attraction Passes, even though the operator of the ESB Observatory previously refused to conduct business with Go New York on the ground that it had an exclusive relationship with Go City's "New York Pass", and Go City shares common ownership with Big Bus, which is a trade partner of the ESB Observatory. Gray Line executive Mark Marmurstein and Big Bus executives Julia Conway and Charles Nolan have agreed to share access to the ESB Observatory in their respective Attraction Passes, but have also agreed with the operator of the ESB Observatory to exclude Go New York.

68.    There is no apparent rational business reason for ESB Observatory to reject Go New York as a trade partner, other than Big Bus, Go City and Gray Line demanded that it not do

business with Go New York.   This is especially true because ESB Observatory advised Go New York it had an exclusive relationship with Big Bus, yet it agreed with Big Bus to allow Gray Line (a competitor of Big Bus) to participate in a purportedly exclusive arrangement while also agreeing with Big Bus and Gray Line to exclude Go New York.

69.    Go New York has also been shut out of the One World Observatory at the World Trade Center in lower Manhattan because of pressure and demands by Big Bus and Gray Line executives Julia Conway, Charles Nolan and Mark Marmurstein, who have agreed with each other that Big Bus and Gray line can include One World Observatory in their respective Attraction Passes, and that One World Observatory should continue to exclude Go New York access to One World Observatory.

70.    Representatives of the One World Observatory have told Go New York that it has an exclusive relationship with Mark Marmurstein, the president of Gray Line, and, indeed, Gray Line advertises the One World Observatory as one of several attractions offered "exclusively" with Gray Line's Multi-Attraction Passes.  Nevertheless, Big Bus also advertises and sells One World Observatory admission as part its own Big Pass, indicating that proffered explanation for excluding Go New York is pretextual. In fact, Mark Marmurstein has agreed with Big Bus executives Julia Conway and Charles Nolan that Gray Line and Big bus can share access to One World Observatory so long as Go New York continues to be excluded.

71.    Thus, the above-mentioned Gray Line and Big Bus executives have conspired to pressure and demand that One World Observatory, a major attraction which would be at the top of the list of places to visit for most tourists visiting New York City, exclude Go New York.   By doing so, Gray Line and Big Bus have rendered Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the

New York City market and preventing Go New York from being able to compete fairly in that market.

72.    As another example, Go New York previously executed a trade partner agreement with the Intrepid Sea, Air, and Space Museum (the "Intrepid"), a major tourist attraction located at the west side piers in midtown Manhattan.  Both Gray Line and Big Bus were already trade partners of the Intrepid, and would necessarily have known of the new agreement with Go New York.

73.    The Intrepid unilaterally terminated the agreement just as Go New York began sending its customers there, and in breach of the agreement between Go New York and the Intrepid, The Intrepid refused to honor the passes held by Go New York's customers.  An Intrepid representative told Go New York that the Intrepid did not want to make its other trade partners unhappy by dealing with Go New York.  In fact, Gray Line executive Mark Marmurstein and Big Bus executives Julia Conway and Charles Nolan have expressly agreed with each other to continue to share access to the Intrepid, while continuing to demand that the Intrepid exclude Go New York.

74.    Gray Line and Big Bus, thus, conspired with each other and the Intrepid to cause the Intrepid to terminate and to breach its trade partner agreement with Go New York, for the purpose of rendering Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

75.    Other museums that have refused to work with Go New York include the 9/11 Memorial and Museum and the 9/11 Tribute Museum in lower Manhattan, and the Museum of Modern Art in midtown.

76.    Big Bus and Gray Line are trade partners of the 9/11 Memorial and Museum and the 9/11 Tribute Museum, and Big Bus is also a trade partner of the Museum of Modern Art. Gray Line and Big Bus executives Mark Marmurstein, Julia Conway and Charles Nolan have agreed to share access to these museums with each other, while expressly conspiring together and with these museums and to exclude Go New York, for the purpose of rendering Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

77.    Go New York previously worked with Madame Tussauds, the wax museum attraction located in the Times Square area of Manhattan prior to 2015, before rebranding its hop-on, hop-off tour buses services as "TopView". Big Bus, a trade partner of Madame Tussauds, offering the attraction with its Big Pass, and Madame Tussauds promotes and sells Big Bus tickets at its own facility and web site.   Gray Line is also a trade partner of Madame Tussauds.

78.    In 2018, Go New York met with representatives of Madame Tussauds to try to forge a trade partner relationship with Madame Tussauds, but was eventually told that Madame Tussauds was not onboarding additional trade partners. Big Bus and Gray Line executives Mark Marmurstein, Julia Conway and Charles Nolan, upon information and belief, conspired with Madame Tussauds and each other to exclude Go New York, for the purpose of rendering Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

79.    Go New York has also been excluded from Broadway Inbound, an online platform for travel service providers and groups to sell tickets to Broadway shows.   In January 2019,

25

Broadway Inbound opened an account for Go New York. But a few days later, Broadway Inbound suddenly closed the account, stating that it needed "further time to review" Go New York's account and might reconsider Go New York in six months' time "once we better understand the local market landscape." Broadway Inbound has long-established business relationships with both Gray Line and Big Bus, neither of whose accounts have been closed for further review. In fact, Gray Line executive Mark Marmurstein and Big Bus executives Julia Conway and Charles Nolan have agreed to share access to Broadway Inbound, while working together to exclude Go New York from Broadway Inbound.

80.    Gray Line and Big Bus conspired with Broadway Inbound and each other to exclude Go New York, for the purpose of rendering Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

81.    In January 2019, Go New York contacted the companies Coach USA and Short Line (referred to hereinafter as "Coach/Short Line"), which operate a shuttle bus service between New York City and the Woodbury Common Premium Outlet shopping center ("Woodbury Common"), to discuss including their shuttle bus service in Go New York's Attraction Passes. Coach/Short Line initially expressed interest and began negotiating a trade partner relationship. But then, Coach/Short Line ceased negotiations and refused to work with Go New York, telling Go New York that "we aren't able to work with you due to other sightseeing company relationships." In fact, Gray Line executive Mark Marmurstein has agreed with Big Bus executives Julia Conway and Charles Nolan to share access to Woodbury Commons with each other, while working with Coach/Short line to exclude Go New York.

26

82.     Big Bus, Go City, Gray Line, and Sightseeing Pass all have trade partner relationships with Coach/Short Line and offer trips to Woodbury Common with their respective Attraction Passes (directly and/or through their respective affiliates). Big Bus, Go City, Gray Line, and Sightseeing Pass, have conspired with Coach/Short Line and each other to exclude Go New York, for the purpose of rendering Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

83.     The cumulative impact on Go New York from the aforesaid monopolistic conspiracy by executives of Gray Line and Big Bus, which was formalized and implemented pursuant to their July 2020 agreement, has been to effectively shut out Go New York from effectively competing in the Attraction Pass market and the larger New York City Hop-on, Hop-off Market.

84.     In this regard, Gray Line and Big Bus are able to fix prices for their respective Attraction Passes and those of their affiliates at levels substantially higher than would have existed had Go New York not been effectively shut out of the Attraction Pass market.  While Go New York continues to attempt to offer Attraction Passes, it cannot effectively compete because it has been shut of access to numerous critical trade partner relationships.  But for the monopolistic conspiracy among Gray Line, Big Bus and their affiliates, which was formalized pursuant to their July 2020 joint venture, Go New York could have offered competitive Attraction Passes at lower prices than those offered by Gray Line, Big Bus and their affiliates.  The merger between Gray Line and Big Bus has effectively eliminated and destroyed meaningful competition in the Attraction Pass market and thereby severely curtailed competition in the New York City Hop-on, Hop-off market at large.

85.     By excluding Go New York from major tourist attractions, defendants have substantially inhibited or prevented Go New York's ability to offer and sell bundled sightseeing passes that are attractive to customers, and substantially inhibited or prevented Go New York's access to essential distribution channels.

**FIRST CLAIM FOR RELIEF**
(Against All Defendants, for Monopolization Under of Section 2 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1, 15)

86.     Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 80 as if set forth in their entirety herein.

87.     As alleged above, defendants have engaged in a merger to monopolize the New York City Hop-on, Hop-off Market and its submarket, the Attraction Pass Market, to fix prices within the New York City Hop-on, Hop-off market, and to prevent or impede Go New York's ability to compete in the New York City Hop-on, Hop-off market.

88.     Big Bus and Go City have unlawfully conspired with Gray Line and Sightseeing Pass, and all of them have conspired with the operators of New York City tourist attractions, whether directly or through their respective affiliates, to monopolize the Attraction Pass market and the larger New York City, Hop-on, Hop-off market by excluding Go New York and its affiliates from trade partner relationships with New York City tourist attractions, from the Attraction Passes offered by Go City and Sightseeing Pass in the New York City market, from hotel concierges and guest services, and from other tourist services.

89.     Defendants' aforesaid improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York and its affiliates in the New York City Hop-on, Hop-off market to maintain artificially high prices for consumers, and defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with

28

the intent to harm competition in said market and to cause Go New York and its affiliates to lose market share, customers, and revenues.

90.    Defendants by their aforesaid unlawful conduct have caused actual injury to Go New York by causing Go New York and its affiliates to lose market share, customers, and revenues, including but not limited to sales of the Attraction Pass product, its hop-on hop off tour bus services, the bike rental services of its affiliate, ASK Transit, and the boat tour services of its affiliate, Liberty Cruise.

91.    Defendants have thereby engaged in monopolization in violation of section 2 of the Sherman Act, 15 U.S.C.  2 and section 4 of the Clayton Act, 15 U.S.C. § 15.

92.    Based on the foregoing,, Go New York is entitled to recover its damages from defendants including treble damages, costs of suit including reasonable attorney fees, and interest, to the fullest extent permitted by law.

## SECOND CLAIM FOR RELIEF

(Against All Defendants, for Attempted Monopolization Under Section 2 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 2, 15)

93.    Plaintiff repeats, realleges and reincorporates the allegations of paragraph 1 through 93 as if set forth in their entirety herein.

94.    As alleged above, defendants have engaged in a merger to attempt to monopolize the New York City Hop-on, Hop-off market and its submarket, the Attraction Pass market.

95.    Defendants have entered into an actual anticompetitive agreement with a specific intent to monopolize.

96.    Defendants have thereby engaged in attempted monopolization in violation of section 2 of the Sherman Act, 15 U.S.C. § 2 and section 4 of the Clayton Act, 15 U.S.C. § 15.

97.     Therefore, Go New York is entitled to recover its damages from defendants including treble damages, costs of suit including reasonable attorney fees, and interest, to the fullest extent permitted by law.

**THIRD CLAIM FOR RELIEF**
(Against All Defendants, for Conspiracy to Monopolize Under Section 2 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 2, 15)

98.     Plaintiff repeats, realleges and reincorporates the allegations of paragraph 1 through 97 as if set forth in their entirety herein.

99.     As alleged above, defendants have engaged in a conspiracy to monopolize the New York City Hop-on, Hop-off market and its submarket, the Attraction Pass market.

100.     Big Bus and Go City have unlawfully conspired with Gray Line and Sightseeing Pass, and all of them have conspired with the operators of New York City tourist attractions, whether directly or through their respective affiliates, to monopolize the Attraction Pass market and the larger New York City, Hop-on, Hop-off market by excluding Go New York and its affiliates from trade partner relationships with New York City tourist attractions, from the Attraction Passes offered by Go City and Sightseeing Pass in the New York City market, from hotel concierges and guest services, and from other tourist services.

101.     Defendants' aforesaid improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York and its affiliates in the New York City Hop-on, Hop-off market to maintain artificially high prices for consumers, and defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York and its affiliates to lose market share, customers, and revenues.

102.     Defendants by their aforesaid unlawful conduct have caused actual injury to Go New York by causing Go New York and its affiliates to lose market share, customers, and

30

revenues, including but not limited to sales of the Attraction Pass product, its hop-on hop off tour bus services, the bike rental services of its affiliate, ASK Transit, and the boat tour services of its affiliate, Liberty Cruise.

103.    Defendants have thereby engaged in conspiracy to monopolize in violation of section 2 of the Sherman Act, 15 U.S.C.  1 and section 4 of the Clayton Act, 15 U.S.C. § 15.

104.    Therefore, Go New York is entitled to recover its damages from defendants including treble damages, costs of suit including reasonable attorney fees, and interest, to the fullest extent permitted by law.

**FOURTH CLAIM FOR RELIEF**
(Against All Defendants, for Unreasonable Restraint of Trade Under Section 1 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1, 15)

105.    Plaintiff repeats, realleges and reincorporates the allegations of paragraph 1 through 104 as if set forth in their entirety herein.

106.    As alleged above, defendants have engaged in a conspiracy to unreasonably restrain trade in the New York City Hop-on, Hop-off market and its submarket, the Attraction Pass market.

107.    Big Bus and Go City have unlawfully conspired with Gray Line and Sightseeing Pass, and all of them have conspired with the operators of New York City tourist attractions, whether directly or through their respective affiliates, to monopolize the Attraction Pass market and the larger New York City, Hop-on, Hop-off market by excluding Go New York and its affiliates from trade partner relationships with New York City tourist attractions, from the Attraction Passes offered by Go City and Sightseeing Pass in the New York City market, from hotel concierges and guest services, and from other tourist services.

108.    Defendants' aforesaid improper concerted action has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York and its affiliates in the New York City Hop-on, Hop-off market to maintain artificially high prices for

31

consumers, and defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York and its affiliates to lose market share, customers, and revenues.

109.    Defendants by their aforesaid unlawful conduct have caused actual injury to Go New York by causing Go New York and its affiliates to lose market share, customers, and revenues, including but not limited to sales of the Attraction Pass product, its hop-on hop off tour bus services, the bike rental services of its affiliate, ASK Transit, and the boat tour services of its affiliate, Liberty Cruise.

110.    Defendants have thereby engaged in conspiracy to monopolize in violation of section 2 of the Sherman Act, 15 U.S.C. § 2 and section 4 of the Clayton Act, 15 U.S.C. § 15.

111.    Therefore, Go New York is entitled to recover its damages from defendants including treble damages, costs of suit including reasonable attorney fees, and interest, to the fullest extent permitted by law.

**FIFTH CLAIM FOR RELIEF**
(Against All Defendants, for Violations of the
Clayton Act, Sections 7 and 4, 15 U.S.C. §§15 and 18)

112.    Plaintiff repeats, realleges, and reincorporates the allegations of paragraph1 through 111 as if fully set forth in their entirety herein.

113.    Defendants Big Bus and Gray Line have formed  a jointly-owned entity for the purposes of creating a monopoly.

114.    Defendants have thereby engaged in an anticompetitive merger under Sections 7 and 4 of the Clayton Act, 15 U.S.C. §§15 & 18.

32

115.    Therefore, Go New York is entitled to recover its damages from defendants including treble damages, costs of suit including reasonable attorney fees, and interest, to the fullest extent permitted by law.

**SIXTH CLAIM FOR RELIEF**
(Against All Defendants, for Violations of the
Donnelly Act, New York Gen. Bus. L. § 340, *et seq.*)

116.    Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 87 as if set forth in their entirety herein.

117.    As alleged above, each of defendants has conspired to monopolize the market for Hop-On, Hop-Off Buses and the sub-market for Attraction Passes within New York City, have attempted to monopolize such markets, and have excluded, and/or entered into contracts for the purpose of excluding, Go New York and its affiliates from such markets..

118.    Defendants' aforesaid improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York and its affiliates in the New York City Hop-on, Hop-off market and the Attraction Pass sub-market, and to maintain artificially high prices for consumers, and defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York and its affiliates to lose market share, customers, and revenues

119.    Defendants have each engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York and its affiliates to lose market share, customers, and revenues, and have caused such actual injury to Go New York and its affiliates.

120.    For the foregoing reasons, defendants have engaged in unreasonable restraint of trade in violation of the Donnelly Act, New York Gen. Bus. L. § 340.

121.    Therefore, Go New York is entitled to recover its damages from defendants including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

**SEVENTH CLAIM FOR RELIEF**
(Against All Defendants, for
Common Law Unfair Competition)

122.    Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 93 as if set forth in their entirety herein.

123.    As alleged above, defendants have confused consumers as to the extent of their affiliation, thereby increasing their own market share at the expense of Go New York and preventing Go New York from offering and selling its services and products.

124.    By reason of the foregoing, defendants have wrongfully diverted business from Go New York and its affiliates to themselves, thereby damaging Go New York in an amount to be determined at trial, which Go New York is entitled to recover from defendants.


**WHEREFORE,** plaintiff Go New York Tours, Inc. demands Judgment in its favor and against defendants Gray Line New York Tours, Inc., Twin America, LLC, Sightseeing Pass LLC, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc., Go City Holdings Limited, Go City Limited, and Go City, Inc., as follows:

A.    Awarding plaintiff Go New York its actual damages and treble damages for violations of the Sherman and Clayton Acts, and of the Donnelly Act;

B.    Awarding plaintiff Go New York its costs of suit, including reasonable attorneys' fees, under the Clayton Act and the Donnelly Act, and as may otherwise be permitted by law;

34

C.      Awarding plaintiff Go New York interest under the Clayton Act, and as may otherwise be permitted by law;

D.      Awarding plaintiff Go New York its damages, costs of suit, and interest for unfair competition under New York common law, and its interests and costs as may be permitted by law; and

E.      Such other and further relief as the Court may deem just and proper.

Plaintiff hereby demands a trial by jury of all claims and issues herein.

Dated: New York, New York
      October 10, 2023

**BARTON LLP**

By:    ***/s/ Maurice N. Ross /s/***
       Maurice N. Ross

711 Third Avenue, 14th Floor
New York, NY 10017
(212) 687-6262
mross@bartonesq.com
*Attorneys for Plaintiff*
*Go New York Tours, Inc.*

35

## VERIFICATION OF COMPLAINT

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

    **BRET S. DERMAN**, being duly sworn, states:

1.  I am General Counsel for the Plaintiff in the action in the United States District Court

    Southern District of New York captioned GO NEW YORK TOURS, INC., v. GRAY LINE

    NEW YORK TOURS, INC., et al,

2.  I verify that I have read the foregoing **VERIFIED COMPLAINT** and know the contents thereof.
    The **VERIFIED COMPLAINT** is true to my own knowledge, except as to matters stated therein
    stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

**BRET S. DERMAN**

Sworn to before me on this
___ day of October, 2023

Notary Public

BARAK F. BACHARACH
Notary Public, State of New York
No. 02BA6442914
Qualified in Queens County
Commission Expires 10/24/2026