# EXHIBIT G

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART 54
-----------------------------------------------------X
TAXI TOURS INC.,

                        Plaintiff(s),

            - against -


GO NEW YORK TOURS, INC.,


                        Defendant(s).
-----------------------------------------------------X
GO NEW YORK TOURS, INC.,

                        Counterclaim Plaintiff(s),

            - against -


BIG BUS TOURS LIMITED, OPEN TOP SIGHTSEEING
USA, INC., TAXI TOURS INC., GO CITY LIMITED,
GO CITY NORTH AMERICA, LLC, GO CITY, INC., GRAY
LINE NEW YORK TOURS, INC., TWIN AMERICA, LLC
and SIGHTSEEING PASS LLC,

                        Counterclaim Defendant(s).
-----------------------------------------------------X
Index No. 653012/2019

                        December 2, 2021 - Via MS Teams



B E F O R E:   HONORABLE JENNIFER G. SCHECTER, JSC



A P P E A R A N C E S:

            LATHAM & WATKINS LLP
                    Attorneys for Plaintiff(s)
                    1271 Avenue of Americas
                    New York, New York 10020
                    BY:  MICHAEL LACOVARA, ESQ, ESQ.




                Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 3 of 46

APPEARANCES CONTINUED:


        BARTON LLP
                Attorneys for Defendant(s)
                711 Third Avenue
                New York, New York 10017
                BY:  RANDALL L. RASEY, ESQ.




        WILSON SONSINI GOODRICH & ROSATI, PC
                Attorneys for Counterclaim Defendants GrayLine,
                Twin America, Sightseeing Pass LLP
                1301 Avenue of Americas
                New York, New York 10019
                BY:  KENNETH EDELSON, ESQ.
                     JONATHAN M. JACOBSON, ESQ.

                    Rachel C. Simone, CSR, RMR, CRR

Proceedings

THE COURT: I have two motions in front of me today. And let me make very clear for the record as we start off that if I refer to the plaintiff as "Go New York Tours," it's because they are the plaintiff on the counterclaim, and it's just how I thought about this in analyzing the motions. I am very well aware of who the plaintiff is and who the defendant is, but at issue today is Go New York Tours' counterclaims, so it is the one doing the pleading. And I guess I will start off with the jurisdictional motion, which, I think, is Motion 6.

Mr. Rasey, explain to me here why there is personal jurisdiction over these foreign entities, or even a sufficient start. I don't see it in light of the Wilkins' affidavit or affirmation, and the Horgan affirmation, and the Conway affidavit.

She signed the stipulation. Everybody agrees that Taxi Tours is the party to the stipulation. I don't think her signing the stipulation confers jurisdiction. She has no authority. There hasn't even been a question of fact as to whether she has authority for the British entity. How is there jurisdiction here? I don't see it.

MR. RASEY: Thank you, your Honor.

The British entity, referring to Big Bus Tours Limited; as we pointed out in our papers, we pulled up their financial statements and publicly-filed statements in the

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 5 of 46

Proceedings

corporate register in the UK.  They manage the US entities. specifically, they manage Taxi Tours as well as Open Top Sightseeing USA, Inc.

THE COURT:  What did they do?  When you say "they manage," what do they do?  What are the allegations here of -- let me just point blank ask.  What's your anchor for jurisdiction?  Which statutory provision?  I don't buy at all the New York Department.  That's going nowhere.  There is no way there is general jurisdiction.  I don't even see any specific jurisdiction.  Which statutory anchor are you relying on?  And you can take me through the map.

MR. RASEY:  The CPLR 302 (a)(1) and (a)3, transacts business within the state or contracts to supply goods and services in the state.

Big Bus Tours Limited by its own admissions and its public filings, and even, to some extent, in Mr. Wilkins' affidavit, supplies the web platform for Taxi Tours or for the sale of Big Bus Services in New York.  It owns the Big Bus trademark in New York.  It has provided interim financial support for both of the US entities as stated in Mr. Wilkins' affidavit.  As stated in our financial statements, Big Bus Tours Limited earns its revenue from charging management fees to subsidiaries in the US including Open Top Sightseeing and Taxi Tours.  And we believe, at least, we've made a good start to say that they

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER Document 69-7 Filed 11/13/23 Page 6 of 46

Proceedings

are so involved in the management of the US entities that they would necessarily be involved in the conspiracy which we have alleged.

THE COURT: So tell me what are specifically their activities in terms of the management that you allege are the predicates for jurisdiction.

MR. RASEY: Well, we believe -- we don't know because we haven't had discovery. We've alleged, and I think the documents at least show, suggest that they are involved in the management of the company. They provide corporate branding, sales advice and services to the US entities.

Let's go back --

THE COURT: Give me an example. What type of advice do they give? When you say they are involved, is it day-to-day management? Is it over arching? What is their involvement?

MR. RASEY: The answer is we just don't know.

THE COURT: That's not a great answer, though.

MR. RASEY: I know.

THE COURT: The problem with that answer is that under that theory, any affiliate with the most tangential relationship would be hauled into New York, and that's not the case law.

MR. RASEY: I have to respectfully disagree on

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER Document 69-7 Filed 11/13/23 Page 7 of 46

Proceedings

that because there is a whole hierarchal series of entities in the UK. There's, maybe, a half dozen to a dozen leading up to the ultimate entity. Big Bus Tours Limited is the only one that is providing management services to the entities in the US also. Also, their directors --

THE COURT: What does it do for the entities in New York? What does it do?

MR. RASEY: I wish I could answer that, but that's something we would need discovery on. I think it would be resolved pretty easily through limited jurisdictional discovery; but based on what we know about the organization and what we've read in their public filings and also in Mr. Wilkins' affidavit, we believe we've made a reasonable argument that they are involved in the over-arching management and business strategy of the New York companies, and that would encompass the conspiracies.

After this case progresses awhile, through discovery we may learn that these decisions were made on the ground in New York and not in London. But based on what we know so far about the management structure, we have every reason to believe that these kinds of significant marketing decisions for the New York market would be -- if not made entirely, at least made in consultation with and under the direction of the UK entity.

THE COURT: What in Mr. Wilkins' affidavit or

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 8 of 46

Proceedings

affirmation supports that?

MR. RASEY:  Well, he states that --

THE COURT:  And if you want, I will pull it up. Does anyone have the docket number?  I have read it.  I just don't have the hard copy with me.

MR. RASEY:  I can find it.

THE COURT:  Okay.  It's Number 144.

There is nothing in that affirmation that gave me the grounds to support what you are saying.  I hear you saying involvement in management, saying those words; but what is the anchor again?  I am going to keep focusing on the anchor today, I guess.

MR. RASEY:  Fair enough, your Honor.  I understand where you are going.

Mr. Wilkins' affidavit is very pro forma.  He just makes these kind of boilerplate statements.  We take him at his word, I suppose, that Big Bus does not control the day-to-day operations of Open Top or Taxi Tours. Nevertheless, according to his affidavit, they provide the web platform and, by implication, manage the sales of Big Bus tickets in New York.  And as stated in the -- I am not sure if it's in his affidavit or only in the financial statements filed in the UK, but they provide direct management services to all entities; so, in our view, they would necessarily be involved.  I understand you are asking;

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 9 of 46

Proceedings

for something more specific that we can anchor argument on, and I can't because we are limited to what we know in the public filings.  We know very little, other than our direct experience with Julia Conway, about how these companies are managed.  But we know from Big Bus Tours Limited's own filings and, to some extent, from Mr. Wilkins that they are directly involved with the management of the companies in the New York and managing the Big Bus brand.  That's our hook.  I wish I could give you more, but that's it.

THE COURT:  Okay.

What about Leisure Pass in the UK.

MR. RASEY:  Well, leisure Pass, again, is set up with a parallel structure.  They have the same common owner in London.  They also state in their public filings that they provide management services to the subsidiaries in the US.  They state that 40 percent of their revenues in 2018 and 2019 came from the United States.  And given that New York is a major tourist market in the United States, we have to assume a substantial portion of that came from Taxi Tours and Open Top Sightseeing in the New York market.

THE COURT:  But what is the tortious act that it committed in New York?

MR. RASEY:  Well, we don't know what -- we don't know the day-to-day on the ground involvement of the UK of the lowest level management UK entity in the affairs of the

Rachel C. Simone, CSR, RMR, CRR

INDEX NO. 653012/2019
Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 10 of 46
RECEIVED NYSCEF: 12/13/2021

Proceedings

subsidiaries.  We know they have, at least, applied for USPTO trademark registration for the Go New York which was withdrawn, I think, when they realized that's our name.

I wish I could say more.  Your Honor can assess what I am telling you, what we have alleged under the law. I am not going to try to make more than I have; but I believe that we have enough to show, at least, a nonprivileged argument that they are involved in the management decisions of the New York entities to the extent that we have made a nonfrivolous argument for jurisdiction here --

THE COURT:  Why didn't you take up the counterclaim defendants' offer to engage in discovery before putting in the opposition to the motion?

MR. RASEY:  That's a good question.  I was a little taken aback when I saw that in -- in Mr. Lacovara's reply brief, he attached that e-mail where his colleague, Jessica Bratten, contacted -- and I got along very well with her on discovery issues.  He attached that email where she contacted me to let me know when they were filing their motion to dismiss and just politely letting me know that it's a short timeframe but we have to pick a date, and we will work with you on a briefing schedule.  She also mentioned there, Once you read it let us know what you think of a briefing schedule -- I am paraphrasing -- and whether

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 11 of 46

Proceedings

you will be seeking jurisdictional discovery.

Perhaps I should have thought about that a bit more, but I didn't understand that to be --

THE COURT:  I will tell you why she may have been more generous than I am.  In terms of -- I don't know that there is a ground for me to even order that.  In any event, let me hear from Mr. Lacovara in response.

Mr. Lacovara, what about the arguments about the management.

MR. LACOVARA:  Thank you, your Honor.  I think I can be brief.

I think we have to go back a half a step.  The case is about, the claims are about interactions with attractions in New York City for purposes of creating these multi-attraction passes.  It's not about the generic management of one business by another, it's about a very specific set of acts.  And when Mr. Rasey said that he is going under 302(a)(1), remember that has two components: Transact business in the state of New York, and the transaction relates to the cause of action.  The cause of action has to arise out of the nature of the business transacted.

It is true that the website is operated globally. It is true that both Go City -- which used to be called Leisure Pass -- and Big Bus in London provide, sort of,

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 12 of 46

Proceedings

global accounting and tax services. But the record here, as your Honor has noted, is that they do not get involved in selling bus tickets, in selling multi-attraction passes in New York, in dealing with the New York attractions; so I don't think there is any jurisdictional anchor, to use the Court's phrase.

Now I will say something that will sound almost like an admission against interest, which is that we don't think there is a basis for jurisdictional discovery. I don't think they have made a sufficient start under any of the cases that talk about that. They don't have any prima facie allegations. They haven't stated what facts they would try to find out with jurisdictional discovery. But the case, your Honor, is in a very odd posture; which is, for reasons of efficiency, we are not resisting regular discovery over those foreign entities. We are collecting documents to be produced to Mr. Rasey and Mr. Ross from London and will continue to do so. It is just easier than having them get dismissed and then deal with it as third-party discovery in the UK. As your Honor knows, that will just slow the case down.

So I can tell the Court now that if, as I hope is the drift of your thinking, your Honor, the idea is to dismiss the two entities for want of jurisdiction; but if as discovery proceeds, because Mr. Rasey and his colleagues

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 13 of 46

Proceedings

will be getting documents from these entities, if they believe they have a basis for any kind of fact that they committed a tort in New York or otherwise did something that would provide jurisdictional anchor, you know, I have a duty to your Honor of candor; and if they have a basis to bring them back into the case, we won't object to amending the pleading at that time.  But I think as a matter --

THE COURT:  All right.  I don't need to hear anything further, then, because on that basis I am going to grant dismissal on personal jurisdiction grounds.  I do not see any transaction of business or allegations of a tort by these foreign entities that is related to these causes of action.  I just don't see any predicates.  So if you do find anything in the course of discovery, then I will see this again, but I am going to grant the motion.  So that takes care of Motion Number 6.

We move on now to Motion Number 7.  Motion Number 7, I am also going to focus on the amended counterclaim.

Here, the big issue is I have the Gray Line defendants -- oh, they are also the counterclaim defendants. They are moving to dismiss the claim under the Donnelly Act for failure to state a cause of action.  And while I am convinced that res judicata does not apply, what I am not convinced of is that the allegations here don't suffer from

Rachel C. Simone, CSR, RMR, CRR

Proceedings

the same infirmities that Judge Kaplan pointed out, and under *Creative Trading Co*. would be subject to dismissal regardless of whether it's federal or state in terms of the sufficiency of the allegations.  And I'll focus you in on my problem.

The problem is there has to be a description of the nature of the conspiracy, and there has to be reasonable inferences that the conduct constitutes a conspiracy.  And, I guess, much like Judge Kaplan, I don't understand and have gone through -- and the focus is Paragraphs 24 through 49 in terms of the Donnelly Act allegations -- all of the different attractions that are listed.  For example, for Top of the Rock the allegations are that Top of the Rock consistently rejects Go New York and that there is no rational reason other than the counterclaim defendants required it not to do business with Go New York.  What I don't have is the who or the how.  What did Go New York do? I mean, there are other rational reasons, much like Judge Kaplan said.  It doesn't follow that just because Top of the Rock rejects, even if would be a profitable contract for it, that doesn't mean that there is a conspiracy.  That was Paragraph 35.

Paragraph 36, I think, talks about the Empire State Observatory.  Essentially, it alleges that because defendants are trade partners and the operator there told

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER   Document 69-7   Filed 11/13/23   Page 15 of 46

Proceedings

Go New York that has an exclusive with another pass, there is no rational reason other than conspiracy here for the Empire State Observatory to reject Go New York.  One World Observatory reported that it had an exclusive with Gray Line, president, but it does business with others; therefore, there must be a conspiracy.  And the Intrepid refused to work with Go New York.  It didn't want to make its trade partners unhappy; and, therefore, it must follow that defendants conspired.  You know, the 9/11 Memorial and MoMA defendants, again, are trade partners with the counterclaim defendants, so the allegation goes that there must be a conspiracy.  And Madame Tussauds has an affiliation with Big Bus, it still works with Gray Line but won't work with Go New York; therefore, there must be a conspiracy.  And Broadway Inbound opened and closed an account quickly are the allegations, that it opened an account for Go New York but closed it quickly.  But the allegations are in the complaint that it had a long-established relationship with their defendants, and that long-established relationship wasn't terminated.  Well, it was a long-established relationship.  I don't know again that the necessary conclusion is that there must be a conspiracy.  And then it goes through Coach and Short Line, they refused to work with Go New York due to other sightseeing relationships.

Rachel C. Simone, CSR, RMR, CRR

Proceedings

So, again, what did any of the counterclaim defendants do that resulted in or that constitutes any conspiracy?

Go ahead, Mr. Rasey.

MR. RASEY:  Thank you.

THE COURT:  I know it's a lot, but I want you to know I went through section by section by section, and I the thing that jumps out at me is, How is there a conspiracy? Every time I would read the paragraphs, I would have "how" with question mark.

MR. RASEY:  I appreciate the detail with which you looked at this, your Honor.

Our position is that we've alleged enough circumstances from which under the pleading standard in New York under 3013, CPLR 3013, we've alleged enough to infer a conspiracy.  And Paragraphs 35 and 37, two of those attractions, actually instructed Go New York to go talk to Mark Marmurstein, the CEO of Gray Line, if we wanted to get in but he'd have to help us, implying very clearly that they would not work with us without his approval.  In the Madame Tussauds, again, it would make sense that since they have common ownership with Big Bus and Leisure Pass, it would make sense if they were exclusive to Big Bus, but it doesn't make sense they would also allow in Gray Line and not Go New York.  Also, since this past summer -- I mean, we brought it

Rachel C. Simone, CSR, RMR, CRR

INDEX NO. 653012/2019
NYSCEF DOC. NO. 241

Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 17 of 46

Proceedings

up in the record in opposition to Gray Line's order to show cause, I think it was Motion Number 8.  And ever since the pandemic, Gray Line has, actually, been selling Big Bus tickets as part of its -- I should say Gray Line including sightseeing pass, the multi-traction arm, have actually been selling multi-attraction passes that incorporate Big Bus rides because Gray Line has stopped running their buses and hasn't resumed.  If you buy a Gray Line Hop-on Hop-off bus pass on their website as recently as September, because we tried it, you get a Gray Line bus ticket but it's only good on Big Bus.  So they are clearly working together.  And we don't have, you know, the dates, times, what was said, as Mr. Edelson and his colleagues have pointed out in their brief, that's true; but we have a common motive for them to work against us.  Basically, those are the allegations that I am sure you've read also about the underpricing and disrupting their pricing models.  And the whole of the New York attractions in New York are regularly rejecting us while they continue to work with both of the other companies.

So, your Honor, those are the factual allegations from which --

THE COURT:  It sounds like only one company is running right now.

MR. RASEY:  Well, this would be before the

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 18 of 46

Proceedings

pandemic, obviously.

THE COURT:  Right.

MR. RASEY:  And I understand Gray Line still has these relationships as far as the sightseeing pass multi-attraction passes with the other attractions.

THE COURT:  Okay.

You know, I will tell you, the closest it will comes to me is Paragraph 47 which talks about -- because, you know, to the extent that they talk about inferior or low-cost quality services, I am not even convinced that that's potentially anticompetitive conduct.  But in Paragraph 47 it goes on to say that:  Go New York has been informed consistently and repeatedly by many attractions that executives of counterclaim defendants have told them that if they allow Go New York to include their attractions in Go New York's multi-attraction passes, they will terminate their contractual relationships with such attractions and refuse to include them in their own respective multi-attraction passes.

That's the closest that it comes to surviving, but I will tell you what my problem is there.

First of all, in contrast to so many of the other paragraphs, right, where there is a discussion of like Coach and Short Line or Broadway Inbound -- although, again, those allegations don't look sufficient to me because there aren't

Rachel C. Simone, CSR, RMR, CRR

Proceedings

any allegations of conspiratorial conduct or even conduct that would be inferential.  Again, what jumps out at me is because -- the allegations seem to be that because these attractions, and I didn't count how many there are, but, you know, I don't know how many you listed, but it is not the whole universe of the attractions; but because these attractions do business with the counterclaim defendants and not with us, and, you know, we would offer them a good, in our view, economic incentive, there must be a conspiracy. That just -- I think Judge Kaplan had a problem with that, and I think even under New York more generous liberal pleading standard, it won't survive either. That's the *Creative Trading* case.  But paragraph 47 talks about having heard consistently and repeatedly from many attractions. Well, which ones?  This is the important part.  Heard from executives of counterclaim defendants.  Again, who?  Which defendants?  Is it Gray Line or is it all of them?  I have no idea.  But I don't even think that could be an anchor to go forward against all of the counterclaim defendants because it is just simply too conclusory and bereft of any factual foundation.

Let me hear from Mr. Edelson.

MR. RASEY:  Your Honor, may I first make just one quick response?

THE COURT:  Absolutely.  Go right ahead.

Rachel C. Simone, CSR, RMR, CRR

INDEX NO. 653012/2019
NYSCEF DOC. NO. 241
RECEIVED NYSCEF: 12/13/2021

Case 1:23-cv-04256-ER   Document 69-7   Filed 11/13/23   Page 20 of 46

Proceedings

MR. RASEY:  You've cited the *Creative Trading* case.  In that case, there were not two competitors alleged to have conspired.  They were alleging that it was brought by an exhibitor at a fashion apparel trade show against the company that put on the trade shows, and the allegation was that the trade show was conspiring with other exhibitors to shut out the class of exhibitors that the plaintiff was in.  So that would be more analogous to our case if we had alleged that, for example, Gray Line -- we took Big Bus out of the picture and Gray Line was just conspiring with the attractions.  That's not the case here.  We have two direct competitors, Big Bus and Gray Line, allegedly conspiring with each other.

I just point that out because it is an important distinguishing factual issue that, in my view, makes the *Creative Trading* case less applicable here.

THE COURT:  If I had more facts, perhaps that would be true; but, for example, you know, that one paragraph that maybe would have been compelling if it had more to it, I have no idea which executives of the counterclaim defendants told which attractions that if they allow Go New York to include their attractions they are going to terminate their relationship.  It's important for me to know that because I don't know who the counterclaim defendants involved in the conspiracy are.  Is there

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 21 of 46

Proceedings

substance to this?  I have no idea.  Is it all of the executives?  I mean, again, I want to know who because I want to know who should be in, who should be out.  Is there really a conspiracy?  I don't know.  I just have counterclaim defendants.

MR. RASEY:  It is implied in Paragraphs 35 and 37 where we allege that two different attractions told Go New York that would have to talk to Mark Marmurstein from Gray Line if they wanted to enter into a trade partner agreement.

THE COURT:  So it was the Empire State Building, that's what 47 refers to, and One World Observatory?

MR. RASEY:  I think it was Top of the Rock and One World.  Those are just two examples.  That's not the universe encompassed by Paragraph 47.

THE COURT:  Okay.  But, again, it would be good for me to know what Paragraph 47 means, because I really don't know.  And, again, I don't know if I should be convinced -- and Mr. Edelson will, I am sure, elaborate -- but whether or not them saying, Speak to Marmurstein who is -- who is the president of Gray Line?

MR. RASEY:  I don't know his exact title, but yes.

THE COURT:  Right, he is certainly affiliated with Gray Line.  So, speak to him, and that means that he is engaged in a conspiracy where, again, those paragraphs certainly don't say to me that Empire State or One World

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER   Document 69-7   Filed 11/13/23   Page 22 of 46

Proceedings

Observatory or Top of the Rock reported to us that Marmurstein has been saying to us, If we don't cut you out we are going to lose their accounts.  That's not what I have.

Let me hear from you, Mr. Edelson.  Why would dismissal be appropriate here?

MR. EDELSON:  Thank you, your Honor.  I appreciate the direction your Honor is going here.

Just to address your point regarding Paragraph 47, there are just no facts suggesting a horizontal conspiracy between the counterclaim defendants or vertically between the companies and the attractions.  Regarding Paragraph 47, it is at most suggestive, I think, of parallel conduct.  It is clear that that doesn't equate with conspiracy.  The Supreme Court held that as far back as 1954 in a case called *Theater Enterprises*.  I think that paragraph doesn't contain facts to suggest, you know, the substance of the allegations.  I think at most it indicates that maybe the counterclaim plaintiffs had these experiences with regard to both companies, but that is not sufficient to raise an inference of conspiracy.

Just as a general matter, the counterclaims don't meet the pleading standard for a Donnelly Act conspiracy claim under New York law whether under 3013 or 3016(b).

There are explicit allegations of fraud and

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 23 of 46

Proceedings

misrepresentation for the Donnelly Act and tort claims in Paragraphs 1, 32, 48, 76.  And given that the heightened pleading standard of 3016(b) applies, there is certainly not enough detail to meet that standard.

Regarding the issue about the ticket redemption, none of that is alleged in the counterclaims, your Honor.

THE COURT:  What about the references to Mr. Marmurstein?

MR. EDELSON:  Your Honor, those are at most suggestive of potentially exclusive contracts with tourist attractions.  There is no basis from which to infer a conspiracy from those mentions of Mr. Marmurstein.  They are entirely unilateral as far as they are alleged.

THE COURT:  Right.  There is no indication of any conduct by the moving defendants with respect to those allegations.  That's what I got when I read the paragraphs all related to Mr. Marmurstein.

So, yes, for much the same reasons as articulated by Judge Kaplan, and in the context of New York's very liberal pleading standard of 3013, I am going to grant dismissal of the counterclaims.  I am going to do both of them, the tortious interference of business relations and, in addition, the Donnelly Act claim.  Again, that some attractions have relationships with the counterclaim defendant movants but choose not to do business with the

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER   Document 69-7   Filed 11/13/23   Page 24 of 46

Proceedings

plaintiff doesn't suffice for an inference of conspiracy to move forward.  And there are no allegations of unlawful concerted actions by any particular counterclaim defendants.  They are parroting the words of conspiracy, but there isn't any specified place, how, to who, or who did it.  And it's not a function of giving specific detail, but it's really essential to assessing whether there is a cause of action itself.  So the failure to identify any specific participants when it comes to allegations that could support a conspiracy, they are just not there.  It's just not true that there is no rational basis for third-parties to do business with defendants and not plaintiffs other than a conspiracy.  Conspiracy can't be the only reason, and it's just not sufficient to support a Donnelly Act claim.

The tortious interference with business relations counterclaim falls as well because there are insufficient allegations of any wrongful means.  There being no allegation of any statutory violation that survives or allegation of any tort committed by these movants, the counterclaim -- first and second -- have to be dismissed.

I am going to ask that the movants e-file a copy of the transcript of this proceeding within 45 days.

That concludes today's proceedings.  I wish you all good health and a smooth process through discovery for those who are remaining.

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER    Document 69-7    Filed 11/13/23    Page 25 of 46

Reporter Certification

MR. LACOVARA:  Thank you, your Honor.

MR. RASEY:  Thank you.

MR. EDELSON:  Thank you, your Honor.

THE COURT:  Thank you.  Have a good day.  Happy holidays.

*       *       *

The foregoing is hereby certified to be a true and accurate transcript of the proceedings.

_Rachel C. Simone-Ivanac_

Rachel C. Simone-Ivanac

Senior Court Reporter

Rachel C. Simone, CSR, RMR, CRR

Case 1:23-cv-04256-ER    Document 69-7/7    Filed 11/13/23    Page 26 of 46

**MR. EDELSON:
[3]  21/7 22/9 24/3
MR.
LACOVARA: [2]
10/10 24/1
MR. RASEY: [23]
 3/22 4/12 5/7 5/18
5/20 5/25 6/8 7/2
7/6 7/13 8/12 8/23
9/15 15/5 15/11
16/25 17/3 18/23
19/1 20/6 20/12
20/21 24/2
THE COURT:
[27]**

**-**

**----------------------**

**----------------------**

**-X [1]  1/2**

**----------------------**

**----------------------**

**X [2]  1/8 1/15**

**1**

**10017 [1]  2/4
10019 [1]  2/10
10020 [1]  1/23
11 [1]  14/9
1271 [1]  1/23
1301 [1]  2/9**

**1954 [1]  21/15**

**2**

**2018 [1]  8/16
2019 [2]  1/16 8/17
2021 [1]  1/17
24 [1]  13/10**

**3**

**3013 [4]  15/15
 15/15 21/24 22/20
3016 [2]  21/24
 22/3
302 [2]  4/12 10/18
32 [1]  22/2
35 [3]  13/22 15/16
 20/6
36 [1]  13/23
37 [2]  15/16 20/6**

**4**

**40 percent [1]
 8/16
45 [1]  23/22
47 [8]  17/8 17/12
 18/13 20/11 20/14
 20/16 21/9 21/12
48 [1]  22/2
49 [1]  13/10**

**5**

**54 [1]  1/1**

**6**

**653012/2019 [1]
 1/16**

**7**

**711 [1]  2/4
76 [1]  22/2**

**9**

**9/11 [1]  14/9**

**A**

**aback [1]  9/16
about [20]  3/5
 6/11 6/20 8/4 8/11
 10/2 10/8 10/8
 10/13 10/13 10/15
 10/16 11/11 13/23
 16/16 17/8 17/9
 18/13 22/5 22/7
Absolutely [1]
 18/25
according [1]  7/19
account [2]  14/16
 14/17
accounting [1]
 11/1
accounts [1]  21/3
accurate [1]  24/8
act [7]  8/21 12/22
 13/11 21/23 22/1
 22/23 23/14**

Case 1:23-cv-04256-ER Document 69-72 Filed 11/13/23 Page 27 of 46

**A**

action [5] 10/20 10/21 12/13 12/23 23/7

actions [1] 23/3

activities [1] 5/5

acts [1] 10/17

actually [3] 15/17 16/3 16/5

addition [1] 22/23

address [1] 21/9

admission [1] 11/8

admissions [1] 4/15

advice [2] 5/11 5/15

affairs [1] 8/25

affidavit [9] 3/14 3/15 4/17 4/21 6/13 6/25 7/15 7/19 7/22

affiliate [1] 5/22

affiliated [1] 20/22

affiliation [1] 14/13

affirmation [4] 3/14 3/14 7/1 7/8

After [1] 6/17

again [15] 7/11 8/12 12/15 14/10 14/21 15/1 15/21

17/24 18/2 18/16 20/2 20/15 20/17 20/24 22/23

against [6] 1/4 1/10 11/8 16/15 18/19 19/4

agreement [1] 20/9

agrees [1] 3/16

ahead [2] 15/4 18/25

all [10] 4/8 7/24 12/8 13/11 17/22 18/17 18/19 20/1 22/17 23/24

allegation [4] 14/11 19/5 23/18 23/19

allegations [20] 4/5 11/12 12/11 12/25 13/4 13/11 13/13 14/16 14/18 16/15 16/21 17/25 18/1 18/3 21/18 21/25 22/16 23/2 23/9 23/17

allege [2] 5/5 20/7

alleged [9] 5/3 5/8 9/5 15/13 15/15 19/2 19/9 22/6 22/13

allegedly [1] 19/12

alleges [1] 13/24

alleging [1] 19/3

allow [3] 15/24 17/15 19/22

almost [1] 11/7

along [1] 9/18

also [10] 6/5 6/5 6/12 8/14 9/23 12/18 12/21 15/24 15/25 16/16

although [1] 17/24

am [18] 3/6 7/11 7/21 9/5 9/6 9/25 10/5 12/9 12/15 12/18 12/23 12/24 16/16 17/10 20/18 22/20 22/21 23/21

amended [1] 12/18

amending [1] 12/6

AMERICA [3] 1/13 1/13 2/9

Americas [2] 1/23 2/9

analogous [1] 19/8

analyzing [1] 3/6

anchor [8] 4/6 4/10 7/11 7/12 8/1 11/5 12/4 18/18

another [2] 10/16 14/1

**A**

answer [4]  5/18 5/19 5/21 6/8
anticompetitive [1]  17/11
any [20]  4/10 5/22 10/6 11/5 11/10 11/11 12/2 12/11 12/13 15/1 15/2 18/1 18/20 22/14 23/3 23/5 23/8 23/17 23/18 23/19
anyone [1]  7/4
anything [2]  12/9 12/14
apparel [1]  19/4
APPEARANCES [1]  1/25
applicable [1]  19/16
applied [1]  9/1
applies [1]  22/3
apply [1]  12/24
appreciate [2]  15/11 21/7
appropriate [1]  21/6
approval [1]  15/20
arching [2]  5/16 6/14
are [47]

aren't [1]  17/25
argument [4]  6/14 8/1 9/8 9/10
arguments [1]  10/8
arise [1]  10/21
arm [1]  16/5
articulated [1]  22/18
as [28]
ask [2]  4/6 23/21
asking [1]  7/25
assess [1]  9/4
assessing [1]  23/7
assume [1]  8/19
attached [2]  9/17 9/19
Attorneys [3]  1/22 2/3 2/8
attraction [6]  10/15 11/3 16/6 17/5 17/16 17/19
attractions [20]  10/14 11/4 13/12 15/17 16/18 17/5 17/13 17/15 17/18 18/4 18/6 18/7 18/14 19/11 19/21 19/22 20/7 21/12 22/11 22/24
authority [2]  3/19

3/20
Avenue [3]  1/23 2/4 2/9
aware [1]  3/6
awhile [1]  6/17

**B**

back [4]  5/13 10/12 12/6 21/15
BARTON [1]  2/3
based [2]  6/11 6/19
Basically [1]  16/15
basis [6]  11/9 12/2 12/5 12/9 22/11 23/11
be [34]
because [21]  3/4 5/8 6/1 8/2 11/25 12/9 13/19 13/24 16/7 16/9 17/8 17/25 18/3 18/3 18/6 18/20 19/14 19/24 20/2 20/16 23/16
been [7]  3/19 10/4 16/3 16/5 17/12 19/19 21/2
before [2]  9/13 16/25
being [1]  23/17
believe [6]  4/25

Case 1:23-cv-04256-ER Document 69-24 Filed 11/13/23 Page 29 of 46

## B

believe... [5]  5/7 6/13 6/21 9/7 12/2
bereft [1]  18/20
between [2]  21/11 21/11
big [21]  1/12 3/23 4/15 4/18 4/19 4/22 6/3 7/17 7/20 8/5 8/8 10/25 12/20 14/13 15/22 15/23 16/3 16/6 16/11 19/9 19/12
bit [1]  10/2
blank [1]  4/6
boilerplate [1]  7/16
both [5]  4/20 10/24 16/19 21/20 22/21
brand [1]  8/8
branding [1]  5/11
Bratten [1]  9/18
brief [3]  9/17 10/11 16/14
briefing [2]  9/23 9/25
bring [1]  12/5
British [2]  3/20 3/23
Broadway [2]

brought [2]  15/25 19/3
Building [1]  20/10
bus [23]  1/12 3/23 4/15 4/18 4/19 4/22 6/3 7/17 7/21 8/5 8/8 10/25 11/3 14/13 15/22 15/23 16/3 16/6 16/8 16/10 16/11 19/9 19/12
buses [1]  16/7
business [13]  4/13 6/15 10/16 10/19 10/21 12/11 13/16 14/5 18/7 22/22 22/25 23/12 23/15
buy [2]  4/7 16/8

## C

called [2]  10/24 21/15
came [2]  8/17 8/19
can [6]  4/11 7/6 8/1 9/4 10/11 11/22
can't [2]  8/2 23/13
candor [1]  12/5
care [1]  12/16
case [13]  5/24 6/17 10/13 11/14 11/21

19/2 19/8 19/11 19/16 21/15
cases [1]  11/11
cause [5]  10/20 10/20 12/23 16/2 23/7
causes [1]  12/12
CEO [1]  15/18
certainly [3]  20/22 20/25 22/3
certified [1]  24/7
charging [1]  4/23
choose [1]  22/25
circumstances [1] 15/14
cited [1]  19/1
CITY [5]  1/12 1/13 1/13 10/14 10/24
claim [4]  12/22 21/24 22/23 23/14
claims [2]  10/13 22/1
class [1]  19/7
clear [2]  3/2 21/14
clearly [2]  15/19 16/11
closed [2]  14/15 14/17
closest [2]  17/7

Case 1:23-cv-04256-ER Document 69-7 Filed 11/13/23 Page 30 of 46

C

closest... [1]  17/20
Co [1]  13/2
Coach [2]  14/23
 17/23
colleague [1]  9/17
colleagues [2]
 11/25 16/13
collecting [1]
 11/16
comes [3]  17/8
 17/20 23/9
committed [3]
 8/22 12/3 23/19
common [3]  8/13
 15/22 16/14
companies [6]
 6/15 8/4 8/7 16/20
 21/12 21/20
company [3]  5/10
 16/23 19/5
compelling [1]
 19/19
competitors [2]
 19/2 19/12
complaint [1]
 14/18
components [1]
 10/18
concerted [1]  23/3
concludes [1]

conclusion [1]
 14/22
conclusory [1]
 18/20
conduct [6]  13/8
 17/11 18/1 18/1
 21/13 22/15
confers [1]  3/18
consistently [3]
 13/14 17/13 18/14
conspiracies [1]
 6/16
conspiracy [26]
conspiratorial [1]
 18/1
conspired [2]  14/9
 19/3
conspiring [3]
 19/6 19/10 19/12
constitutes [2]
 13/8 15/2
consultation [1]
 6/23
contacted [2]  9/18
 9/20
contain [1]  21/16
context [1]  22/19
continue [2]  11/18
 16/19
CONTINUED [1]

contract [1]  13/20
contracts [2]  4/13
 22/10
contractual [1]
 17/17
contrast [1]  17/22
control [1]  7/17
convinced [4]
 12/24 12/25 17/10
 20/18
Conway [2]  3/15
 8/4
copy [2]  7/5 23/21
corporate [2]  4/1
 5/11
cost [1]  17/10
could [5]  6/8 8/9
 9/4 18/18 23/9
count [1]  18/4
counterclaim [23]
 1/9 1/15 2/8 3/5
 9/13 12/19 12/21
 13/15 14/11 15/1
 17/14 18/7 18/16
 18/19 19/21 19/24
 20/5 21/11 21/19
 22/24 23/3 23/16
 23/20
counterclaims [4]
 3/8 21/22 22/6

Case 1:23-cv-04256-ER Document 69-25 Filed 09/13/23 Page 31 of 46

**C**

counterclaims...
 [1]  22/21
COUNTY [1]  1/1
course [1]  12/14
COURT [4]  1/1
 11/22 21/15 24/13
Court's [1]  11/6
CPLR [2]  4/12
 15/15
creating [1]  10/14
Creative [4]  13/2
 18/13 19/1 19/16
cut [1]  21/2

**D**

date [1]  9/22
dates [1]  16/12
day [7]  5/16 5/16
 7/18 7/18 8/24
 8/24 24/4
days [1]  23/22
deal [1]  11/19
dealing [1]  11/4
December [1]  1/17
decisions [3]  6/18
 6/22 9/9
defendant [5]  1/7
 1/15 2/3 3/7 22/25
defendants [22]
 2/8 12/21 12/21

15/15 13/25 14/9
14/10 14/11 14/19
15/2 17/14 18/7
18/16 18/17 18/19
19/21 19/25 20/5
21/11 22/15 23/3
23/12
defendants' [1]
 9/13
Department [1]
 4/8
description [1]
 13/6
detail [3]  15/11
 22/4 23/6
did [5]  4/4 12/3
 13/17 15/1 23/5
didn't [4]  9/12
 10/3 14/7 18/4
different [2]  13/12
 20/7
direct [3]  7/23 8/3
 19/11
direction [2]  6/24
21/8
directly [1]  8/7
directors [1]  6/5
disagree [1]  5/25
discovery [14]  5/8
 6/9 6/11 6/18 9/13
 9/19 10/1 11/9

11/16 11/20
11/25 12/14 23/24
discussion [1]
 17/23
dismiss [3]  9/21
 11/24 12/22
dismissal [4]  12/10
 13/2 21/6 22/21
dismissed [2]
 11/19 23/20
disrupting [1]
 16/17
distinguishing [1]
 19/15
do [17]  4/4 4/5 4/5
 5/15 6/6 6/7 11/2
 11/18 12/10 12/13
 13/16 13/17 15/2
 18/7 22/21 22/25
 23/11
docket [1]  7/4
documents [3]  5/9
 11/17 12/1
does [6]  6/6 6/7
 7/4 7/17 12/24
 14/5
doesn't [6]  13/19
 13/21 15/23 21/14
 21/16 23/1
doing [1]  3/8
don't [33]

Case 1:23-cv-04256-ER   Document 69-3   Filed 11/13/23   Page 32 of 40

**D**

**Donnelly** [6]  12/22 13/11 21/23 22/1 22/23 23/14
**down** [1]  11/21
**dozen** [2]  6/2 6/2
**drift** [1]  11/23
**due** [1]  14/24
**duty** [1]  12/4

**E**

**e-file** [1]  23/21
**e-mail** [1]  9/17
**each** [1]  19/13
**earns** [1]  4/22
**easier** [1]  11/18
**easily** [1]  6/10
**economic** [1]  18/9
**EDELSON** [5]  2/10 16/13 18/22 20/18 21/5
**efficiency** [1]  11/15
**either** [1]  18/12
**elaborate** [1]  20/18
**email** [1]  9/19
**Empire** [4]  13/23 14/3 20/10 20/25
**encompass** [1]  6/16

**encompassed** [1]  20/14
**engage** [1]  9/13
**engaged** [1]  20/24
**enough** [5]  7/13 9/7 15/13 15/15 22/4
**enter** [1]  20/9
**Enterprises** [1]  21/16
**entirely** [2]  6/23 22/13
**entities** [14]  3/12 4/1 4/20 5/1 5/12 6/1 6/5 6/6 7/24 9/9 11/16 11/24 12/1 12/12
**entity** [5]  3/20 3/23 6/3 6/24 8/25
**equate** [1]  21/14
**ESQ** [5]  1/24 1/24 2/5 2/10 2/11
**essential** [1]  23/7
**Essentially** [1]  13/24
**established** [3]  14/19 14/20 14/21
**even** [10]  3/12 3/19 4/9 4/16 10/6 13/20 17/10 18/1 18/11 18/18

**ever** [1]  16/2
**every** [2]  6/20 15/9
**Everybody** [1]  3/16
**exact** [1]  20/21
**example** [4]  5/14 13/12 19/9 19/18
**examples** [1]  20/13
**exclusive** [4]  14/1 14/4 15/23 22/10
**executives** [4]  17/14 18/16 19/20 20/2
**exhibitor** [1]  19/4
**exhibitors** [2]  19/6 19/7
**experience** [1]  8/4
**experiences** [1]  21/19
**explain** [1]  3/11
**explicit** [1]  21/25
**extent** [4]  4/16 8/6 9/9 17/9

**F**

**facie** [1]  11/12
**fact** [2]  3/19 12/2
**facts** [4]  11/12 19/17 21/10 21/17
**factual** [3]  16/21

Case 1:23-cv-04256-ER Document 69-17 Filed 11/13/23 Page 33 of 46

## F

factual... [2]  18/21 19/15
failure [2]  12/23 23/8
Fair [1]  7/13
falls [1]  23/16
far [4]  6/20 17/4 21/15 22/13
fashion [1]  19/4
federal [1]  13/3
fees [1]  4/23
file [1]  23/21
filed [2]  3/25 7/23
filing [1]  9/20
filings [5]  4/16 6/12 8/3 8/6 8/14
financial [4]  3/25 4/20 4/22 7/22
find [3]  7/6 11/13 12/13
first [3]  17/22 18/23 23/20
focus [3]  12/18 13/4 13/10
focusing [1]  7/11
follow [2]  13/19 14/8
foregoing [1]  24/7
foreign [3]  3/12 11/16 12/12

forma [1]  7/15
forward [2]  18/19 23/2
foundation [1]  18/21
fraud [1]  21/25
front [1]  3/1
function [1]  23/6
further [1]  12/9

## G

gave [1]  7/8
general [2]  4/9 21/22
generic [1]  10/15
generous [2]  10/5 18/11
get [4]  11/2 11/19 15/18 16/10
getting [1]  12/1
give [3]  5/14 5/15 8/9
given [2]  8/17 22/2
giving [1]  23/6
global [1]  11/1
globally [1]  10/23
go [31]
goes [3]  14/11 14/23 17/12
going [14]  4/8 7/11 7/14 9/6 10/18 12/9 12/15 12/18

19/22 21/3 21/8 22/20 22/21 23/21
gone [1]  13/10
good [7]  4/25 9/15 16/10 18/8 20/15 23/24 24/4
GOODRICH [1]  2/8
goods [1]  4/14
got [2]  9/18 22/16
grant [3]  12/10 12/15 22/20
GRAY [20]  1/13 12/20 14/4 14/13 15/18 15/24 16/1 16/3 16/4 16/7 16/8 16/10 17/3 18/17 19/9 19/10 19/12 20/8 20/20 20/23
GrayLine [1]  2/8
great [1]  5/19
ground [3]  6/19 8/24 10/6
grounds [2]  7/9 12/10
guess [3]  3/9 7/12 13/9

## H

had [8]  5/8 14/4 14/18 18/10 19/8

Case 1:23-cv-04256-ER   Document 69-21   Filed 11/13/23   Page 34 of 46

## H

had... [3]  19/17 19/19 21/19
half [2]  6/2 10/12
Happy [1]  24/4
hard [1]  7/5
has [15]  3/18 3/20 4/19 10/18 10/21 11/2 13/6 13/7 14/1 14/12 16/3 16/7 17/3 17/12 21/2
hasn't [2]  3/19 16/8
hauled [1]  5/23
have [46]
haven't [2]  5/8 11/12
having [2]  11/19 18/13
he [7]  7/2 7/15 9/17 9/19 10/17 20/22 20/23
he'd [1]  15/19
health [1]  23/24
hear [5]  7/9 10/7 12/8 18/22 21/5
heard [2]  18/14 18/15
heightened [1]  22/2

held [1]  21/15
help [1]  15/19
her [2]  3/18 9/19
here [12]  3/11 3/21 4/5 9/11 11/1 12/20 12/25 14/2 19/11 19/16 21/6 21/8
hereby [1]  24/7
hierarchal [1]  6/1
him [2]  7/16 20/23
his [8]  7/17 7/19 7/22 9/17 11/25 15/20 16/13 20/21
holidays [1]  24/5
Honor [18]  3/22 7/13 9/4 10/10 11/2 11/14 11/20 11/23 12/5 15/12 16/21 18/23 21/7 21/8 22/6 22/9 24/1 24/3
HONORABLE [1]  1/19
hook [1]  8/9
Hop [2]  16/8 16/8
Hop-off [1]  16/8
Hop-on [1]  16/8
hope [1]  11/22
Horgan [1]  3/14
horizontal [1]

how [9]  3/5 3/20 8/4 13/17 15/8 15/9 18/4 18/5 23/5

## I

I'll [1]  13/4
idea [4]  11/23 18/18 19/20 20/1
identify [1]  23/8
implication [1]  7/20
implied [1]  20/6
implying [1]  15/19
important [3]  18/15 19/14 19/23
Inbound [2]  14/15 17/24
INC [8]  1/2 1/6 1/8 1/12 1/12 1/13 1/13 4/3
incentive [1]  18/9
include [3]  17/15 17/18 19/22
including [2]  4/24 16/4
incorporate [1]  16/6
Index [1]  1/16
indicates [1]  21/18
indication [1]

Case 1:23-cv-04256-ER    Document 69-1    Filed 11/13/23    Page 35 of 46

indication... [1] 22/14
infer [2] 15/15 22/11
inference [2] 21/21 23/1
inferences [1] 13/8
inferential [1] 18/2
inferior [1] 17/9
infirmities [1] 13/1
informed [1] 17/13
instructed [1] 15/17
insufficient [1] 23/16
interactions [1] 10/13
interest [1] 11/8
interference [2] 22/22 23/15
interim [1] 4/20
Intrepid [1] 14/6
involved [10] 5/1 5/2 5/10 5/15 6/14 7/25 8/7 9/8 11/2 19/25
involvement [3]

is [82]
isn't [1] 23/4
issue [4] 3/7 12/20 19/15 22/5
issues [1] 9/19
it [63]
it's [15] 3/4 3/5 7/7 7/22 9/22 10/15 10/16 13/3 15/6 16/10 19/23 23/5 23/6 23/10 23/13
its [5] 4/15 4/16 4/22 14/8 16/4
itself [1] 23/8
Ivanac [1] 24/12

## J

JACOBSON [1] 2/11
JENNIFER [1] 1/19
Jessica [1] 9/18
JONATHAN [1] 2/11
JSC [1] 1/19
Judge [5] 13/1 13/9 13/18 18/10 22/19
judicata [1] 12/24
Julia [1] 8/4
jumps [2] 15/8

jurisdiction [10] 3/12 3/18 3/21 4/7 4/9 4/10 5/6 9/10 11/24 12/10
jurisdictional [7] 3/10 6/10 10/1 11/5 11/9 11/13 12/4
just [23] 3/5 4/6 5/18 7/4 7/15 9/21 11/18 11/21 12/13 13/19 18/10 18/20 18/23 19/10 19/14 20/4 20/13 21/9 21/10 21/22 23/10 23/10 23/14

## K

Kaplan [5] 13/1 13/9 13/19 18/10 22/19
keep [1] 7/11
KENNETH [1] 2/10
kind [2] 7/16 12/2
kinds [1] 6/21
know [37]
knows [1] 11/20

## L

LACOVARA [3]

Case 1:23-cv-04256-ER   Document 59-7   Filed 11/13/23   Page 36 of 46

## L

LACOVARA... [3]
1/24 10/7 10/8
Lacovara's [1]
9/16
LATHAM [1]
1/22
law [3]  5/24 9/5
21/24
leading [1]  6/2
learn [1]  6/18
least [5]  4/25 5/9
6/23 9/1 9/7
leisure [4]  8/11
8/12 10/25 15/22
less [1]  19/16
let [7]  3/2 4/6 9/20
9/24 10/7 18/22
21/5
Let's [1]  5/13
letting [1]  9/21
level [1]  8/25
liberal [2]  18/11
22/20
light [1]  3/13
like [5]  11/8 13/9
13/18 16/23 17/23
limited [8]  1/12
1/12 3/24 4/15
4/22 6/3 6/10 8/2
Limited's [1]  8/5

12/20 14/5 14/13
14/23 15/18 15/24
16/3 16/4 16/7
16/8 16/10 17/3
17/24 18/17 19/9
19/10 19/12 20/9
20/20 20/23
Line's [1]  16/1
listed [2]  13/12
18/5
little [2]  8/3 9/16
LLC [3]  1/13 1/13
1/14
LLP [3]  1/22 2/3
2/9
London [4]  6/19
8/14 10/25 11/18
long [3]  14/19
14/20 14/21
long-established
[3]  14/19 14/20
14/21
look [1]  17/25
looked [1]  15/12
lose [1]  21/3
lot [1]  15/6
low [1]  17/10
low-cost [1]  17/10
lowest [1]  8/25

## M

Madame [2]  14/12
15/20
made [7]  4/25 6/13
6/18 6/22 6/23
9/10 11/10
mail [1]  9/17
major [1]  8/18
make [7]  3/2 9/6
14/7 15/21 15/23
15/24 18/23
makes [2]  7/16
19/15
manage [4]  4/1 4/2
4/5 7/20
managed [1]  8/5
management [16]
4/23 5/1 5/5 5/10
5/16 6/4 6/15 6/20
7/10 7/24 8/7 8/15
8/25 9/9 10/9
10/16
managing [1]  8/8
many [5]  17/13
17/22 18/4 18/5
18/14
map [1]  4/11
mark [3]  15/10
15/18 20/8
market [3]  6/22
8/18 8/20

Case 1:23-cv-04256-ER Document 69-1 Filed 11/13/23 Page 37 of 46

## M

marketing [1]  6/21
Marmurstein [7]  15/18 20/8 20/19 21/2 22/8 22/12 22/17
matter [2]  12/7 21/22
may [3]  6/18 10/4 18/23
maybe [3]  6/2 19/19 21/18
me [23]  3/1 3/2 3/11 4/6 4/11 5/4 5/14 7/5 7/8 9/20 9/20 9/21 10/6 10/7 15/8 17/8 17/25 18/2 18/22 19/24 20/16 20/25 21/5
mean [4]  13/18 13/21 15/25 20/2
means [3]  20/16 20/23 23/17
meet [2]  21/23 22/4
Memorial [1]  14/9
mentioned [1]  9/24
mentions [1]  22/12

MICHAEL [1]  1/24
misrepresentation [1]  22/1
models [1]  16/17
MoMA [1]  14/10
more [10]  8/1 8/9 9/4 9/6 10/3 10/5 18/11 19/8 19/17 19/20
most [4]  5/22 21/13 21/18 22/9
motion [9]  3/10 3/10 9/14 9/21 12/15 12/16 12/17 12/17 16/2
motions [2]  3/1 3/6
motive [1]  16/14
movants [3]  22/25 23/19 23/21
move [2]  12/17 23/2
moving [2]  12/22 22/15
Mr. [22]  3/11 4/17 4/21 6/13 6/25 7/15 8/6 9/16 10/7 10/8 10/17 11/17 11/17 11/25 15/4 16/13 18/22 20/18

22/17
Mr. Edelson [4]  16/13 18/22 20/18 21/5
Mr. Lacovara [2]  10/7 10/8
Mr. Lacovara's [1]  9/16
Mr. Marmurstein [3]  22/8 22/12 22/17
Mr. Rasey [5]  3/11 10/17 11/17 11/25 15/4
Mr. Ross [1]  11/17
Mr. Wilkins [1]  8/6
Mr. Wilkins' [5]  4/17 4/21 6/13 6/25 7/15
MS [1]  1/17
much [3]  13/9 13/18 22/18
multi [7]  10/15 11/3 16/5 16/6 17/5 17/16 17/19
multi-attraction [6]  10/15 11/3 16/6 17/5 17/16 17/19

Case 1:23-cv-04256-ER    Document 69-11    Filed 11/13/23    Page 38 of 46

## M

multi-traction [1]  16/5

must [6]  14/6 14/8 14/12 14/14 14/22 18/9

my [3]  13/4 17/21 19/15

## N

name [1]  9/3

nature [2]  10/21 13/7

necessarily [2]  5/2 7/25

necessary [1]  14/22

need [2]  6/9 12/8

Nevertheless [1]  7/19

NEW [55]

no [14]  1/16 3/19 4/9 13/14 14/2 18/18 19/20 20/1 21/10 22/11 22/14 23/2 23/11 23/17

none [1]  22/6

nonfrivolous [1]  9/10

nonprivileged [1]  9/8

not [32]

noted [1]  11/2

nothing [1]  7/8

now [4]  11/7 11/22 12/17 16/24

nowhere [1]  4/8

number [6]  7/4 7/7 12/16 12/17 12/18 16/2

## O

object [1]  12/6

Observatory [5]  13/24 14/3 14/4 20/11 21/1

obviously [1]  17/1

odd [1]  11/14

off [3]  3/3 3/9 16/8

offer [2]  9/13 18/8

oh [1]  12/21

Okay [4]  7/7 8/10 17/6 20/15

Once [1]  9/24

one [10]  3/8 6/4 10/16 14/3 16/23 18/23 19/18 20/11 20/12 20/25

ones [1]  18/15

only [5]  6/4 7/22 16/10 16/23 23/13

OPEN [5]  1/12 4/2

opened [2]  14/15 14/16

operated [1]  10/23

operations [1]  7/18

operator [1]  13/25

opposition [2]  9/14 16/1

order [2]  10/6 16/1

organization [1]  6/11

other [11]  8/3 13/15 13/18 14/2 14/24 16/19 17/5 17/22 19/6 19/13 23/12

others [1]  14/5

otherwise [1]  12/3

our [9]  3/24 4/21 7/24 8/3 8/8 9/3 15/13 18/9 19/8

out [12]  3/24 10/21 11/13 13/1 15/8 16/13 18/2 19/7 19/9 19/14 20/3 21/2

over [4]  3/12 5/16 6/14 11/16

over-arching [1]

Case 1:23-cv-04256-ER   Document 69-12   Filed 13/13/23   Page 39 of 42

## O

over-arching... [1]
6/14
own [3]  4/15 8/5
17/18
owner [1]  8/13
ownership [1]
15/22
owns [1]  4/19

## P

pandemic [2]  16/3
17/1
papers [1]  3/24
paragraph [11]
13/22 13/23 17/8
17/12 18/13 19/19
20/14 20/16 21/9
21/12 21/16
Paragraph 35 [1]
13/22
Paragraph 36 [1]
13/23
paragraph 47 [7]
17/8 17/12 18/13
20/14 20/16 21/9
21/12
paragraphs [8]
13/10 15/9 15/16
17/23 20/6 20/24
22/2 22/16

parallel [2]  8/13
21/13
paraphrasing [1]
9/25
parroting [1]  23/4
part [3]  1/1 16/4
18/15
participants [1]
23/9
particular [1]  23/3
parties [1]  23/11
partner [1]  20/9
partners [3]  13/25
14/8 14/10
party [2]  3/17
11/20
pass [10]  1/14 2/9
8/11 8/12 10/25
14/1 15/22 16/5
16/9 17/4
passes [6]  10/15
11/3 16/6 17/5
17/16 17/19
past [1]  15/25
PC [1]  2/8
percent [1]  8/16
perhaps [2]  10/2
19/17
personal [2]  3/12
12/10
phrase [1]  11/6

pick [1]  9/22
picture [1]  19/10
place [1]  23/5
plaintiff [8]  1/3
1/9 1/22 3/3 3/4
3/7 19/7 23/1
plaintiffs [2]  21/19
23/12
platform [2]  4/17
7/20
pleading [7]  3/9
12/7 15/14 18/12
21/23 22/3 22/20
point [3]  4/6 19/14
21/9
pointed [3]  3/24
13/1 16/13
politely [1]  9/21
portion [1]  8/19
position [1]  15/13
posture [1]  11/14
potentially [2]
17/11 22/10
predicates [2]  5/6
12/13
president [2]  14/5
20/20
pretty [1]  6/10
pricing [1]  16/17
prima [1]  11/11
pro [1]  7/15

Case 1:23-cv-04256-ER Document 69-7 Filed 11/13/23 Page 40 of 46

**P**

problem [5]  5/21 13/5 13/6 17/21 18/10

proceeding [1]  23/22

proceedings [2]  23/23 24/8

proceeds [1]  11/25

process [1]  23/24

produced [1]  11/17

profitable [1]  13/20

progresses [1]  6/17

provide [6]  5/10 7/19 7/23 8/15 10/25 12/4

provided [1]  4/19

providing [1]  6/4

provision [1]  4/7

public [4]  4/16 6/12 8/3 8/14

publicly [1]  3/25

publicly-filed [1]  3/25

pull [1]  7/3

pulled [1]  3/24

purposes [1]  10/14

put [1]  19/5

putting [1]  9/14

**Q**

quality [1]  17/10

question [3]  3/19 9/15 15/10

quick [1]  18/24

quickly [2]  14/16 14/17

**R**

Rachel [1]  24/12

raise [1]  21/20

RANDALL [1]  2/5

RASEY [6]  2/5 3/11 10/17 11/17 11/25 15/4

rational [4]  13/15 13/18 14/2 23/11

read [6]  6/12 7/4 9/24 15/9 16/16 22/16

realized [1]  9/3

really [3]  20/4 20/16 23/6

reason [4]  6/21 13/15 14/2 23/13

reasonable [2]  6/13 13/7

reasons [3]  11/15 13/18 22/18

receiving [1]  16/9

record [3]  3/2 11/1 16/1

redemption [1]  22/5

refer [1]  3/3

references [1]  22/7

referring [1]  3/23

refers [1]  20/11

refuse [1]  17/18

refused [2]  14/7 14/24

regard [1]  21/19

regarding [3]  21/9 21/12 22/5

regardless [1]  13/3

register [1]  4/1

registration [1]  9/2

regular [1]  11/15

regularly [1]  16/18

reject [1]  14/3

rejecting [1]  16/18

rejects [2]  13/14 13/20

related [2]  12/12 22/17

relates [1]  10/20

relations [2]  22/22

FILED: NEW YORK COUNTY CLERK 12/13/2021 12:46 PM INDEX NO. 653012/2019
NYSCEF DOC. NO. 241 RECEIVED NYSCEF: 12/13/2021

## R

relations... [1]  23/15

relationship [5]  5/23 14/19 14/20 14/21 19/23

relationships [4]  14/25 17/4 17/17 22/24

relying [1]  4/11

remaining [1]  23/25

remember [1]  10/18

repeatedly [2]  17/13 18/14

reply [1]  9/17

reported [2]  14/4 21/1

Reporter [1]  24/13

required [1]  13/16

res [1]  12/24

resisting [1]  11/15

resolved [1]  6/10

respect [1]  22/15

respectfully [1]  5/25

respective [1]  17/19

response [2]  10/7 18/24

resumed [1]  16/8

revenue [1]  4/23

revenues [1]  8/16

rides [1]  16/7

right [7]  12/8 16/24 17/2 17/23 18/25 20/22 22/14

Rock [5]  13/13 13/13 13/20 20/12 21/1

ROSATI [1]  2/8

Ross [1]  11/17

running [2]  16/7 16/24

## S

said [3]  10/17 13/19 16/12

sale [1]  4/18

sales [2]  5/11 7/20

same [3]  8/13 13/1 22/18

saw [1]  9/16

say [8]  4/4 4/25 5/15 9/4 11/7 16/4 17/12 20/25

saying [5]  7/9 7/10 7/10 20/19 21/2

SCHECTER [1]  1/19

schedule [2]  9/23

second [1]  23/20

section [3]  15/7 15/7 15/7

see [6]  3/13 3/21 4/9 12/11 12/13 12/14

seeking [1]  10/1

seem [1]  18/3

selling [4]  11/3 11/3 16/3 16/6

Senior [1]  24/13

sense [3]  15/21 15/23 15/24

September [1]  16/9

series [1]  6/1

services [8]  4/14 4/18 5/11 6/4 7/24 8/15 11/1 17/10

set [2]  8/12 10/17

she [6]  3/16 3/18 3/20 9/19 9/23 10/4

short [3]  9/22 14/23 17/24

should [5]  10/2 16/4 20/3 20/3 20/17

show [5]  5/9 9/7 16/1 19/4 19/6

Case 1:23-cv-04256-ER Document 69-10 Filed 11/13/23 Page 42 of 46

## S

shows [1]  19/5
shut [1]  19/7
sightseeing [9]
 1/12 1/14 2/9 4/3
 4/24 8/20 14/25
 16/5 17/4
signed [1]  3/16
significant [1]
 6/21
signing [1]  3/18
Simone [1]  24/12
Simone-Ivanac [1]
 24/12
simply [1]  18/20
since [3]  15/21
 15/25 16/2
slow [1]  11/21
smooth [1]  23/24
so [20]  3/8 5/1 5/4
 6/20 7/24 11/4
 11/18 11/22 12/13
 12/15 14/11 15/1
 16/11 16/21 17/22
 19/8 20/10 20/23
 22/18 23/8
some [3]  4/16 8/6
 22/23
something [4]  6/9
 8/1 11/7 12/3
SONSINI [1]  2/8

sort [1]  10/25
sound [1]  11/7
sounds [1]  16/23
speak [2]  20/19
 20/23
specific [5]  4/10
 8/1 10/17 23/6
 23/8
specifically [2]  4/2
 5/4
specified [1]  23/5
standard [6]  15/14
 18/12 21/23 22/3
 22/4 22/20
start [5]  3/3 3/9
 3/13 4/25 11/10
state [12]  1/1 4/13
 4/14 8/14 8/16
 10/19 12/23 13/3
 13/24 14/3 20/10
 20/25
stated [4]  4/21
 4/21 7/21 11/12
statements [5]
 3/25 3/25 4/22
 7/16 7/23
states [3]  7/2 8/17
 8/18
statutory [3]  4/7
 4/10 23/18
step [1]  10/12

still [2]  4/13 17/3
stipulation [3]
 3/16 3/17 3/18
stopped [1]  16/7
strategy [1]  6/15
structure [2]  6/20
 8/13
subject [1]  13/2
subsidiaries [3]
 4/23 8/15 9/1
substance [2]  20/1
 21/17
substantial [1]
 8/19
such [1]  17/17
suffer [1]  12/25
suffice [1]  23/1
sufficiency [1]
 13/4
sufficient [5]  3/13
 11/10 17/25 21/20
 23/14
suggest [2]  5/9
 21/17
suggesting [1]
 21/10
suggestive [2]
 21/13 22/10
summer [1]  15/25
supplies [1]  4/17
supply [1]  4/13

Case 1:23-cv-04256-ER   Document 69-17   Filed 11/13/23   Page 43 of 46

## S

support [4]  4/20 7/9 23/9 23/14
supports [1]  7/1
suppose [1]  7/17
SUPREME [2]  1/1 21/15
sure [3]  7/22 16/16 20/18
survive [1]  18/12
survives [1]  23/18
surviving [1] 17/20

## T

take [3]  4/11 7/16 9/12
taken [1]  9/16
takes [1]  12/15
talk [4]  11/11 15/17 17/9 20/8
talks [3]  13/23 17/8 18/13
tangential [1]  5/22
tax [1]  11/1
TAXI [8]  1/2 1/12 3/17 4/2 4/17 4/24 7/18 8/19
Teams [1]  1/17
tell [5]  5/4 10/4 11/22 17/7 17/21

telling [1]  9/5
terminate [2] 17/17 19/23
terminated [1] 14/20
terms [4]  5/5 10/5 13/3 13/11
than [7]  8/3 9/6 10/5 11/18 13/15 14/2 23/12
Thank [8]  3/22 10/10 15/5 21/7 24/1 24/2 24/3 24/4
that [131]
that's [17]  4/8 5/19 5/23 6/8 8/8 8/9 9/3 9/15 16/14 17/11 17/20 18/12 19/11 20/11 20/13 21/3 22/16
Theater [1]  21/16
their [19]  3/24 5/4 5/16 6/5 6/12 8/14 8/16 9/20 14/19 16/7 16/9 16/13 16/17 17/15 17/17 17/18 19/22 19/23 21/3
them [9]  11/19 12/6 16/14 17/14

20/19 22/22
then [4]  11/19 12/9 12/14 14/23
theory [1]  5/22
there [43]
There's [1]  6/2
therefore [3]  14/6 14/8 14/14
these [14]  3/12 6/18 6/21 7/16 8/4 10/14 12/1 12/12 12/12 17/4 18/3 18/6 21/19 23/19
they [54]
thing [1]  15/8
think [21]  3/10 3/17 5/9 6/9 9/3 9/24 10/10 10/12 11/5 11/9 11/10 12/7 13/23 16/2 18/10 18/11 18/18 20/12 21/13 21/16 21/18
thinking [1]  11/23
third [3]  2/4 11/20 23/11
third-parties [1] 23/11
third-party [1] 11/20

Case 1:23-cv-04256-ER   Document 69-72   Filed 11/13/23   Page 44 of 46

## T

this [9]  3/5 6/17 12/14 15/12 15/25 16/25 18/15 20/1 23/22
those [12]  7/10 11/16 15/16 16/15 16/21 17/24 20/13 20/24 22/9 22/12 22/15 23/25
though [1]  5/19
thought [2]  3/5 10/2
through [8]  4/11 6/10 6/17 13/10 13/10 14/23 15/7 23/24
ticket [2]  16/10 22/5
tickets [3]  7/21 11/3 16/4
time [2]  12/7 15/9
timeframe [1] 9/22
times [1]  16/12
title [1]  20/21
today [3]  3/2 3/7 7/12
today's [1]  23/23
together [1]  16/11
told [4]  13/25

too [1]  18/20
took [1]  19/9
TOP [10]  1/12 4/2 4/24 7/18 8/20 13/12 13/13 13/19 20/12 21/1
tort [4]  12/3 12/11 22/1 23/19
tortious [3]  8/21 22/22 23/15
tourist [2]  8/18 22/10
TOURS [18]  1/2 1/6 1/8 1/12 1/12 1/13 3/4 3/17 3/23 4/2 4/15 4/18 4/22 4/24 6/3 7/18 8/5 8/19
Tours' [1]  3/8
traction [1]  16/5
trade [7]  13/25 14/8 14/10 19/4 19/5 19/6 20/9
trademark [2] 4/19 9/2
Trading [4]  13/2 18/13 19/1 19/16
Transact [1]  10/19
transacted [1] 10/22

10/20 12/11
transacts [1]  4/13
transcript [2] 23/22 24/8
tried [1]  16/10
true [6]  10/23 10/24 16/14 19/18 23/10 24/7
try [2]  9/6 11/13
Tussauds [2] 14/12 15/21
TWIN [2]  1/13 2/9
two [8]  3/1 10/18 11/24 15/16 19/2 19/11 20/7 20/13
type [1]  5/14

## U

UK [8]  4/1 6/2 6/24 7/23 8/11 8/24 8/25 11/20
ultimate [1]  6/3
under [12]  5/22 6/23 9/5 10/18 11/10 12/22 13/2 15/14 15/15 18/11 21/24 21/24
underpricing [1] 16/16
understand [5] 7/13 7/25 10/3

Case 1:23-cv-04256-ER Document 69-7 Filed 18/13/23 15/23 Page 45 of 26

**U**

understand... [2]
13/9 17/3

unhappy [1]  14/8

unilateral [1]
22/13

United [2]  8/17
8/18

universe [2]  18/6
20/14

unlawful [1]  23/2

up [6]  3/24 6/3 7/3
8/12 9/12 16/1

us [15]  4/1 4/20
4/24 5/1 5/11 6/5
8/16 9/24 15/19
15/20 16/15 16/18
18/8 21/1 21/2

USA [2]  1/12 4/3

use [1]  11/5

used [1]  10/24

USPTO [1]  9/2

**V**

vertically [1]
21/11

very [9]  3/2 3/6
7/15 8/3 9/18
10/16 11/14 15/19
22/19

Via [1]  1/17

view [3] 19/15

19/15

violation [1]  23/18

**W**

want [6]  7/3 11/24
14/7 15/6 20/2
20/3

wanted [2]  15/18
20/9

was [13]  9/2 9/15
13/21 14/21 16/2
16/12 19/3 19/5
19/6 19/7 19/10
20/10 20/12

wasn't [1]  14/20

WATKINS [1]
1/22

way [1]  4/9

we [48]

we've [6]  4/25 5/8
6/12 6/13 15/13
15/15

web [2]  4/17 7/20

website [2]  10/23
16/9

well [11]  3/6 4/2
5/7 7/2 8/12 8/23
9/18 14/20 16/25
18/15 23/16

went [1]  15/7

were [5]  6/18 9/20
19/3

what [35]

What's [1]  4/6

when [8]  4/4 5/15
9/3 9/16 9/20
10/17 22/16 23/9

where [6]  7/14
9/17 9/19 17/23
20/7 20/24

whether [6]  3/20
9/25 13/3 20/19
21/24 23/7

which [17]  3/10
4/7 4/10 5/2 9/2
10/24 11/8 11/14
15/11 15/14 16/22
17/8 18/15 18/16
19/20 19/21 22/11

while [2]  12/23
16/19

who [13]  3/6 3/7
13/17 18/16 19/24
20/2 20/3 20/3
20/19 20/20 23/5
23/5 23/25

whole [3]  6/1
16/17 18/6

why [4]  3/11 9/12
10/4 21/5

Wilkins [1]  8/6

Wilkins' [6]  3/13

## W

Wilkins'... [5]  4/17 4/21 6/13 6/25 7/15
will [16]  3/9 7/3 9/23 10/1 10/4 11/7 11/7 11/18 11/21 12/1 12/14 17/7 17/7 17/16 17/21 20/18
WILSON [1]  2/8
wish [4]  6/8 8/9 9/4 23/23
withdrawn [1]  9/3
within [2]  4/13 23/22
without [1]  15/20
won't [3]  12/6 14/14 18/12
word [1]  7/17
words [2]  7/10 23/4
work [7]  9/23 14/7 14/14 14/24 15/20 16/15 16/19
working [1]  16/11
works [1]  14/13
World [4]  14/3 20/11 20/13 20/25
would [26]
wrongful [1]  23/17

## Y

yes [2]  20/21 22/18
YORK [53]
York's [2]  17/16 22/19
you [47]
you've [2]  16/16 19/1
your [21]  3/22 4/6 7/13 9/4 10/10 11/2 11/14 11/20 11/23 11/23 12/5 15/12 16/21 18/23 21/7 21/8 21/9 22/6 22/9 24/1 24/3