**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GO NEW YORK TOURS, INC.,<br><br>                             Plaintiff,<br><br>          -against-<br><br>GRAY LINE NEW YORK TOURS, INC., TWIN AMERICA, LLC, SIGHTSEEING PASS LLC, BIG BUS TOURS GROUP LIMITED, BIG BUS TOURS LIMITED, OPEN TOP SIGHTSEEING USA, INC., TAXI TOURS, INC., LEISURE PASS GROUP HOLDINGS LIMITED, LEISURE PASS GROUP LIMITED, and LEISURE PASS GROUP, INC.,<br><br>                             Defendants. | Civil Action No. 1:23-cv-04256-ER |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS BIG BUS TOURS GROUP LIMITED, BIG BUS TOURS LIMITED, LEISURE PASS GROUP HOLDINGS LIMITED (N/K/A GO CITY HOLDINGS LIMITED), AND THE LEISURE PASS GROUP LIMITED's (N/K/A GO CITY LIMITED) MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................**Error! Bookmark not defined.**

RELEVANT FACTUAL BACKGROUND .............................................................................. 3

Big Bus Tours Limited...........................................................**Error! Bookmark not defined.**

Go City Holdings Limited.......................................................**Error! Bookmark not defined.**

The 2019 Conduct Agreement ........................................................................................ 6

The 2020 Memorandum of Understanding ..............................**Error! Bookmark not defined.**

ARGUMENT.........................................................................**Error! Bookmark not defined.**

I.    Legal Standard ..................................................................**Error! Bookmark not defined.**

II.   The Foreign Defendants are Subject to Specific Jurisdiction in this Court......................... 8

a.    There is Statutory Personal Jurisdiction Under CPLR § 302 Based on the Foreign Defendants' Business Within the State and the Relationship to the Injuries Go New York has Suffered ....................................................................................................................... 9

b.    This Court's Jurisdiction over the Foreign Defendants Satisfies Due Process.......**Error! Bookmark not defined.**

c.    The Assertion that Personal Jurisdiction over Foreign Defendants Offends Notions of Fair Play and Substantial Justice is Unfounded......................**Error! Bookmark not defined.**

CONCLUSION.......................................................................................................................... 17

## TABLE OF AUTHORITIES

Page(s)

Cases

*Astor Chocolate Corp. v. Elite Gold Ltd.*,
  No. 18 CIV. 11913 (PAE), 2020 WL 2130680 (S.D.N.Y. May 5, 2020) ................................. 12

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  171 F.3d 779 (2d Cir. 1999) ................................................................................................. 9

*Benefits By Design Corp. v. Contractor Mgmt. Servs., LLC*,
  75 A.D.3d 826, 905 N.Y.S.2d 340 (2010)............................................................................ 18

*BGC Partners, Inc. v. Avison Young (Canada) Inc.*,
  46 Misc. 3d 1202(A), 5 N.Y.S.3d 327 (N.Y. Sup. 2014) ...................................................... 10

*Calder v. Jones*,
  465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)...................................................... 12

*Coast to Coast Energy, Inc. v. Gasarch*,
  149 A.D.3d 485, 53 N.Y.S.3d 16 (2017) ................................................................................ 9

*Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*,
  415 F. Supp. 3d 371 (S.D.N.Y. 2019) ....................................................................... 9, 12, 17

*Cont'l Indus. Grp., Inc. v. Altunkilic*,
  No. 14CIV790ATJLC, 2018 WL 1508566 (S.D.N.Y. Mar. 27, 2018) ................................... 10

*Daimler AG v. Bauman*,
  571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)...................................................... 18

*Delagi v. Volkswagenwerk AG of Wolfsburg, Germany*,
  29 N.Y.2d 426 (1972)........................................................................................................... 18

*DiStefano v. Carozzi N. Am., Inc.*,
  286 F.3d 81 (2d Cir. 2001) ................................................................................................. 8, 9

*Expensify, Inc. v. Swappoint AG*,
  No. 22-CV-05720-LB, 2023 WL 6323103 (N.D. Cal. Sept. 28, 2023) ....................... 14, 15, 16

*Fab Habitat Corp. v. Houselights, LLC*,
  No. 22-CV-2986 (ALC), 2023 WL 6385977 (S.D.N.Y. Sept. 29, 2023)................................. 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)..................................................... 18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)...................................................... 12

*Impossible Foods Inc. v. Impossible X LLC*,
  80 F.4th 1079 (9th Cir. 2023) .......................................................................................... 14, 15

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
  399 F. Supp. 2d 325 (S.D.N.Y. 2005) .................................................................................... 8

*In re Terrorist Attacks on Sept. 11*,
  714 F.3d 659 (2d Cir. 2013) ................................................................................................ 12

*Ingraham v. Carroll*,
  90 N.Y.2d 592, 687 N.E.2d 1293 (1997) .............................................................................. 12

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
  26 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)................................................................... 16

*Jackpocket, Inc. v. Lottomatrix NY LLC*,
  645 F. Supp. 3d 185 (S.D.N.Y. 2022) .................................................................................. 15

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*,
   828 F. App'x 740 (2d Cir. 2020) ..................................................................................... 12
*Jonas v. Estate of Leven*,
   116 F. Supp. 3d 314 (S.D.N.Y. 2015) ............................................................................. 9
*Kreutter v. McFadden Oil Corp.*,
   71 N.Y.2d 460, 522 N.E.2d 40 (1988) ............................................................................ 9
*McGowan v. Smith*,
   52 N.Y.2d 268, 419 N.E.2d 321 (1981) ........................................................................ 17
*Monster Cable Prods., Inc. v. Euroflex S.R.L.*,
   642 F.Supp.2d 1001 (N.D. Cal. 2009).......................................................................... 14
*Delgado-Perez v. City of New York*,
   No. 17-CV-01194-LTS-BCM, 2018 WL 6200039 (S.D.N.Y. Nov. 28, 2018)......................... 17
*Paterno v. Laser Spine Inst.*,
   24 N.Y.3d 370, 23 N.E.3d 988 (2014) ............................................................................ 9
*Pinto-Thomaz v. Cusi*,
   No. 15-CV-1993 (PKC), 2015 WL 7571833 (S.D.N.Y. Nov. 24, 2015) ................................ 17
*Simonson v. Int'l Bank*,
   14 N.Y.2d 281, 200 N.E.2d 427 (1964) ........................................................................ 17
*TAGC Mgmt., LLC v. Lehman*,
   842 F. Supp. 2d 575 (S.D.N.Y. 2012) .......................................................................... 17
*Touchcom, Inc. v. Bereskin & Parr*,
   574 F.3d 1403 (Fed. Cir. 2009) .................................................................................... 14
*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
   No. C 12-2582 CW, 2012 WL 2343670 (N.D. Cal. June 20, 2012) ..................................... 14
*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016) .................................................................................. 12, 16
*Whitaker v. Am. Telecasting, Inc.*,
   261 F.3d 196 (2d Cir. 2001) ........................................................................................... 8

Rules

C.P.L.R. § 301.................................................................................................................... 17
C.P.L.R. § 302(a) .......................................................................................................... 9, 10
C.P.L.R. § 302(a)(1) .......................................................................................................... 9
C.P.L.R. § 302(a)(2) .......................................................................................................... 9
C.P.L.R. § 302(a)(3) ................................................................................................. 9, 10, 12
Fed. R. Civ. P. 12(b)(2)...................................................................................................... 1

Plaintiff Go New York Tours Inc. ("Go New York") submits this response to defendants Big Bus Tours Group Limited, Big Bus Tours Limited, Leisure Pass Group Holdings Limited (n/k/a "Go City Holdings Limited"), and The Leisure Pass Group Limited's (n/k/a "Go City Limited") (collectively, the "Foreign Defendants") motion to dismiss Go New York's Amended Verified Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction (ECF No. 65).

## PRELIMINARY STATEMENT

Foreign Defendants seek to use their status as overseas entities as a shield against liability for their blatant anticompetitive conduct directed at Go New York in the New York City hop-on, hop-off sightseeing tour bus market (the "NYC Market") and the "Attraction Pass" sub-market. But as explained fully below, the Foreign Defendants cannot avoid litigation in this Court.

The Amended Verified Complaint ("Amended Complaint" or "Am. Compl.") (ECF No. 59) makes a prima facie case for personal jurisdiction over the Foreign Defendants. Notably, the Amended Complaint alleges facts that, in addition to those in the original Complaint (ECF No. 1), directly undermine the Foreign Defendants' purported jurisdictional arguments. However, the Foreign Defendants, in their Motion to Dismiss the Amended Complaint, fail to address *any* of the new factual allegations in the Amended Complaint. They instead submit a substantively identical Motion to Dismiss when compared to the motion they submitted on Go New York's original Complaint, ignoring the important additions and changes in the Amended Complaint.

Although Go New York's original Complaint alleged facts sufficient to establish jurisdiction, the Amended Complaint adds key factual allegations that amply address and cure the purported deficiencies the Foreign Defendants asserted in their prior Motion. As alleged, the tourism industry effectively shut down due to the global pandemic in 2020. Big Bus and non-

1

moving Defendant Gray Line decided to form a new operating entity that would permit them to fix prices and otherwise monopolize the NYC Market.  Thus, they merged operations into a single operating entity in a deliberate effort to edge Go New York, one of each company's major competitors, out of the market, in violation of state and federal law.

As the Amended Complaint alleges, Foreign Defendants' specifically Foreign Defendant Big Bus Tours Limited (a UK company) -- direct oversight and involvement was critical to this merger.  This is in part due to the fact that Big Bus Tours Limited licensed a trademark it owns to both Defendant Taxi Tours, Inc. ("Taxi Tours"), the Big Bus subsidiary that operates Big Bus tours in New York, as well as non-moving Defendant Gray Line pursuant to a 2020 Memorandum of Understanding (the "MOU").  *Id.* ¶¶ 11, 56.  The licensing of the Big Bus trademark is the cornerstone of the merger.  Without the newly created entity, together with *both* Taxi Tours and Gray Line, being able to use the trademark in the New York City Market, the value of the merger would be severely limited.  The licensing of the trademark could be done only with the knowledge and approval of Big Bus Tours Limited, the Foreign Defendant that owns the trademark.

Outside of the merger, Big Bus competes in many markets for "hop-on, hop-off" bus tours throughout the world.  Big Bus's famous brand and trademark is critical to the success of its global business.  It is inconceivable that Big Bus, as a multinational conglomerate that is fiercely protective of its intellectual property, would merge its New York City operations with one of its direct competitors without direct orders from its UK-based parent company.

Moreover, as shown below, the e-commerce marketing unit of Big Bus Tours Limited operating in London handles the marketing for its Taxi Tours affiliate in the United States, and in so doing, operates the web site which facilitates sales to customers in the United States and worldwide who participate in the United States bus tours operated by Taxi Tours.  Thus, Big Bus

2

Tours Limited, as operator of the website, derives substantial revenues from sales to customers in the United States. As discussed fully below, this Court has personal jurisdiction over all the Foreign Defendants and should dismiss the Foreign Defendants' motion in its entirety, or, at the alternative, permit Go New York to conduct jurisdictional discovery as to the Foreign Defendants.

## RELEVANT FACTUAL BACKGROUND

The nature of this action is detailed in the Amended Complaint filed on October 11, 2023 against defendants Big Bus Tours Group Limited, Big Bus Tours Limited, Leisure Pass Group Holdings Limited (n/k/a Go City Holdings Limited), and The Leisure Pass Group Limited (n/k/a Go City Limited) (collectively, the "Foreign Defendants") as well as defendants Open Top Sightseeing USA, Inc. ("OTS USA"), Taxi Tours, Inc. ("Taxi Tours"), Leisure Pass Group, Inc. (n/k/a Go City, Inc.), Gray Line New York Tours, Inc., Twin America, LLC, and Sightseeing Pass LLC.[1] ECF No. 59. The facts relevant to this Opposition to the Foreign Defendants' motion are set out below.

**Big Bus Tours Limited**

As alleged in the initial Complaint and the Amended Complaint, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc. ("OTS USA"), and Taxi Tours, Inc. ("Taxi Tours") all are part of the London, England-based Big Bus Group, the business of which is operating sightseeing tour buses under the "Big Bus" brand in cities around the world. *See* Am. Compl. ¶¶ 6-13.

As noted in Big Bus Tours Limited's most recent available publicly filed annual report, Taxi Tours and OTS USA are wholly owned (directly and/or indirectly) subsidiaries of Big Bus

---

[1]    Defendants Taxi Tours, Inc. and Go City, Inc. have *not* moved to dismiss the complaint for lack of personal jurisdiction. Thus, regardless of the outcome of this motion, the Foreign Defendants will continue to litigate this matter through their subsidiaries, Taxi Tours, Inc. and Go City, Inc.

3

Tours Limited. *See id.* Big Bus Tours Group Holdings Limited is the ultimate parent company of Big Bus Tours Limited, and thus of OTS USA and Taxi Tours, which, like Big Bus Tours Limited, is incorporated in the UK, and the UK companies share the same London office address. *See id.* ¶ 9. The ultimate controlling party of the Big Bus Group, and in particular of Big Bus Tours Limited, is an affiliate of the UK private equity firm, Exponent Private Equity LLP ("Exponent"), which acquired the Big Bus Group and owns approximately 85 percent of Big Bus Group. *See id.* ¶ 7. Additionally, non-party Merlin Entertainments plc ("Merlin"), a UK company, owns approximately 15 percent of Big Bus Tours Group Holdings Limited. *See id.* ¶ 8. Taxi Tours' CEO, Patrick Waterman, is also an officer and/or director of Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited and Big Bus Tours Limited, and resides in the UK. *Id.* ¶ 13.

Big Bus Tours Limited is headquartered in London, from where it directs the operations in New York. *See* Am. Compl. ¶ 59. As alleged in the Amended Complaint, the London office plays a key role in the operations of Taxi Tours in New York, including its marketing and accounting operations. In another litigation in state court involving Go New York and Taxi Tours, Julia Conway, the Treasurer and Director of both Taxi Tours and Open Top Sightseeing USA, Inc., admitted that the company's marketing function with regard to the United States operations is done through Big Bus's "E-commerce and marketing team in London." Affirmation of Jenna C. Newmark, Tr. of Nov. 17, 2022 Dep. of Julia Conway in *Taxi Tours, Inc. v. Go New York Tours, Inc.*, Index No. 653012/2019 (Sup. Ct. N.Y. Cnty.), Ex. 1 at 19:16-19. Conway also admitted that this marketing group operates websites for all of its entities worldwide from London. This includes the website through which tickets are sold for the Taxi Tours New York operations. *Id.* at 17:5-19:3. Thus, substantial portions of revenues generated from online ticket sales to customers who

intend to participate in U.S. bus tours operated by Taxi Tours are collected directly by the London entity and then distributed from the London entity as it determines appropriate to cover costs of operations and otherwise fund the U.S.-based Taxi Tours entity.

Big Bus Tours Limited is the owner of United States Trademark Serial No. 86695035, a word mark for "Big Bus" (the "Big Bus Trademark").  *See* Am. Compl. ¶ 11.  Big Bus Tours Limited licenses the Big Bus Trademark to Taxi Tours, as well as to Gray Line pursuant to the MOU.  *Id.* ¶ 12.  The licensing of the Big Bus Trademark could be done only with the approval of Big Bus Tours Limited, the Foreign Defendant that owns the trademark.  The ability of the de facto single entity comprised of all Defendants to use the well-known Big Bus Trademark to coordinate sales is critical to Defendants' efforts to monopolize the NYC Market.  Taxi Tours is the group member that operates sightseeing tour buses under the "Big Bus" brand in New York City.  *Id.* ¶ 13.

**Go City Holdings Limited**

Defendant Go City Holdings Limited (previously known as Leisure Pass Holdings Limited) is a UK company.  *Id.* ¶ 14.  Go City Holdings Limited is also controlled and principally owned directly and/or indirectly by Exponent, which, as discussed above, also is the principal owner and controller of Big Bus.  *See id.* ¶ 15.  As alleged in the Amended Complaint, Big Bus Tours Group Holdings Limited owns a significant minority stake in, and therefore exerts control over, Go City Holdings Limited.  *See id.* ¶ 16.  Defendant Go City Limited (previously known as Leisure Pass Limited) is a UK company and is owned and controlled, directly or indirectly, Go City Holdings Limited, and Big Bus Tours Group Holdings Limited, and, ultimately, by Exponent.  Go City, Inc. (previously known as Leisure Pass, Inc.) is a company organized and existing under the laws of the State of Delaware, is registered with the New York State Department of State to do

business in New York State, and maintains a registered office in New York City. *See id.* ¶ 17. Go City Inc. is owned and controlled directly and/or indirectly by Go City Holdings Limited, Go City Limited, and Big Bus Tours Group Holdings Limited, and, ultimately, by Exponent. *See id.*

**The 2019 Conduct Agreement**

In February 2019, Big Bus Tours Limited entered into a heavily negotiated "Conduct Agreement" with Go New York and Gray Line establishing industry-wide guidelines for the three companies' respective street-level ticket agents and bus drivers in New York City. *See* Am. Compl. ¶ 13. That Big Bus's officers and lawyers designated Big Bus Tours Limited, rather than Taxi Tours or OTS USA, as the contracting entity demonstrates Big Bus Tours Limited's direct involvement in Taxi Tours' Big Bus operations in New York City and, by implication, the wrongdoing alleged in the Complaint.

Julia Conway testified that she was actively involved in the negotiating, drafting, and reviewing the Conduct Agreement. *See* Am. Compl. ¶ 13. She also signed the Conduct Agreement, at the direction of and after conferring with Big Bus's attorneys, in the small space provided for that purpose underneath "BIG BUS TOURS, LTD." printed in all caps on the agreement's signature page. *Id.* During her deposition in the state court matter involving Go New York and Taxi Tours, she testified that she had conversations with Big Bus's attorneys about signing the document before she affixed her signature. *See id.*

**The 2020 MOU**

In 2020, while the tourism industry was shut down in New York City, Gray Line and Big Bus recognized an opportunity to form a profitable, monopolistic joint operating entity that would permit them to fix prices and prevent competition in the market. *See id.* ¶ 55. They therefore entered into an agreement in late July 2020 by which: (a) Big Bus would operate its Hop-On, Hop-

6

Off tour buses within New York City, (b) Gray Line would cease operating its fleet of Hop-On, Hop-Off tour buses within New York City, (c) Big Bus would operate certain buses owned by Gray Line that Gray Line ceased operating, (d) Gray Line would continue to sell tickets for hop-on, hop-off tour buses on its web-site and otherwise under its "Gray Line" and "City Sightseeing" brand names, with Gray Line's ticket holders being directed to use their tickets to ride only buses operated by Big Bus, (e) Big Bus would continue to sell tickets on its website and otherwise to consumers for its hop-on, hop-off tour buses, (f) Gray Line, Big Bus and Go City would continue to sell their individual "Attraction Passes," and in so doing, would cooperate with each other in providing access to trade partner attractions while excluding Go New York from access to such attractions, and (g) Gray Line, Big Bus, and Go City would not undercut each other on prices for hop-on hop-off tour buses and Attraction Passes, essentially conspiring to fix the prices of such services. *Id.* ¶ 55. This merger was partially memorialized in the 2020 MOU, which, for the purposes of the New York City hop-on, hop-off market, effectively turned Gray Line and Big Bus into a single, integrated operating entity. *Id.*

The agreements between Big Bus and Gray Line go beyond the explicit terms of the MOU. For instance, both Big Bus and Gray Line have licensed their famous trademarks and brand name for use by each other and by the merged partnership entity. Although the MOU contemplates Gray Line using Big Bus' intellectual property "solely to the extent necessary for the resale of tickets," (ECF No. 53-1), the merged entity has resulted in the use of the individual, and well-known, brand names of both parties to drive sales for the newly combined entity. Indeed, for example, Big Bus has been putting Gray Line's logo in prominent places on its buses, publicly holding out its operations as one joint integrated entity in the New York City Market. *See* Am. Compl. ¶¶ 56-57. Both Big Bus and Gray Line have modified their respective websites and marketing materials to

7

leverage their combined famous brands. *Id.* at ¶ 59.  With respect to Big Bus, these website modifications were handled by the e-commerce marketing group of Big Bus Limited operating in London.  *See supra* at 4.  Coordination of their joint operations so that they benefit from the fame of the pre-existing famous brands of both companies is a critical component of Defendants' scheme to monopolize the market.

**ARGUMENT**

### I.    Legal Standard

On a motion to dismiss for lack of personal jurisdiction, if the Court does not conduct an evidentiary hearing, then "the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81 (2d Cir. 2001) (citation omitted).  To make a sufficient showing, a plaintiff may demonstrate "through its own affidavits and supporting materials, containing a good faith averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 399 F. Supp. 2d 325, 330 (S.D.N.Y. 2005) (alterations omitted) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).  Thus, "when evaluating a motion to dismiss for lack of personal jurisdiction, courts 'may consider materials outside the pleadings, including affidavits and other written materials.'" *Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 380 (S.D.N.Y. 2019) (quoting *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015)).  The court should view all pleadings and accompanying materials "in the light most favorable to the plaintiff, with all doubts resolved in its favor." *Distefano*, 286 F.3d at 84.

### II.    The Foreign Defendants are Subject to Specific Jurisdiction in this Court

Go New York's Amended Complaint adequately alleges that the Foreign Defendants are subject to specific jurisdiction in this Court as set forth below.

8

a. **There is Statutory Personal Jurisdiction Under CPLR § 302 Based on the Foreign Defendants' Business Within the State and the Relationship to the Injuries Go New York has Suffered**

*First*, the Amended Complaint satisfies the statutory authority for this Court to exercise specific personal jurisdiction under C.P.L.R. § 302(a). Under C.P.L.R. § 302(a)(1), this Court may exercise personal jurisdiction over a non-domiciliary party that, either in person or through an agent, "has purposefully transacted business within the state and there is 'a substantial relationship between the transaction and the claim asserted.'" *Coast to Coast Energy, Inc. v. Gasarch*, 149 A.D.3d 485, 486 (1st Dep't 2017) (quoting *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 376 (2014)). Under C.P.L.R. § 302(a)(2) this Court may exercise personal jurisdiction over a non-domiciliary party that commits a tortious act within the State, even if "the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (citations omitted); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) (finding personal jurisdiction based on a single transaction where defendant was not physically present in state). Under C.P.L.R. § 302(a)(3), this Court may exercise personal jurisdiction over a non-domiciliary party that commits a tortious act outside of the State that injures a person or property within the State, and the party "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" Critical to the § 302(a)(3) analysis is whether it is claimed that the alleged injury occurred in New York. *See Cont'l Indus. Grp., Inc. v. Altunkilic*, No. 14-cv-790 (AT), 2016 U.S. Dist. LEXIS 61484, at *7 (S.D.N.Y. Apr. 6, 2016) (collecting cases holding that to satisfy C.P.L.R. 302(a)(3) a plaintiff must "[a]lleg[e] specific lost sales or lost

9

customers that are within the New York market" (emphasis added) (internal quotation marks and alterations omitted)); *BGC Partners, Inc. v. Avison Young (Canada) Inc.*, 5 N.Y.S.3d 327 (Table), 2014 WL 7201754, at *7 and n.6 (Sup. Ct. N.Y. Cnty. Dec. 15, 2014) (distinguishing *Sybron* because, unlike that case, which concerned the threatened loss of a "major New York customer," the complaint alleged the misuse of a trade secret "to solicit a customer for [only] a single deal in New York").

As alleged, the Foreign Defendants' anticompetitive conduct fulfills the requirements of C.P.L.R. § 302(a).  First, Taxi Tours is the affiliate of Big Bus that does business in New York City, one of the world's largest markets.  It is not credible for the Foreign Defendants to disclaim any involvement in Taxi Tours' business operations in New York City.  The Amended Complaint cites several examples of the Foreign Defendants' purposeful actions within the state that relate to the anticompetitive conduct that gives rise to this lawsuit.

Moreover, Big Bus Tours Limited does not dispute the allegation that it provides management services to its subsidiaries Taxi Tours and OTS USA in New York, including marketing and accounting.  *See* Am. Compl. ¶ 59.  As Conway admitted, and Big Bus has not disputed, nor could it dispute, Big Bus's marketing function, which handles marketing for all Big Bus entities, operates in the "E-commerce and marketing team" that is based in London.  Newmark Aff. Ex. 1 at 19:16-19.  Conway also admitted that this marketing group operates websites for all of its entities worldwide from London, which, Big Bus does not dispute and cannot dispute, includes the website through which tickets are marketed sold to consumers in the United States and other countries who participate in the tours operated by Taxi Tours in New York.  *Id.* at 17:5-19:3.  Operating a website that markets and sells goods or services to consumers who will use those services within the State of New York, as the Foreign Defendants do here, is sufficient for a

New York court to exercise jurisdiction over the owner of that website. This is especially so because Big Bus Tours Limited derives substantial revenues from sales of tickets to residents of the United States and elsewhere who use such tickets to participate in tours operated in New York by Taxi Tours. *See, e.g.*, *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170–71 (2d Cir. 2010) (operating a website that results in substantial sales to customers in New York is sufficient to satisfy the requirements for personal jurisdiction in New York).

In addition to its marketing and sales activities, Big Bus Tours Limited played a direct, active role in the Conduct Agreement with Go New York and Gray Line in New York, represented by New York attorneys. The Conduct Agreement is intended to govern the conduct of industry participants in the New York market, and yet it was negotiated and executed on behalf of Big Gus Tours Limited, rather than Taxi Tours. The Conduct Agreement was signed by Julia Conway, a director of its New York subsidiaries. As explained in the Amended Complaint, Conway signed the Conduct Agreement on behalf of Big Bus Tours Limited, after consulting with attorneys for Big Bus Tours Limited[2]. *See* Am. Compl. ¶ 13. Given Big Bus Tours Limited's demonstrated hands-on role in managing Big Bus operations in New York, which it does not address in its motion, Go New York has sufficiently alleged that Big Bus Tours Limited committed tortious acts in cooperation and/or conspiracy with its New York subsidiaries. Big Bus Tour Limited's participation in the New York industry Conduct Agreement is strong evidence that Big Bus Tour Limited plays a substantial, hands-on role in managing Taxi Tour's New York operations.

Finally, there can be no dispute that Go New York adequately alleges that the losses it incurred occurred within the New York City Market as a direct result of the actions of the foreign executives of Big Bus directed at the state of New York.

---

[2] Conway later claimed that she meant to sign the Conduct Agreement on behalf of Taxi Tours and did not notice that she was signing on behalf of Big Bus Tours Limited.

11

### b. This Court's Jurisdiction over the Foreign Defendants Satisfies Due Process

*Second*, the exercise of personal jurisdiction over the Foreign Defendants comports with due process. To establish that specific jurisdiction would satisfy due process, a plaintiff must allege that the foreign defendants had "certain minimum contacts with the relevant forum." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013); *see also Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 381 (S.D.N.Y. 2019). Moreover, "[s]pecific [personal] jurisdiction exists when 'a [forum] exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id*. (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 & nn. 8–9, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). In New York, "in-state effects of out-of-state activity" will suffice to establish specific personal jurisdiction. Where this "effects" test is invoked, as the Foreign Defendants do here, "the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum." *Astor Chocolate Corp.*, 2020 WL 2130680 at *8 (citing *Calder v. Jones*, 465 U.S. 783, 789 (1983)).

The Second Circuit has noted that "it will often be the case that when the elements of C.P.L.R. 302(a)(3) are satisfied, due process will also be met." *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740, 743 n.2 (2d Cir. 2020) (citing *Ingraham v. Carroll*, 90 N.Y.2d 592, 597, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (1997) (explaining that the limitations imposed by C.P.L.R. 302(a)(3) are "more stringent than any constitutional requirement")). Because § 302(a)(3) is satisfied here, the due process requirements also are met.

To the extent this Court might engage in a due process analysis in addition to the statutory analysis, there are sufficient facts in the Amended Complaint to meet the due process requirements. The Amended Complaint repeatedly sets forth the anticompetitive conduct within the state as a

direct result of the actions of the Foreign Defendants—allegations that the Foreign Defendants make no effort to address, let alone contradict, in their motion. For example, the Amended Complaint states that "The cumulative impact on Go New York from the aforesaid monopolistic conspiracy by executives of Gray Line and Big Bus, which was formalized and implemented pursuant to their July 2020 agreement and subsequent merger of operations, has been to effectively shut out Go New York from effectively competing in the Attraction Pass market and the larger New York City Hop-on, Hop-off Market." Am. Compl. ¶ 83. It was the executives of the Foreign Defendants whose actions in the United Kingdom (i.e., overseeing and approving the MOU), were intended to have impacts directly on the New York City Market.

Even further, the very essence of all Defendants' joint efforts rests in their ability to sell tickets under the world-renowned Big Bus brand pursuant to the MOU. This is possible only because Foreign Defendant Big Bus Tours Limited has licensed the Big Bus Trademark (which it owns) for use of the new entity and its partners (Taxi Tours and Gray Line). Gray Line has also licensed its famous trademark to the new, joint entity. The sharing of these famous trademarks by the newly formed entity is a critical component of its attempt to monopolize the New York Hop-On, Hop-Off market. The licensing by Big Bus Tours Limited of its trademark as part of this scheme to monopolize the market is, itself, sufficient to subject Big Bus Tours Limited to jurisdiction in this Court.

A recent similar case involving a trademark dispute between a United States entity and the foreign owner of a United States trademark illustrates why jurisdiction here is appropriate. In *Expensify, Inc. v. Swappoint AG*, 22-cv-05720-LB (N.D. Cal. Sep. 28, 2023), Defendant Swappoint, a Swiss company that had no California offices or residence in California, had registered a trademark in the United States that was the subject of the dispute between the parties.

13

Swappoint moved to dismiss the complaint for lack of personal jurisdiction because it did not maintain any offices or employees in California, have a bank account in California, have a mailing address in California, or anything else that traditionally would subject a company jurisdiction there. *Id.* In spite of these facts, the court denied Swappoint's motion to dismiss, holding that the company was subject to jurisdiction in California because it had registered the subject trademark in the United States, and thus had purposely availed itself of the forum. The court explained that "[f]iling a trademark application 'might be considered compelling evidence that [the defendant] has satisfied the purposeful availment or direction test.'" *Expensify Inc. v. Swappoint AG*, 22-cv-05720-LB, 11 (N.D. Cal. Sep. 28, 2023) (quoting *Ayla*, 11 F.4th at 982 n.4). And other "[c]ourts have held that filing a trademark application is enough to establish an intentional act, the first requirement for personal jurisdiction." *Id.* (citing *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2012 WL 2343670, at *11 (N.D. Cal. June 20, 2012); *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009) (obtaining a U.S. patent was sufficient for prong one of specific jurisdiction, because "[i]t stands to reason that one who has sought and obtained a property interest from a U.S. agency has purposefully availed itself of the laws of the United States"); *Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F.Supp.2d 1001, 1010 (N.D. Cal. 2009) (Italian company was "subject to personal jurisdiction based on its [trademark] application to the PTO"); *Impossible Foods*, 2023 WL 5921361, at *7 (in a declaratory-relief action, trademark-building activities were enough to satisfy the purposeful direction/availment prong)).

While the trademark registration was enough to satisfy the requirements to establish personal jurisdiction, the *Expensify* court also explained that the defendant "obtained property interests from a U.S. agency and thus at least availed [itself] of the laws of the United States," and

14

its "acts were effectively directed to [the Plaintiff], which would feel the effects of restrictions on its trademark use," which strengthened the finding that the court had personal jurisdiction over Swappoint.  Finally, the court held that it had jurisdiction over Swappoint because the plaintiff's claims "arose out of the forum-related activities of registering their trademark."  *Id.*

As in *Expensify*, Big Bus not only registered a trademark in the United States and availed itself to the laws of this forum, but also this case arises out of the use of Big Bus's trademark by the new operating entity to engage in anticompetitive conduct. Thus, here, as in *Expensify*, it is "not unreasonable to require the defendants to defend a lawsuit about their registered trademark in the U.S. forum where they registered it."  *Expensify Inc. v. Swappoint AG*, 22-cv-05720-LB, 13 (N.D. Cal. Sept. 28, 2023).  Although this case does not involve trademark infringement or challenges like *Expensify*, it does involve the use of a trademark in a conspiracy to violate antitrust laws, which qualifies as trademark misuse.  *See, e.g.*, *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 276–77 (S.D.N.Y. 2022) (explaining that the Second Circuit "recognize[s] trademark misuse" where a party "used its trademark in violation of anti-trust laws").  Obviously a party who benefits from misuse of a United States registered trademark should be subject to personal jurisdiction in United States judicial proceedings which seek to hold such party responsible for damages arising from such trademark misuse.

The cases the Foreign Defendants cite are inapposite.  Here, unlike in *Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016), and *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 197 (S.D.N.Y. 2018), the Foreign Defendants did not have "mere knowledge" of the existence of Go New York in this jurisdiction, nor did their actions "turn[] out" to be detrimental to U.S. persons.  The Foreign Defendants took deliberate acts to have effects within the forum that would be detrimental to Go New York.  For the same reason, the Foreign Defendants' assertion

15

that there can be no jurisdiction based on the Foreign Defendants' "affiliation with a domestic entity" is misplaced.

Thus, taking all of the allegations in the complaint in the light most favorable to the plaintiff, and contrary to the Foreign Defendants' assertions, the effects test is amply satisfied.

### c.    The Assertion that Personal Jurisdiction over Foreign Defendants Offends Notions of Fair Play and Substantial Justice is Unfounded

*Third*, there is no merit to the Foreign Defendants' argument that exercising personal jurisdiction over them in this case would somehow violate constitutional "notions of fair play and substantial justice." Def. Br. at 10-11 (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 320 (1945)). They assert that they would somehow be "burdened with defending litigation in New York when each is domiciled in the U.K.," without any discussion of those purported burdens. Def. Br. at 11. The Foreign Defendants cannot credibly maintain their argument that the UK-based companies would be unfairly burdened by having to defend litigation in New York, given that the UK companies share directors and management with their New York-based subsidiaries who will remain in this case regardless of the outcome of this motion.

This Court has rejected a mere assertion of burden without a "particularized showing of why the burden should be so great, apart from the understandable difficulties arising from geographical distance" as a basis to dismiss a case for lack of personal jurisdiction. *See, e.g.*, *Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371 (S.D.N.Y. 2019). Moreover, as alleged, the Foreign Defendants have purposefully directly directed their activities to the New York City Market, and New York has a palpable interest in commanding them to appear in court in New York to protect both the integrity of that market, its citizen Go New York, as well as Go New York's customers many of whom either reside in New York or contribute substantial revenues to New York's economy in their capacity as tourists. For these reasons, the Foreign

16

Defendants' motion should be dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, this Court should deny the Foreign Defendants' motion to dismiss the Amended Complaint for lack of personal jurisdiction, or, in the alternative, permit Go New York to conduct jurisdictional discovery, and grant such other and further relief as the Court may deem just and equitable.

Date: December 13, 2023

*/s/ **Maurice N. Ross***
Marice N. Ross
Counsel for Plaintiffs
mross@bartonesq.com

17