UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────
GO NEW YORK TOURS, INC.,

              Plaintiff,

        – against –

GRAY LINE NEW YORK TOURS, INC.,
TWIN AMERICA, LLC, SIGHTSEEING
PASS LLC, BIG BUS TOURS GROUP
LIMITED, BIG BUS TOURS LIMITED,
OPEN TOP SIGHTSEEING USA, INC.,
TAXI TOURS, INC., LEISURE PASS
GROUP HOLDINGS LIMITED, THE
LEISURE PASS GROUP LIMITED, and
LEISURE PASS GROUP, INC,

              Defendants.
─────────────────────────────────────────

**OPINION & ORDER**

23-cv-4256 (ER)

R‌AMOS, D.J.:

      Go New York Tours, Inc., a "hop-on, hop-off" tour bus service that also bundles admission to numerous New York City tourist attractions, brings this action against three competitors and related companies: Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc. (collectively, the "Big Bus Defendants"); Go City Holdings (f/k/a Limited Leisure Pass Group Holdings Limited), Go City Limited (f/k/a The Leisure Pass Group Limited), Go City, Inc. (f/k/a Leisure Pass Group, Inc.) (collectively the "Go City Defendants"); and Twin America, LLC ("Twin America"), Gray Line New York Tours, Inc. ("Gray Line") and Sightseeing Pass LLC ("Sightseeing Pass") (collectively the "Gray Line Defendants," and with the entities listed above, the "Defendants"). Go New York alleges that the Defendants violated multiple federal and New York state antitrust laws, and asserts a claim for unfair competition under New York common law. *See* Doc. 59 (First Amended Complaint).

      Before the Court is Defendants' motion to dismiss the First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 66.

Big Bus Tours Group Limited, Big Bus Tours Limited, Leisure Pass Group Holdings Limited, and The Leisure Pass Group Limited, all of which are incorporated in the United Kingdom (the "Foreign Defendants"), have moved separately to dismiss the First Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Doc. 64. For the following reasons, Defendants' motion is GRANTED and the Foreign Defendants' motion is DENIED as moot.

I.  BACKGROUND

   A.  Factual Background[1]

   1. The Parties

Go New York launched its New York-based hop-on, hop-off double-decker bus tour business in 2012. ¶ 27. In the approximately 12 years since then, it has grown its bus tour business substantially and also added other related business lines, such as bicycle and boat tours, bike rentals, and multi-attraction passes. ¶¶ 24, 27.

Twin America is the parent company of Gray Line and Sightseeing Pass. ¶¶ 3–5. Gray Line also previously operated hop-on, hop-off double-decker bus tours in New York City.[2] ¶ 30. Sightseeing Pass negotiates with operators of tourist attractions and bundles multi-attraction passes that include bus tours and admission to other attractions. ¶ 43.

The Big Bus and Go City Defendants are commonly owned and controlled by Exponent Private Equity LLP, a U.K.-based private equity firm that is not a party to this case. ¶¶ 6–9, 15. The seven Big Bus/Go City companies include the four Foreign Defendants. ¶¶ 9, 10, 14, 16. The remaining three entities—Open Top Sightseeing USA, Inc., Taxi Tours, Inc., and Go City, Inc.—are incorporated in the United States and operate in New York.[3] ¶¶ 12, 13, 17. Big Bus operates hop-on, hop-off double-decker

---

[1] Unless otherwise noted, citations to "¶ _" refer to the First Amended Complaint, Doc. 59.

[2] Gray Line ended its bus tour services in 2020. Doc. 71 at 8.

[3] Specifically, Open Top Sightseeing USA, Inc. and Go City Inc. are Delaware corporations, and Taxi Tours, Inc. is a New York corporation. ¶¶ 12, 13. 17.

tour buses, and Go City offers multi-attraction passes that include bus tours and admission to other tourist attractions for a single price. ¶¶ 33, 43.

### 2. The Parties' Business in New York City

Go New York and Big Bus (and until the summer of 2020, Gray Line) each operate double-decker tour buses that travel in continuous circuits, allowing customers to "hop off" at the destinations of their choice, and later "hop on" other buses operated by the same tour company to resume their tour and visit other attractions. ¶ 24. The three competitors market their tours through uniformed sales agents stationed near popular tourist attractions, through their respective websites, in their offices and visitor centers, and through hotel concierge services. ¶¶ 37–40.

Go New York, Go City, and Sightseeing Pass each create and sell multi-attraction passes, which bundle admission to multiple tourist attractions and other services throughout New York City using a single ticket sold for a single price. ¶¶ 42–43. For each visitor admitted to a particular attraction, the seller of the multi-attraction pass later pays the attraction operator the admission fee for that visitor, minus a prearranged commission. ¶¶ 45–46. The companies that create and market multi-attraction passes have an incentive to contract with many attractions, so they can offer the most attractive bundled pricing to tourists while still maximizing margins. ¶¶ 43, 45–53.

Go New York competes with Gray Line and the Big Bus Defendants in offering bus tour services to customers in New York City. Go New York also alleges that it competes with Sightseeing Pass and the Go City Defendants in creating and selling multi-attraction passes.

### 3. Prior Federal Action

In March 2019, Go New York filed a civil action against the same Defendants entitled *Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*, No. 19-cv-02832 (LAK) (the "Prior Federal Action"). On May 23, 2019, Go New York filed a first amended complaint in the Prior Federal Action, alleging that the Defendants conspired to

3

restrain trade in the hop-on, hop-off tour bus and multi-attraction pass markets in New York City by fixing prices and preventing Go New York from securing trade partner agreements with certain tourist attractions with whom Defendants had already partnered. *See* Doc. 56.  To support its allegations, Go New York identified nine attractions with which it was unsuccessful at securing agreements:  (1) the Top of the Rock at Rockefeller Center, Doc. 56 ¶ 52; (2) the Empire State Building Observatory, *id.* ¶ 53; (3) One World Observatory at the World Trade Center, *id.* ¶ 55; (4) the Intrepid Sea, Air, and Space Museum, *id.* ¶ 59; (5) the 9/11 Memorial and Museum and 9/11 Tribute Museum, *id.* ¶ 60; (6) the Museum of Modern Art, *id.*; (7) Madame Tussauds Wax Museum, *id.* ¶ 61; (8) Broadway Inbound (an online platform for buying tickets to Broadway shows), *id.* ¶ 63; and (9) Coach USA and Short Line's shuttle bus service to Woodbury Common Premium Outlets, *id.* ¶ 64.

    Go New York asserted claims for antitrust violations pursuant to §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; § 4 of the Clayton Act, 15. U.S.C. § 15, and the Donnelly Act, New York state's antitrust law, N.Y. Gen. Bus. L. § 340.  *Id*. ¶¶ 67–94.  The first count alleged Defendants unlawfully conspired to exclude Go New York from trade partner relationships, in violation of the Sherman Act § 1 and Clayton Act § 4.  *Id.* ¶¶ 67–78.  The second count alleged that Gray Line and Big Bus each possessed monopoly power in the New York City hop-on, hop-off tour bus market and, in violation of the Sherman Act § 2 and Clayton Act § 4, and sought to increase their monopoly positions by working together to exclude Go New York from beneficial trade partner relationships.  *Id.* ¶¶ 79–88.  The third count alleged that Defendants' conduct violated the Donnelly Act.  *Id.* ¶¶ 89–94.  Finally, counts four through six asserted state-law claims for unfair competition, tortious interference with contract, and tortious interference with prospective business relations.  *Id.* ¶¶ 95–105.

    In a Memorandum and Order dated November 7, 2019, Judge Kaplan dismissed Go New York's first amended complaint for failure to state a claim pursuant to Federal

4

Rule of Civil Procedure 12(b)(6).  Doc. 83.  First, Judge Kaplan rejected Go New York's argument that the Defendants created conspiracies to restrain trade or commerce in violation of the Sherman Act § 1.  Judge Kaplan found the first amended complaint failed to allege the necessary "plus factors" amounting to a horizontal conspiracy.  Doc. 83 at 2–3.  Absent these plus factors, Judge Kaplan found "the closest the [first amended complaint] comes to alleging a horizonal agreement is a conclusory allegation" that defendants unlawfully conspired to exclude Go New York from trade partner relationships.  *Id*. at 2.  Nor was Judge Kaplan persuaded by Go New York's argument that the only rational reason for the trade partners' rejection was due to alleged vertical conspiracies between Defendants and the trade partners, noting "there are many logical and permissible business reasons" for such a rejection.  *Id*. at 3.

Second, Judge Kaplan rejected Go New York's argument that Gray Line and Big Bus each exercised monopoly power in violation of the Sherman Act § 2, stating that the law "does not permit a 'shared monopoly' theory of the kind [Go New York] alleges."[4]  *Id*.  Third, noting that Go New York raised an unfair competition claim under New York law which they then withdrew, Judge Kaplan dismissed this claim with prejudice. [5]  *Id*. at 5 n.21.  Fourth, because the complaint did not sufficiently explain how Defendants

---

[4] "Section 2 of the Sherman Act prohibits monopolization, attempted monopolization and conspiracy to monopolize any part of trade or commerce." *Klickads, Inc. v. Real Estate Board of New York, Inc*., No. 04-cv-8042 (LBS), 2007 WL 2254721, at *8 (S.D.N.Y. Aug. 6, 2007).  As pled in the Prior Federal Action, Go New York argued that each of Gray Line and Big Bus "possesses monopoly power in the New York City hop-on, hop-off tour bus market[.]"  Doc. 56 ¶ 80.  But as Judge Kaplan pointed out, monopoly power is, by definition, power held unilaterally.  Doc. 83 at 3 & n.12 ("[A]s the prefix 'mono' suggests … there can only be one monopolist."); *see also H.L. Hayden Co. v. Siemens Med. Systems, Inc*., 879 F.2d 1005, 1018 (2d Cir. 1989) ("in order to sustain a charge of monopolization or attempted monopolization, a plaintiff must allege the necessary market domination of a particular defendant.") (citations omitted); *In re Crude Oil Commodity Futures Litig*., 913 F. Supp. 2d 41, 57 (S.D.N.Y. 2012) ("A claim for conspiracy to monopolize under section 2 requires a showing of . . . proof of a concerted action deliberately entered into with the specific intent to achieve an unlawful monopoly[.]").

[5] Specifically, Go New York included a footnote in their opposition brief stating it "withdrew" its unfair competition claim and otherwise did not defend this claim in the brief.  *See* Doc. 76 at 2 n.1.  Courts in this Circuit "routinely dismiss with prejudice claims at the motion to dismiss stage that are not defended and deemed abandoned."  *Alterescu v. New York City Dep't of Educ*., No. 21-cv-925 (KPF), 2022 WL 3646050, at *4 (S.D.N.Y. Aug. 23, 2022), *appeal dismissed* (Jan. 25, 2023).

5

induced a breach of contract or induced a breach through wrongful means, Judge Kaplan dismissed the tortious interference with contract and tortious interference with prospective business relations claims. *Id*. at 4–5. Finally, Judge Kaplan dismissed the Donnelly Act claim for the same reasons discussed above. *Id.* at 2 n.5. The November 7, 2019 Memorandum and Order did not reference the Clayton Act § 4 claims.

On December 5, 2019, Go New York filed a second amended complaint in the Prior Federal Action that withdrew the Sherman Act § 2 claim but otherwise asserted the same six causes of action. Doc. 84. In a Memorandum and Order dated March 4, 2020, Judge Kaplan dismissed the second amended complaint. Doc. 92. Judge Kaplan found the Sherman Act § 1 claim was "virtually identical in relevant part" to the previous version of the complaint. Doc. 92 at 1. Because the Sherman Act § 2 claim was not re-alleged in the second amended complaint, Judge Kaplan deemed it "abandoned." *Id.* Finally, Judge Kaplan declined to exercise supplemental jurisdiction over the remaining New York state law claims, including the Donnelly Act claim, which were dismissed without prejudice.[6] *Id*. at 2. Judge Kaplan dismissed the Sherman Act §§ 1 and 2 claims with prejudice.[7] *Id.*

On December 22, 2020, the Second Circuit affirmed Judge Kaplan's dismissal. *See Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*, 831 F. App'x 584 (2d Cir. 2020). On April 26, 2021, the United States Supreme Court denied Go New York's petition for a writ of certiorari. *See Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*, 141 S. Ct. 2571 (2021).

---

[6] Go New York renewed the Donnelly Act claim as counterclaims in a pending action in New York State court. *See Taxi Tours Inc. et al, v. Go New York Tours Inc. et al*, New York County Supreme Court Index No. 653012/2019.

[7] The March 4, 2020 Memorandum and Order did not expressly include the Clayton Act § 4 claims in its analysis.

    *4. The 2020 MOU*

In the meantime, Gray Line and Big Bus merged their operations into a "single operating entity" pursuant to an agreement under which Gray Line ceased its tour bus business in New York City and began selling tickets for Big Bus. ¶¶ 54–55. This merger was formalized in a memorandum of understanding signed in August 2020 (the "MOU"), which states in relevant part:

> [Twin America and Gray Line] and [Big Bus] propose to enter into an arrangement pursuant to which [Twin America and Gray Line] will sell sightseeing tour bus tickets and private hire services. The sightseeing tours will be on [Big Bus]'s route network, operated solely by [Big Bus] . . . . [Big Bus] will continue to sell its products through its current distribution channels and at prices determined solely by [Big Bus], as will [Twin America and Gray Line].
>
> [ . . . ]
>
> As additional core [Big Bus] products[8] (excluding third-party attractions) are added to [Big Bus]'s line-up in the New York City market, they will be made available for re-sale to [Twin America and Gray Line] at a [redacted]% discount of the headline, full-price retail.
>
> [ . . . ]
>
> [Big Bus] grants to [Twin American and Gray Line] the non-exclusive, royalty-free, worldwide, revocable license to use its Intellectual Property solely to the extent necessary for the resale of tickets[.]

Doc. 53-1 at 2–3.

In order to implement the MOU, Go New York claims that there have been several other agreements between Gray Line, Big Bus, and Go City. As examples, the First Amended Complaint alleges that Gray Line and Big Bus actually cross license trademarks (as opposed to Big Bus allowing Gray Line to use its intellectual property, as described in the MOU), ¶ 56, that Gray Line permitted Big Bus to use bus stops that the New York City Department of Transportation previously assigned for Gray Line's

---

[8] Examples of these products include Big Bus' classic, night tour, and promotional special tickets. Doc. 53-1 at 2.

exclusive use, ¶ 58, and "must" work together to allocate commissions to their respective sale representatives. ¶ 60.

While Go City is not directly named in the MOU, Go New York claims that the merger "formaliz[ed] and extend[ed] a pre-existing conspiracy" among Big Bus, Gray Line, and Go City to "deny Go New York access to critical trade partners" and to fix the prices of attraction passes by not undercutting each other pricing for comparable attraction passes. ¶ 61. As a result of the merger between Gray Line and Big Bus, Go New York claims that consumers have been forced to pay higher prices for attraction passes, and that it has been unable to effectively and fairly compete in the attraction pass market. *Id.*

5. *Allegations Defendants Unreasonably Restrained Trade*

Go New York also alleges that the Defendants entered into horizontal and vertical agreements (with each other, and with tourist attractions and related services) to exclude it from the New York City bus tour and multi-attraction pass markets. ¶¶ 1, 105–111. For example, the First Amended Complaint alleges that both Gray Line and Big Bus have agreements[9] with hotels and/or concierge and guest service providers to market and sell their tour tickets and multi-attraction passes, and Go New York has been "largely shut out of such arrangements and improperly prevented from having its services and products marketed" in this way. ¶¶ 40–41.

Go New York also identified the nine attractions—the same ones referenced in the Prior Federal Action—which it has been unsuccessful in entering into partnerships with. ¶¶ 67–81. For example, Gray Line and Big Bus include admission to "Top of the Rock" in their multi-attraction passes, but Go New York has been unable to negotiate for the inclusion of this attraction in its own multi-attraction pass. ¶ 65. The operator of "Top of the Rock" has "rebuffed repeated attempts by Go New York to establish a relationship

---

[9] The First Amended Complaint does not state when the agreements were signed.

with it" as a result of "deliberate pressure" by Gray Line and Big Bus to exclude Go New York. ¶¶ 65, 66. Go New York alleges that Defendants "conspired" with each other and with these attractions to exclude Go New York "for the purpose of rendering Go New York's [a]ttraction [p]asses less attractive to tourists and less competitive." ¶ 80.

### B. Procedural Background

Go New York field this action on May 22, 2023. Doc. 1. On October 11, 2023, it filed the First Amended Complaint, Doc. 59, which alleges seven causes of action: (1) monopolization in violation of the Sherman Act § 2 , ¶¶ 86–92; (2) attempted monopolization in violation the Sherman Act § 2, ¶¶ 93–97; (3) conspiracy to monopolize in violation of the Sherman Act § 2, ¶¶ 98–104; (4) unreasonable restraint of trade in violation of the Sherman Act § 1, ¶¶ 105–111; (5) anticompetitive merger in violation of the Clayton Act § 7, 15 U.S.C. § 18, ¶¶ 112–115; (6) unreasonable restraint of trade in violation of the Donnelly Act, ¶¶ 116–121; and (7) unfair competition under New York common law, ¶¶ 122–124.[10]

On November 13, 2023, all Defendants filed their motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and the Foreign Defendants filed their motion to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Docs. 64, 66.

## II. LEGAL STANDARD[11]

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences

---

[10] Each Sherman and Clayton Act claim also alleges violation of the Clayton Act § 4, which relates to the availability of treble damages for antitrust violations. *See* 15 U.S.C. § 15.

[11] Ordinarily, courts address challenges to personal jurisdiction before deciding the merits of a cause of action. *See In re Rationis Enters., Inc. of Panama*, 261 F.3d 264, 267–68 (2d Cir. 2001). However, "in cases such as this one with multiple defendants—over some of whom the court indisputably has personal jurisdiction—in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, [a court] may address first the facial challenge to the underlying cause of action and, if [it] dismiss[es] the claim in its entirety, decline to address the personal jurisdictional claims made by some defendants." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012); *see also In re London*

in the plaintiff's favor. *See Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551, 127 S. Ct. 1955). "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotation marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of the plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

---

*Silver Fixing, Ltd., Antitrust Litig*., Nos. 14 MDL 2573, 14 Misc. 2573 (VEC), 2018 WL 3585277, at *5 n.5 (S.D.N.Y. July 25, 2018) ("Under the circumstances, the Court exercises its discretion to address [defendants'] motion to dismiss for failure to state a claim before addressing personal jurisdiction.") Because Go New York fails to state a claim, as will be explained, the Court declines to address the Foreign Defendants' motion to dismiss for lack of personal jurisdiction.

Furthermore, "only a complaint that states a plausible claim for relief survives a motion to dismiss" and "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937. "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

"A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)). Generally, res judicata is an affirmative defense that is pleaded in the defendant's answer. *See Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.1992) (citing Fed. R. Civ. P. 8(c)). However, "when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Id*. (citing *W.E. Hedger Transp. Corp. v. Ira S. Bushey & Sons*, 186 F.2d 236, 237 (2d Cir. 1951)). In considering a motion to dismiss, a court is permitted to take judicial notice of public records, which includes complaints and other documents filed in federal court. *See Harrison v. Diamonds*, No. 14-cv-484 (VEC), 2014 WL 3583046, at *2 (S.D.N.Y. July 18, 2014) (quoting *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 351–52 (E.D.N.Y. 2010)) (internal quotation marks omitted). When a court takes judicial notice of such documents, it does so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Given that Defendants' motion is predicated on prior litigation in this District, the Court takes judicial notice of the documents filed in connection with the Prior Federal Action.

11

### III. DISCUSSION

#### A. Go New York's Claims Pursuant to the Sherman Act and its Unfair Competition Claim are Barred by Res Judicata

Defendants argue that Go New York's Sherman Act claims and common law unfair competition claim are barred by res judicata due to the dismissal of these claims with prejudice in the Prior Federal Action. Doc. 67 at 19–24. Go New York argues that res judicata does not bar its claims in this action because they are premised, in part, on agreements which postdate Judge Kaplan's final judgment. Doc. 71 at 15–18.

Res judicata, also called claim preclusion, prevents parties from relitigating issues that were or could have been decided on the merits in a previous action. *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017). To prove that res judicata bars a subsequent action, a party must show that the earlier decision was "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Medical Computer Sys. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007). If these elements are met, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* "Dismissal with prejudice as a result of a successful motion to dismiss is usually considered a final adjudication on the merits." *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 322 (S.D.N.Y. 2015); *see also Mitchell v. Nat'l Broadcasting Co.*, 553 F.2d 265, 268 (2d Cir.1977) ("It is well settled that ... a motion to dismiss for failure to state a claim upon which relief can be granted and without reservation of any issue, is presumed to be upon the merits[.]").

Go New York does not dispute that the Prior Federal Action was a final adjudication on the merits by a court of competent jurisdiction and that it involved the same parties as in the instant action. Accordingly, the only remaining issue is whether Go New York's claims in the instant litigation and the Prior Federal Action involve the same causes of action.

1. *New Factual Allegations*

In both the Prior Federal Action and in the instant action, Go New York alleges violations of §§ 1 and 2 of the Sherman Act and a common law unfair competition claim. However, Go New York argues that the causes of action pled here are different from those it raised in the prior suit because the "core" of its new allegations are premised on Defendants' entry into the 2020 MOU (and other unspecified "subsequent related operating agreements"). Doc. 71 at 16. According to Go New York, because the prior action predated the 2020 MOU, it could not have brought its monopolization and attempted monopolization theories before Judge Kaplan nor alleged "the existence of a formal agreement between Big Bus Line pursuant to which the parties agreed to share trade partners with each other while excluding Go New York from access to such trade partners." *Id.* at 16–17.

While Go New York could not make factual allegations about the MOU and alleged subsequent operating agreements in the Prior Federal Action, the relevant question is whether "the later conduct can support a cause of action on its own[.]" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 503 (2d Cir. 2014). If so, it is "the basis of a new cause of action not precluded by the earlier judgment." *Id.* Stated differently, res judicata applies "where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim." *Storey v. Cello Holdings*, L.L.C., 347 F.3d 370, 384 (2d Cir. 2003).

The Court finds *Waldman v. Village of Kiryas Joel* instructive on the issue of what constitutes new conduct that supports a subsequent cause of action. In that case, Waldman initially sued the Village of Kiryas Joel, New York, for discrimination and constitutional violations ("*Waldman I*"). *Waldman v. Village of Kiryas Joel*, No. 97-cv-74 (JSR) (S.D.N.Y. Apr. 9, 1997). As part of a settlement, the parties agreed to dismissal of the claims with prejudice. *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 107 (2d Cir. 2000). In a second filed-action ("*Waldman II*"), Waldman accused the Village of

13

"excessive entanglement with religion" and sought its dissolution under the Establishment Clause. 207 F.3d 105, 107–108 (2d Cir. 2000). The Second Circuit determined that:

> it is simply not plausible to characterize Waldman's claim as one based in any significant way upon the post-*Waldman I* facts. The new allegations made in the present complaint do not, either by themselves or to any degree not already demonstrated by the overlapping facts, establish the sort of pervasive and otherwise irremediable entanglement between church and state that would justify a drastic remedy like the dissolution of the Village.... We conclude that, in seeking the dissolution of [the Village], Waldman has based his action principally upon the common nucleus of operative facts shared with *Waldman I*.

*Waldman II* at 113. Therefore, the Second Circuit held that facts post-dating the first action did "not create a 'new' cause of action that did not exist when the prior suits were brought" and that Waldman's claim was barred by res judicata. *Id*. at 112. While the Second Circuit left open the possibility that future actions could support a new cause of action, it stated that Waldman could not use "the mere inclusion of a few post-*Waldman I* Village acts ... to resurrect a claim[.]" *Id.* at 114.

Much like in *Waldman II,* Go New York's new factual allegations do not support its causes of action. First, the MOU does not plausibly support the antitrust claims. To summarize, Go New York alleges that the MOU resulted in the merger of Defendants' companies and formalized Defendants' alleged conspiracy "to monopolize and fix prices within the market for New York City Hop-on, Hop-off tour bus services, and to effectively shut Go New York out of the Attraction Pass sub-market, making it difficult if not impossible for Go New York to offer and sell competitive attraction passes." ¶¶ 44, 61. But the text of the MOU fails to support these allegations, as it only describes an agreement for Gray Line to resell tickets for Big Bus tour bus services and to license intellectual properly "solely" to the extent necessary for such resale. *See* Doc. 53-1. The MOU does not purport to combine or merge Defendants' businesses into a "single entity," nor does it reflect an agreement between Defendants "to fix prices" and prevent

14

competition in the tour bus and multi-attraction pass industries in New York City. Doc. 71 at 26. Go New York's claim that the MOU "formalize[s] and extend[s] a pre-existing conspiracy among Big Bus, Gray Line and Go City to deny Go New York access to critical trade partners within New York City," *id.* at 11, is also implausible. The MOU, by its own terms, expressly excludes third-party attractions from its scope. *See* Doc. 53-1 at 2.

Second, Go New York's reference to "subsequent related operating agreements" fails to bolster its argument. The allegations are wholly conclusory. The First Amended Complaint does not allege the terms of these agreements, the parties to them, when they were entered into, or even their subject matter. ¶ 56. *See Iqbal*, 556 U.S. at 662 (citing *Twombly*, 550 U.S. at 544) (pleadings must allege facts that are plausible and not merely conclusory statements).[12]

Third, Go New York argues that its claims in this action are distinguishable from its previously dismissed claims because the complaint in the Prior Federal Action was "based almost exclusively" and "alleged primarily" that Big Bus and Gray Line were attempting to dominate the attraction pass market by shutting Go New York out of arrangements with third-party attractions. Doc. 71 at 13, 19. Meanwhile, here, the allegations here are based on a "formal agreement" to merge operations pursuant to the MOU. Doc. 71 at 17–18. The Court is unpersuaded. In the Prior Federal Action, Go New York alleged that Gray Line and Big Bus each "possess[] monopoly power in the New York City hop on, hop off tour bus market," such that the companies have worked together to "improperly prevent[] or impede[] Go New York's ability to compete in *said* market by offering competitive Multi-Attraction Passes." ¶¶ 80–83 (emphasis added). Accordingly, the Prior Federal Action did allege antitrust claims on the basis of conduct

---

[12] To the extent Go New York means the other agreements it describes in the First Amended Complaint, namely Gray Line and Big Bus' cross-licensing of trademarks, use of certain bus stops, and payments to sales representatives, these allegations are also not sufficient evidence of a merger.

in the New York tour bus market, as alleged in the instant case. Judge Kaplan dismissed these claims with prejudice. *See* Doc. 92 at 2–3.

Thus, the Court finds that the new conduct alleged in the instant action—specifically, the MOU and the unspecified subsequent operating agreements—do not support a new cause of action for the Sherman Act violations and the unfair competition claim. *See TechnoMarine SA*, 758 F.3d 503, *Storey*, 347 F.3d 384. Like in *Waldman II*, it is simply not "plausible" to characterize Go New York's antitrust claims as based, "in a significant way" on facts that occurred after the Prior Federal Action. *Waldman*, 207 F.3d at 113.

2. *Other Factual Allegations*

Turning to the remaining factual allegations, Go New York's claims are premised on the same facts it alleged in the Prior Federal Action: an alleged conspiracy between Defendants to impede Go New York's ability to compete in the tour bus and multi-attraction pass markets in New York City by, among other things, persuading various tourist attractions and service operators not to do business with Go New York. To support its claim, Go New York references the same nine tourist attractions as in the Prior Federal Actions, and in fact brings nearly verbatim allegations. *Compare Go New York Tours, Inc.*, No. 19-cv-02832 (LAK), Doc. 84 (second amended complaint in Prior Federal Action) *with Go New York Tours, Inc.*, No. 23-cv-4256 (ER), Doc. 59 (First Amended Complaint in the instant action).

When analyzing the "same cause of action" requirement, courts in this Circuit consider whether the subsequent action concerns "the same claim—or nucleus of operative facts—as the first suit applying three considerations: "(1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations." *Channer v. Dep't of Homeland Security*, 527 F.3d 275, 280 (2d Cir. 2008) (internal quotation marks omitted). "[T]he facts essential to the

16

barred second suit need not be the same as the facts that were necessary to the first suit. It is instead enough that the facts essential to the second were [already] present in the first." *Id.* (internal quotation marks and citations omitted).

The facts underlying the claims in this action are "related in time, space, origin, or motivation" to the nearly identical factual allegations in the Prior Federal Action. *See Channer*, 527 F.3d at 80. The claims in this action would have formed a convenient trial unit with the Prior Federal Action, as both involve substantially the same allegations. *Id.* Finally, the Court finds that treating the facts as a single unit would have conformed to the parties' expectations, as the legally relevant facts largely overlap. *Id*. The instant case therefore only presents "subtle differences" with the allegations in the Prior Federal Action, which are "not enough to overcome the many similarities, that, in their totality, render the respectively complaints sufficiently 'related in time, space, origin, or motivation' to trigger res judicata." *Beijing Neu Cloud Oriental Sys. Tech. Co. v. International Business Machines Corp*., No. 22-3132, 2024 WL 3529080, at *8 (2d Cir. July 25, 2024) (citations omitted); *Id.* at *7 (applying res judicata when "[f]undamentally, both [cases] allege the same injury based on the same series of events" and the complaints "rely on nearly identical allegations[.]"). Thus, the Court finds that the instant case concerns the same nucleus of operative facts as the Prior Federal Action.

In sum, res judicata bars consideration of Go New York's Sherman Act claims as well as its unfair competition claim.

### B. Go New York's Remaining Claims are Dismissed Without Prejudice

Go New York's remaining federal claim challenges the alleged merger between Gray Line and Big Bus pursuant to the Clayton Act § 7.[13] ¶¶ 112–15. A merger violates § 7 if "in any line of commerce or in any activity affecting commerce in any section of

---

[13] Go New York also brings claims for violations of § 4 of the Clayton Act, but this provision relates to the availability of treble damages for antitrust violations and is "designed primarily as a remedy." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477 (1977). Neither party expressly references § 4 in their arguments. *See* Docs 67, 71, 76. Accordingly, the Court does not engage in a separate analysis of § 4.

17

the country, the effect of such [merger] may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18.  Section 7 prohibits certain mergers between competitors in a market, *United States v. Continental Can Co.*, 378 U.S. 441 (1964), certain acquisitions of a market competitor by a noncompetitor, *FTC v. Procter & Gamble Co.*, 386 U.S. 568, 578–580 (1967), and certain mergers that eliminate a potential competitor, *United States v. Penn-Olin Chemical Co.*, 378 U.S. 158, 173–174 (1964).

None of the proceeding situations apply here.  As evidence of the alleged merger, Go New York only relies on the MOU, cross licenses of trademarks, and the fact Gray Line allegedly allows Big Bus to use its bus stops.  ¶¶ 55–58.  For the reasons described above, the MOU does not plausibly allege a merger between Gray Line and Big Bus.  And any agreements to cross license trademarks or to use certain bus stops do not show that the Defendants have entered into a merger or acquisition agreement.[14]  Accordingly, the Court finds that Go New York's allegations of a merger are unsupported by the factual allegations, and therefore dismisses its Clayton Act claim without prejudice.[15]

Finally, Go New York asserts that Defendants violated the Donnelly Act, New York's antitrust statute.  ¶¶ 116–121.  Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III

---

[14] Although not expressly alleged in the Clayton Act claim, the Court also finds that Go New York's claim that Gray Line and Big Bus "must" allocate revenue and commissions also does not support the argument that they have merged.  ¶ 60.  Go New York does not allege the existence of a formal agreement to provide such revenue allocations, and even if it did, the agreement does not purport to create a merger.

[15] Defendants request that the First Amended Complaint be dismissed with prejudice.  Doc. 76 at 6.  The Second Circuit has counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims.  *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015).  To be clear, while Go New York did bring a Clayton Act § 4 claim in the Prior Federal Action seeking treble damages, it did not bring a Clayton Act § 7 claim.  Accordingly, this is the Court's first opportunity to highlight the precise defects of the Clayton Act § 7 claim.  The Court will therefore not dismiss the claim with prejudice.

of the United States Constitution." 28 U.S.C. § 1367(a). The doctrine of supplemental jurisdiction is traditionally "a doctrine of discretion, not of plaintiff's right." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Subsection (c) of § 1367 enumerates circumstances in which a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a)." 28 U.S.C. § 1367(c). One such circumstance is where, as here, "the district court has dismissed all claims over which it has original jurisdiction." *Id.*

Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional "values of judicial economy, convenience, fairness, and comity" in deciding whether to exercise jurisdiction. *Kolari*, 455 F.3d at 122 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The Supreme Court has noted that in a case where all federal claims are eliminated before trial, "the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (internal quotation marks omitted); *see also Gibbs*, 383 U.S. at 726 ("[I]f the federal law claims are dismissed before trial ... the state claims should be dismissed as well."). As Go New York's federal claims have been dismissed, the Court declines to exercise jurisdiction over the Donnelly Act claim, which is dismissed without prejudice.

### IV.   CONCLUSION

The Court GRANTS Defendants' motion to dismiss the complaint. Accordingly, the Foreign Defendants' motion is DENIED as moot. As noted above, the Court declines to exercise jurisdiction over the remaining state law claim.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 64 and 66, and to close the case.

SO ORDERED.

Dated:   August 27, 2024
         New York, New York

                                                            _____
                                                            EDGARDO RAMOS, U.S.D.J.

19