ATTORNEY GENERAL OF THE STATE OF NEW YORK
ANTITRUST BUREAU

---

In the Matter of

**Investigation by LETITIA JAMES,**
**Attorney General of the State of New York, of**

**Twin America, LLC,**
**CitySights, LLC,**
**City Sights Twin, LLC,**
**Gray Line New York Tours, Inc.**
**CSA Tickets, LLC, &**
**Sightseeing Pass, LLC**

                    Respondents.

Assurance No. 25-015

---

## ASSURANCE OF DISCONTINUANCE

The Office of the Attorney General of the State of New York ("OAG") has commenced an investigation pursuant to the Donnelly Act (New York General Business Law § 340 *et. seq.*), Section 63(12) of the New York Executive Law, and Section 1 of the Sherman Act (15 U.S.C. § 1) into the potential impact on competition caused by the use of reseller and operation management agreements for the provision of hop-on/hop-off ("HOHO") bus tour services in New York City ("the OAG Investigation").

As part of the OAG Investigation of Twin America, LLC, Gray Line New York Tours, Inc., CSA Tickets, LLC, Sightseeing Pass, LLC, CitySights, LLC, and City Sights Twin, LLC, (together, "Twin America"), the OAG has specifically considered the impact on competition caused by agreements between Twin America and its competitors Big Bus Tours Limited, Taxi Tours, Inc. (d/b/a Big Bus Tours New York), Open Top Sightseeing LLC, and Open Top Sightseeing USA Inc., all of which are affiliated (together, "Big Bus").

The OAG, among other things, reviewed documents and information produced by Twin America, gathered and analyzed relevant market data, and obtained documents, information, and testimony from other market participants.

This Assurance of Discontinuance ("Assurance") contains the findings of the OAG Investigation and the relief agreed to by the OAG and Twin America (collectively, the "Parties"). Twin America enters into this Assurance for the sole purpose of resolving the OAG Investigation only and neither admits nor denies the OAG's findings below, and this Assurance does not create any rights for any third party.

**OAG's FINDINGS**

1.      HOHO bus tours stop at a variety of sightseeing destinations throughout a city. Customers purchase a ticket that allows them to "hop on" the bus and then "hop off" the bus at designated stops. HOHO buses are typically double-decker buses that travel on a fixed route or loop. HOHO bus tours often have on-board audio devices that provide sightseeing commentary to customers. HOHO bus tours thus provide a convenient way for tourists to travel to numerous sightseeing destinations and to learn about those destinations and the city while they are traveling.

2.      Big Bus and Twin America are competitors in the HOHO bus tour market in New York City. In 2019 and 2020, before the Covid-19 pandemic, Big Bus was the largest provider of HOHO bus tours in New York City and Twin America was the second largest provider of HOHO bus tours in New York City. Big Bus is still one of the largest providers of HOHO bus tour services in New York City today.

3.      HOHO bus tours are sold as individual tickets or as part of a bundled Attraction Sightseeing Pass. Attraction Sightseeing Passes combine access to attractions and sightseeing

destinations throughout New York City, including HOHO bus tours.  HOHO bus tour tickets and Attraction Sightseeing Passes are sold by HOHO bus tour operators, Attraction Sightseeing Pass companies, and authorized sellers and resellers.  Attraction Sightseeing Passes are sold through a number of channels including online and in-person at ticket offices and hotel concierge desks.

4.      Beginning in 2020, affiliates of Big Bus and Twin America entered into a series of written agreements (together, the "Agreements"):

a.      Memorandum of Understanding, dated August 27, 2020;

b.      Extension of Memorandum of Understanding, dated March 1, 2021;

c.      Updated Memorandum of Understanding, dated December 1, 2021;

d.      Reseller Ticket Agreement, dated December 1, 2021 (the "Reseller Ticket Agreement");

e.      Vehicle-Specific Operation and Management Agreement, dated January 1, 2022;

f.      Global Reseller Ticket Agreement, dated January 1, 2023 (the "Global Reseller Ticket Agreement");

g.      Operation and Management Agreement, dated February 21, 2023;

h.      Memorandum of Understanding, dated February 21, 2023; and

i.      Amendment to Vehicle-Specific OMA, dated February 21, 2023.

5.      Through the Agreements and other oral and written assurances and conduct, Big Bus and Twin America agreed that (i) Twin America would re-sell tickets for Big Bus HOHO bus tours in New York City and Big Bus would pay Twin America higher commission rates than in any other city in which Twin America re-sells Big Bus HOHO bus tour tickets; and (ii) Big Bus would operate a HOHO bus owned by Twin America to allow Twin America to maintain its authorized bus stop permits in New York City.

6.    Since approximately March 2020 and continuing to the present, Twin America has not operated any HOHO buses in New York City and continues to re-sell Big Bus HOHO bus tour tickets in New York City, primarily through Twin America's Attraction Sightseeing Passes.

7.    The OAG finds the Agreements reduced competition for HOHO bus tour services in New York City because Twin America has not operated HOHO bus tours in New York City since the Agreements have been in effect.  The OAG has not identified any procompetitive justification for the Agreements.

8.    The OAG finds that Twin America's entry into the Agreements likely violates the Donnelly Act, Gen. Bus. Law § 340 *et. seq.*; the Sherman Act, 15 U.S.C. § 1; and New York Executive Law § 63(12).

9.    In September 2024, Big Bus entered into Assurance of Discontinuance No. 24-070 with the OAG.  Pursuant to that Assurance of Discontinuance, Big Bus agreed to terminate and cease performing the Agreements and all other then-existing agreements, assurances or understandings with Twin America related to the New York City Metropolitan area, with the exception of certain provisions of the Agreements pertaining to termination and certain provisions applicable outside the New York City Metropolitan area.

10.    The OAG finds the relief and agreements contained in this Assurance appropriate and in the public interest.  THEREFORE, the OAG is willing to accept this Assurance pursuant to Executive Law § 63(15), in lieu of commencing a statutory proceeding for likely violations of the Donnelly Act, Gen. Bus. Law § 340 *et. seq.*, the Sherman Act, 15 U.S.C. § 1, and New York Executive Law § 63(12).

IT IS HEREBY UNDERSTOOD AND AGREED, by and between the Parties:

**RELIEF**

11.     Except as described in Paragraph 12, Twin America shall immediately terminate and cease performing the Agreements, and shall not enforce the Agreements against Big Bus, whether formally or informally.  Twin America shall immediately terminate and cease performing any and all other existing agreements, assurances or understandings with Big Bus or its affiliates related to the New York City metropolitan area, whether oral or written, and whether formal or informal, except that Twin America need not terminate or cease performing the New York City Reseller Ticket Agreement dated November 1, 2024 or the Reseller Ticket Agreement dated November 1, 2024, both between Twin America's affiliates and Big Bus's affiliates.

12.     Twin America need only terminate and cease performing and enforcing the parts of the Global Reseller Ticket Agreement that concern the NYC Market, which is defined in the Global Reseller Ticket Agreement as the New York City metropolitan area.  Such termination and cessation of performance and enforcement includes Twin America's sale, resale, and marketing of Products in the NYC Market, as those terms are defined in the Global Reseller Ticket Agreement.  Notwithstanding the foregoing termination and cessation of performance and enforcement, Section 12.3 ("Effect of Termination") and Section 12.4 ("Survival") of the Global Reseller Ticket Agreement, and Section 12.3 ("Effect of Termination") and Section 12.4 ("Survival") of the Reseller Ticket Agreement, dated December 1, 2021, may continue to be performed and enforced pursuant to their terms.  Nothing in this Assurance prohibits Twin America from enforcing and performing the parts of the Global Reseller Ticket Agreement that do not concern the NYC Market.

13.     For ten (10) years following the Effective Date, Twin America shall not enter into any agreements, assurances or understandings with Big Bus, whether oral or written and whether

formal or informal, concerning the operation of buses for HOHO bus tours in New York State. For the avoidance of doubt, nothing in this Assurance prohibits Twin America from entering into a new agreement with Big Bus after the Effective Date (or as otherwise set forth in Paragraph 11) pursuant to which Twin America is permitted to re-sell tickets for Big Bus HOHO bus tours in New York City or outside New York City (to the extent such agreement is not otherwise prohibited by this Assurance).

14. For ten (10) years following the Effective Date, Twin America shall promptly notify the OAG of any other agreements, assurances or understanding Twin America enters into with Big Bus or its affiliates concerning the NYC Market (other than those described in Paragraph 11, which are prohibited by this Assurance). This Paragraph applies to settlement agreements that Twin America enters into with Big Bus or its affiliates in connection with currently pending or future litigation. This Paragraph does not apply to common interest agreements, joint defense agreements, litigation stipulations, or similar routine litigation-specific agreements (other than settlement agreements) that Twin America enters into with Big Bus or its affiliates in connection with currently pending or future litigation.

15. For ten (10) years following the Effective Date, Twin America shall promptly notify the OAG of any exclusive agreements, exclusive assurances or exclusive understanding concerning New York State that Twin America or its affiliates enters into with any entity that provides HOHO bus tour services in New York State or with any entity that sells or re-sells HOHO bus tour services in New York State. This Paragraph does not apply to such agreements, assurances, or understandings by and amongst Twin America and its wholly-owned subsidiaries. This Paragraph also does not apply to agreements, assurances or understandings in which the exclusivity pertains only to something other than HOHO bus tour services.

16.     For ten (10) years following the Effective Date, Twin America shall provide advance notice to the OAG prior to Twin America directly or indirectly acquiring any assets of or any interest in any entity that provides HOHO bus tour services in New York State.  Such interest may include, but is not limited to, any financial, security, loan, equity, or management interest.

17.     For ten (10) years following the Effective Date, Twin America shall give advance notice to the OAG prior to selling, directly or indirectly, any interest in Twin America to any entity that provides HOHO bus tour services in New York State or to any entity that sells or re-sells HOHO bus tour services in New York State.  Such interest may include, but is not limited to, any financial, security, loan, equity, or management interest.

18.     The notification described in Paragraphs 16 and 17 must be provided to the OAG at least forty-five (45) days prior to consummation of the proposed transaction.  The notification shall include, at a minimum, a copy of the document or documents memorializing the proposed transaction, the names of the parties to the proposed transaction, the names of the people who negotiated the proposed transaction, and copies of all non-confidential management and strategic plans discussing the proposed transaction that are in the possession, custody or control of Twin America.  Twin America shall not consummate the proposed transaction until forty-five (45) days after providing such information to the OAG, or as otherwise may be agreed upon in writing by Twin America and the OAG.

19.     Twin America will provide a copy of this Assurance to each of its officers and directors within seven (7) days of the Effective Date.

20.     Until the date when the OAG notifies Twin America that the OAG Investigation is concluded, Twin America agrees to provide full, complete and prompt cooperation with the OAG in related proceedings and actions, against any other person, corporation or entity.  Twin America

agrees to use its best efforts to secure the full and truthful cooperation of current officers, directors, employees and agents with the ongoing OAG Investigation and any related proceedings and actions.

21.    Cooperation shall also include, but is not limited to: (i) voluntarily and promptly producing, without service of subpoena, to the extent permitted by law or regulation, all information, documents or other tangible evidence reasonably requested by the OAG that relates to the OAG Investigation; and (ii) if requested by the OAG, working to ensure that Twin America's current officers, directors, employees, and agents attend, on reasonable notice, any proceedings (including but not limited to meetings, interviews, hearings, depositions, grand jury proceedings, and trials) and answer completely, candidly, and truthfully any and all inquiries relating to the OAG Investigation that may be put to such persons by the OAG (or any deputies, assistants or agents), without the necessity of a subpoena.

22.    The cooperation set forth herein is subject to Twin America's right to withhold documents or testimony on the grounds of privilege, work-product or other legal doctrine, and Twin America does not waive any privilege, work-product or other legal doctrine applicable to disclosure of information by cooperating with the OAG Investigation.

23.    For ten (10) years following the Effective Date, Twin America will promptly notify the OAG if it learns of any violation or potential violation of this Assurance known to any officer, director, or senior manager.  Descriptions of violations or potential violations of this Assurance shall include, to the extent practicable, a description of any communications constituting the violation or potential violation, including the date and place of the communication, the persons involved, and the subject matter of the communication.  Twin

America will preserve all communications related to a known violation or known potential violation of this Assurance.

24.    Acceptance of this Assurance by the OAG is not an approval or endorsement by the OAG of any of Twin America's policies, practices or procedures, and Twin America shall make no representation to the contrary.

25.    The Parties agree that it would be difficult to value the damage caused if Twin America is found to have knowingly failed to disclose any material agreement, assurance, or understanding with Big Bus, whether oral or written, pertaining to the subject matter of the OAG Investigation, as of the Effective Date.  Therefore, the Parties agree that Twin America shall pay by wire transfer, payable to the State of New York, a stipulated penalty of $1 million ($1,000,000.00) for knowingly failing to disclose each and every such agreement, assurance, or understanding.

26.    The Parties agree that it would be difficult to value the damages caused by a default in the performance of any material obligation in this Assurance.  Therefore, the Parties agree that Twin America shall pay by wire transfer, payable to the State of New York, a stipulated penalty of $50,000 per month (following the date of the default) until cured for each and every such default in the performance of any such obligation in this Assurance occurring after the Effective Date.  For avoidance of doubt, this stipulated penalty applies to failure to pay or late payment of the payments described in Paragraphs 28 and 29.  Prior to the assessment of the stipulated penalty Twin America shall be provided notice of default pursuant to Paragraph 36 and shall be permitted ten days to cure from the date of receipt of the notice.

27.    For ten (10) years following the Effective Date, Twin America shall provide the OAG with a certification that includes an affirmance of Twin America's compliance with the

requirements set forth in this Assurance after having conducted a reasonable and diligent investigation.  For six (6) years following the Effective Date, Twin America shall provide the OAG with a certification that includes (1) a list of any sale, license, or transfer exceeding $5,000 of (i) any membership or stock interest in Twin America itself; or (ii) any asset (or any share of any such asset) owned or controlled by Twin America;  and (2) a list of Twin America's ultimate parent entities or beneficiaries and the relative ownership share of each, as of the date of certification.  The certification and lists shall be submitted to the OAG on February 1 of each year, starting on February 1, 2026.  The certification and lists shall be in writing and be signed by Twin America.  In any case where the circumstances warrant, the OAG may require (i) that Twin America file an interim certification of compliance upon thirty (30) days' notice; and/or (ii) that Twin America provide back-up documentation sufficient to show the information described in the lists of Twin America's assets and ownership.

28.    Twin America shall pay $500,000 within two (2) years of the Effective Date according to the following schedule: (i) within five (5) business days of the Effective Date, Twin America will pay the monetary sum of $75,000; (ii) within one (1) year of the Effective Date, Twin America will pay the monetary sum of $175,000; (iii) within two (2) years of the Effective Date, Twin America will pay the monetary sum of $250,000.  All payments described in this Paragraph shall be made by wire transfer, payable to the State of New York.

29.    Twin America shall make additional contingent payments of up to $900,000 in the aggregate, as set forth in this Paragraph.  Twin America will pay 30% of Twin America's total proceeds from the sale, license, or transfer, within five (5) years of the Effective Date, of (i) any membership or stock interest in Twin America itself or (ii) any asset (or any share of any such asset) owned or controlled by Twin America.  For avoidance of doubt, such assets include (but

are not limited to) intellectual property, buses and related equipment, bus stops or permits for same, and Twin America's interests in Sightseeing Pass, LLC and in City Sightseeing Worldwide.  For further avoidance of doubt, this provision shall apply to (i) any sale, license or transfer of the assets described herein to any person or entity other than Twin America (as defined in this Assurance), including Zev (Mark) Marmurstein and/or any other person, and (ii) any asset that Twin America acquires after the Effective Date and then later sells or licenses within five years of the Effective Date.  Such assets do not include property sold, licensed, or transferred for less than $5,000.  For further avoidance of doubt, "proceeds" do not include (i) the assumption of debt or liabilities of Twin America or any or its affiliates or subsidiaries, (ii) the amount of any loan (including the designation of any collateral provided as the security for the repayment of any such loan) obtained by Twin America or any of its subsidiaries or affiliates, or (iii) the amount, not to exceed fair market value, of personal service contracts entered with Zev (Mark) Marmurstein, Paul Seeger, or James T. Murphy.  Following an applicable transaction as described in this Paragraph, Twin America shall produce to the OAG within five (5) business days documents sufficient to show the terms of the transaction and Twin America's proceeds from the transaction.  All payments described in this Paragraph shall be made within five (5) business days of Twin America acquiring or receiving the proceeds from the applicable transaction, and shall be made by wire transfer, payable to the State of New York.

30.    Any payments and all correspondence related to this Assurance must reference Assurance No. 25-015.

**MISCELLANEOUS**

Subsequent Proceedings

31.    Twin America expressly agrees and acknowledges that the OAG may initiate a subsequent investigation, civil action, or proceeding to enforce this Assurance, for violations of the Assurance, or if the Assurance is voided pursuant to Paragraph 37 and agrees and acknowledges that in such event:

a.    Any statute of limitations or other time-related defenses are tolled from and after the Effective Date of this Assurance;

b.    The OAG may use statements, documents, or other materials produced or provided by Twin America prior to or after the Effective Date of this Assurance;

c.    Any civil action or proceeding must be adjudicated by the courts of the State of New York, and that Twin America irrevocably and unconditionally waives any objection based upon personal jurisdiction, inconvenient forum, or venue; and

d.    Evidence of a violation of this Assurance shall constitute prima facie proof of a violation of the applicable law pursuant to Executive Law § 63(15).

32.    If a court of competent jurisdiction determines that Twin America has violated the Assurance, Twin America shall pay to the OAG the reasonable cost, if any, of obtaining such determination and of enforcing this Assurance, including, without limitation, legal fees, expenses, and court costs.

Effects of Assurance

33.    All terms and conditions of the Assurance shall continue in full force and effect on any successor, assignee, or transferee of any membership or stock interest of Twin America. Twin America shall include in any such successor, assignment or transfer agreement a provision that binds the successor, assignee or transferee to the terms of the Assurance. Twin America may not otherwise assign, delegate, or otherwise transfer any of its rights or obligations under this

Assurance without the prior written consent of the OAG.  For avoidance of doubt, the terms and conditions of the Assurance shall not be binding upon the assignee or transferee of assets of Twin America or any of its affiliates or subsidiaries (except if such assignment or transfer also includes the assignment or transfer of any membership or stock interest of Twin America).  For further avoidance of doubt, the provisions in Paragraph 29 concerning sale, license, or transfer of assets valued at $5,000 or more shall apply to the sale, license, or transfer of assets as described in this Paragraph.

34.     Nothing contained herein shall be construed as to deprive any person of any private right under the law.

35.     Any failure by the OAG to insist upon the strict performance by Twin America of any of the provisions of this Assurance shall not be deemed a waiver of any of the provisions hereof, and the OAG, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Assurance to be performed by Twin America.

Communications

36.     All notices, reports, requests, and other communications pursuant to this Assurance must reference Assurance No. 25-015, shall be in writing, and shall, unless expressly provided otherwise herein, be given by hand delivery; express courier; or electronic mail at an address designated in writing by the recipient, followed by postage prepaid mail, and shall be addressed as follows:

a.      If to Twin America:

Zev (Mark) Marmurstein
700 Rockway Turnpike, Suite 202
Lawrence, NY 11559
Email: mmarmurstein@twinamerica.com

With a copy to:
Saretsky Katz Dranoff Weissman & Maynard, L.L.P.
565 Taxter Road, Suite 210
Elmsford, New York 10523
Phone: (212) 973-9797
Fax: (212) 973-0939
Email: akatz@skdllp.com

b.    If to the OAG:

Michael D. Schwartz and James Yoon, Assistant Attorneys
General, and the persons holding the titles of Bureau Chief,
Antitrust Bureau (currently Elinor Hoffmann) and Deputy Bureau
Chief, Antitrust Bureau (currently Amy McFarlane).

Representations and Warranties

37.    The OAG has agreed to the terms of this Assurance based on, among other things,

the representations made to the OAG by Twin America and its counsel and the OAG's own

factual investigation as set forth in the Findings.  Twin America represents and warrants that

neither it nor its counsel has made any material representations to the OAG that are inaccurate or

misleading.  If any material representations by Twin America or its counsel are later found to be

inaccurate or misleading, this Assurance is voidable by the OAG in its sole discretion.

38.    No representations, inducement, promise, understanding, condition, or warranty

not set forth in this Assurance has been made to or relied upon by Twin America in agreeing to

this Assurance.

39.    Twin America represents and warrants, through the signatures below, that the

terms and conditions of this Assurance are duly approved.  Twin America further represents and

warrants that Zev (Mark) Marmurstein, as the signatory to this Assurance, is a duly authorized

officer acting on behalf of Twin America.

General Principles

40.     Unless a term limit for compliance is otherwise specified within this Assurance, Twin America's obligations under this Assurance are enduring.  Nothing in this Assurance shall relieve Twin America of other obligations imposed by any applicable state or federal law or regulation or other applicable law.

41.     Twin America shall not in any manner discriminate or retaliate against any of their employees, including but not limited to employees who cooperated or are perceived to have cooperated with the investigation of this matter or any future investigation related to enforcing this Assurance.

42.     Nothing contained herein shall be construed to limit the remedies available to the OAG in the event that Twin America violates this Assurance after its Effective Date.

43.     This Assurance may not be amended except by an instrument in writing signed on behalf of the OAG and Twin America.

44.     In the event that any one or more of the provisions contained in this Assurance shall for any reason be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, in the sole discretion of the OAG, such invalidity, illegality, or unenforceability shall not affect any other provision of this Assurance.

45.     Twin America acknowledges that it has entered this Assurance freely and voluntarily and upon due deliberation with the advice of counsel.

46.     This Assurance shall be governed by the laws of the State of New York without regard to any conflict of laws principles.

47.     The Assurance and all its terms shall be construed as if mutually drafted with no presumption of any type against any party that may be found to have been the drafter.

48.    This Assurance may be executed in multiple counterparts by the OAG and Twin America.  All counterparts so executed shall constitute one agreement binding upon the OAG and Twin America, notwithstanding that the OAG and Twin America are not signatories to the original or the same counterpart.  Each counterpart shall be deemed an original to this Assurance, all of which shall constitute one agreement to be valid as of the Effective Date of this Assurance.  For purposes of this Assurance, copies of signatures shall be treated the same as originals.  Documents executed, scanned and transmitted electronically and electronic signatures shall be deemed original signatures for purposes of this Assurance and all matters related thereto, with such scanned and electronic signatures having the same legal effect as original signatures.

49.    The Effective Date of this Assurance is April 10, 2025.

LETITIA JAMES
Attorney General of the State of New York

By:    *Michael D. Schwartz*
Michael D. Schwartz
James Yoon
Assistant Attorneys General, Antitrust Bureau

Amy McFarlane
Deputy Chief, Antitrust Bureau

Elinor R. Hoffmann
Chief, Antitrust Bureau

Christopher D'Angelo
Chief Deputy Attorney General for Economic
Justice

28 Liberty Street
New York, NY 10005

Page 16 of 17

TWIN AMERICA, LLC
CITYSIGHTS, LLC
CITY SIGHTS TWIN, LLC
GRAY LINE NEW YORK TOURS, INC.
CSA TICKETS, LLC
SIGHTSEEING PASS, LLC

*Zev Marmurstein*

By: _____

Zev (Mark) Marmurstein
President