P573GONM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GO NEW YORK TOURS, INC.,

                 Plaintiff,                 New York, N.Y.

            v.                              23 CV 4256(ER)

GRAY LINE NEW YORK TOURS,
INC., et al.,

                 Defendants.

------------------------------x        Teleconference

                                       May 7, 2025
                                       10:00 a.m.

Before:

                    HON. EDGARDO RAMOS,

                                       District Judge


                      APPEARANCES


BARTON, LLP
     Attorneys for Plaintiff
BY:  MAURICE N. ROSS
       RANDALL RASEY
       BARAK BACHARACH

GORDON REES SCULLY MANSUKHANI, LLP
     Attorneys for Defendant Gray Line New York Tours, Inc.
BY:  KERRY K. JARDINE
       RICHARD SYBERT
       DANIEL B. FIX


OLSHAN FROM WOLOSKY, LLP
     Attorneys for Defendant Big Bus
BY:  PETER SARTORIUS

P573GONM

P573GONM

THE COURT:  Good morning.  This is Judge Ramos.
Jazmin, please call the case.

THE DEPUTY CLERK:  In the matter of Go New York Tours
v. Gray Line New York Tours, et al.

Counsel, please state your name for the record,
starting with counsel for plaintiff.

MR. ROSS:  This is Maurice Ross on behalf of plaintiff
Go New York Tours.  With me are my colleagues Randall Rasey and
Barak Bacharach.

THE DEPUTY CLERK:  Counsel for defendant Gray Line?

MS. JARDINE:  This is Kerry Jardine for Gray Line New
York Tours, Twin America, LLC and Sightseeing Pass, LLC.  On
the call with me are my colleagues Richard Sybert and Dan Fix.

THE DEPUTY CLERK:  And counsel for Big Bus defendants.

MR. SARTORIUS:  Good morning.  This is Peter Sartorius
for the Big Bus defendants and the Go City defendants, and I'm
by myself.

THE COURT:  Good morning to you all.  This matter is
on for a conference.  I note for the record it is being
conducted by telephone.

We are here at the request of Mr. Ross.  Mr. Ross, I
issued an opinion dismissing this case in August of last year.
That opinion was affirmed by the Second Circuit just last
month.  What is it you want to do?

MR. ROSS:  Your Honor, we would like to make a motion

P573GONM

under Rule 60(b) to reopen the judgment and proceed with the case. We think that exceptional circumstances exist. The standard under Rule 60(b) under recent Second Circuit case *Jeanty v. City of Utica*, a movant must show that the conduct of plaintiff prevented the moving party from fully and fairly presenting its case.

In this case, that is exactly what defendants did. They submitted the affirmation of Julia Conway which misrepresented the nature and the extent of their relationship. In particular, they told the Court that their relationship was a mere ticket selling relationship. They told this Court and they told the Federal Circuit that on multiple occasions. That representation was false.

We now know from an investigation conducted by the New York attorney general that these entities had engaged in at least eight additional agreements that were not disclosed to this Court, including operation management agreements.

We also know from the attorney general pursuant to these agreements the attorney general alleged that there have been violations of the Donnelly Act and the Sherman Act, and many of the attorney general's allegations track those that we made in this case.

But more importantly, we learned about new claims are similar claims that arise from the fact that the defendants combined their operations. And these agreements were unknown

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P573GONM

to us at the time.  We could not have known about them.  We didn't know about the attorney general's investigation, none of that was disclosed to either Go New York or the courts in either this case or our companion state case.  So under Rule 60(b), we could not have made those allegations.

Most importantly, Go New York has suffered antitrust injury in a couple of ways.  Your Honor may recall in the pleadings we submitted to your Honor, we alleged that the defendants had misrepresented to the Department of Transportation that the Gray Line defendants and City Sightseeing would continue to operate, and therefore they should continue to have exclusive access to certain bus stops.

The attorney general found, as we had alleged, that in fact more than misrepresentations, they attempted to fool the Department of Transportation, they conspired together to operate a single Gray Line or City Sightseeing bus to make it look like Gray Line was going to resume operations in order to maintain access to the bus stop.

Now why is that important?  Your Honor, in this industry, bus stops, the exclusive access to a bus stop in a major tourist location is worth millions of dollars.  And by engaging in this conduct, they excluded Go New York from having the opportunity to have access to those bus stops.

But there is much more.  The attorney general also found, alleged, that the defendants had engaged in price fixing

P573GONM

and had engaged in misconduct regarding consumers.  In particular, we now know that the defendants combined together under various websites and in their marketing activities to tell consumers who wanted to ride buses operated by City Sightseeing and Gray Line, which is a famous brand, they told them they sold tickets, they told them they would be riding buses operated by Gray Line and City Sightseeing, and in fact, they did not disclose that they would be riding only buses operated by Big Bus, a completely different experience.  They misled consumers.  Had they not misled consumers, Go New York would have acquired a very significant percentage of those consumers.

In addition, by the way, your Honor, to antitrust claims, we now believe we have claims under the Lanham Act for false advertising that we didn't know about at the time of the previous lawsuit.

But most importantly, your Honor, we now know that the defendants falsely represented to this Court the nature of their relationship.  They have in fact combined their operations in a manner that the attorney general found was likely to violate both the Sherman Act and the Donnelly Act.

The elephant in the room has been whether or not this constituted a merger as opposed to some other kind of arrangement, but it really doesn't matter.  We did allege originally that there was a merger, I still believe there may

P573GONM

have been a merger, but putting that to the side, we also alleged there was a combination in restraint of trade, both Section 1 and Section 2 of the Sherman Act apply here. Clearly there was at the very least a combination of restraint of trade. This Court was not provided full information concerning the nature of their relationship when it issued its decision.

Now, I'm not going to get into the issue of the res judicata on the attractions. We believe that as part of this developing relationship, they continued to exclude Go New York from attractions, we believe they engaged in predatory pricing in order to exclude Go New York. But putting aside the attractions, there is clear evidence for Go New York to state a claim under the Antitrust Act.

I also want to point out they recently attempted to once again mislead the Court about what happened in the state case. They attached to their letter to the Court an order from the state judge. What happened in the state, we have a state case, the state case was based essentially on the same allegations that your Honor dismissed. The New York Court of Appeals held that under the New York State pleading standard we had stated a proper antitrust claim under the Donnelly Act. That claim is proceeding. We asked the state court to amend the state pleadings to include claims arising from the combination between Gray Line and Big Bus, and the state judge, initially relying on your Honor's opinion, refused to allow us

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P573GONM

to amend those claims.  We had a hearing in state court last week, and after hearing about this same issue, the state court declined our request to provide immediate discovery concerning these new facts and the new relationship and the new agreements.  However, the state court -- and this is where they misled your Honor -- the state court granted us leave to make a motion in state court to amend the pleadings in the state court to raise these issues.

So fundamentally, your Honor, we unfortunately were the victim of false representations to this Court.  We did not have the opportunity to fully and fairly present our case.  The argument that none of these facts are new is frankly preposterous.  We did not know about these other agreements. They were not disclosed to us.  In fact, the defendants falsely represented to this Court that there was nothing to see here, nothing to see at all.  All we had was a ticket selling relationship.

Now we have an attorney general settlement where the defendants have agreed to pay $2.5 million and engage in conduct, cease various types of conduct alleged by the attorney general to be anticompetitive.

Now, the defendants deny all this, of course, but actions speak louder than words, and they've agreed to make a substantial payment, and the attorney general of the State of New York found that many of the allegations that really track

P573GONM

what we alleged in our case stated claims, plausible claims --
more than plausible, under the Donnelly Act and under the
Sherman Act.

So, for that reason, what we request is simply leave
to file a motion under Rule 60(b) to reopen the judgment and to
be proceed with this case.

THE COURT:  Can I ask you, first of all, if I dealt
with this issue in the past I don't recall.  What is the legal
effect of an assurance of discontinuance?

MR. ROSS:  The legal effect on the -- well, the case
is discontinued unless we can meet the standard under
Rule 60(b) to show this is an exceptional case where we were --

THE COURT:  No.  Mr. Ross, I take it that the basis,
the underlying basis for your proposed motion is the fact that
the attorney general of New York issued an assurance of
discontinuance against the defendants.  So that's the assurance
of discontinuance I'm asking about.

What is the legal effect of that document?

MR. ROSS:  I don't believe it has res judicata impact
on this Court.  We know what the allegations of the attorney
general was, we know there was a settlement.  The settlement
does require defendants to comply with the terms of the
settlement which involves ceasing certain allegedly
anticompetitive activity, but they've made no admissions for
purposes of this Court that they in fact violated the antitrust

P573GONM

laws.

THE COURT:  Okay.  Thank you.

Ms. Jardine or Mr. Sartorius, which one of you is speaking for defendants?

MR. SARTORIUS:  This is Peter Sartorius.  I want to the correct a few things.  With respect to the AODs, as Mr. Ross did state, they do provide of course that the defendants that are parties to those AODs neither admit nor deny.  That was a very important thing for us when we were resolving the attorney general's investigation.  Obviously we do deny all wrongdoing or any suggestion of wrongdoing that's set forth in the AODs.

With respect to your Honor's questions about the effect of the AODs, the legal significance of the AODs, the attorney general's own findings after its investigation into the matters discussed in the AODs, they do contain -- I think the AODs were attached as an exhibit to Mr. Ross's letter to the Court.  They do contain an agreement by the parties to the AODs to not engage in anticompetitive conduct, which was a pretty easy thing for the defendant to agree to, given they deny that they ever engaged in any anticompetitive conduct.

With respect to Mr. Ross's assertion that we have somehow misled the Court, he referred to a declaration of Julia Conway, which I think it's document 68 on the ECF docket. Julia Conway at that time was the executive vice president for

P573GONM

Big Bus.  It is a two-paragraph declaration that Mr. Ross is referring to, only one of which is substantive, and basically it attaches for the Court the memorandum of understanding that is specifically alleged by Go New York, the plaintiff here, to constitute or memorialize the supposed merger between and amongst the various defendants in this case.

And that was provided to the Court to demonstrate for the Court that there was a simple, rather than being a merger agreement or some other agreement by which a merger or other business combination, unlawful or otherwise, was effectuated. It was instead a simple ticket reseller agreement, and that remains the case.  There is no misleading.  It is responding to two specific allegations in the amended verified complaint, paragraphs 44 and 45.  That was the only purpose of the declaration, and it did not mislead the Court.

We stand by that declaration.  There is not a single sentence in that declaration that is untrue.  Nor did Mr. Ross pointed to any single sentence of that declaration as untrue.

With respect to Federal Rule of Civil Procedure 60(b), Mr. Ross is correct that relief, the relief he's seeking here, which is basically to vacate a judgment of this Court that was affirmed by the Second Circuit two weeks ago, is permitted in very exceptional circumstances, which we don't believe are present here.

As a threshold matter, this is probably a unique

P573GONM

procedural posture for such a motion, given that Rule 60(b)(2) contemplates new evidence, which of course contemplates an evidentiary proceeding that resulted in the judgment that the moving party wants to vacate, and there was no evidentiary proceeding, this is not a judgment that was procured after a summary judgment motion or after a trial.  This was on a motion to dismiss.  It was on a motion based on the pleaded allegations, not based on evidence as contemplated by Rule 60(b).

So for that reason, we don't think Rule 60(b) applies or can be invoked to effectively vacate this Court's judgment.

Rather than being dismissed on the evidence presented by the parties, the Court determined that plaintiff's claims are barred as a matter of law by res judicata.  The Second Circuit affirmed that determination by this Court and held that plaintiff's multi-attraction pass claims were raised in the prior action that was dismissed by Judge Kaplan.  You heard Mr. Ross in his presentation acknowledging that or implicitly acknowledging that.

And the Second Circuit also affirmed this Court's determination that plaintiff's merger claim, which was also raised in the prior actions, are not supported by the plaintiff's factual allegations or at least the factual allegations that plaintiff does plead in support of that merger claim don't state a plausible claim for relief.  None of these

P573GONM

findings are based on -- are based on the allegations in the complaint.  They're not based on evidence that could have been proffered by the plaintiff.

The plaintiff is basically asking for another shot to plead its claims in this case.  They've already had a chance to replead it once.  And as the Court knows, this Court and the Second Circuit have already determined those pleaded claims are barred by res judicata.

Even assuming that plaintiff could invoke Rule 60(b)(2) here, the critical requirement to invoke that subpart of Rule 60(b) is the new, quote unquote, evidence is of such importance that it probably would have changed the outcome of the case.  And that's not the case here.

Mr. Ross referenced the various agreements that are listed in the attorney general's assurances of discontinuance, but those agreement doesn't bolster the plaintiff's allegations in this case.  The AODs don't say anything about those agreements effectuating a merger or interference by the defendants with plaintiff's efforts to sign a multi-attraction pass partners.  And those are the two cores of what plaintiff's claims are about in this case.

Instead, the AODs and the agreements that are listed in the AODs according to the attorney general simply say those agreements -- the defendants agree that Twin would cease running its bus tours in New York City and Big Bus would

P573GONM

operate a bus on behalf of Twin America so Twin America could maintain its bus stop permits with the New York City Department of Transportation.

But plaintiff's complaint already contains those allegations. We referenced a couple paragraphs in our responsive letter to the Court. We would direct the Court to the first amended complaint Paragraph 55 and 58. Those allegations of those agreements were already before the Court when it dismissed plaintiff's claims and determined they were barred by res judicata. And they were of course before the Second Circuit when the Second Circuit affirmed your Honor's decision dismissing plaintiff's claims.

And unless your Honor has any questions, I'll leave it there.

THE COURT:  Okay.  Ms. Jardine, did you want to add anything?

MS. JARDINE:  Yes, your Honor.  I just wanted to specifically reference the AOD.  With respect to the AOD, the AOD does not create any rights for any third party which would include Go New York, and these the documents that -- this argument has been raised before the state court.  The state court also found that, as opposed to saying, I believe as plaintiff alleged during this call that the state court said that he was granted leave to make a motion and that's incorrect.  The court said that it cannot stop plaintiff from

P573GONM

making a motion.  It has not granted leave, which implies that they believe that this case is now plausible or likely to succeed past res judicata.

THE COURT:  Okay.  Mr. Ross, anything else to add?

MR. ROSS:  I do, your Honor.  The elephant in the room is that the allegations that this was a mere ticket selling relationship and that was false.  And we now know, and they say, well, we alleged in our original pleading that there were a series of other agreements, but both your Honor and the Second Circuit, the Court found that those allegations were too speculative.  Well, we now know they were true.  There were these other agreements but they were not before the Court.  We didn't have access to them.

They keep coming back to the fact there was a res judicata finding based on the attractions.  We always alleged, in addition to the anticompetitive conduct relating to the attractions, we also alleged there was anticompetitive conduct to bus stops, but also the misrepresentations to consumers involving the nature of the relationship between Gray Line and Big Bus.  They were never told they would be riding on a Big Bus product.  It is a different product.  They were misled.  We lost customers and that was part of the anticompetitive scheme.

We also now believe we have new claims under the Lanham Act, putting aside the claims under the Sherman and Donnelly Act, and we think that this is an exceptional case in

P573GONM

which your Honor should give us an opportunity to plead once again antitrust violations and a new Lanham Act violation.

THE COURT:  Why don't you bring a new case?

MR. ROSS:  Well, we could, your Honor, but we think that, frankly, the existing case, there are statute of limitations issues, first of all, because we knew some of this at least three years ago.

Second of all, your Honor, we think we are entitled as a matter of law under Rule 60(b) to reopen this judgment.  The alternative would be to bring a new case, which we might be forced to do, but we think this belongs before this Court as part of the existing litigation.  The Second Circuit opinion is only a couple weeks ago.  Frankly, we believe false representations were made to your Honor.  Your Honor's decision and the Second Circuit's decision were made on an incorrect premise.  Predicate.  We think we're entitled to proceed with this litigation.

THE COURT:  Very well.  So I am going to let you make your motion to be done on the following schedule.  The motion will be due on May 28.  The response will be due on June 18.  And the reply will be due on June 25.  Okay?

MR. ROSS:  Thank you, your Honor.

THE COURT:  Anything else to do today?

MR. SARTORIUS:  Thank you, your Honor.

THE COURT:  Anything else we should do today?

P573GONM

MR. ROSS:  Your Honor, it would be helpful if the Court would order them to produce these agreements.  I understand the Court may not be inclined to do so, but we think that would be an appropriate order from the Court in this circumstance.

THE COURT:  Don't you have them?

MR. ROSS:  No, we don't have them.  We do not have them.

THE COURT:  I'm not going to order them to produce any discovery at this point.

Anything else from you, Mr. Sartorius?

MR. SARTORIUS:  No, your Honor.  Thank you.

THE COURT:  Ms. Jardine?

MS. JARDINE:  No, your Honor.  Thank you.

THE COURT:  Okay.  In that event we are adjourned. Stay well.

MR. ROSS:  Thank you, your Honor.

(Adjourned)