# EXHIBIT 1

ATTORNEY GENERAL OF THE STATE OF NEW YORK
ANTITRUST BUREAU

In the Matter of

**Investigation by LETITIA JAMES,**
**Attorney General of the State of New York, of**

**Big Bus Tours Limited,**
**Taxi Tours, Inc. (d/b/a Big Bus Tours New York),**
**Open Top Sightseeing USA Inc., &**
**Open Top Sightseeing LLC,**

Respondents.

Assurance No. 24-070

## ASSURANCE OF DISCONTINUANCE

The Office of the Attorney General of the State of New York ("OAG") has commenced

an investigation pursuant to the Donnelly Act (New York General Business Law § 340 *et. seq.*),

Section 63(12) of the New York Executive Law, and Section 1 of the Sherman Act (15 U.S.C.

§ 1) into the potential impact on competition caused by the use of reseller and operation

management agreements for the provision of hop-on/hop-off ("HOHO") bus tour services in

New York City ("the OAG Investigation").

As part of the OAG Investigation of Big Bus Tours Limited, Taxi Tours, Inc. (d/b/a Big

Bus Tours New York), Open Top Sightseeing LLC, and Open Top Sightseeing USA Inc.

(together, "Big Bus"), the OAG has specifically considered the impact on competition caused by

agreements between Big Bus and its competitors Twin America, LLC, Gray Line New York

Tours, Inc., CSA Tickets, LLC, and Sightseeing Pass, LLC (together, "Twin America"). The

OAG, among other things, reviewed documents and information produced by Big Bus, gathered

and analyzed relevant market data, and obtained documents, information, and testimony from other market participants.

This Assurance of Discontinuance ("Assurance") contains the findings of the OAG Investigation, and the relief agreed to by the OAG and Big Bus (collectively, the "Parties").  Big Bus enters into this Assurance for the sole purpose of resolving the OAG Investigation only and neither admits nor denies the OAG's findings below.  This Assurance does not create any rights for any third party.

## OAG's FINDINGS

1.      HOHO bus tours stop at a variety of sightseeing destinations throughout a city. Customers purchase a ticket that allows them to "hop on" the bus and then "hop off" the bus at designated stops.  HOHO buses are typically double-decker buses that travel on a fixed route or loop.  HOHO bus tours often have on-board audio devices that provide sightseeing commentary to customers.  HOHO bus tours provide a convenient way for tourists to travel to numerous sightseeing destinations and to learn about those destinations and the city while they are traveling.

2.      Big Bus and Twin America are competitors in the HOHO bus tour market in New York City.  In 2019 and 2020, before the Covid-19 pandemic, Big Bus was the largest provider of HOHO bus tours in New York City and Twin America was the second largest provider of HOHO bus tours in New York City.  Big Bus remains one of the largest providers of HOHO bus tours in New York City today.

3.      HOHO bus tours are sold as individual tickets or as part of a bundled Attraction Sightseeing Pass.  Attraction Sightseeing Passes combine access to attractions and sightseeing destinations throughout New York City, including HOHO bus tours.  HOHO bus tour tickets and

Attraction Sightseeing Passes are sold by HOHO bus tour operators, Attraction Sightseeing Pass companies, and by authorized sellers and resellers (hereinafter, "Attraction Pass Sellers"). Attraction Sightseeing Passes are sold through a number of channels including online and in-person at ticket offices and hotel concierge desks.

4.      Beginning in 2020, affiliates of Big Bus and Twin America entered into a series of written agreements (together, the "Agreements"):

a.      Memorandum of Understanding, dated August 27, 2020;

b.      Extension of Memorandum of Understanding, dated March 1, 2021;

c.      Updated Memorandum of Understanding, dated December 1, 2021;

d.      Reseller Ticket Agreement, dated December 1, 2021;

e.      Vehicle-Specific Operation and Management Agreement, dated January 1, 2022;

f.      Global Reseller Ticket Agreement, dated January 1, 2023 (the "Global Reseller Ticket Agreement");

g.      Operation and Management Agreement, dated February 21, 2023;

h.      Memorandum of Understanding, dated February 21, 2023; and

i.      Amendment to Vehicle-Specific OMA, dated February 21, 2023.

5.      Through the Agreements and other oral and written assurances and conduct, Big Bus and Twin America agreed that (i) Twin America would re-sell tickets for Big Bus HOHO bus tours in New York City and Big Bus would pay Twin America higher commission rates than in any other city in which Twin America re-sells Big Bus HOHO bus tour tickets; and (ii) Big Bus would operate between one and four HOHO buses owned by Twin America to enable Twin America to maintain its authorized bus stop permits in New York City.

6.      Since approximately March 2020 and continuing to the present, Twin America has not operated any HOHO buses in New York City and continues to re-sell Big Bus HOHO bus tour tickets in New York City, primarily through Twin America's Attraction Sightseeing Passes.

7.      The OAG finds the Agreements reduced competition for HOHO bus tour services in New York City because Twin America has not operated HOHO bus tours in New York City since the Agreements have been in effect.  The OAG has not identified any procompetitive justification for the Agreements.

8.      The OAG finds that Big Bus's entry into the Agreements likely violates the Donnelly Act, Gen. Bus. Law § 340 *et. seq.*; the Sherman Act, 15 U.S.C. § 1; and Executive Law § 63(12).

9.      The OAG finds the relief and agreements contained in this Assurance appropriate and in the public interest.  THEREFORE, the OAG is willing to accept this Assurance pursuant to Executive Law § 63(15), in lieu of commencing a statutory proceeding for likely violations of the Donnelly Act, Gen. Bus. Law § 340 *et. seq.*, the Sherman Act, 15 U.S.C. § 1, and Executive Law § 63(12).

IT IS HEREBY UNDERSTOOD AND AGREED, by and between the Parties:

**RELIEF**

10.      Except as described in Paragraph 11, Big Bus shall immediately terminate and cease performing the Agreements, and shall not enforce the Agreements against Twin America, whether formally or informally.  Big Bus shall immediately terminate and cease performing all other existing agreements, assurances or understandings with Twin America or its affiliates

related to the New York City Metropolitan area, whether oral or written, and whether formal or informal.

11.    Big Bus shall terminate and cease performing and enforcing the Global Reseller Ticket Agreement, as provided in this Paragraph, thirty (30) days after the Effective Date, and not sooner or later.  Big Bus need only terminate and cease performing and enforcing the parts of Global Reseller Ticket Agreement that concern the NYC Market, which is defined in the Global Reseller Ticket Agreement as the New York City metropolitan area.  Such termination and cessation of performance and enforcement includes Twin America's sale, resale, and marketing of Products in the NYC Market, as those terms are defined in the Global Reseller Ticket Agreement.  Notwithstanding the foregoing termination and cessation of performance and enforcement, Section 12.3 ("Effect of Termination") and Section 12.4 ("Survival") of the Global Reseller Ticket Agreement may continue to be performed and enforced pursuant to their terms. Nothing in this Assurance prohibits Big Bus from enforcing and performing the parts of the Global Reseller Ticket Agreement that do not concern the NYC Market.

12.    For ten (10) years following the Effective Date, Big Bus or its affiliates shall not enter into any agreements, assurances or understandings with Twin America or its affiliates, whether oral or written and whether formal or informal, concerning the operation of buses for HOHO bus tours in New York State.  For the avoidance of doubt, nothing in this Assurance prohibits Big Bus from entering into a new agreement with Twin America after the Effective Date pursuant to which Twin America is permitted to re-sell tickets for Big Bus HOHO bus tours in New York City (to the extent such agreement is not otherwise prohibited by this Assurance).

13.    For ten (10) years following the Effective Date, Big Bus shall promptly notify the OAG of any other agreements, assurances or understandings Big Bus or its affiliates enter into

with Twin America or its affiliates concerning the NYC Market (other than those described in Paragraph 12, which are prohibited by this Assurance).  This Paragraph applies to settlement agreements that Big Bus or its affiliates enter into with Twin America or its affiliates in connection with currently pending or future litigation.  This Paragraph does not apply to common interest agreements, joint defense agreements, litigation stipulations, or similar routine litigation-specific agreements (other than settlement agreements) that Big Bus or its affiliates enter into with Twin America or its affiliates in connection with currently pending or future litigation.

14.    For ten (10) years following the Effective Date, Big Bus shall promptly notify the OAG of any exclusive agreements, exclusive assurances, or exclusive understandings that Big Bus or its affiliates enter into with any entity that provides HOHO bus tour services in New York State or with any Attraction Pass Seller in New York State.  This Paragraph does not apply to agreements, assurances, or understandings between Big Bus (on the one hand) and Big Bus, The Leisure Pass Group, or wholly-owned subsidiaries of either (on the other hand).

15.    For ten (10) years following the Effective Date, Big Bus shall provide advance notice to OAG prior to Big Bus or its affiliates directly or indirectly acquiring any assets of or any interest in any entity providing HOHO bus tour services in New York State.  Such interest may include, but is not limited to, any financial, security, loan, equity, or management interest.

16.    The notification described in Paragraph 15 must be provided to the OAG at least forty-five (45) days prior to Big Bus's or its affiliate's acquiring of the interest.  The notification shall include, at a minimum, a copy of the document or documents memorializing the proposed transaction, the names of the parties to the proposed transaction, the names of the people who negotiated the proposed transaction, and copies of all management and strategic plans discussing

the proposed transaction.  Big Bus or its affiliate shall not consummate the proposed transaction until forty-five (45) days after providing such information to the OAG.

17.    Big Bus will provide a copy of this Assurance to each of its officers and directors within seven (7) days of the Effective Date.

18.    Until the date when the OAG notifies Big Bus that the OAG Investigation is concluded, Big Bus agrees to continue to provide full, complete and prompt cooperation with the OAG in related proceedings and actions, against any other person, corporation or entity.  Big Bus agrees to use its best efforts to secure the full and truthful cooperation of current officers, directors, employees and agents with the ongoing OAG Investigation and any related proceedings and actions.

19.    Cooperation shall also include, but is not limited to: (a) voluntarily and promptly producing, without service of subpoena, to the extent permitted by law or regulation, all information, documents or other tangible evidence reasonably requested by the OAG that relates to the OAG Investigation; and (b) if requested by the OAG, working to ensure that Big Bus's current officers, directors, employees, and agents attend, on reasonable notice, any proceedings (including but not limited to meetings, interviews, hearings, depositions, grand jury proceedings, and trials) and answer completely, candidly, and truthfully any and all inquiries relating to the OAG Investigation that may be put to such persons by the OAG (or any deputies, assistants or agents), without the necessity of a subpoena.

20.    The cooperation set forth herein is subject to Big Bus's right to withhold documents or testimony on the grounds of privilege, work-product or other legal doctrine, and Big Bus does not waive any privilege, work-product or other legal doctrine applicable to disclosure of information by cooperating with the OAG Investigation.

21.     For ten (10) years following the Effective Date, Big Bus will promptly notify the OAG if it learns of any violation or potential violation of this Assurance known to any officer, director, or senior manager.  Descriptions of violations or potential violations of this Assurance shall include, to the extent practicable, a description of any communications constituting the violation or potential violation, including the date and place of the communication, the persons involved, and the subject matter of the communication.  Big Bus will preserve all communications related to a known violation or known potential violation of this Assurance.

22.     Acceptance of this Assurance by the OAG is not an approval or endorsement by the OAG of any of Big Bus's policies, practices or procedures, and Big Bus or its affiliates shall make no representation to the contrary.

23.     The Parties agree that it would be difficult to value the damage caused if Big Bus is found to have knowingly failed to disclose any agreement, assurance, or understanding with Twin America, whether oral or written, pertaining to the subject matter of the OAG Investigation, as of the Effective Date (other than the Agreements).  Therefore, the Parties agree that Big Bus shall pay by wire transfer, payable to the State of New York, a stipulated penalty of $1 million ($1,000,000.00) for knowingly failing to disclose each and every such agreement, assurance, or understanding.

24.     The Parties agree that it would be difficult to value the damages caused by default in the performance of any obligation in this Assurance.  Therefore, the Parties agree that Big Bus shall pay by wire transfer, payable to the State of New York, a stipulated penalty of $50,000 per month (following the date of the default) for each and every such default in the performance of any obligation in this Assurance, occurring after the Effective Date.

25. For ten (10) years following the Effective Date, Big Bus shall provide the OAG with a certification affirming its compliance with the requirements set forth in this Assurance, to be submitted to the OAG on August 1 of each year, starting on August 1, 2025. This certification shall be in writing and be signed by Big Bus. In any case where the circumstances warrant, the OAG may require Big Bus to file an interim certification of compliance upon thirty (30) days' notice.

26. Within five (5) business days of the Effective Date, Big Bus agrees that it will pay by wire transfer, payable to the State of New York, the monetary sum of $2,000,000.

27. Any payments and all correspondence related to this Assurance must reference Assurance No. 24-070.

**MISCELLANEOUS**

Subsequent Proceedings

28. Big Bus expressly agrees and acknowledges that the OAG may initiate a subsequent investigation, civil action, or proceeding to enforce this Assurance, for violations of the Assurance, or if the Assurance is voided pursuant to Paragraph 34 and agrees and acknowledges that in such event:

    a. Any statute of limitations or other time-related defenses are tolled from and after the Effective Date of this Assurance;

    b. The OAG may use statements, documents, or other materials produced or provided by Big Bus prior to or after the Effective Date of this Assurance;

    c. Any civil action or proceeding must be adjudicated by the courts of the State of New York, and that Big Bus irrevocably and unconditionally waives any objection based upon personal jurisdiction, inconvenient forum, or venue; and

    d. Evidence of a violation of this Assurance shall constitute prima facie proof of a violation of the applicable law pursuant to Executive Law § 63(15).

29.     If a court of competent jurisdiction determines that Big Bus has violated the Assurance, Big Bus shall pay to the OAG the reasonable cost, if any, of obtaining such determination and of enforcing this Assurance, including, without limitation, legal fees, expenses, and court costs.

Effects of Assurance

30.     All terms and conditions of this Assurance shall continue in full force and effect on any successor, assignee, or transferee of Big Bus.  Big Bus shall include in any such successor, assignment or transfer agreement a provision that binds the successor, assignee or transferee to the terms of the Assurance.  Big Bus may not assign, delegate, or otherwise transfer any of its rights or obligations under this Assurance without prior written consent of the OAG, with the exception that with respect to a merger, sale or other transaction of Big Bus to an unrelated party, Big Bus shall provide to the OAG a copy of the document or documents memorializing the proposed transaction, the names of the parties to the proposed transaction, the names of the people who negotiated the proposed transaction, and copies of all management and strategic plans discussing the proposed transaction; Big Bus shall not consummate the proposed transaction until forty-five (45) days after providing such information to the OAG.

31.     Nothing contained herein shall be construed as to deprive any person of any private right under the law.

32.     Any failure by the OAG to insist upon the strict performance by Big Bus of any of the provisions of this Assurance shall not be deemed a waiver of any of the provisions hereof, and the OAG, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Assurance to be performed by Big Bus.

Communications

33.    All notices, reports, requests, and other communications pursuant to this

Assurance must reference Assurance No. 24-070, shall be in writing, and shall, unless expressly

provided otherwise herein, be given by hand delivery; express courier; or electronic mail at an

address designated in writing by the recipient, followed by postage prepaid mail, and shall be

addressed as follows:

    a.    If to Big Bus: Julia Conway, Chief Operating Officer, 723 Seventh
          Avenue, 5th Floor, New York, New York, 10019
          JuliaConway@bigbustours.com.

    b.    If to the OAG: James Yoon, Assistant Attorney General, and the
          persons holding the titles of Bureau Chief, Antitrust Bureau
          (currently Elinor Hoffmann) and Deputy Bureau Chief, Antitrust
          Bureau (currently Amy McFarlane).

Representations and Warranties

34.    The OAG has agreed to the terms of this Assurance based on, among other things,

the representations made to the OAG by Big Bus and its counsel and the OAG's own factual

investigation as set forth in the Findings.  Big Bus represents and warrants that neither it nor its

counsel has made any material representations to the OAG that are inaccurate or misleading.  If

any material representations by Big Bus or its counsel are later found to be inaccurate or

misleading, this Assurance is voidable by the OAG in its sole discretion.

35.    No representations, inducement, promise, understanding, condition, or warranty

not set forth in this Assurance has been made to or relied upon by Big Bus in agreeing to this

Assurance.

36.    Big Bus represents and warrants, through the signatures below, that the terms and

conditions of this Assurance are duly approved.  Big Bus further represents and warrants that

Julia Conway, as the signatory to this Assurance, is a duly authorized officer acting on behalf of Big Bus.

General Principles

37.      Unless a term limit for compliance is otherwise specified within this Assurance, Big Bus's obligations under this Assurance are enduring.  Nothing in this Assurance shall relieve Big Bus of other obligations imposed by any applicable state or federal law or regulation or other applicable law.

38.      Big Bus shall not in any manner discriminate or retaliate against any of their employees, including but not limited to employees who cooperated or are perceived to have cooperated with the investigation of this matter or any future investigation related to enforcing this Assurance.

39.      Nothing contained herein shall be construed to limit the remedies available to the OAG in the event that Big Bus violates this Assurance after its Effective Date.

40.      This Assurance may not be amended except by an instrument in writing signed on behalf of the OAG and Big Bus.

41.      In the event that any one or more of the provisions contained in this Assurance shall for any reason be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, in the sole discretion of the OAG, such invalidity, illegality, or unenforceability shall not affect any other provision of this Assurance.

42.      Big Bus acknowledges that it has entered this Assurance freely and voluntarily and upon due deliberation with the advice of counsel.

43.      This Assurance shall be governed by the laws of the State of New York without regard to any conflict of laws principles.

44.     The Assurance and all its terms shall be construed as if mutually drafted with no presumption of any type against any party that may be found to have been the drafter.

45.     This Assurance may be executed in multiple counterparts by the OAG and Big Bus.  All counterparts so executed shall constitute one agreement binding upon the OAG and Big Bus, notwithstanding that the OAG and Big Bus are not signatories to the original or the same counterpart.  Each counterpart shall be deemed an original to this Assurance, all of which shall constitute one agreement to be valid as of the Effective Date of this Assurance.  For purposes of this Assurance, copies of signatures shall be treated the same as originals.  Documents executed, scanned and transmitted electronically and electronic signatures shall be deemed original signatures for purposes of this Assurance and all matters related thereto, with such scanned and electronic signatures having the same legal effect as original signatures.

46.     The Effective Date of this Assurance is September 9, 2024.


LETITIA JAMES
Attorney General of the State of New York


By:    _____  9/09/24
James Yoon
Beatriz Marques
Michael Schwartz
Assistant Attorneys General, Antitrust Bureau

Amy McFarlane
Deputy Chief, Antitrust Bureau

Elinor R. Hoffmann
Chief, Antitrust Bureau

Christopher D'Angelo
Executive Deputy Attorney General
for Economic Justice

28 Liberty Street
New York, NY 10005


BIG BUS TOURS LIMITED
TAXI TOURS, INC.
OPEN TOP SIGHTSEEING USA INC.
OPEN TOP SIGHTSEEING LLC

By: _____
Julia Conway
Chief Operating Officer