# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GO NEW YORK TOURS, INC.,<br><br>                              Plaintiff,<br><br>       -against-<br><br>GRAY LINE NEW YORK TOURS, INC.,<br>CITYSIGHTS LLC, CITY SIGHTS TWIN, LLC,<br>CSA TICKETS, LLC, SIGHTSEEING PASS,<br>LLC, TWIN AMERICA, LLC, BIG BUS<br>TOURS LIMITED, OPEN TOP SIGHTEEING<br>USA INC., and TAXI TOURS INC.,<br><br>                              Defendants. | Civil Action No. 1:23-cv-04256-ER<br><br>[PROPOSED]<br>**SECOND AMENDED<br>VERIFIED COMPLAINT**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff Go New York Tours, Inc. ("Go New York"), by its undersigned counsel, hereby alleges, as against defendants Gray Line New York Tours, Inc., CitySights LLC, City Sights Twin, LLC, CSA Tickets, LLC and Twin America, LLC (referred to herein collectively as "Twin America"), and Big Bus Tours Limited, Open Top Sightseeing USA, Inc., and Taxi Tours Inc. (referred to herein collectively as "Big Bus"), as follows:

## THE NATURE OF THE CASE

1.      This is an action for violations of federal and New York antitrust statutes, false designation of origin under federal statute, deceptive consumer-directed practices and false advertising under New York statutes, and related common law claims against the two largest providers of hop-on, hop-off sightseeing bus tours in the New York City market. Beginning in mid-2020, Twin America and Big Bus, ostensibly competitors of each other, colluded, via a series of anticompetitive agreements, to effectively combine their respective hop-on, hop-off bus tour operations in New York City, in order to  reduce competition in the New York City market and enable Big Bus to monopolize the market. The intent and effect of their collusion was to reduce

competition and impede Go New York's ability to compete with its own hop-on, hop-off bus tour operation.

2.      As a result of the New York Attorney General's investigation into their collusion and anticompetitive agreements, Twin America and Big Bus were compelled to terminate those agreements, thereby ending their misconduct alleged herein. Go New York brings this action against them to recover its damages caused by their anticompetitive arrangements and scheme which endured for approximately four and one half years, and for additional relief pursuant to the applicable statutes.

## THE PARTIES

### *Plaintiff Go New York*

3.      Plaintiff Go New York is a New York corporation with its principal place of business located at 2 East 42nd Street, New York, New York.  Go New York is engaged in the business of offering tourism-related services primarily in the New York City area. Among other things, Go New York operates hop-on, hop-off tour buses under the brand name "TopView".

### *The Twin America Defendants*

4.      Defendant Gray Line New York Tours, Inc. is a New York corporation with its principal place of business, upon information and belief, in New York, New York.

5.      Defendant CitySights LLC is a New York limited liability company with its principal place of business, upon information and belief, in New York, New York.

6.      Defendant City Sights Twin, LLC is a New York limited liability company. Upon information and belief, City Sights Twin, LLC has its principal place of business in New York, New York and owns and controls, in whole or in part, Twin America, LLC.

2

7.  Defendant CSA Tickets, LLC is a Delaware limited liability company registered with the New York State Department of State to do business in New York state and, upon information and belief, has its principal place of business in New York, New York.

8.  Defendant Sightseeing Pass LLC is a Delaware limited liability company registered with the New York State Department of State to do business in New York state and, upon information and belief, has its principal place of business in New York, New York.

9.  Defendant Twin America, LLC is a Delaware limited liability company registered with the New York State Department of State to do business in New York state. Upon information and belief, Twin America, LLC has its principal place of business in New York, New York, and owns and controls its subsidiaries Gray Line New York Tours, Inc., CitySights LLC, Sightseeing Pass LLC, and CSA Tickets, LLC.

10.  Twin America, LLC owns the word mark "CitySights NY", United States Trademark Serial Number 77956428.

11.  Upon information and belief, one or more Twin America affiliates is a licensee, assignee, and/or authorized user of various registered United States trademarks incorporating the words "Gray Line", "CitySights", "CitySightseeing", and/or "City Sightseeing".

12.  Prior to March 2020, one or more Twin America affiliates owned and operated hop-on, hop-off tour buses in New York City under various brand names including "Gray Line", "CitySights NY", and/or "CitySightseeing".

13.  Since prior to March 2020 and continuing to the present, one or more Twin America affiliates have owned and operated web sites marketing and selling tourism-related products and services including bus tours, using various brand names including "Gray Line", "CitySights", and/or "CitySightseeing".

3

***The Big Bus Defendants***

14.    Defendant Taxi Tours, Inc. is a New York corporation with its principal place of business in New York, New York, doing business as "Big Bus Tours New York". At all relevant times, Taxi Tours, Inc. has operated hop-on, hop-off tour buses in New York City under the brand name "Big Bus".

15.    Defendant Open Top Sightseeing USA, Inc., is a Delaware corporation registered with the New York Department of State to do business in New York state, has its principal place of business in New York, New York, and is a direct or indirect owner of Taxi Tours, Inc.

16.    Defendant Big Bus Tours Limited is a private limited company organized and existing under the laws of England and Wales with its principal place of business in London, England, and owns and controls its subsidiaries Open Top Sightseeing USA, Inc. and Taxi Tours, Inc.

17.    Big Bus Tours Limited owns the word marks "Big Bus", United States Trademark Serial No. 86695035, and "bigbus.com", United States Trademark Serial No. 79366906; maintains the internet-based web site and sales platform on which Big Bus promotes and sells its hop-on, hop-off tour bus tickets in the NYC Market; and provides corporate strategy, accountancy services, information technology, brand marketing, and other services to its subsidiaries in the NYC Market.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 15 U.S.C. § 15 (action arising under Sherman and Clayton Acts), and 28 U.S.C. § 1337 (supplemental jurisdiction).

19.    Jurisdiction is proper over the Twin America defendants because each of them has its principal place of business in this district, is either a New York entity or a foreign entity

4

authorized to do business in New York, regularly transacts business in New York, and has engaged in unlawful anticompetitive and/or tortious conduct in New York and/or engaged in such conduct outside New York which was directed toward New York and has caused injury within New York.

20.    Jurisdiction is proper over defendants Taxi Tours, Inc. and Open Top Sightseeing USA, Inc. because each of them has its principal place of business in this district, is either a New York corporation or a foreign corporation authorized to do business in New York, regularly transacts business in New York, and has engaged in unlawful anticompetitive and/or tortious conduct in New York.

21.    Jurisdiction is proper over defendant Big Bus Tours Limited because it entered into one or more anticompetitive agreements in New York state, and has engaged in other unlawful anticompetitive and/or tortious conduct in New York and/or engaged in such conduct outside New York which was directed toward New York and caused injury within New York.

22.    Venue is proper in this district because plaintiff Go New York has its principal place of business in this district and the unlawful anticompetitive and/or tortious conduct of defendants alleged herein took place in large part in this district.

## FACTS COMMON TO ALL CLAIMS

### *The Relevant NYC Market*

23.    Go New York, Twin America, and Big Bus are and/or were the main companies operating in the New York City hop-on, hop-off tour bus market (the "NYC Market") and direct competitors of each other. While other companies provide sightseeing bus tours in New York City, they tend to focus on specific areas or topics, and none currently offers hop-on, hop-off bus tours comprising a significant share of the NYC Market.

24.     Hop-on, hop-off tour buses are generally double-decker buses which allow their customers to board a tour bus running a fixed route, "hop off" the bus at a sightseeing attraction that interests them and then "hop on" another bus operated by the same company when they are ready to resume their tour. Hop-on, hop-off bus tours generally have onboard audio providing sightseeing commentary, and are a popular means for tourists and other visitors to see New York City and travel to and among sightseeing attractions. Unlike conventional sightseeing tours, hop-on, hop-off sightseeing bus tours allow their customers to set their own schedules and choose the sightseeing attractions at which they wish to spend their time.

25.     The New York City Department of Transportation ("DOT") designates bus stops available to sightseeing tour buses and distributes them to specific companies authorized to use them. Having DOT permits for a sufficient number of bus stops in locations convenient to popular sightseeing attractions and areas is critical to operating a competitive hop-on, hop-off tour bus company. The finite number of DOT sightseeing bus stops and the existing assignment of them to companies already operating in the NYC Market presents a significant barrier to entry for new entrants to the NYC Market.

26.     In addition, a competitive hop-on, hop-off tour bus operation requires a large fleet of buses to cover multiple bus routes and minimize customers' wait times between buses. The necessity of a large bus fleet is a significant barrier to entry to start-up entrants to the NYC Market and favors larger companies already established in other markets that have the resources to acquire a sufficiently large bus fleet for the NYC Market – which may be accomplished by acquiring existing companies and consolidating their bus fleets..

27.     Hop-on, hop-off sightseeing bus tour services offered by the companies operating in the NYC Market are functionally interchangeable with each other, but cannot be readily

substituted by other tourism services. For example, a conventional sightseeing bus tour does not allow a tourist to control their own schedule or choose which attractions they wish to visit. A tourist may travel to or among sightseeing attractions by public transportation, taxi or ride share service, private car, or on foot, but those modes of travel do not provide the convenience of frequent bus service between attractions or informed sightseeing commentary offered by hop-on, hop-off tour buses.

28.    The NYC Market comprises a distinct geographic and product market for purposes of antitrust law. Notably, both the Antitrust Division of the United States Department of Justice and the Antitrust Bureau of the New York Attorney General's Office have alleged in this district court that hop-on, hop-off bus tours in New York City constitute a relevant product and geographic market and line of commerce under the federal Sherman and Clayton Acts and the New York Donnelly Act.[1]

29.    Hop-on, hop-off sightseeing bus tours are sold as stand-alone tickets as well as part of bundled Attraction Passes. An Attraction Pass combines admission to multiple New York City sightseeing attractions for a total price that is discounted from what admissions to the attractions would cost a tourist if purchased separately, and may include passage on a hop-on, hop-off tour bus.

30.    Go New York, Twin America, and Big Bus have marketed and sold their own Attraction Passes which include passage on their own respective hop-on, hop-off tour buses, directly and/or through affiliates. Attraction passes are also marketed and sold through web sites and hotel concierge desks.

---

[1]    *See United States of America, et al. v. Twin America, LLC, et al.*, S.D.N.Y. Case No. 12-cv-8989, Complaint dated Dec. 11, 2012, 2012 WL 6127681, at ¶¶ 41-45.

### *Competition in the NYC Market*

31.     Go New York, Twin America, and Big Bus are the main companies operating in the NYC Market and direct competitors of each other, offering similar hop-on, hop-off sightseeing bus tours and other tourist-oriented services. Prior to March 2020, upon information and belief, Big Bus had the largest hop-on, hop-off tour bus operation in the NYC Market, Twin America had the second largest, and Go New York had the third largest.

32.     In March 2020, all three companies were compelled to suspend their sightseeing tour bus operations pursuant to New York State pandemic-related restrictions. After the restrictions were withdrawn, Go New York and Big Bus each resumed their hop-on, hop-off bus tours. Twin America did not resume its bus tours and, upon information and belief, has since sold off most of its bus fleet. Nevertheless, Twin America continues to promote hop-on, hop-off sightseeing bus tours, Attraction Passes, and other services under its brand names via various web sites, thereby maintaining at least the appearance that it continues to operate and compete in the NYC Market.

33.     Go New York began its operations in New York City in 2012, doing business under the name "Go New York Tours" with four double decker sightseeing tour buses. In 2016, Go New York adopted the TopView brand and mark, and by 2020 had grown its operations to become the third-largest company in the NYC Market and a significant competitor to Twin America and Big Bus. Go New York also expanded its tourist offerings, directly and/or through commonly owned affiliates, to include boat tours, bicycle rentals, attraction passes and other tourist-oriented services.

34.     Twin America, LLC was formed in 2009 pursuant to a joint venture agreement between the entity which at that time operated hop-on, hop-off sightseeing bus tours in the NYC Market under the "Gray Line" brand under license from Gray Line Worldwide, and CitySights, LLC, which at that time operated hop-on, hop-off sightseeing bus tours in the NYC Market under the "CitySights NY" brand and was a significant competitor of Gray Line. Both companies

8

contributed all their New York City hop-on, hop-off bus tour operations and assets to the joint venture, and thereafter Twin America operated hop-on, hop-off bus tours under both the Gray Line New York and CitySights NY brands.

35.    In 2012, the United States Department of Justice ("DOJ") and the New York State Attorney General's office ("NYAG") jointly sued Twin America, LLC and its affiliated companies in the United States District Court for the Southern District of New York for various antitrust violations.[2]  The lawsuit resulted in a consent judgment issued on November 17, 2015, pursuant to which, among other things, Twin America was required to forfeit 47 sightseeing bus stops in Manhattan which the DOT had previously assigned to CitySights, disgorge profits in the amount of $7.5 million, and undertake an antitrust compliance program.[3]

36.    Big Bus entered the NYC Market through acquisition and market consolidation.  In or about January 2014, Big Bus (via a predecessor) acquired an existing company, Taxi Tours LLC d/b/a Big Taxi Tours. In March 2015, Big Bus acquired another existing tour bus operator, Skyline Tours LLC, and in 2017 Big Bus acquired Open Loop New York, making Big Bus the largest of only three major companies operating in the NYS Market.

### Defendants' Anti-Competitive Collusion and Agreements

37.    Beginning in the summer of 2020, Big Bus and Twin America entered into a series of agreements and arrangements by which they conspired to effectively merge their respective hop-on, hop-off bus tour operations into a single operation by Big Bus while maintaining the false appearance to consumers that Twin America continued to operate and to compete with Big Bus in

---

[2]    *See* n.1, *supra*.

[3]    *See United States of America, et al. v. Twin America, LLC, et al.*, S.D.N.Y. Case No. 12-cv-8989, Final Judgment dated Nov. 17, 2015, 2015 WL 9997203.

the NYC Market, thereby enabling Big Bus to attempt to monopolize the NYC Market while substantially reducing competition in the market. Their anticompetitive collusion continued until at least around late 2024, when Twin America and Big Bus were compelled to terminate their anticompetitive agreements and arrangements to resolve an antitrust investigation by the NYAG.

38.    Pursuant to a series of written agreements and other arrangements entered into between August 2020 and February 2023, Twin America and Big Bus agreed as follows: (a) Big Bus would operate its hop-on, hop-off tour buses within New York City; (b) Twin America would not resume its own hop-on, hop-off tour bus operations within New York City; (c) Big Bus would operate between one and four of Twin America's hop-on, hop-off tour buses in order that Twin America could retain its DOT-authorized sightseeing bus stop permits for use by Big Bus and to prevent the DOT from reassigning bus stops from Twin America to their competitors, such as Go New York; (d) Twin America and Big Bus were authorized to use each other's brand names, trademarks, and other intellectual property; and (e) Twin America would continue to promote and sell hop-on, hop-off bus tour tickets and Attraction Passes under its Gray Line, CitySights, and/or other brand names, including on Twin America's existing web sites, but would direct purchasers to buses operated by Big Bus, for which Big Bus would pay Twin America higher commission rates than in other cities.

39.    Upon information and belief, the first of the anticompetitive written agreements was a "Memorandum of Understanding" dated August 27, 2020 between Twin America and Big Bus Tours Limited (the "MOU"), which outlined the principal terms of a further anticipated agreement summarized as follows:

> TA [Twin America] and BB [Big Bus] propose to enter into an arrangement pursuant to which TA will sell sightseeing tour bus tickets and private hire services. The sightseeing tours will be on BB's route network, operated solely by BB. Private hires will be operated on BB's fleet of open top,

10

double decker buses. BB shall continue to sell its products through its current distribution channels and at prices determined solely by BB, as will TA.

40.     Patrick Waterman, who is a director of Big Bus Tours Limited as well as the ultimate parent company of the Big Bus group of companies, Big Bus Tours Group Holdings Limited, and is also Chief Executive Officer of both Taxi Tours, Inc. and Open Top Sightseeing USA, Inc., signed the MOU on behalf of only Big Bus Tours Limited. No other Big Bus-affiliated company signed or was expressly named a party to the MOU.

41.     Prior to April 2025, Big Bus and Twin America repeatedly denied that they had entered into additional anticompetitive agreements subsequent to their August 2020 MOU, which they mischaracterized to this Court and elsewhere as a mere ticket-reselling arrangement with no anticompetitive impact. In around mid-April 2025, however, the NYAG announced that it had commenced an investigation pursuant to the Donnelly Act, N.Y. Gen. Bus. Law § 340, *et seq.*, and Section 1 of the Sherman Act, 15 U.S.C. § 1, "into the use of reseller and operation management agreements for the provision of" hop-on, hop-off tour buses in New York City, and identified eight agreements in addition to the MOU as part of the collusion between Twin America and Big Bus to reduce competition in the NYC Market.[4]

42.     The NYAG announced its investigation after it had finalized settlements with Twin America and Big Bus, memorialized in an "Assurance of Discontinuance" ("AOD") between the NYAG and each of Twin America and Big Bus.[5] The AODs identified the written agreements

---

[4]     *See* "Attorney General James Secures Over $2.5 million from New York City Bus Tour Companies for Colluding to Limit Competition", NYAG Press Release, April 16, 2025, available at https://ag.ny.gov/press-release/2025/attorney-general-james-secures-over-25-million-new-york-city-bus-tour-companies (last viewed on May 26, 2025), with links to Assurances of Discontinuance No. 24-070 dated September 9, 2024 (with respect to Big Bus) and No. 25-015 dated April 10, 2025 (with respect to Twin America).

[5]     *See* n.4, *supra*. Julia Conway, who previously represented to this Court that she was "Executive Vice President of North America for Taxi Tours, Inc." (ECF Doc. 68, at ¶ 1), signed one of the AODs as

11

entered into among Twin America and Big Bus subsequent to the MOU in furtherance of their anticompetitive collusion and arrangements (together with the MOU, the "Agreements"), as follows:

- Extension of Memorandum of Understanding, dated March 1, 2021;

- Updated Memorandum of Understanding, dated December 1, 2021;

- Reseller Ticket Agreement, dated December 1, 2021;

- Vehicle-Specific Operation and Management Agreement, dated January 1, 2022;

- Global Reseller Ticket Agreement, dated January 1, 2023 (the "Global Reseller Ticket Agreement");

- Operation and Management Agreement, dated February 21, 2023;

- Memorandum of Understanding, dated February 21, 2023; and

- Amendment to Vehicle-Specific Operation and Management Agreement, dated February 21, 2023.

43.     Go New York is unable to allege the specific contents of and signatory parties to the Agreements other than the initial MOU, because Twin America and Big Bus have refused Go New York's requests to disclose them (and prior to April 2025, denied their existence).

44.     Nevertheless, as stated in the AODs, the NYAG found that Twin America's and Big Bus's entry into the Agreements reduced competition in the NYC Market and "likely violate[d]" Section 1 of the Sherman Act and the New York Donnelly Act, among other statutes.

45.     In order to settle the NYAG's allegations, Twin America and Big Bus each agreed, among other things, to terminate and cease performance under the Agreements and all other "existing agreements, assurances, and understands" among them "related on the New York City

---

"Chief Operating Officer" on behalf of Big Bus Tours Limited, Taxi Tours, Inc., and Open Top Sightseeing USA, Inc.

metropolitan area, whether oral or written, and whether formal or written", and to pay a combined stipulated penalty of $2.5 million.

46.    Evidence of Twin America and Big Bus's anticompetitive collusion has long been apparent. For example, while the parties' initial MOU contemplated that Twin America would use Big Bus's intellectual property "solely to the extent necessary for the resale of tickets", on-the-ground observations indicate that Twin America licensed to Big Bus (or otherwise authorized Big Bus to use) Twin America's brand names and marks for use on Big Bus buses – as demonstrated in the images below of Big Bus's buses which display the Big Bus marks and the Gray Line marks:



13



47.    The above pictures indicate that Twin America and Big Bus effectively merged their respective operations into one hop-on, hop-off bus tour operation run by Big Bus.

48.    In addition, it has long been known that Twin America was somehow able to retain its valuable DOT sightseeing bus stop permits despite not having operated any hop-on, hop-off tour buses since March 2020, which would normally justify the DOT's reassignment of those bus stops to companies actually operating bus tours. As referenced in the NYAG's AODs, Big Bus and Twin America defrauded the DOT by having Big Bus operate one to four of Twin America's buses in order to create the false appearance that Twin America was still operating its own hop-on, hop-off bus tours, so that DOT would not reassign Twin America's bus stops to other operating companies in the NYC Market.

49.    As noted above, access to desirable bus stops near popular tourist attractions and areas is critical to maintaining a competitive hop-on, hop-off bus tour operation. The bus stops' value and importance to maintaining competition in the NYC Market is demonstrated by the fact

that, as discussed above, the 2015 consent judgment entered in the DOJ and NYAG's 2012 antitrust against Twin America required Twin America to relinquish 47 Manhattan sightseeing bus stops for which the DOT had previously distributed permits to CitySights.[6]

50.     Had the DOT known that Twin America had ceased operating its hop-on, hop-off tour buses, DOT would have reassigned and apportioned designated bus stops among other companies, including Go New York. Defendants' coordinated deception hindered the ability of Go New York, and other companies operating or seeking to operate in the NYC Market, to compete against them.

51.     Further, Twin America and Big Bus misled consumers about the true nature of the tourism products that Twin America promoted and sold. After Twin America had ceased its hop-on, hop-off bus tours, it continued, for a substantial period of time, to maintain its web sites and brand identities, and continued to sell Attraction Passes and hop-on, hop-off bus tickets under its own branding without disclosing that the bus tours would be provided by Big Bus. A customer who purchased a hop-on, hop-off bus tour ticket from Twin America's web site, whether as a stand-alone ticket or part of an Attraction Pass, was not explicitly informed of Twin America's affiliation with Big Bus or that they were purchasing passage on a Big Bus bus, until it came time to use the purchased ticket and they were directed to Big Bus.

52.     The material misrepresentation and/or omissions by Twin America, in collusion with Big Bus, harmed consumers as well as Go New York. Consumers were misled to believe that Twin America and Big Bus were active competitors in the NYC Market and that they had a choice between them, whereas there was in fact no option to buy a ticket on a Twin America bus. A consumer who did not wish to ride on a Big Bus bus would believe they could still choose among

---

[6]     *See* n.3, *supra*.

two other major options, Twin America and Go New York, whereas their only alternative to Big Bus was Go New York. By failing to disclose to consumers, as well as third-party resellers, that hop-on, hop-off bus tickets purchased from Twin America could only be used on a bus operated by Big Bus, Twin America diverted customers away from Go New York to Big Bus.

53.    Further, the Agreements and collusion evidence Big Bus's attempt to monopolize the NYC Market, by eliminating one of its two main competitors and exploiting Twin America's sales channels to expand its market share.

54.    While Twin America and Big Bus have agreed to terminate and cease performance of their Agreements and to comply with antitrust laws as part of their settlements with the NYAG, their collusion and anticompetitive conspiracy which occurred over a period of at least around four and one half years, have unlawfully reduced competition in the NYC Market and caused compensable harm to Go New York.

**FIRST CLAIM FOR RELIEF**
(Against All Defendants, for Unreasonable Restraint of Trade Under Section 1
of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1 and 15)

55.    Plaintiff repeats and realleges the allegations in each of the foregoing paragraphs as if set forth in their entirety herein.

56.    Through the Agreements and other oral and written assurances and conduct, defendants effectively merged Twin America's and Big Bus's separate hop-on, hop-off tour bus operations into one operation run by Big Bus and Twin America ceased operating its own hop-on, hop-off bus tours in New York City, thereby reducing competition in the NYC Market and causing damages to Go New York.

57.    Through their Agreements and other oral and written assurances and conduct, Twin America permanently ceased its own hop-on, hop-off bus tours, and Big Bus exploited Twin

16

America's sales channels, intellectual property including brands and marks, reputation and goodwill among consumers, and DOT-assigned sightseeing bus stops to expand Big Bus's share of the NYC Market, thereby reducing competition in the NYC Market. As the NYAG found, there is no procompetitive justification for the aforesaid Agreements and other oral and written assurances and conduct among Twin America and Big Bus.

58.    In particular, Twin America and Big Bus colluded to deceive the DOT by having Big Bus operate a few of Twin America's buses in order to give the false appearance that Twin America was continuing to operate its own hop-on, hop-off bus tours, in order to prevent the DOT from reassigning sightseeing bus stops to Big Bus's competitors, including Go New York, and to enable Big Bus to exploit Twin America's bus stops, thereby substantially reducing Go New York's ability to compete with Big Bus and reducing competition from Big Bus's competitors overall.

59.    Twin America and Big Bus also colluded to deceive consumers, as well as the DOT, about Twin America's cessation of its own hop-on, hop-off bus tours and its marketing and sale under its own brands of bus tickets, including stand-alone tickets as well as incorporated into Attraction Passes, which could only be used on Big Bus buses. Defendants thereby reduced competition by hiding from consumers the true competitors in the NYC Market and deceived consumers into unwittingly purchasing tickets for Big Bus.

60.    By reason of the foregoing, defendants knowingly and purposefully engaged in unreasonable restraint of trade in violation of section 1 of the Sherman Act.

61.    Therefore, under Section 1 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1 and 15, Go New York is entitled to recover its damages from defendants including

17

treble damages, and costs of suit including reasonable attorney fees, to the fullest extent permitted by law.

## SECOND CLAIM FOR RELIEF
(Against All Defendants, for Attempting and Conspiring to Monopolize Trade Under
Section 2 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 2 and 15)

62.     Plaintiff repeats and realleges the allegations in each of the foregoing paragraphs as if set forth in their entirety herein.

63.     Upon information and belief, Big Bus and Twin America, as the first and second largest providers respectively of hop-on, hop-off bus tours in the NYC Market, collectively held a market share of at least 50 percent to 70 percent.

64.     For reasons alleged above, Twin America and Big Bus, through their Agreements and other oral and written assurances and conduct, engaged in anticompetitive conduct with the specific intent to combine their respective hop-on, hop-off bus tours operations to enable Big Bus to monopolize the NYC Market, with a dangerous probability of doing so.

65.     But for the NYAG's investigation and settlements by which Twin America and Big Bus were compelled to terminate and cease performance of their Agreements, Twin America and Big Bus would likely have succeeded in attaining a monopoly by Big Bus in the NYC Market.

66.     For reasons alleged above, even if Twin America and Big Bus were ultimately prevented from attaining a monopoly for Big Bus, their attempts and conspiracy to do so reduced competition in the NYC Market and caused damages to Go New York.

67.     Defendants thereby unlawfully attempted and conspired to monopolize the NYC Market, in violation of Section 2 of the Sherman Act.

68.     Therefore, under Section 2 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 2 and 15, Go New York is entitled to recover its damages from defendants including

treble damages, costs of suit including reasonable attorney fees, to the fullest extent permitted by law.

**THIRD CLAIM FOR RELIEF**
(Against All Defendants, for Violations of the
Donnelly Act, New York Gen. Bus. Law § 340)

69.    Plaintiff repeats, realleges and reincorporates the allegations in each of the foregoing paragraphs as if set forth in their entirety herein.

70.    For reasons alleged above, Twin America and Big Bus, through their Agreements and other oral and written assurances and conduct, engaged in anticompetitive agreements and arrangements intended to restrain trade and create a monopoly in the NYC Market, which did in fact substantially reduce competition in the NYC Market, in violation of New York public policy and to the detriment of consumers and Twin America and Big Bus's competitors in the NYC Market, including Go New York, causing damages to Go New York.

71.    Therefore, under the New York Donnelly Act, N.Y. Gen. Bus. Law § 340, Go New York is entitled to recover its damages from defendants including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

**FOURTH CLAIM FOR RELIEF**
(Against All Defendants, for
Common Law Unfair Competition)

72.    Plaintiff repeats, realleges and reincorporates the allegations in each of the foregoing paragraphs as if set forth in their entirety herein.

73.    As alleged above, defendants have confused consumers as to the extent of their affiliation, thereby increasing their own market share at the expense of Go New York and preventing Go New York from offering and selling its services and products.

19

74.     By reason of the foregoing, defendants have wrongfully diverted business from Go New York and its affiliates to themselves, thereby damaging Go New York in an amount to be determined at trial, which Go New York is entitled to recover from defendants.

**FIFTH CLAIM FOR RELIEF**
(Against All Defendants, for False Designation of Origin
in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125)

75.     Plaintiff repeats, realleges and reincorporates the allegations in each of the foregoing paragraphs as if set forth in their entirety herein.

76.     As alleged above, Twin America and Big Bus conspired to and did deceive consumers about Twin America's affiliation with Big Bus and the true nature of the tourism products that Twin America promoted and sold, by means of Twin America's continuing to maintain its web sites and brand identities, and continuing to sell hop-on, hop-off bus tour tickets, whether as stand-alone tickets or as part of Attraction Passes, under Twin America's own branding without disclosing that the bus tours would be provided by Big Bus.

77.     Twin America and Big Bus thereby intentionally misrepresented to consumers a false origin of Twin America's tourism products, and used Twin America's brand names and marks to cause confusion and mistake, and to deceive consumers, as to the affiliation between Twin America and Big Bus and the origin, nature, characteristics, and qualities of Twin America's products, and that hop-on, hop-off bus tours purchased from Twin America, under Twin America's brand names and marks, would actually be provided by Big Bus.

78.     Twin America and Big Bus thereby falsely represented Big Bus hop-on, hop-off bus tours as Twin America's bus tours, and caused consumers to unwittingly purchase tickets for Big Bus instead of Go New York and impeded Go New York's ability to compete in the NYC Market, thereby causing damages to Go New York.

20

79.    Therefore, under Section 43 of the Lanham Act, 15 U.S.C. § 1125, Go New York is entitled to recover Go New York is entitled to recover its damages from defendants.

80.    Further, Twin America and Big Bus undertook to deliberately confuse and deceive consumers about their affiliation, Twin America's cessation of its own hop-on, hop-off bus tours, and the nature of products and services marketed and sold by Twin America, demonstrating bad faith and warranting an award of Go New York's costs and reasonable attorneys' fees.

**SIXTH CLAIM FOR RELIEF**
(Against All Defendants, for Deceptive Acts and
Practices in Violation of N.Y. Gen. Bus. Law § 349)

81.    Plaintiff repeats, realleges and reincorporates the allegations in each of the foregoing paragraphs as if set forth in their entirety herein.

82.    Section 349 of the New York General Business Law prohibits "[d]eceptive acts and practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state" directed to consumers.

83.    For reasons alleged above, Twin America and Big Bus engaged in deceptive acts and practices directed to consumers in violation of Gen. Bus. Law § 349 by, among other things, intentionally misleading consumers as to the affiliation between Twin America and Big Bus, Twin America's cessation of its own hop-on, hop-off bus tours, and the nature of the products marketed and sold by Twin America, and failing to disclose clearly that hop-on, hop-off bus tours marketed and sold by Twin America would be provided by Big Bus.

84.    Twin America and Big Bus thereby caused consumers to unwittingly purchase tickets for Big Bus instead of Go New York and impeded Go New York's ability to compete in the NYC Market, thereby causing damages to Go New York.

21

85.     Under N.Y. Gen. Bus. Law § 349, Go New York is entitled to recover its actual damages from defendants.

86.     Further, because Twin America and Big Bus willfully and knowingly engaged in their deceptive acts and practices alleged herein, Go New York should be awarded treble damages and its reasonable attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
(Against Twin America, for False Advertising
in Violation of N.Y. Gen. Bus. Law § 350)

87.     Plaintiff repeats, realleges and reincorporates the allegations in each of the foregoing paragraphs as if set forth in their entirety herein.

88.     Section 350 of the New York General Business Law prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state".

89.     For reasons alleged above, Twin America engaged in false advertising in violation of N.Y. Gen. Bus. Law § 350 by, among other things, falsely marketing, promoting, and selling to consumers, including on Twin America's web sites, hop-on, hop-off bus tours, both stand-alone and as part of Attraction Passes, as products or services  provided by Twin America, without clearly disclosing that Twin America had ceased operating its own hop-on, hop-off bus tours and that such bus tours would be provided by Big Bus.

90.     Twin America thereby caused consumers, who reasonably relied on its false advertising, to unwittingly purchase tickets for Big Bus instead of Go New York and impeded Go New York's ability to compete in the NYC Market, thereby causing damages to Go New York, and Go New York is entitled to recover same from Twin America, together with statutory penalties, cost, and reasonable attorneys' fees to the extend provided by law.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff Go New York demands judgment in its favor and against the Twin America and Big Bus defendants, as follows:

A.      Awarding Go New York its damages and treble damages for defendants' violations of the Sherman Act and New York Donnelly Act, together with costs and reasonable attorneys' fees;

B.      Awarding Go New York its damages for defendants' false designation of origin in violation of Section 43 of the Lanham Act, together with costs and reasonable attorneys' fees as permitted by law;

C.      Awarding Go New York its damages for defendants' unfair competition under New York common law;

D.      Awarding Go New York its damages for defendants' deceptive acts and practices in violation of Section 349 of the New York General Business Law, and treble damages, costs, reasonable attorneys' fees as permitted by law;

E.      Awarding Go New York its damages for Twin America's false advertising in violation of Section 350 of the New York General Business Law;

F.      Awarding Go New York statutory costs and interest; and

G.      Granting such other and further relief as the Court may deem just and proper.


## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims and issues herein.

23

Dated May 28, 2025 in New York, New York

**BARTON LLP**

By: _____
    Maurice N. Ross
    Randall L. Rasey
    A.J. Monaco
    Barak Bacharach

711 Third Avenue, 14th Floor
New York, NY 10017
(212) 687-6262
mross@bartonesq.com
rrasey@bartonesq.com
ajmonaco@bartonesq.com
bbacharach@bartonesq.com
*Attorneys for Plaintiff*
*Go New York Tours, Inc.*

24

**VERIFICATION**

I, ASEN KOSTANDINOV, am the president of GO NEW YORK TOURS, INC., the defendant and counterclaim plaintiff in this action. I have read the foregoing Second Amended Verified Complaint, and the facts stated therein are true to the best of my knowledge, except for facts stated upon information and belief, and as to those I believe them to be true.

_____
Asen Kostadinov

Sworn to before me on _____, 2025.

_____
Notary Public

25