# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GO NEW YORK TOURS, INC.,<br><br>        Plaintiff,<br><br>  -against-<br><br>GRAY LINE NEW YORK TOURS, INC., CITYSIGHTS LLC, CITY SIGHTS TWIN, LLC, CSA TICKETS, LLC, SIGHTSEEING PASS, LLC, TWIN AMERICA, LLC, ~~SIGHTSEEING PASS LLC, BIG BUS TOURS GROUP LIMITED,~~ BIG BUS TOURS LIMITED, OPEN TOP ~~SIGHTSEEING~~SIGHTEEING USA~~,~~ INC., and TAXI TOURS~~,~~ INC.~~, LEISURE PASS GROUP HOLDINGS LIMITED, THE LEISURE PASS GROUP LIMITED, and LEISURE PASS GROUP, INC.~~<br><br>        Defendants. | Civil Action No. 1:23-cv-04256-ER<br><br>[PROPOSED]<br>**SECOND** AMENDED<br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Go New York Tours, Inc. ("Go New York"), by its undersigned counsel, hereby alleges, as against defendants Gray Line New York Tours, Inc., CitySights LLC, City Sights Twin, LLC, CSA Tickets, LLC and Twin America, LLC~~, Sightseeing Pass LLC, Big Bus Tours Group Limited,~~ (referred to herein collectively as "Twin America"), and Big Bus Tours Limited, Open Top Sightseeing USA, Inc., and Taxi Tours~~, Inc., Go City Holdings Limited, Go City Limited, and Go City, Inc.,~~ (referred to herein collectively as "Big Bus"), as follows:

## THE NATURE OF ~~ACTION~~THE CASE

1. ~~This is an action for anticompetitive antitrust violations by the two dominant companies in the New York City hop-on, hop-off sightseeing tour bus market targeted against the third and only other company currently operating in that market, Plaintiff Go New York.[1] As~~

---

alleged below, the two dominant companies and their affiliates have formed a single operating entity and in so doing, have monopolized and/or attempted to monopolize the New York City hop-on, hop-off sightseeing tour bus market (the "New York City Hop-On, Hop-Off Market") and its sub-market, the "Attraction Pass Market". In pursuit of this illegal monopolistic scheme, the two dominant companies and their affiliates have expressly conspired with each other pursuant to an agreement formalized in late July, 2020 to exclude plaintiff Go New York and its affiliates from those markets, and in so doing, fix the prices at which tickets to hop-on, hop-off bus services as well as Attraction Passes are sold in the relevant market. Defendants' anticompetitive conduct has minimized competition in the New York City Hop-On, Hop-Off Market at the expense of consumers – meaning customers are being forced to pay higher prices than they would absent the anticompetitive behavior.  The anticompetitive behavior also directly damages Go New York because  (a) it has been unable to effectively compete in the New York City Hop-On, Hop-Off Market, as well as in one of that markets' subsets, the Attraction Pass market, (b) it has become less competitive in both those markets, (c) it has lost sales of  (i) its hop-on, hop-off tourist bus services, (ii) its bike rental services (which are facilitated through Go New York's commonly owned affiliate, ASK Standard Transit Corp d/b/a Bike Rental Central Park ("ASK Transit"), (iii) its boat tour services (which are provided by Go New York's commonly owned affiliate, New York Water Tours Inc, d/b/a Liberty Cruise and d/b/a Event Cruises New York City), and (iv) its "Attraction Pass" multi-attraction package offerings, and (d) has lost market share, customers, and revenues.  Defendants' anti-competitive conduct violates federal and New York state antitrust statutes and New York state common law.  Plaintiff Go New York asserts herein claims against defendants for violations of Sections 1 and 2 of the Sherman Act and Sections 4 and 7 of the

---

operated only a small number of buses, it cannot offer "hop on hop off" sightseeing tours and is not currently considered a competitor in the relevant market.

2

Clayton Act, 15 U.S.C. §§ 1, 2, 15, and 18 and for violations of the Donnelly Act, New York General Business Law § 340, and for unfair competition under New York common law.  Plaintiff Go New York seeks damages from all defendants, including treble damages, costs and attorneys' fees under the Sherman, Clayton and Donnelly Acts.

## PARTIES

### *Go New York*

1.      This is an action for violations of federal and New York antitrust statutes, false designation of origin under federal statute, deceptive consumer-directed practices and false advertising under New York statutes, and related common law claims against the two largest providers of hop-on, hop-off sightseeing bus tours in the New York City market. Beginning in mid-2020, Twin America and Big Bus, ostensibly competitors of each other, colluded, via a series of anticompetitive agreements, to effectively combine their respective hop-on, hop-off bus tour operations in New York City, in order to  reduce competition in the New York City market and enable Big Bus to monopolize the market. The intent and effect of their collusion was to reduce competition and impede Go New York's ability to compete with its own hop-on, hop-off bus tour operation.

2.      As a result of the New York Attorney General's investigation into their collusion and anticompetitive agreements, Twin America and Big Bus were compelled to terminate those agreements, thereby ending their misconduct alleged herein. Go New York brings this action against them to recover its damages caused by their anticompetitive arrangements and scheme which endured for approximately four and one half years, and for additional relief pursuant to the applicable statutes.

## THE PARTIES

### *Plaintiff Go New York*

2.3.    Plaintiff Go New York is a New York corporation with its ~~main offices~~ principal place of business located at 2 East 42nd Street, New York, New York.  Go New York is engaged in the business of offering tourism-related services primarily in the New York City area. Among other things, Go New York operates hop-on, hop-off tour buses under the brand name "TopView".

### ~~*Gray Line*~~

### *The Twin America Defendants*

3.4.    Defendant Gray Line New York Tours, Inc. is a New York corporation with its ~~executive office address, as indicated in the New York State Secretary of States's records, at 1430 Broadway, New York, New York., although~~principal place of business, upon information and belief ~~it no longer maintains offices at that address.~~, in New York, New York.

5.    Defendant ~~Twin America,~~CitySights LLC ~~("Twin America")~~is a New York limited liability company with its principal place of business, upon information and belief, in New York, New York.

6.    Defendant City Sights Twin, LLC is a New York limited liability company. Upon information and belief, City Sights Twin, LLC has its principal place of business in New York, New York and owns and controls, in whole or in part, Twin America, LLC.

4.7.    Defendant CSA Tickets, LLC is a Delaware limited liability company registered with the New York State Department of State to do business in New York ~~State.  Upon~~state and, upon information and belief, ~~Twin America operates and controls Gray Line~~has its principal place of business in New York, New York ~~Tours, Inc.  (Hereinafter, Gray Line New York Tours, Inc. and Twin America are referred to herein collectively as "Gray Line".)~~.

4

8. Defendant Sightseeing Pass LLC (~~("Sightseeing Pass")~~is a Delaware limited liability company registered with the New York State Department of State to do business in New York state and, upon information and belief, has its principal place of business in New York, New York.

~~5.~~9. Defendant Twin America, LLC is a Delaware limited liability company registered with the New York State Department of State to do business in New York ~~State.~~ state. Upon information and belief, Twin America, LLC has its principal place of business in New York, New York, and owns and controls its subsidiaries Gray Line New York Tours, Inc., CitySights LLC, Sightseeing Pass ~~shares common ownership and control with Gray Line, and/or is owned~~LLC, and~~/or controlled by Gray Line.~~ CSA Tickets, LLC.

### ~~Big Bus~~

~~6. Non-party Big Bus Tours Group Holdings Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road, London, United Kingdom.~~

10. Twin America, LLC owns the word mark "CitySights NY", United States Trademark Serial Number 77956428.

~~7.~~ Upon information and belief, ~~non-party Exponent Private Equity LLP ("Exponent"), a London-based private equity firm organized and existing under the laws of the United Kingdom, owns, directly and/~~one or ~~indirectly, approximately 85 percent of and controls Big Bus Tours Group Holdings Limited.~~

~~8.~~11. ~~Upon further information and belief, non-party Merlin Entertainments plc ("Merlin"), a company organized and existing under the laws of the United Kingdom with its main offices located in Dorset, United Kingdom, owns, directly~~more Twin America affiliates is a

5

licensee, assignee, and/or ~~indirectly, approximately 15 percent of and as such exerts control over Big Bus Tours Group Holdings Limited.  Upon further information and belief, Merlin owns and controls, directly and/or indirectly,~~ authorized user of various ~~companies which own and operate "Madame Tussauds" wax museum tourist attractions located around the world, including the Madame Tussauds wax museum attraction located on West 42nd Street in the Times Square area of New York City.~~ registered United States trademarks incorporating the words "Gray Line", "CitySights", "CitySightseeing", and/or "City Sightseeing".

9.    ~~Defendant Big Bus Tours Group Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road, London, United Kingdom.  Upon information and belief, Big Bus Tours Group Limited is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited, and ultimately by Exponent and Merlin.~~

10.    ~~Defendant Big Bus Tours Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road, London, United Kingdom. Upon information and belief, Big Bus Tours Limited is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited and/or Big Bus Tours Group Limited, and ultimately by Exponent and Merlin.~~

12.    ~~Defendant Big Bus Tours Limited is the owner of United States Trademark Serial No. 86695035, a word mark for "Big Bus" (the "Big Bus Trademark"). Defendant Big Bus Tours Limited licenses the Big Bus Trademark to~~ Prior to March 2020, one or more Twin America affiliates owned and operated hop-on, hop-off tour buses in New York City under various brand names including "Gray Line", "CitySights NY", and/or "CitySightseeing".

13. Since prior to March 2020 and continuing to the present, one or more Twin America affiliates have owned and operated web sites marketing and selling tourism-related products and services including bus tours, using various brand names including "Gray Line", "CitySights", and/or "CitySightseeing".

### The Big Bus Defendants

11. Defendant Taxi Tours, Inc., as well as Gray Line pursuant to their merger agreement.

12. Defendant Open Top Sightseeing USA, Inc., is a Delaware corporation which is registered with the . is a New York State Departmentcorporation with its principal place of State to do business in New York State, and with its main office address at 723 Seventh Avenue, New York, New York. Upon information and belief, Open Top Sightseeing USA, Inc. is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, and Big Bus Tours Limited, and ultimately by Exponent and Merlin.

13. Defendantdoing business as "Big Bus Tours New York". At all relevant times, Taxi Tours, Inc. ("Taxi Tours") is a New York corporation with its main office address at 723 Seventh Avenue, New York, New York. Taxi Tours' CEO, Patrick Waterman, is also an officer and/or director of Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, and Big Bus Tours Limited, and resides in the United Kingdom. Upon further information and belief, Taxi Tours, Inc. is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, and/or Open Top Sightseeing USA, Inc., and, ultimately, by Exponent and Merlin. (Hereinafter, Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., and Taxi Tours are referred to herein collectively as "Big Bus".) Indeed, Julia Conway is the

7

~~Treasurer and Director of both Taxi Tours and Open Top Sightseeing USA, Inc.   Conway was actively involved in the negotiating, drafting, and reviewing the Conduct Agreement.  She also signed the Conduct Agreement,  at the direction of Big Bus's attorneys, in the small space provided for that purpose underneath "BIG BUS TOURS, LTD." printed in all caps~~ has operated hop-on ~~the agreement's signature page.  On November 17, 2022, Conway was deposed in a state court matter between the parties currently pending in New York Supreme Court, New York County, on November 17, 2022. *Taxi Tours, Inc. v. Go New York Tours, Inc.*, Index No. 653012/2019 (Sup. Ct. N.Y. Cty.).  During that deposition, she testified that she had not been "careful enough," in affixing her signature on behalf of Big Bus Tours, Ltd., but nonetheless she admitted that she conferred with  Big Bus' attorneys in advance of signing the document.~~

### ~~Leisure Pass/Go City~~

14.    ~~Defendant Leisure Pass Group Holdings Limited a/k/a Go~~ , hop-off tour buses in New York ~~City Holdings Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 25 Soho Square, London, England, W1D 3QR.~~  under the brand name "Big Bus".

15.    ~~Upon information and belief, Go City Holdings Limited is controlled and principally owned directly and/or indirectly by Exponent, which, as alleged above, is also the principal owner and controller, directly or indirectly of Big Bus.  Upon further information and belief, Big Bus Tours Group Holdings Limited owns a significant minority stake in, and as such exerts control over, Go City Holdings Limited.~~

16.    Defendant ~~the Leisure Pass Group Limited a/k/a Go City Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 25 Soho Square, London, England, W1D 3QR.  Upon information and belief, Go City Limited is~~

8

~~owned and controlled, directly or indirectly, Go City Holdings Limited, Exponent, and Big Bus Tours Group Holdings Limited, and, ultimately, by Exponent.~~

~~17.~~15.  ~~Defendant Leisure Pass Group~~Open Top Sightseeing USA, Inc~~. a/k/a Go City, Inc. is a company organized and existing under the laws of the State of~~., is a Delaware~~, is~~ corporation registered with the New York ~~State~~ Department of State to do business in New York ~~State, and maintains a registered office in New York City.  Upon information and belief, Go City Inc. is owned and controlled directly and/or indirectly by Go City Holdings Limited, Go City Limited, and Big Bus Tours Group Holdings Limited, and, ultimately, by Exponent. (Hereinafter, Go City Holdings Limited, Go City Limited, and Go City, Inc. are referred to collectively as "Go City".)~~state, has its principal place of business in New York, New York, and is a direct or indirect owner of Taxi Tours, Inc.

16.    Defendant Big Bus Tours Limited is a private limited company organized and existing under the laws of England and Wales with its principal place of business in London, England, and owns and controls its subsidiaries Open Top Sightseeing USA, Inc. and Taxi Tours, Inc.

17.    Big Bus Tours Limited owns the word marks "Big Bus", United States Trademark Serial No. 86695035, and "bigbus.com", United States Trademark Serial No. 79366906; maintains the internet-based web site and sales platform on which Big Bus promotes and sells its hop-on, hop-off tour bus tickets in the NYC Market; and provides corporate strategy, accountancy services, information technology, brand marketing, and other services to its subsidiaries in the NYC Market.

9

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 15 U.S.C. § 15 (action arising under Sherman and Clayton Acts), and 28 U.S.C. § 1337 (supplemental jurisdiction).

19.    Jurisdiction is proper over defendant Gray Line New York, Inc. because it is a New York corporation and maintains its principal offices in New York, New York.  Jurisdiction is proper over defendantthe Twin America, LLC because it is registered with the New York State Department of State to do business in New York State and maintains its principal offices in New York, New York, and defendants because each of them has its principal place of business in this district, is either a New York entity or a foreign entity authorized to do business in New York, regularly transacts business in New York State. Gray Line New York, Inc. and Twin America, LLC both operate using the brand names "Gray Line" and "City Sightseeing".

20.    Jurisdiction is proper over defendants Big Bus Tours Group Limited, and Big Bus Tours Limited because they regularly transact business in New York State and have engaged in conduct directed toward New York State which has caused and is causing injury in New York State. Indeed, Big Bus Tours Limited owns and licenses the

21.19.  Jurisdiction is proper over defendant Open Top Sightseeing USA, Inc. because it is registered to do business in New York State, maintains its offices in New York, New York, regularly transacts business in New York State, and has engaged in unlawful anticompetitive and/or tortious conduct in New York and/or engaged in such conduct outside New York which was directed toward New York State whichand has caused and is causing injury in New York State. Jurisdiction is proper over defendant Taxi Tours, Inc. because it is a New York corporation, maintains in New York, New York, regularly transacts business in New York State, and has

10

engaged in conduct directed toward New York State which has caused and is causing injury in New York Stateinjury within New York.

22.    Jurisdiction is proper over defendant Go City, Inc. because it is authorized to do business and regularly transacts business in New York State. Jurisdiction is proper over defendants Go City Holdings Limited and Go City Limited because they regularly transact business in New York State and have engaged in conduct directed toward New York State which has caused and is causing injury in New York State.

23.20.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b)(1)-(2) and (c)(2) Taxi Tours, Inc. and Open Top Sightseeing USA, Inc. because each of defendants eitherthem has its offices and/or regularly transactsprincipal place of business in this district and is subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district. is either a New York corporation or a foreign corporation authorized to do business in New York, regularly transacts business in New York, and has engaged in unlawful anticompetitive and/or tortious conduct in New York.

## ~~BACKGROUND~~

21.    Jurisdiction is proper over defendant Big Bus Tours Limited because it entered into one or more anticompetitive agreements in New York state, and has engaged in other unlawful anticompetitive and/or tortious conduct in New York and/or engaged in such conduct outside New York which was directed toward New York and caused injury within New York.

22.    Venue is proper in this district because plaintiff Go New York owns and operates a fleet of double-decker, "has its principal place of business in this district and the unlawful anticompetitive and/or tortious conduct of defendants alleged herein took place in large part in this district.

11

**FACTS COMMON TO ALL CLAIMS**

*The Relevant NYC Market*

23.     Go New York, Twin America, and Big Bus are and/or were the main companies operating in the New York City hop-on, hop-off" tour bus market (the "NYC Market") and direct competitors of each other. While other companies provide sightseeing tour buses in New York City under the brand name "TopView." bus tours in New York City, they tend to focus on specific areas or topics, and none currently offers hop-on, hop-off bus tours comprising a significant share of the NYC Market.

24.     Hop-on, hop-off bus tours tour buses are generally double-decker buses which allow tourists and other their customers to "hop off"board a tour bus running a fixed route, "hop off" the bus at attractionsa sightseeing attraction that interest them (such as Madame Tussaud's, for example)interests them and then "hop on" another bus operated by the same company when they are ready to resume their tour. Go New York also provides bike rentalsHop-on, hop-off bus tours generally have onboard audio providing sightseeing commentary, and are a popular means for tourists and other visitors to see New York City and travel to and among sightseeing attractions. Unlike conventional sightseeing tours, hop-on, hop-off sightseeing bus tours allow their customers to set their own schedules and choose the sightseeing attractions at which they wish to spend their time.

25.     The New York City Department of Transportation ("DOT") designates bus stops available to sightseeing tour buses and distributes them to specific companies authorized to use them. Having DOT permits for a sufficient number of bus stops in locations convenient to popular sightseeing attractions and areas is critical to operating a competitive hop-on, hop-off tour bus company. The finite number of DOT sightseeing bus stops and the existing assignment of them to

12

companies already operating in the NYC Market presents a significant barrier to entry for new entrants to the NYC Market.

26.    In addition, a competitive hop-on, hop-off tour bus operation requires a large fleet of buses to cover multiple bus routes and minimize customers' wait times between buses. The necessity of a large bus fleet is a significant barrier to entry to start-up entrants to the NYC Market and favors larger companies already established in other markets that have the resources to acquire a sufficiently large bus fleet for the NYC Market – which may be accomplished by acquiring existing companies and consolidating their bus fleets..

27.    Hop-on, hop-off sightseeing bus tour services offered by the companies operating in the NYC Market are functionally interchangeable with each other, but cannot be readily substituted by other tourism services. For example, a conventional sightseeing bus tour does not allow a tourist to control their own schedule or choose which attractions they wish to visit. A tourist may travel to or among sightseeing attractions by public transportation, taxi or ride share service, private car, or on foot, but those modes of travel do not provide the convenience of frequent bus service between attractions or informed sightseeing commentary offered by hop-on, hop-off tour buses.

28.    The NYC Market comprises a distinct geographic and product market for purposes of antitrust law. Notably, both the Antitrust Division of the United States Department of Justice and the Antitrust Bureau of the New York Attorney General's Office have alleged in this district court that hop-on, hop-off bus tours in New York City constitute a relevant product and geographic

market and line of commerce under the federal Sherman and Clayton Acts and the New York Donnelly Act.[2]

29.    Hop-on, hop-off sightseeing bus tours are sold as stand-alone tickets as well as part of bundled Attraction Passes. An Attraction Pass combines admission to multiple New York City sightseeing attractions for a total price that is discounted from what admissions to the attractions would cost a tourist if purchased separately, and may include passage on a hop-on, hop-off tour bus.

24.30.  Go New York, Twin America, and Big Bus have marketed and sold their own Attraction Passes which include passage on their own respective hop-on, hop-off tour buses, directly and/or through its commonly owned affiliate, ASK Standard Transit, Inc. and boat toursaffiliates. Attraction passes are also marketed and sold through its commonly owned affiliate, New York Water Tours Incweb sites and hotel concierge desks.

*Competition in the NYC Market*

31.    Go New York is one, Twin America, and Big Bus are the main companies operating in the NYC Market and direct competitors of two major "each other, offering similar hop-on, hop-off" sightseeing tour bus businesses presently operating in the New York City market, together with the joint venture between Big Bus and Gray Line.bus tours and other tourist-oriented services. Prior to the Covid-19 pandemic which arose in or about March 2020, upon information and belief, Big Bus had the largest hop-on, hop-off tour bus operation in the NYC Market, Twin America had the second largest, and Go New York historically had been the smallest of thethird largest.

_____

[2]    *See United States of America, et al. v. Twin America, LLC, et al.*, S.D.N.Y. Case No. 12-cv-8989, Complaint dated Dec. 11, 2012, 2012 WL 6127681, at ¶¶ 41-45.

14

25.32.  In March 2020, all three ~~businesses, in terms of both revenues and the number of buses in its fleet.~~ companies were compelled to suspend their sightseeing tour bus operations pursuant to New York State pandemic-related restrictions. After the restrictions were withdrawn, Go New York and Big Bus each resumed their hop-on, hop-off bus tours. Twin America did not resume its bus tours and, upon information and belief, has since sold off most of its bus fleet. Nevertheless, Twin America continues to promote hop-on, hop-off sightseeing bus tours, Attraction Passes, and other services under its brand names via various web sites, thereby maintaining at least the appearance that it continues to operate and compete in the NYC Market.

26.   ~~Unlike Gray Line and Big Bus, which are affiliated with large, multi-national business operations, Go New York only has one affiliate in another location, which began doing business in September of 2023.~~

27.33.  Go New York began its operations in New York City in 2012, doing business under the name "Go New York Tours" with four double decker sightseeing tour buses, ~~and has since increased its fleet to more than 80 buses and expanded its tourist offerings~~. In 2016, Go New York adopted the TopView brand and mark, and by 2020 had grown its operations to become the third-largest company in the NYC Market and a significant competitor to Twin America and Big Bus. Go New York also expanded its tourist offerings, directly and/or through commonly owned affiliates, to include boat tours, bicycle rentals, attraction passes and other tourist-oriented services.

28.   ~~Go New York is a member of New York City & Company, the official destination marketing organization for New York City, as are Gray Line, Big Bus, and Go City.~~

29.   ~~Go New York, Gray Line, and Big Bus are direct competitors of each other, offering similar types of tourist-oriented services in addition to their hop-on, hop-off sightseeing bus tours. Although other companies may also operate sightseeing bus tours in New York City, they tend to~~

focus on specialized markets and do not presently offer the same hop-on, hop-off services as Go New York and the joint venture between Gray Line and Big Bus.

### *Gray Line's Pre-Pandemic Dominance in the New York City Sightseeing Tour Bus Market*

30.    Prior to March 2020, when the pandemic disrupted markets worldwide, Gray Line had been the largest hop-on, hop-off sightseeing company operating in New York City, in terms of both sales revenues and the size of its bus fleet, and had been operating in New York City since the 1990s. The relevant market includes the New York City market for hop-on, hop-off sightseeing buses and a relevant sub-market for so-called "attraction passes" wherein as described in more detail below, tickets for hop-on, hop-off tour buses are combined in a single package with admission to various New York City tourist attractions.

31.    Gray Line is a licensee and/or franchisee of Gray Line Worldwide, which has promoted itself as "the largest provider of sightseeing tours on the planet", offering "thousands of tours and experiences in more than 700 locations, spanning six continents".[3]

34.    Gray Line had maintained its dominance in the New York City Hop-on, Hop-Off market in large part through acquisition and market consolidation.  In 2009, Gray Line joined forces with its then-largest competitor, CitySights, combining their assets and operations to form Twin America.  Gray Line is no stranger to anti-competitive activities.  Twin America, LLC was formed in 2009 pursuant to a joint venture agreement between the entity which at that time operated hop-on, hop-off sightseeing bus tours in the NYC Market under the "Gray Line" brand under license from Gray Line Worldwide, and CitySights, LLC, which at that time operated hop-

---

[3]    *See* https://www.grayline.com/about-us (last viewed pre-pandemic on March 7, 2019).

16

on, hop-off sightseeing bus tours in the NYC Market under the "CitySights NY" brand and was a significant competitor of Gray Line. Both companies contributed all their New York City hop-on, hop-off bus tour operations and assets to the joint venture, and thereafter Twin America operated hop-on, hop-off bus tours under both the Gray Line New York and CitySights NY brands.

32.35.  In 2012, the United States Department of Justice ("DOJ") and the New York State Attorney GeneralGeneral's office ("NYAG") jointly sued Twin America, LLC and relatedits affiliated companies in the United States District Court for the Southern District of New York for various antitrust violations.[4]  The lawsuit resulted in a consent judgment issued on November 17, 2015, pursuant to which, among other things, Twin America was required to forfeit 47 sightseeing bus stops in Manhattan which the New York City Department of TransportationDOT had previously assigned to CitySights, and to disgorge profits in the amount of $7.5 million., and undertake an antitrust compliance program.[5]

### *Big Bus's Pre-Pandemic Participation in the New York City Sightseeing Tour* Big Bus entered the NYC Market

33.    Prior to the pandemic which disrupted markets world-wide as of March 2020, Big Bus had owned and operated the second largest hop-on, hop-off sightseeing tour bus business in New York City.  Big Bus is based in the United Kingdom and bills itself as "the largest operator of open-top sightseeing bus tours in the whole wide world. Inspiring the spirit of adventure in over 25 cities, across four continents. Beginning with a fleet of three, today hundreds of buses and guides are helping over four million tourists explore each year."[6]

---

[4]    *See United States of America, et al., v. Twin America, LLC, et al.*, S.D.N.Y., 12-CV-8989.     *See* n.1, *supra*.

[5]    *See United States of America, et al. v. Twin America, LLC, et al.*, S.D.N.Y. Case No. 12-cv-8989, Final Judgment dated Nov. 17, 2015, 2015 WL 9997203.

[6]    *See* https://www.bigbustours.com/about-big-bus-tours (last visited on October 11, 2023).

17

34. ~~Like Gray Line, Big Bus secured its pre-pandemic position in the New York City sightseeing tour bus market largely~~ through acquisition and market consolidation. In or about January 2014, Big Bus (via ~~its~~a predecessor) ~~entered the New York City market by purchasing~~acquired an existing company, Taxi Tours LLC d/b/a Big Taxi Tours. ~~About one year later, in~~ In March 2015, Big Bus acquired ~~an~~another existing tour bus operator, Skyline Tours LLC~~. In~~, and in 2017~~,~~ Big Bus acquired Open Loop New York ~~("Open Loop"),~~, making ~~it~~Big Bus the ~~second~~ largest of only three major companies ~~then offering "hop-on, hop-off" sightseeing tour bus services in New York City.~~

***~~Relevant Markets within the~~***
***~~New York City Sightseeing Tour Industry~~***

35. ~~"Hop-on, hop-off" tour bus services offer a convenient way for sightseers to visit numerous attractions while charting their own journey. Hop-on, hop-off tours operators differ from conventional sightseeing tour bus operators insofar that rather than staying on a single bus continuously for the length of the tour, hop-on, hop-off tours operate numerous busses in "loops" with numerous stops and allow customers to "hop-on" at any stop they like and "hop-off" at any stop they like, to explore attractions near the stop. Therefore, customers have more control over their sightseeing experience than they would on a conventional sightseeing bus tour. There is a separate, distinct and relevant market for the sale of hop-on, hop-off tour bus services within New York City~~

36. ~~Go New York attempts to compete against Gray Line and Big Bus for the same consumers, offering the same types of hop-on, hop-off sightseeing bus tours and tourist "attraction passes" in New York City. The market for "hop-on, hop-off" sightseeing bus tours is separate from the market for tourist "attraction passes" although they are interrelated insofar as "hop-on, hop-off" sightseeing bus tours are one of the "attractions" offered in tourist "attraction passes".~~

18

37.    One substantial means employed by Go New York, Gray Line, and Big Bus to market and sell their services and products within New York City is through individual, uniformed sales representatives located near popular tourist attractions throughout Manhattan.    Sales representatives from each of the three companies often work side by side with representatives of the other companies on the streets of Manhattan, each promoting his or her company's services and products and trying to persuade tourists to choose to purchase the services and products of his or her company over those of the other two companies.

38.    Each of the three companies also markets and sells its services and products available in New York City online through their respective web sites, through which a consumer located virtually anywhere within or outside the United States can purchase a company's services and products to be enjoyed when the consumer visits New York City.

39.    In addition, each of the three companies sells its services and products to consumers at their respective offices and/or visitor centers in Manhattan.

40.    Another significant means of marketing and selling the companies' services and products is through the concierge services and guest service desks in hotels, which promote and arrange for the purchase of sightseeing and activities for hotel guests.    Both Gray Line and Big Bus have arrangements with hotels and/or concierge and guest service providers to market and sell their tourist-oriented services and products to hotel guests.

41.    Go New York has been largely shut out of such arrangements and improperly prevented from having its services and products marketed and sold through hotels and/or concierge and guest service providers.

### *The New York City Attraction Pass Sub-Market*

42.    The hop-on hop-off tour bus companies (through affiliates) sell their services, in part, via bundled attraction sightseeing passes (referred to generally hereinafter as the "Attraction

19

Pass"). Attraction Passes constitute a sub-market within the New York City Hop-on, Hop-Off Tour market. An Attraction Pass combines admissions to various New York City attractions and activities for a single price which is substantially discounted from the total cost of the attractions and activities if they were purchased separately, thereby reducing the overall expenses of and providing greater value to consumers who wish to sightsee in New York City.

43.    Prior to the pandemic, Go New York, Gray Line, and Big Bus each attempted to offer Attraction Passes which combine various New York City attractions with their own respective hop-on, hop-off sightseeing bus tours and other services for a single price.  Other companies that do not own attractions or operate their own tourist services, including Go City and Sightseeing Pass, also offer Attraction Passes which may (but do not necessarily) include sightseeing bus tours.

44.36.  However, in or about July 2020, Gray Line and Big Bus formed a single operating entity pursuant to a formal written agreement, the effect of which was to monopolize and fix prices within the market for New York City Hop-on, Hop-off tour bus services, and to effectively shut Go New York out of the Attraction Pass  sub-market, making it difficult if not impossible for Go New York to offer and sell competitive attraction passes. Go New York has attempted to offer its own version of attraction passes that combine together its "hop on hop off" bus services with the bike rental and boat tour services of its commonly owned affiliates (ASK Transit and Liberty Cruise New York City), and certain other tourist attractions within New York City, but the conspiracy between Gray Line and Big Bus described herein has made it extremely difficult, if not impossible, for Go New York to compete effectively in the "Attraction Pass" market, and therefore, the larger Hop-On, Hop-off marketin the NYS Market.

20

45.    In general, companies that offer Attraction Passes must enter into "trade partner" agreements with the owners of attractions and activities that are bundled into the Attraction Passes. Generally, trade partners agree to make admission to their attractions or their services available at a discounted "net rate" when bundled into a partner's Attraction Pass, with the seller of the Attraction Pass paying its partner at the agreed net rate for each pass used at that attraction or to use its services.  The net rate accounts for a commission-type fee retained by the seller of the Attraction Pass for each such use.  The trade partner that owns the attraction or operates the service being used benefits by gaining additional customers, while the partner selling the Attraction Pass earns commissions.

46.    The Attraction Pass sub- market is a natural fit for hop-on, hop-off sightseeing tour bus companies, whose very business model involves transporting tourists comfortably and efficiently between tourist attractions.  The sightseeing tour bus companies benefit not just from commissions from passes used at tourist attractions, but also from selling their own sightseeing tours and other services as a component of Attraction Passes.  The Attraction Pass has become a primary and essential facility for Go New York, Gray Line, and Big Bus to offer and sell their services and to compete in the New York City Hop-on, Hop-off market.  Further, the market for Attraction Passes has become a separate and distinct market within the New York City tourism industry.

47.    Go New York has attempted to offer Attraction Passes under various names,  which allows the consumer to choose among various tourist attractions and activities offered with the pass, while traveling and sightseeing on Go New York's hop-on, hop-off tour buses during a determined period of time ranging from one to several days, at a price substantially less than it would cost the consumer to purchase them separately. Go New York has also bundled its affiliated

21

bike rental and tour boat services with attempted Attraction Pass offerings. However, once Gray Line and Big Bus formed their operating entity, it became apparent that Gray Line and Big Bus had expressly agreed to monopolize (or at least attempt to monopolize) the New York City Hop-on, Hop-off market by conspiring together to shut out Go New York from access to many of the most popular and valuable trade partners offering tourist attractions within New York City.

48.    Big Bus offers its "Big Pass", which allows the consumer to choose among various tourist attractions and activities while traveling and sightseeing on Big Bus's hop-on, hop-off tour buses during a determined period of time ranging from one to several days.

49.    Gray Line offers similar Attraction Passes that combine admissions to various New York City tourist attractions with Gray Line's tour bus (prior to the merger) and Big Bus's tour bus (after the merger) and other services during specific time periods, under various brand names, including "Freestyle", "Flexpass", "Citysightseeing", and "Sightseeingpass".

50.    Go City offers Attraction Passes in cities around the world. In the New York City market, Go City offers Attraction Passes under the brand names "New York City Explorer Pass" and the "New York Pass", which allow the consumer to pick and choose among various attractions and services to bundle and pay for in a single pass. Although Go City offers around 100 various attractions and activities to include in its passes, it offers the services of only one hop-on, hop-off sightseeing tour bus company, Big Bus, which shares common ownership and control with Go City.

51.    Sightseeing Pass offers Attraction Passes in various cities throughout the United States. In the New York City market, Sightseeing Pass offers Attraction Passes under the same brand names used by Gray Line, with which it shares common ownership and control. Sightseeing Pass offers around 100 various attractions and activities included in its various passes, but offers

22

the services of only one hop-on, hop-off sightseeing tour bus company, Gray Line, prior to the formation of the single entity, and Big Bus, after the merger.

52.     Attraction Passes are a popular, convenient, and economical means for consumers to plan their sightseeing and tourist activities in New York City and have become an essential facility for the hop-on, hop-off sightseeing tour bus companies in the New York City market to market and sell their services and products.

53.     Therefore, the ability of each of Go New York, Gray Line, and Big Bus to compete with each other in New York City, as well as with the multitude of other tourist attractions and activities from which tourists may choose when visiting New York City, depends in substantial part on each company's ability to establish trade partner relationships with other attractions so as be able to offer many popular attractions with their respective Attraction Passes at the best price, and to access the main distribution channels from which consumers learn about and purchase the passes.

### *Defendants' Anti-Competitive Conduct*
### *Collusion and Agreements*

54.     For a relatively short period of time of approximately five months from March 2020 through July 2020, the Covid-19 pandemic effectively shut down the markets for Hop-On Hop-Off tour buses and Attraction Passes in New York City.

55.     In or about July 2020, while the tourism industry was shut down, Gray Line and Big Bus recognized an opportunity to form a profitable, monopolistic operating entity that would permit them to fix prices and prevent competition in the markets for Hop-on Hop-Off tour buses and Attraction Passes. Accordingly, they merged their operationsthe effect of which was to form a single operating entity. Pursuant to a written agreement entered into in late July 2020, Gray Line and Big Bus agreed that (a) Big Bus would operate its hop-on, hop-off tour buses within New York

City, (b) Gray Line would cease operating its fleet of hop-on, hop-off tour buses within New York City, except that on information and belief, certain buses owned by Gray Line would be operated by Big Bus, (c) Gray Line would continue to sell tickets on its web-site and otherwise under its "Gray Line" and "City Sightseeing" brand names for hop-on, hop-off tour buses, with Gray Line's ticket holders being directed to use their tickets to ride only buses operated by Big Bus, (d) Big Bus would continue to sell tickets to consumers for its hop-on, hop-off tour buses, (e) Gray Line, Big Bus and Go City would continue to sell their respective Attraction Passes and in so doing, would cooperate with each other in providing access to trade partner attractions, while excluding Go New York from access to such attractions, and (f) Gray Line, Big Bus and Go City would not undercut each other on prices for hop-on hop-off tour buses and Attraction Passes, essentially conspiring to fix the prices of such services. This merger was memorialized in a Summer 2020 Memorandum of Understanding (the "MOU"), which, for the purposes of the New York City Hop-on, Hop-off market, effectively turned Gray Line and Big Bus into a single entity.

56.    In order to implement the MOU, there have been several other agreements between Big Bus and Grey Line, both formal and informal. For instance, because Big Bus' UK based parent company, Big Bus Tours Limited, owns the Big Bus Trademark, it cross-licensed the Big Bus Trademark for use by Big Bus and Grey Line in connection with the merged entity.. Likewise, Grey Line cross-licensed its trademark rights for use by the merged entity and Big Bus. Indeed,, although the MOU contemplates *Gray Line* using *Big Bus'* intellectual property "solely to the extent necessary for the resale of tickets," the opposite has happened. Indeed, *Big Bus* has been putting *Gray Line's* logo in prominent places on its buses, publicly holding themselves out as one entity, or at the very least, a joint venture in the New York City Hop-on, Hop-off market:

24





57.    The above pictures clearly demonstrate that Big Bus is running buses in the name of both companies pursuant to cross-license agreements.

58.    Further, prior to the pandemic, the New York City Department of Transportation ("DOT") had assigned each of Gray Line, Big Bus and Go New York  exclusive access to designated Bus Stops where the companies can pick up and discharge passengers.  Access to these bus stops is extremely valuable.  When Big Bus and Gray Line combined operations, Gray Line permitted Big Bus to use its designated bus stops. In so doing, Gray Line ceased operating its buses, but falsely asserted to the Department of Transportation that it should not reassign access to bus stops that had been designated to Gray Line. Had Gray Line informed DOT that pursuant to its agreement with Big Bus, it had ceased operating buses, DOT would have fairly reassigned and apportioned designated bus stops among operating entities within New York City. Instead, Gray Line misrepresented its status for months, depriving Go New York and its affiliates from access to additional designated bus stops, and instead, allowing the newly merged entity to take

26

advantage of both the bus stops previously assigned to Big Bus and those previously assigned to Gray Line.

59.    In addition, each of Gray Line and Big Bus has adjusted its websites and other key marketing material in order to facilitate the merger. Indeed, it was necessary for Big Bus and Gray Line to make these changes to their marketing materials, as consumers might be confused as to why Gray Line customers were on a Big Bus.

60.    Furthermore, the process of ticket selling itself involves allocating money through several channels. Not only do Big Bus and Gray Line nwork together to fairly allocate revenue, but critically, as alluded to above one of the key sales channels for hop-on, hop-off tours and Attraction Passes are sales representatives who work on commission. Because the sales representatives' commissions are based on the amount of sales they make, Big Bus and Gray Line must work together in the merged entity in order to fairly allocate commissions to their uniformed salespeople.

61.    Another major impact of this merger was to formalize and extend a pre-existing conspiracy among Big Bus, Gray Line and Go City to deny Go New York access to critical trade partners within New York City, thereby (a) either shutting Go New York out of the Attraction Pass market or making it extremely difficult if not impossible for Go New York to compete in the Attraction Pass market, and (b) fixing the prices of Attraction Passes such that none of Big Bus, Gray Line or Leisure Pass would undercut each other on prices for comparable Attraction Passes. As a result of this monopolistic conspiracy and price fixing, consumers have been forced to pay higher prices for Attraction Passes than would exist in the absence of this anti-competitive conduct and Go New York has been unable to effectively and fairly compete in the Attraction Pass market.

27

62. Pursuant to this conspiracy, Big Bus, Gray Line and Go City have expressly agreed to provide each other access to critical trade partners, while conspiring together to exclude Go New York from access to such trade partners.

63. Thus, Gray Line and Big Bus, with the help of their respective affiliates Sightseeing Pass and Go City, have conspired to leverage their substantial market power to require and/or to persuade major New York City attractions to refuse to enter into trade partner agreements with Go New York, and have regularly falsely disparaged TopView "inferior, low cost, low quality" service such that the attractions would risk harming their own reputations by entering into trade partner agreements with Go New York. In addition, Go City and Sightseeing Pass each present themselves to the consuming public as separate and apart from their affiliated sightseeing tour bus company, but offer the hop-on, hop-off sightseeing tour bus services of only Big Bus and exclude Go New York.

64. Gray Line and Big Bus, with the help of their respective affiliates, Sightseeing Pass and Go City, have been and are engaging in their aforesaid conduct with the intent to destroy the value and competitiveness of Go New York's Attraction Passes and to prevent Go New York from meaningfully competing in the market for Attraction Passes. Defendants have thereby harmed competition in the New York City market, to the detriment of consumers.

65. For example, while both Gray Line and Big Bus include admission to "Top of the Rock", the observatory and tourist facility at Rockefeller Center in midtown Manhattan, in their respective bundled sightseeing passes, the operator of Top of the Rock has rebuffed repeated attempts by Go New York to establish a relationship with it. Top of the Rock rejected Go New York notwithstanding Go New York's proposal that that it would not take any commission or fee

28

for admission of Go New York's customers, passing the entire discounted rate on to Top of the Rock's customers and allowing Top of the Rock to charge a higher net rate.

66.     Top of the Rock has consistently rejected Go New York as a trade partner, because of deliberate pressure by Gray Line and Big Bus to exclude Go New York.  There is no rational business reason for Top of the Rock to reject Go New York as a trade partner, other than that Gray Line and Big Bus conspired together to demand that it not do business with Go New York. Mark Marmurstein, Gray Line's chief executive officer, expressly conspired with Big Bus executives Julia Conway and Charles Nolan to share access to Top of the Rock, while jointly pressuring Top of the Rock to exclude Go New York.

67.     Go New York has also been shut out of the Empire State Building Observatory (the "ESB Observatory"), notwithstanding Go New York's proposal that it would not take any commission or fee for admission of Go New York's customers to the ESB Observatory, passing the entire discounted rate on to its customers and allowing ESB Observatory to charge a higher net rate. Yet Big Bus and Gray Line now share access to the ESB Observatory in their respective Attraction Passes, even though the operator of the ESB Observatory previously refused to conduct business with Go New York on the ground that it had an exclusive relationship with Go City's "New York Pass", and Go City shares common ownership with Big Bus, which is a trade partner of the ESB Observatory. Gray Line executive Mark Marmurstein and Big Bus executives Julia Conway and Charles Nolan have agreed to share access to the ESB Observatory in their respective Attraction Passes, but have also agreed with the operator of the ESB Observatory to exclude Go New York.

68.     There is no apparent rational business reason for ESB Observatory to reject Go New York as a trade partner, other than Big Bus, Go City and Gray Line demanded that it not do

29

~~business with Go New York.   This is especially true because ESB Observatory advised Go New York it had an exclusive relationship with Big Bus, yet it agreed with Big Bus to allow Gray Line (a competitor of Big Bus) to participate in a purportedly exclusive arrangement while also agreeing with Big Bus and Gray Line to exclude Go New York.~~

~~69.    Go New York has also been shut out of the One World Observatory at the World Trade Center in lower Manhattan because of pressure and demands by Big Bus and Gray Line executives Julia Conway, Charles Nolan and Mark Marmurstein, who have agreed with each other that Big Bus and Gray line can include One World Observatory in their respective Attraction Passes, and that One World Observatory should continue to exclude Go New York access to One World Observatory.~~

~~70.    Representatives of the One World Observatory have told Go New York that it has an exclusive relationship with Mark Marmurstein, the president of Gray Line, and, indeed, Gray Line advertises the One World Observatory as one of several attractions offered "exclusively" with Gray Line's Multi-Attraction Passes.  Nevertheless, Big Bus also advertises and sells One World Observatory admission as part its own Big Pass, indicating that proffered explanation for excluding Go New York is pretextual. In fact, Mark Marmurstein has agreed with Big Bus executives Julia Conway and Charles Nolan that Gray Line and Big bus can share access to One World Observatory so long as Go New York continues to be excluded.~~

~~71.    Thus, the above-mentioned Gray Line and Big Bus executives have conspired to pressure and demand that One World Observatory, a major attraction which would be at the top of the list of places to visit for most tourists visiting New York City, exclude Go New York.   By doing so, Gray Line and Big Bus have rendered Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the~~

30

New York City market and preventing Go New York from being able to compete fairly in that market.

72.    As another example, Go New York previously executed a trade partner agreement with the Intrepid Sea, Air, and Space Museum (the "Intrepid"), a major tourist attraction located at the west side piers in midtown Manhattan.  Both Gray Line and Big Bus were already trade partners of the Intrepid, and would necessarily have known of the new agreement with Go New York.

73.    The Intrepid unilaterally terminated the agreement just as Go New York began sending its customers there, and in breach of the agreement between Go New York and the Intrepid, The Intrepid refused to honor the passes held by Go New York's customers.  An Intrepid representative told Go New York that the Intrepid did not want to make its other trade partners unhappy by dealing with Go New York.  In fact, Gray Line executive Mark Marmurstein and Big Bus executives Julia Conway and Charles Nolan have expressly agreed with each other to continue to share access to the Intrepid, while continuing to demand that the Intrepid exclude Go New York.

74.    Gray Line and Big Bus, thus, conspired with each other and the Intrepid to cause the Intrepid to terminate and to breach its trade partner agreement with Go New York, for the purpose of rendering Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

75.    Other museums that have refused to work with Go New York include the 9/11 Memorial and Museum and the 9/11 Tribute Museum in lower Manhattan, and the Museum of Modern Art in midtown.

31

76. ~~Big Bus and Gray Line are trade partners of the 9/11 Memorial and Museum and the 9/11 Tribute Museum, and Big Bus is also a trade partner of the Museum of Modern Art. Gray Line and Big Bus executives Mark Marmurstein, Julia Conway and Charles Nolan have agreed to share access to these museums with each other, while expressly conspiring together and with these museums and to exclude Go New York, for the purpose of rendering Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.~~

77. ~~Go New York previously worked with Madame Tussauds, the wax museum attraction located in the Times Square area of Manhattan prior to 2015, before rebranding its hop-on, hop-off tour buses services as "TopView". Big Bus, a trade partner of Madame Tussauds, offering the attraction with its Big Pass, and Madame Tussauds promotes and sells Big Bus tickets at its own facility and web site. Gray Line is also a trade partner of Madame Tussauds.~~

78. ~~In 2018, Go New York met with representatives of Madame Tussauds to try to forge a trade partner relationship with Madame Tussauds, but was eventually told that Madame Tussauds was not onboarding additional trade partners. Big Bus and Gray Line executives Mark Marmurstein, Julia Conway and Charles Nolan, upon information and belief, conspired with Madame Tussauds and each other to exclude Go New York, for the purpose of rendering Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.~~

79. ~~Go New York has also been excluded from Broadway Inbound, an online platform for travel service providers and groups to sell tickets to Broadway shows. In January 2019,~~

32

Broadway Inbound opened an account for Go New York. But a few days later, Broadway Inbound suddenly closed the account, stating that it needed "further time to review" Go New York's account and might reconsider Go New York in six months' time "once we better understand the local market landscape." Broadway Inbound has long-established business relationships with both Gray Line and Big Bus, neither of whose accounts have been closed for further review. In fact, Gray Line executive Mark Marmurstein and Big Bus executives Julia Conway and Charles Nolan have agreed to share access to Broadway Inbound, while working together to exclude Go New York from Broadway Inbound.

80. Gray Line and Big Bus conspired with Broadway Inbound and each other to exclude Go New York, for the purpose of rendering Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

81. In January 2019, Go New York contacted the companies Coach USA and Short Line (referred to hereinafter as "Coach/Short Line"), which operate a shuttle bus service between New York City and the Woodbury Common Premium Outlet shopping center ("Woodbury Common"), to discuss including their shuttle bus service in Go New York's Attraction Passes. Coach/Short Line initially expressed interest and began negotiating a trade partner relationship. But then, Coach/Short Line ceased negotiations and refused to work with Go New York, telling Go New York that "we aren't able to work with you due to other sightseeing company relationships." In fact, Gray Line executive Mark Marmurstein has agreed with Big Bus executives Julia Conway and Charles Nolan to share access to Woodbury Commons with each other, while working with Coach/Short line to exclude Go New York.

33

82.    Big Bus, Go City, Gray Line, and Sightseeing Pass all have trade partner relationships with Coach/Short Line and offer trips to Woodbury Common with their respective Attraction Passes (directly and/or through their respective affiliates). Big Bus, Go City, Gray Line, and Sightseeing Pass, have conspired with Coach/Short Line and each other to exclude Go New York, for the purpose of rendering Go New York's Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

83.    The cumulative impact on Go New York from the aforesaid monopolistic conspiracy by executives of Gray Line and Big Bus, which was formalized and implemented pursuant to their July 2020 agreement, has been to effectively shut out Go New York from effectively competing in the Attraction Pass market and the larger New York City Hop-on, Hop-off Market.

84.    In this regard, Gray Line and Big Bus are able to fix prices for their respective Attraction Passes and those of their affiliates at levels substantially higher than would have existed had Go New York not been effectively shut out of the Attraction Pass market.  While Go New York continues to attempt to offer Attraction Passes, it cannot effectively compete because it has been shut of access to numerous critical trade partner relationships.  But for the monopolistic conspiracy among Gray Line, Big Bus and their affiliates, which was formalized pursuant to their July 2020 joint venture, Go New York could have offered competitive Attraction Passes at lower prices than those offered by Gray Line, Big Bus and their affiliates.  The merger between Gray Line and Big Bus has effectively eliminated and destroyed meaningful competition in the Attraction Pass market and thereby severely curtailed competition in the New York City Hop-on, Hop-off market at large.

34

85.    By excluding Go New York from major tourist attractions, defendants have substantially inhibited or prevented Go New York's ability to offer and sell bundled sightseeing passes that are attractive to customers, and substantially inhibited or prevented Go New York's access to essential distribution channels.

37.    Beginning in the summer of 2020, Big Bus and Twin America entered into a series of agreements and arrangements by which they conspired to effectively merge their respective hop-on, hop-off bus tour operations into a single operation by Big Bus while maintaining the false appearance to consumers that Twin America continued to operate and to compete with Big Bus in the NYC Market, thereby enabling Big Bus to attempt to monopolize the NYC Market while substantially reducing competition in the market. Their anticompetitive collusion continued until at least around late 2024, when Twin America and Big Bus were compelled to terminate their anticompetitive agreements and arrangements to resolve an antitrust investigation by the NYAG.

38.    Pursuant to a series of written agreements and other arrangements entered into between August 2020 and February 2023, Twin America and Big Bus agreed as follows: (a) Big Bus would operate its hop-on, hop-off tour buses within New York City; (b) Twin America would not resume its own hop-on, hop-off tour bus operations within New York City; (c) Big Bus would operate between one and four of Twin America's hop-on, hop-off tour buses in order that Twin America could retain its DOT-authorized sightseeing bus stop permits for use by Big Bus and to prevent the DOT from reassigning bus stops from Twin America to their competitors, such as Go New York; (d) Twin America and Big Bus were authorized to use each other's brand names, trademarks, and other intellectual property; and (e) Twin America would continue to promote and sell hop-on, hop-off bus tour tickets and Attraction Passes under its Gray Line, CitySights, and/or

35

other brand names, including on Twin America's existing web sites, but would direct purchasers to buses operated by Big Bus, for which Big Bus would pay Twin America higher commission rates than in other cities.

39.     Upon information and belief, the first of the anticompetitive written agreements was a "Memorandum of Understanding" dated August 27, 2020 between Twin America and Big Bus Tours Limited (the "MOU"), which outlined the principal terms of a further anticipated agreement summarized as follows:

> TA [Twin America] and BB [Big Bus] propose to enter into an arrangement pursuant to which TA will sell sightseeing tour bus tickets and private hire services. The sightseeing tours will be on BB's route network, operated solely by BB. Private hires will be operated on BB's fleet of open top, double decker buses. BB shall continue to sell its products through its current distribution channels and at prices determined solely by BB, as will TA.

40.     Patrick Waterman, who is a director of Big Bus Tours Limited as well as the ultimate parent company of the Big Bus group of companies, Big Bus Tours Group Holdings Limited, and is also Chief Executive Officer of both Taxi Tours, Inc. and Open Top Sightseeing USA, Inc., signed the MOU on behalf of only Big Bus Tours Limited. No other Big Bus-affiliated company signed or was expressly named a party to the MOU.

41.     Prior to April 2025, Big Bus and Twin America repeatedly denied that they had entered into additional anticompetitive agreements subsequent to their August 2020 MOU, which they mischaracterized to this Court and elsewhere as a mere ticket-reselling arrangement with no anticompetitive impact. In around mid-April 2025, however, the NYAG announced that it had commenced an investigation pursuant to the Donnelly Act, N.Y. Gen. Bus. Law § 340, *et seq.*, and Section 1 of the Sherman Act, 15 U.S.C. § 1, "into the use of reseller and operation management agreements for the provision of" hop-on, hop-off tour buses in New York City, and identified eight

36

agreements in addition to the MOU as part of the collusion between Twin America and Big Bus to reduce competition in the NYC Market.[7]

42.    The NYAG announced its investigation after it had finalized settlements with Twin America and Big Bus, memorialized in an "Assurance of Discontinuance" ("AOD") between the NYAG and each of Twin America and Big Bus.[8] The AODs identified the written agreements entered into among Twin America and Big Bus subsequent to the MOU in furtherance of their anticompetitive collusion and arrangements (together with the MOU, the "Agreements"), as follows:

- Extension of Memorandum of Understanding, dated March 1, 2021;

- Updated Memorandum of Understanding, dated December 1, 2021;

- Reseller Ticket Agreement, dated December 1, 2021;

- Vehicle-Specific Operation and Management Agreement, dated January 1, 2022;

- Global Reseller Ticket Agreement, dated January 1, 2023 (the "Global Reseller Ticket Agreement");

- Operation and Management Agreement, dated February 21, 2023;

- Memorandum of Understanding, dated February 21, 2023; and

- Amendment to Vehicle-Specific Operation and Management Agreement, dated February 21, 2023.

---

[7]    See "Attorney General James Secures Over $2.5 million from New York City Bus Tour Companies for Colluding to Limit Competition", NYAG Press Release, April 16, 2025, available at https://ag.ny.gov/press-release/2025/attorney-general-james-secures-over-25-million-new-york-city-bus-tour-companies (last viewed on May 26, 2025), with links to Assurances of Discontinuance No. 24-070 dated September 9, 2024 (with respect to Big Bus) and No. 25-015 dated April 10, 2025 (with respect to Twin America).

[8]    See n.4, supra. Julia Conway, who previously represented to this Court that she was "Executive Vice President of North America for Taxi Tours, Inc." (ECF Doc. 68, at ¶ 1), signed one of the AODs as "Chief Operating Officer" on behalf of Big Bus Tours Limited, Taxi Tours, Inc., and Open Top Sightseeing USA, Inc.

43.    Go New York is unable to allege the specific contents of and signatory parties to the Agreements other than the initial MOU, because Twin America and Big Bus have refused Go New York's requests to disclose them (and prior to April 2025, denied their existence).

44.    Nevertheless, as stated in the AODs, the NYAG found that Twin America's and Big Bus's entry into the Agreements reduced competition in the NYC Market and "likely violate[d]" Section 1 of the Sherman Act and the New York Donnelly Act, among other statutes.

45.    In order to settle the NYAG's allegations, Twin America and Big Bus each agreed, among other things, to terminate and cease performance under the Agreements and all other "existing agreements, assurances, and understands" among them "related on the New York City metropolitan area, whether oral or written, and whether formal or written", and to pay a combined stipulated penalty of $2.5 million.

46.    Evidence of Twin America and Big Bus's anticompetitive collusion has long been apparent. For example, while the parties' initial MOU contemplated that Twin America would use Big Bus's intellectual property "solely to the extent necessary for the resale of tickets", on-the-ground observations indicate that Twin America licensed to Big Bus (or otherwise authorized Big Bus to use) Twin America's brand names and marks for use on Big Bus buses – as demonstrated in the images below of Big Bus's buses which display the Big Bus marks and the Gray Line marks:

38





47.    The above pictures indicate that Twin America and Big Bus effectively merged their respective operations into one hop-on, hop-off bus tour operation run by Big Bus.

48.    In addition, it has long been known that Twin America was somehow able to retain its valuable DOT sightseeing bus stop permits despite not having operated any hop-on, hop-off tour buses since March 2020, which would normally justify the DOT's reassignment of those bus stops to companies actually operating bus tours. As referenced in the NYAG's AODs, Big Bus and Twin America defrauded the DOT by having Big Bus operate one to four of Twin America's buses in order to create the false appearance that Twin America was still operating its own hop-on, hop-off bus tours, so that DOT would not reassign Twin America's bus stops to other operating companies in the NYC Market.

49.    As noted above, access to desirable bus stops near popular tourist attractions and areas is critical to maintaining a competitive hop-on, hop-off bus tour operation. The bus stops' value and importance to maintaining competition in the NYC Market is demonstrated by the fact

40

that, as discussed above, the 2015 consent judgment entered in the DOJ and NYAG's 2012 antitrust against Twin America required Twin America to relinquish 47 Manhattan sightseeing bus stops for which the DOT had previously distributed permits to CitySights.[9]

50.     Had the DOT known that Twin America had ceased operating its hop-on, hop-off tour buses, DOT would have reassigned and apportioned designated bus stops among other companies, including Go New York. Defendants' coordinated deception hindered the ability of Go New York, and other companies operating or seeking to operate in the NYC Market, to compete against them.

51.     Further, Twin America and Big Bus misled consumers about the true nature of the tourism products that Twin America promoted and sold. After Twin America had ceased its hop-on, hop-off bus tours, it continued, for a substantial period of time, to maintain its web sites and brand identities, and continued to sell Attraction Passes and hop-on, hop-off bus tickets under its own branding without disclosing that the bus tours would be provided by Big Bus. A customer who purchased a hop-on, hop-off bus tour ticket from Twin America's web site, whether as a stand-alone ticket or part of an Attraction Pass, was not explicitly informed of Twin America's affiliation with Big Bus or that they were purchasing passage on a Big Bus bus, until it came time to use the purchased ticket and they were directed to Big Bus.

52.     The material misrepresentation and/or omissions by Twin America, in collusion with Big Bus, harmed consumers as well as Go New York. Consumers were misled to believe that Twin America and Big Bus were active competitors in the NYC Market and that they had a choice between them, whereas there was in fact no option to buy a ticket on a Twin America bus. A consumer who did not wish to ride on a Big Bus bus would believe they could still choose among

---

[9]     *See* n.3, *supra.*

two other major options, Twin America and Go New York, whereas their only alternative to Big Bus was Go New York. By failing to disclose to consumers, as well as third-party resellers, that hop-on, hop-off bus tickets purchased from Twin America could only be used on a bus operated by Big Bus, Twin America diverted customers away from Go New York to Big Bus.

53.    Further, the Agreements and collusion evidence Big Bus's attempt to monopolize the NYC Market, by eliminating one of its two main competitors and exploiting Twin America's sales channels to expand its market share.

54.    While Twin America and Big Bus have agreed to terminate and cease performance of their Agreements and to comply with antitrust laws as part of their settlements with the NYAG, their collusion and anticompetitive conspiracy which occurred over a period of at least around four and one half years, have unlawfully reduced competition in the NYC Market and caused compensable harm to Go New York.

## FIRST CLAIM FOR RELIEF

(Against All Defendants, for ~~Monopolization~~ Unreasonable Restraint of Trade Under ~~of~~ Section ~~2~~ 1 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1~~,~~ and 15)

~~86.~~55.  Plaintiff repeats~~,~~ and realleges ~~and reincorporates~~ the allegations in each of the foregoing paragraphs ~~1 through 80~~ as if set forth in their entirety herein.

56.    ~~As alleged above~~Through the Agreements and other oral and written assurances and conduct, defendants ~~have engaged~~effectively merged Twin America's and Big Bus's separate hop-on, hop-off tour bus operations into one operation run by Big Bus and Twin America ceased operating its own hop-on, hop-off bus tours in ~~a merger to monopolize the~~ New York City ~~Hop-on, Hop-off~~, thereby reducing competition in the NYC Market and ~~its submarket, the Attraction Pass~~causing damages to Go New York.

42

57.     Through their Agreements and other oral and written assurances and conduct, Twin America permanently ceased its own hop-on, hop-off bus tours, and Big Bus exploited Twin America's sales channels, intellectual property including brands and marks, reputation and goodwill among consumers, and DOT-assigned sightseeing bus stops to expand Big Bus's share of the NYC Market, ~~to fix prices within the New York City Hop-on, Hop-off market, and~~ thereby reducing competition in the NYC Market. As the NYAG found, there is no procompetitive justification for the aforesaid Agreements and other oral and written assurances and conduct among Twin America and Big Bus.

~~87.~~58.  In particular, Twin America and Big Bus colluded to deceive the DOT by having Big Bus operate a few of Twin America's buses in order to give the false appearance that Twin America was continuing to operate its own hop-on, hop-off bus tours, in order to prevent ~~or impede~~the DOT from reassigning sightseeing bus stops to Big Bus's competitors, including Go New York, and to enable Big Bus to exploit Twin America's bus stops, thereby substantially reducing Go New York's ability to compete ~~in the New York City Hop-on, Hop-off market~~with Big Bus and reducing competition from Big Bus's competitors overall.

~~88.     Big Bus and Go City have unlawfully conspired with Gray Line and Sightseeing Pass, and all of them have conspired with the operators of New York City tourist attractions, whether directly or through their respective affiliates, to monopolize the Attraction Pass market and the larger New York City, Hop-on, Hop-off market by excluding Go New York and its affiliates from trade partner relationships with New York City tourist attractions, from the Attraction Passes offered by Go City and Sightseeing Pass in the New York City market, from hotel concierges and guest services, and from other tourist services.~~

43

89.    Defendants' aforesaid improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York and its affiliates in the New York City Hop-on, Hop-off market to maintain artificially high prices for consumers, and defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York and its affiliates to lose market share, customers, and revenues.

90.    Defendants by their aforesaid unlawful conduct have caused actual injury to Go New York by causing Go New York and its affiliates to lose market share, customers, and revenues, including but not limited to sales of the Attraction Pass product, its hop-on hop off tour bus services, the bike rental services of its affiliate, ASK Transit, and the boat tour services of its affiliate, Liberty Cruise.

59.    Defendants have thereby engaged in monopolization Twin America and Big Bus also colluded to deceive consumers, as well as the DOT, about Twin America's cessation of its own hop-on, hop-off bus tours and its marketing and sale under its own brands of bus tickets, including stand-alone tickets as well as incorporated into Attraction Passes, which could only be used on Big Bus buses. Defendants thereby reduced competition by hiding from consumers the true competitors in the NYC Market and deceived consumers into unwittingly purchasing tickets for Big Bus.

60.    By reason of the foregoing, defendants knowingly and purposefully engaged in unreasonable restraint of trade in violation of section 21 of the Sherman Act, 15 U.S.C. 2.

91.    Therefore, under Section 1 of the Sherman Act and sectionSection 4 of the Clayton Act, 15 U.S.C. §§ 1 and 15.

92.61. ~~Based on the foregoing,,.~~ Go New York is entitled to recover its damages from defendants including treble damages, and costs of suit including reasonable attorney fees~~, and interest~~, to the fullest extent permitted by law.

**SECOND CLAIM FOR RELIEF**

(Against All Defendants, for ~~Attempted Monopolization~~Attempting and Conspiring to Monopolize Trade Under
Section 2 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 2~~,~~ and 15)

93.62. Plaintiff repeats~~,~~ and realleges ~~and reincorporates~~ the allegations in each of ~~paragraph 1 through 93~~the foregoing paragraphs as if set forth in their entirety herein.

63.    ~~As~~Upon information and belief, Big Bus and Twin America, as the first and second largest providers respectively of hop-on, hop-off bus tours in the NYC Market, collectively held a market share of at least 50 percent to 70 percent.

64.    For reasons alleged above, ~~defendants have~~ Twin America and Big Bus, through their Agreements and other oral and written assurances and conduct, engaged in ~~a merger to attempt~~anticompetitive conduct with the specific intent to combine their respective hop-on, hop-off bus tours operations to enable Big Bus to monopolize the NYC Market, with a dangerous probability of doing so.

65.    But for the NYAG's investigation and settlements by which Twin America and Big Bus were compelled to terminate and cease performance of their Agreements, Twin America and Big Bus would likely have succeeded in attaining a monopoly by Big Bus in the NYC Market.

94.66. For reasons alleged above, even if Twin America and Big Bus were ultimately prevented from attaining a monopoly for Big Bus, their attempts and conspiracy to do so reduced competition in the NYC Market and caused damages to Go New York ~~City Hop-on, Hop-off market and its submarket, the Attraction Pass market~~.

45

95.    Defendants have entered into an actual anticompetitive agreement with a specific intent to monopolize.

96.67.  Defendants have thereby engaged inunlawfully attempted monopolizationand conspired to monopolize the NYC Market, in violation of sectionSection 2 of the Sherman Act, 15 U.S.C. § 2 and section 4 of the Clayton Act, 15 U.S.C. § 15.

97.    Therefore, Go New York is entitled to recover its damages from defendants including treble damages, costs of suit including reasonable attorney fees, and interest, to the fullest extent permitted by law.

### THIRD CLAIM FOR RELIEF
(Against All Defendants, for Conspiracy to Monopolize Underunder Section 2 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 2, 15)

98.    Plaintiff repeats, realleges and reincorporates the allegations of paragraph 1 through 97 as if set forth in their entirety herein.

99.    As alleged above, defendants have engaged in a conspiracy to monopolize the New York City Hop-on, Hop-off market and its submarket, the Attraction Pass market.

100.   Big Bus and Go City have unlawfully conspired with Gray Line and Sightseeing Pass, and all of them have conspired with the operators of New York City tourist attractions, whether directly or through their respective affiliates, to monopolize the Attraction Pass market and the larger New York City, Hop-on, Hop-off market by excluding Go New York and its affiliates from trade partner relationships with New York City tourist attractions, from the Attraction Passes offered by Go City and Sightseeing Pass in the New York City market, from hotel concierges and guest services, and from other tourist services.

101.   Defendants' aforesaid improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York and its affiliates in the New York City Hop-on, Hop-off market to maintain artificially high prices for consumers, and

46

defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York and its affiliates to lose market share, customers, and revenues.

102.    Defendants by their aforesaid unlawful conduct have caused actual injury to Go New York by causing Go New York and its affiliates to lose market share, customers, and revenues, including but not limited to sales of the Attraction Pass product, its hop-on hop off tour bus services, the bike rental services of its affiliate, ASK Transit, and the boat tour services of its affiliate, Liberty Cruise.

103.    Defendants have thereby engaged in conspiracy to monopolize in violation of section 2 of the Sherman Act, 15 U.S.C. 1 and section 4 of the Clayton Act, 15 U.S.C. § 15.

104.68.Therefore15, Go New York is entitled to recover its damages from defendants including treble damages, costs of suit including reasonable attorney fees, and interest, to the fullest extent permitted by law.

### FOURTH CLAIM FOR RELIEF
### THIRD CLAIM FOR RELIEF

(Against All Defendants, for Unreasonable Restraint of Trade Under Section 1Violations of the Sherman
Donnelly Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1, 15, New York Gen. Bus. Law § 340)

105.69.Plaintiff repeats, realleges and reincorporates the allegations of paragraph 1 through 104 in each of the foregoing paragraphs as if set forth in their entirety herein.

106.    AsFor reasons alleged above, defendants haveTwin America and Big Bus, through their Agreements and other oral and written assurances and conduct, engaged in a conspiracyanticompetitive agreements and arrangements intended to unreasonably restrain trade and create a monopoly in the New York City Hop-on, Hop-off market and its submarket, NYC Market, which did in fact substantially reduce competition in the Attraction Pass market.

47

107.    Big Bus and Go City have unlawfully conspired with Gray Line and Sightseeing Pass, and all of them have conspired with the operators of NYC Market, in violation of New York City tourist attractions, whether directly or through their respective affiliates, to monopolize public policy and to the detriment of consumers and Twin America and Big Bus's competitors in the Attraction Pass market and the larger NYC Market, including Go New York City, Hop-on, Hop-off market by excluding , causing damages to Go New York and its affiliates from trade partner relationships with New York City tourist attractions, from the Attraction Passes offered by Go City and Sightseeing Pass in the New York City market, from hotel concierges and guest services, and from other tourist services.

108.    Defendants' aforesaid improper concerted action has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York and its affiliates in the New York City Hop-on, Hop-off market to maintain artificially high prices for consumers, and defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York and its affiliates to lose market share, customers, and revenues.

109.    Defendants by their aforesaid unlawful conduct have caused actual injury to Go New York by causing Go New York and its affiliates to lose market share, customers, and revenues, including but not limited to sales of the Attraction Pass product, its hop-on hop off tour bus services, the bike rental services of its affiliate, ASK Transit, and the boat tour services of its affiliate, Liberty Cruise.

110.70. Defendants have thereby engaged in conspiracy to monopolize in violation of section 2 of the Sherman Act, 15 U.S.C. § 2 and section 4 of the Clayton Act, 15 U.S.C. § 15.

48

111.   Therefore, ~~Go New York is entitled to recover its damages from defendants including treble damages, costs of suit including reasonable attorney fees, and interest, to the fullest extent permitted by law.~~

<u>under the New York</u> ~~**FIFTH CLAIM FOR RELIEF**~~
~~(Against All Defendants, for Violations of the~~
~~Clayton Act, Sections 7 and 4, 15 U.S.C. §§15 and 18)~~

~~112.   Plaintiff repeats, realleges, and reincorporates the allegations of paragraph1 through 111 as if fully set forth in their entirety herein.~~

~~113.   Defendants Big Bus and Gray Line have formed a jointly-owned entity for the purposes of creating a monopoly.~~

~~114.   Defendants have thereby engaged in an anticompetitive merger under Sections 7 and 4 of the Clayton Act, 15 U.S.C. §§15 & 18.~~

~~115.   Therefore, Go New York is entitled to recover its damages from defendants including treble damages, costs of suit including reasonable attorney fees, and interest, to the fullest extent permitted by law.~~

~~**SIXTH CLAIM FOR RELIEF**~~
~~(Against All Defendants, for Violations of the~~
~~Donnelly Act, New York Gen. Bus. L. § 340, *et seq*.)~~

~~116.   Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 87 as if set forth in their entirety herein.~~

~~117.   As alleged above, each of defendants has conspired to monopolize the market for Hop-On, Hop-Off Buses and the sub-market for Attraction Passes within New York City, have attempted to monopolize such markets, and have excluded, and/or entered into contracts for the purpose of excluding, Go New York and its affiliates from such markets..~~

49

118. Defendants' aforesaid improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York and its affiliates in the New York City Hop-on, Hop-off market and the Attraction Pass sub-market, and to maintain artificially high prices for consumers, and defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York and its affiliates to lose market share, customers, and revenues

119. Defendants have each engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York and its affiliates to lose market share, customers, and revenues, and have caused such actual injury to Go New York and its affiliates.

120. For the foregoing reasons, defendants have engaged in unreasonable restraint of trade in violation of the Donnelly Act, New York N.Y. Gen. Bus. L. Law § 340.

121.71. Therefore, Go New York is entitled to recover its damages from defendants including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

## FOURTH CLAIM FOR RELIEF

### SEVENTH CLAIM FOR RELIEF
(Against All Defendants, for
Common Law Unfair Competition)

122.72. Plaintiff repeats, realleges and reincorporates the allegations of in each of the foregoing paragraphs 1 through 93 as if set forth in their entirety herein.

123.73. As alleged above, defendants have confused consumers as to the extent of their affiliation, thereby increasing their own market share at the expense of Go New York and preventing Go New York from offering and selling its services and products.

124.74.By reason of the foregoing, defendants have wrongfully diverted business from Go New York and its affiliates to themselves, thereby damaging Go New York in an amount to be determined at trial, which Go New York is entitled to recover from defendants.

**FIFTH CLAIM FOR RELIEF**
(Against All Defendants, for False Designation of Origin
in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125)

75.    Plaintiff repeats, realleges and reincorporates the allegations in each of the foregoing paragraphs as if set forth in their entirety herein.

76.    As alleged above, Twin America and Big Bus conspired to and did deceive consumers about Twin America's affiliation with Big Bus and the true nature of the tourism products that Twin America promoted and sold, by means of Twin America's continuing to maintain its web sites and brand identities, and continuing to sell hop-on, hop-off bus tour tickets, whether as stand-alone tickets or as part of Attraction Passes, under Twin America's own branding without disclosing that the bus tours would be provided by Big Bus.

77.    Twin America and Big Bus thereby intentionally misrepresented to consumers a false origin of Twin America's tourism products, and used Twin America's brand names and marks to cause confusion and mistake, and to deceive consumers, as to the affiliation between Twin America and Big Bus and the origin, nature, characteristics, and qualities of Twin America's products, and that hop-on, hop-off bus tours purchased from Twin America, under Twin America's brand names and marks, would actually be provided by Big Bus.

78.    Twin America and Big Bus thereby falsely represented Big Bus hop-on, hop-off bus tours as Twin America's bus tours, and caused consumers to unwittingly purchase tickets for Big Bus instead of Go New York and impeded Go New York's ability to compete in the NYC Market, thereby causing damages to Go New York.

51

79.    Therefore, under Section 43 of the Lanham Act, 15 U.S.C. § 1125, Go New York is entitled to recover Go New York is entitled to recover its damages from defendants.

80.    Further, Twin America and Big Bus undertook to deliberately confuse and deceive consumers about their affiliation, Twin America's cessation of its own hop-on, hop-off bus tours, and the nature of products and services marketed and sold by Twin America, demonstrating bad faith and warranting an award of Go New York's costs and reasonable attorneys' fees.

**SIXTH CLAIM FOR RELIEF**
(Against All Defendants, for Deceptive Acts and
Practices in Violation of N.Y. Gen. Bus. Law § 349)

81.    Plaintiff repeats, realleges and reincorporates the allegations in each of the foregoing paragraphs as if set forth in their entirety herein.

82.    Section 349 of the New York General Business Law prohibits "[d]eceptive acts and practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state" directed to consumers.

83.    For reasons alleged above, Twin America and Big Bus engaged in deceptive acts and practices directed to consumers in violation of Gen. Bus. Law § 349 by, among other things, intentionally misleading consumers as to the affiliation between Twin America and Big Bus, Twin America's cessation of its own hop-on, hop-off bus tours, and the nature of the products marketed and sold by Twin America, and failing to disclose clearly that hop-on, hop-off bus tours marketed and sold by Twin America would be provided by Big Bus.

84.    Twin America and Big Bus thereby caused consumers to unwittingly purchase tickets for Big Bus instead of Go New York and impeded Go New York's ability to compete in the NYC Market, thereby causing damages to Go New York.

85.     Under N.Y. Gen. Bus. Law § 349, Go New York is entitled to recover its actual damages from defendants.

86.     Further, because Twin America and Big Bus willfully and knowingly engaged in their deceptive acts and practices alleged herein, Go New York should be awarded treble damages and its reasonable attorneys' fees.

## SEVENTH CLAIM FOR RELIEF

(Against Twin America, for False Advertising
in Violation of N.Y. Gen. Bus. Law § 350)

87.     Plaintiff repeats, realleges and reincorporates the allegations in each of the foregoing paragraphs as if set forth in their entirety herein.

88.     Section 350 of the New York General Business Law prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state".

89.     For reasons alleged above, Twin America engaged in false advertising in violation of N.Y. Gen. Bus. Law § 350 by, among other things, falsely marketing, promoting, and selling to consumers, including on Twin America's web sites, hop-on, hop-off bus tours, both stand-alone and as part of Attraction Passes, as products or services  provided by Twin America, without clearly disclosing that Twin America had ceased operating its own hop-on, hop-off bus tours and that such bus tours would be provided by Big Bus.

90.     Twin America thereby caused consumers, who reasonably relied on its false advertising, to unwittingly purchase tickets for Big Bus instead of Go New York and impeded Go New York's ability to compete in the NYC Market, thereby causing damages to Go New York, and Go New York is entitled to recover same from Twin America, together with statutory penalties, cost, and reasonable attorneys' fees to the extend provided by law.

53

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff Go New York ~~Tours, Inc.~~ demands ~~Judgment~~judgment in its favor and against ~~defendants Gray Line New York Tours, Inc., Twin America, LLC, Sightseeing Pass LLC, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc., Go City Holdings Limited, Go City Limited, and Go City, Inc.,~~the Twin America and Big Bus defendants, as follows:

A.      Awarding ~~plaintiff~~ Go New York its ~~actual~~ damages and treble damages for defendants' violations of the Sherman Act and ~~Clayton Acts, and of the~~New York Donnelly Act, together with costs and reasonable attorneys' fees;

B.      Awarding ~~plaintiff~~ Go New York its damages for defendants' false designation of origin in violation of Section 43 of the Lanham Act, together with costs ~~of suit, including~~ and reasonable attorneys' fees~~, under the Clayton Act and the Donnelly Act, and~~ as ~~may otherwise be~~ permitted by law;

~~C.      Awarding plaintiff Go New York interest under the Clayton Act, and as may otherwise be permitted by law;~~

~~D.~~C.   ~~Awarding plaintiff~~ Go New York its damages~~, costs of suit, and interest~~ for defendants' unfair competition under New York common law~~, and its interests and costs as may be permitted by law; and~~;

D.      ~~Such~~Awarding Go New York its damages for defendants' deceptive acts and practices in violation of Section 349 of the New York General Business Law, and treble damages, costs, reasonable attorneys' fees as permitted by law;

E.      Awarding Go New York its damages for Twin America's false advertising in violation of Section 350 of the New York General Business Law;

F.      Awarding Go New York statutory costs and interest; and

54

E.G.    Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims and issues herein.

Dated: May 28, 2025 in New York, New York

**BARTON LLP**

October 10, 2023

By: /s/

Maurice N. Ross /s/
Maurice N. Ross
Randall L. Rasey
A.J. Monaco
Barak Bacharach

711 Third Avenue, 14th Floor
New York, NY 10017
(212) 687-6262
mross@bartonesq.com
mross@bartonesq.com
rrasey@bartonesq.com
ajmonaco@bartonesq.com
bbacharach@bartonesq.com
*Attorneys for Plaintiff*
*Go New York Tours, Inc.*

55

**VERIFICATION**

I, ASEN KOSTANDINOV, am the president of GO NEW YORK TOURS, INC., the defendant and counterclaim plaintiff in this action. I have read the foregoing Second Amended Verified Complaint, and the facts stated therein are true to the best of my knowledge, except for facts stated upon information and belief, and as to those I believe them to be true.

_____ _____

                                                                         Asen Kostadinov

Sworn to before me on _____, 2025.

_____
       Notary Public

56