# Exhibit A

UNITED STATES DISCTRIC COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GO NEW YORK TOURS, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>GRAY LINE NEW YORK TOURS, INC., TWIN AMERICA, LLC, SIGHTSEEING PASS LLC, BIG BUS TOURS GROUP HOLDINGS LIMITED, BIG BUS TOURS GROUP LIMITED, BIG BUS TOURS LIMITED, OPEN TOP SIGHTSEEING USA, INC., TAXI TOURS, INC., LEISURE PASS GROUP HOLDINGS LIMITED, LEISURE PASS GROUP LIMITED, and LEISURE PASS GROUP, INC.,<br><br>Defendants. | 19-cv-02832 (LAK)(BCM)<br><br>**FIRST AMENDED**<br>**VERIFIED COMPLAINT**<br><br><br><br><br><br>**JURY TRIAL DEMAND** |

Plaintiff Go New York Tours, Inc. ("Go New York"), by its undersigned counsel, hereby alleges, as against defendants Gray Line New York Tours, Inc., Twin America, LLC, Sightseeing Pass LLC, Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc., Leisure Pass Group Holdings Limited, Leisure Pass Group Limited, and Leisure Pass Group, Inc., as follows:

### NATURE OF ACTION

1. This is an action for antitrust violations by the two dominant companies in the New York City hop on, hop off sightseeing tour bus market targeted against the third and only other company currently operating in that market, plaintiff Go New York. As alleged below, defendants have monopolized the market and/or conspired with each other and with non-parties to this action to minimize competition in the market at the expense of consumers, and to render Go New York less competitive and to reduce its market share, customers, and revenues. Defendants' anti-competitive conduct violates federal and New York state antitrust statutes and

New York state common law.  Plaintiff Go New York asserts herein claims against defendants for violations of Sections 1 and 2 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1, 2, and 15; the Donnelly Act, New York General Business Law § 340; and for unfair competition and tortious interference under New York common law.  Plaintiff Go New York seeks damages from all defendants, including treble damages, costs and attorneys' fees under the Clayton and Donnelly Acts.

## PARTIES

2. Plaintiff Go New York is a New York corporation with its main offices located at 2 East 42nd Street, New York, New York.

### *Gray Line*

3. Defendant Gray Line New York Tours, Inc. is a New York corporation with its main offices located at 1430 Broadway, New York, New York.

4. Defendant Twin America, LLC ("Twin America") is a Delaware limited liability company registered with the New York State Department of State to do business in New York State, with its main offices located at 1430 Broadway, New York, New York.  Upon information and belief, Twin America operates and controls Gray Line New York Tours, Inc.  (Hereinafter, Gray Line New York Tours, Inc. and Twin America are referred to herein collectively as "Gray Line".)

5. Defendant Sightseeing Pass LLC ("Sightseeing Pass") is a Delaware limited liability company registered with the New York State Department of State to do business in New York State, with, upon information and belief, its main offices located at 1430 Broadway, New York, New York.  Upon information and belief, Sightseeing Pass shares common ownership and control with Gray Line, and/or is owned and/or controlled by Gray Line.

### *Big Bus*

6.     Defendant Big Bus Tours Group Holdings Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road, London, United Kingdom.

7.     Upon information and belief, non-party Exponent Private Equity LLP ("Exponent"), a London-based private equity firm organized and existing under the laws of the United Kingdom, owns, directly and/or indirectly, approximately 85 percent of and controls Big Bus Tours Group Holdings Limited.

8.     Upon further information and belief, non-party Merlin Entertainments plc ("Merlin"), a company organized and existing under the laws of the United Kingdom with its main offices located in Dorset, United Kingdom, owns, directly and/or indirectly, approximately 15 percent of and as such exerts control over Big Bus Tours Group Holdings Limited.  Upon further information and belief, Merlin owns and controls, directly and/or indirectly, various companies which own and operate "Madame Tussauds" wax museum tourist attractions located around the world, including the Madame Tussauds wax attraction located on West 42nd Street in the Times Square area of New York City.

9.     Defendant Big Bus Tours Group Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road, London, United Kingdom.  Upon information and belief, Big Bus Tours Group Limited is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited, and ultimately by Exponent and Merlin.

10.     Defendant Big Bus Tours Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road,

London, United Kingdom. Upon information and belief, Big Bus Tours Limited is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited and/or Big Bus Tours Group Limited, and ultimately by Exponent and Merlin.

11. Defendant Open Top Sightseeing USA, Inc., is a Delaware corporation which is registered with the New York State Department of State to do business in New York State. Upon information and belief, Open Top Sightseeing USA, Inc. is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, and Big Bus Tours Limited, and ultimately by Exponent and Merlin.

12. Defendant Taxi Tours, Inc. is a New York corporation with its principal office located at 723 Seventh Avenue, New York, New York. Upon information and belief, Taxi Tours, Inc.'s CEO, Patrick Waterman, is also an officer and/or director of Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, and resides in the United Kingdom. Upon further information and belief, Taxi Tours, Inc. is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, and/or Open Top Sightseeing USA, Inc., and, ultimately, by Exponent and Merlin. (Hereinafter, Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., and Taxi Tours, Inc. are referred to herein collectively as "Big Bus".)

### *Leisure Pass Group*

13. Defendant Leisure Pass Group Holdings Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at Link House, 25 West Street, Poole, Dorset, United Kingdom.

4

14.     Upon information and belief, Leisure Pass Group Holdings Limited is controlled and principally owned directly and/or indirectly by Exponent, which, as alleged above, is also the principal owner and controller, directly or indirectly of Big Bus.  Upon further information and belief, Big Bus Tours Group Holdings Limited owns a significant minority stake in, and as such exerts control over, Leisure Pass Group Holdings Limited.

15.     Defendant Leisure Pass Group Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at Link House, 25 West Street, Poole, Dorset, United Kingdom.  Upon information and belief, Leisure Pass Group Limited is owned and controlled, directly or indirectly, by Leisure Pass Group Holdings Limited, Exponent, and Big Bus Tours Group Holdings Limited, and, ultimately, by Exponent.

16.     Defendant Leisure Pass Group, Inc. is a company organized and existing under the laws of the State of Delaware, is registered with the New York State Department of State to do business in New York State, and maintains a registered office in New York City.  Upon information and belief, Leisure Pass Group, Inc. is owned and controlled directly and/or indirectly by Leisure Pass Group Holdings Limited, Leisure Pass Group Limited, and Big Bus Tours Group Holdings Limited, and, ultimately, by Exponent.  (Hereinafter, Leisure Pass Group Holdings Limited, Leisure Pass Group Limited, and Leisure Pass Group, Inc. are referred to collectively as "Leisure Pass Group".)

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United states), 15 U.S.C. § 15 (action arising under Sherman and Clayton Acts), and 28 U.S.C. § 1337 (supplemental jurisdiction).

18.     Jurisdiction is proper over defendant Gray Line New York, Inc. because it is a New York corporation and maintains its principal offices in New York, New York.  Jurisdiction

is proper over defendants Twin America, LLC and City Sightseeing LLC because each of them is registered with the New York State Department of State to do business in New York State and maintains its principal offices in New York, New York, and each of them regularly transacts business in New York State.

19.     Jurisdiction is proper over defendant Big Bus LLC because it is a New York corporation and maintains its principal offices in Corning, New York.  Jurisdiction is proper over defendants Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, and Big Bus Tours Limited because they regularly transact business in New York State and have engaged in conduct directed toward New York State which has caused and is causing injury in New York State.

20.     Jurisdiction is proper over defendant Leisure Pass Group, Inc. because it is authorized to do business and regularly transacts business in New York State.  Jurisdiction is proper over defendants Leisure Pass Group Holdings Limited and Leisure Pass Group Limited because they regularly transact business in New York State and have engaged in conduct directed toward New York State which has caused and is causing injury in New York State.

21.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b)(1)-(2) and (c)(2) because each of defendants either has its offices and/or regularly transacts business in this district and is subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

**BACKGROUND**

22.     Go New York owns and operates a fleet of double-decker, "hop on, hop off" sightseeing tour buses in New York City under the brand name "TopView", owns and operates sightseeing boats in and around New York harbor under the brand name "Liberty Cruise", and

provides other tourist-oriented services in the New York City area.  "Hop on, hop off" bus tours allow tourists and other customers to "hop off" a tour bus at attractions that interest them and then "hop on" another bus operated by the same company when they are ready to resume their tour.

23.    Go New York is one of three "hop on, hop off" sightseeing tour bus businesses presently operating in the New York City market, together with Gray Line and Big Bus.  Go New York is the smallest of the three businesses, in terms of both revenues and the number of buses in its fleet.

24.    Unlike Gray Line and Big Bus, which are affiliated with large, international business operations, Go New York does not presently conduct any tour bus or other business activities outside of the New York City area, either directly or through affiliates and has no corporate parent.

25.    Go New York began its operations in New York City in 2012, doing business under the name "Go New York Tours" with four double decker sightseeing tour buses, and has since increased its fleet to around 43 buses and expanded its tourist offerings to include boat tours, bicycle rentals, and other tourist-oriented services.

26.    Go New York is member of NYC & Company, the official destination marketing organization for New York City, as are Gray Line, Big Bus, and Leisure Pass Group.

27.    Go New York, Gray Line, and Big Bus are direct competitors of reach other, offering similar types of tourist-oriented services in addition to their "hop on, hop off" sightseeing bus tours.  Although other companies may also operate sightseeing bus tours in New York City, they tend to focus on specialized markets and do not presently offer the same hop on, hop off services as Go New York, Gray Line, and Big Bus.

7

### *Gray Line's Dominance in the New York City Sightseeing Tour Bus Market*

28.     Gray Line, upon information and belief, is the largest "hop on, hop off" sightseeing company operating in New York City, in terms of both sales revenues and the size of its bus fleet, and has been operating in New York City since the 1990s.  Gray Line is a licensee and/or franchisee of Gray Line Worldwide, which promotes itself as "the largest provider of sightseeing tours on the planet", offering "thousands of tours and experiences in more than 700 locations, spanning six continents".[1]

29.     Gray Line has maintained its dominance in the New York City sightseeing tour bus market in large part through acquisition and market consolidation.  In 2009, Gray Line joined forces with its then-largest competitor, CitySights, combining their assets and operations to form Twin America.

30.     Gray Line is no stranger to anti-competitive activities.  In 2012, the United States Department of Justice and the New York State Attorney General jointly sued Twin America and related companies in the United States District Court for the Southern District of New York for various antitrust violations.[2]  The lawsuit resulted in a consent judgment issued on November 17, 2015, pursuant to which, among other things, Twin America was required to forfeit 47 sightseeing bus stops in Manhattan which the New York City Department of Transportation had previously assigned to CitySights, and to disgorge profits in the amount of $7.5 million.

---

[1]     *See* https://www.grayline.com/about-us (last viewed on March 7, 2019).

[2]     *See United States of America, et al., v. Twin America, LLC, et al.*, S.D.N.Y., 12-CV-8989.

8

***Big Bus's Dominance in the New
York City Sightseeing Tour Bus Market***

31. Big Bus, upon information and belief, owns and operates the second largest "hop on, hop off" sightseeing tour bus business in New York City. Big Bus is based in the United Kingdom and bills itself as "the largest operator of open-top sightseeing tours in the world, providing sightseeing tours in 19 cities across three continents".[3]

32. Like Gray Line, Big Bus secured its dominant position in the New York City sightseeing tour bus market largely through acquisition and market consolidation. In or about January 2014, Big Bus's predecessor entered the New York City market by purchasing an existing company, Taxi Tours LLC d/b/a Big Taxi Tours. About one year later, in March 2015, Big Bus acquired an existing tour bus operator, Skyline Tours LLC. And then in 2017, Big Bus acquired the operations of another competitor, Open Loop New York ("Open Loop"), leaving it the second largest of only three companies offering "hop on, hop off" sightseeing tour bus services in New York City.

***Distribution Channels in the
New York City Sightseeing Tour Bus Market***

33. Go New York, Gray Line, and Big Bus compete against each other for the same consumers, offering the same types of hop-on, hop off sightseeing bus tours, boat tours, bundled sightseeing passes, and other services in the tourist sightseeing market in New York City. All three companies regularly offer their services and products for sale to consumers in states and/or countries outside of New York State, as well as to tourists who are already within New York City, and compete with each other and other New York City tourist attractions for the same customers.

---

[3] *See* https://www.bigbustours.com/about-big-bus-tours/ (last visited on March 7, 2019).

9

34.     A primary means employed by Go New York, Gray Line, and Big Bus to market and sell their services and products within New York City is through individual, uniformed sales representatives located near popular tourist attractions throughout Manhattan.     Sales representatives from each of the three companies often work side by side with representatives of the other companies on the streets of Manhattan, each promoting his or her company's services and products and trying to persuade tourists to choose to purchase the services and products of his or her company over those of the other two companies.

35.     Each of the three companies also markets and sells its services and products available in New York City online through their respective web sites, through which a consumer located virtually anywhere within or outside the United States can purchase a company's services and products to be enjoyed when the consumer visits New York City.

36.     In addition, each of the three companies sells its services and products to consumers at their respective offices and/or visitor centers in Manhattan.

37.     Another significant means of marketing and selling the companies' services and products is through the concierge services and guest service desks in hotels, which promote and arrange for the purchase of sightseeing and activities for hotel guests.  Both Gray Line and Big Bus have arrangements with hotels and/or concierge and guest service providers to market and sell their tourist-oriented services and products to hotel guests, but, as alleged below, Go New York has been largely shut out of such arrangements and improperly prevented from having its services and products marketed and sold through hotels and/or concierge and guest service providers.

10

### *The Sale of Sightseeing Tour Bus and Other*
### *Services by Means of Multi-Attraction Passes*

38.     The sightseeing tour bus companies also sell their services via bundled, multi-attraction sightseeing passes (referred to generally hereinafter as the "Multi-Attraction Pass"). The Multi-Attraction Pass combines admissions to various New York City attractions and activities for a single price which is substantially discounted from the total cost of the attractions and activities if they were purchased separately, thereby reducing the overall expenses of and providing greater value to consumers who wish to sightsee in New York City.

39.     Go New York, Gray Line, and Big Bus each offer Multi-Attraction Passes which combine various New York City attractions with their own respective hop on, hop off sightseeing bus tours and other services for a single price. Other companies that do not own attractions or operate their own tourist services, including Leisure Pass and Sightseeing Pass, also offer Multi-Attraction Passes which may (but do not necessarily) include sightseeing bus tours.

40.     In order for a company to be able to offer Multi-Attraction Passes that bundle attractions and/or services of other companies, it enters into "trade partner" agreements with them. Generally, trade partners agree to make admission to their attractions or their services available at a discounted "net rate" when bundled into a partner's Multi-Attraction Pass, with the seller of the Multi-Attraction Pass paying its partner at the agreed net rate for each pass used at that attraction or to use its services. The net rate accounts for a commission-type fee retained by the seller of the Multi-Attraction Pass for each such use. The trade partner that owns the attraction or operates the service being used benefits by gaining additional customers, while the partner selling the Multi-Attraction Pass earns commissions.

11

41.    The Multi-Attraction Pass is a natural fit for hop on, hop off sightseeing tour bus companies, whose very business model involves transporting tourists comfortably and efficiently between tourist attractions.    The sightseeing tour bus companies benefit not just from commissions from passes used at tourist attractions, but also from selling their own sightseeing tours and other services.   The Multi-Attraction Pass has become a primary and essential facility for Go New York, Gray Line, and Big Bus to offer and sell their services and to compete in the New York City market.

42.    Go New York offers Multi-Attraction Passes under various names, including its brand name "Attraction Pass", which allows the consumer to choose among various tourist attractions and activities offered with the pass, while traveling and sightseeing on Go New York's hop-on, hop-off tour buses during a determined period of time ranging from one to several days, at a price substantially less than it would cost the consumer to purchase them separately.

43.    Big Bus offers its "Big Pass", which allows the consumer to choose among various tourist attractions and activities while traveling and sightseeing on Big Bus's hop-on, hop-off tour buses during a determined period of time ranging from one to several days.

44.    Gray Line offers similar Multi-Attraction Passes that combine admissions to various New York City tourist attractions with Gray Line's tour bus and other services during specific time periods, under various brand names, including "Freestyle", "Flexpass", "Citysightseeing", and "Sightseeingpass".

45.    Leisure Pass Group offers Multi-Attraction Passes in cities around the world.  In the New York City market, Leisure Pass Group offers Multi-Attraction Passes under the brand names "New York City Explorer Pass" and the "New York Pass", which allow the consumer to

12

pick and choose among various attractions and services to bundle and pay for in a single pass. Although Leisure Pass Group offers around 100 various attractions and activities to include in its passes, it offers the services of only one hop on, hop off sightseeing tour bus company, Big Bus, which shares common ownership and control with Leisure Pass Group.

46.     Sightseeing Pass offers Multi-Attraction Passes in various cities throughout the United States.  In the New York City market, Sightseeing Pass offers Multi-Attraction Passes under the same brand names used by Gray Line, with which it shares common ownership and control.  Sightseeing Pass offers around 100 various attractions and activities included in its various passes, but offers the services of only one hop on, hop off sightseeing tour bus company, Gray Line.

47.     Multi-Attraction Passes are a popular, convenient, and economical means for consumers to plan their sightseeing and tourist activities in New York City, and have become an essential facility for the hop on, hop off sightseeing tour bus companies in the New York City market to market and sell their services and products.

48.     Therefore, the ability of each of Go New York, Gray Line, and Big Bus to compete with each other in New York City, as well as with the multitude of other tourist attractions and activities from which tourists may choose when visiting New York City, depends in substantial part on each company's ability to establish trade partner relationships with other attractions so as be able to offer many popular attractions with their respective Multi-Attraction Passes at the best price, and to access the main distribution channels from which consumers learn about and purchase the passes.

### *Defendants' Anti-Competitive Conduct*

49.     Defendants, working in some instances with each other and in other instances independently, have been and are engaging in conduct which is intended to diminish the value

13

and competitiveness of Go New York's Multi-Attraction Passes and to prevent Go New York from participating in Multi-Attraction Passes offered by other companies, thereby substantially inhibiting Go New York's ability to compete and to obtain business through Multi-Attraction Passes, which are an essential facility in the New York City tourism market and, in particular, the New York City hop on, hop off sightseeing tour bus market.  Defendants have thereby harmed competition in the New York City market, to the detriment of consumers.

50.     Defendants have accomplished this by leveraging the substantial market power of Gray Line and Big Bus relative to Go New York, and the relationship between Big Bus and Leisure Pass Group, to require and/or to persuade major New York City attractions to refuse to enter into trade partner agreements with Go New York.  In addition, Leisure Pass Group and Sightseeing Pass each present themselves to the consuming public as separate and apart from their affiliated sightseeing tour bus company, but offer the hop on, hop off sightseeing tour bus services of only their own affiliated companies and exclude Go New York.

51.     For example, while both Gray Line and Big Bus include admission to "Top of the Rock", the observatory and tourist facility at Rockefeller Center in midtown Manhattan, in their respective bundled sightseeing passes, during the past few years the operator of Top of the Rock has rebuffed repeated attempts by Go New York to establish a relationship with it.  The operator has told Go New York that Top of the Rock is not presently onboarding new trade partners, even though, upon information and belief, the operator continues to solicit new partners.  At one point, a representative even told Go New York to talk to Gray Line's president, Mark Marmurstein, for help in gaining approval as a trade partner of Top of the Rock.

52.     Further, Top of the Rock rejected Go New York notwithstanding Go New York's proposal that it would not take any commission or fee for admission of Go New York's

14

customers, passing the entire discounted rate on to its customers and allowing Top of the Rock to charge a higher net rate.  Thus, there is no rational business reason for Top of the Rock to reject Go New York as a trade partner, other than that Gray Line demanded exclusivity

53.  Go New York has also been shut out of the Empire State Building Observatory (the "ESB Observatory"), the operator of which has told Go New York that it has an exclusive relationship with Leisure Pass Group's "New York Pass".  Leisure Pass Group shares common ownership with Big Bus, which is a trade partner of the ESB Observatory.  Upon information and belief, Big Bus is the only one of the three hop on, hop off sightseeing tour bus companies in New York City that the ESB Observatory has approved as a trade partner.

54.  Further, ESB Observatory rejected Go New York notwithstanding Go New York's proposal that it would not take any commission or fee for admission of Go New York's customers to the ESB Observatory, passing the entire discounted rate on to its customers and allowing ESB Observatory to charge a higher net rate.  Thus, there is no rational business reason for ESB Observatory to reject Go New York as a trade partner, other than Big Bus and/or Leisure Pass Group demanded exclusivity.

55.  Go New York has also been shut out of the One World Observatory at the World Trade Center in lower Manhattan.  Representatives have told Go New York that One World Observatory has an exclusive relationship with Mark Marmurstein, the president of Gray Line. And in fact, Gray Line advertises the One World Observatory as one of several attractions offered "exclusively" with Gray Line's Multi-Attraction Passes.

56.  On that purported basis, One World Observatory has explicitly refused to partner with Go New York's Attraction Pass.  While One World Observatory has not explicitly refused to consider working with Go New York at all, it has repeatedly failed to follow up on its

15

promises to send Go New York a proposed contract, thereby effectively refusing to deal with Go New York at all without have to state so explicitly.

57. And notwithstanding One World Observatory's supposedly exclusive relationship with Gray Line, Big Bus also advertises and sells One World Observatory admission as part its own Big Pass. There is no legitimate business reason for One World Observatory to establish trade partner relationships with Gray Line and Big Bus while rejecting Go New York.

58. Upon information and belief, Gray Line has entered into a contractual arrangement with Big Bus, either express or implied, to require and/or persuade One World Observatory to exclude Go New York from that attraction while providing access and/or discounts for Gray Line and Big Bus and their respective customers. One World Observatory is a major attraction which would be at the top of the list of places to visit for most tourists visiting New York City. By conspiring together to exclude Go New York from such a popular attraction, Gray Line and Big Bus have rendered Go New York's Multi-Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and, in particular, preventing Go New York from being able to compete fairly in that market.

59. Go New York previously had an executed trade partner agreement with the Intrepid Sea, Air, and Space Museum (the "Intrepid"), a major tourist attraction located at the west side piers in midtown Manhattan, but the Intrepid unilaterally terminated the agreement when Go New York began sending its customers there. A representative told Go New York that the Intrepid did not want to make its other trade partners unhappy by dealing with Go New York. Upon information and belief, both Gray Line and Big Bus are trade partners of the Intrepid.

16

Upon information and belief, Gray Line and Big Bus have conspired, either explicitly or implicitly, with the Intrepid to reject Go New York.

60.    Other museums that have refused to work with Go New York include the 9/11 Memorial and Museum and the 9/11 Tribute Museum in lower Manhattan, and the Museum of Modern Art in midtown.  Upon information and belief, both Big Bus and Gray Line are trade partners of the 9/11 Memorial and Museum and the 9/11 Tribute Museum, and Big Bus is also a trade partner of the Museum of Modern Art. Upon information and belief, Gray Line and Big Bus have conspired, either explicitly or implicitly, with these museums to reject Go New York.

61.    Go New York previously worked with Madame Tussauds, the wax museum attraction located in the Times Square area of Manhattan, prior to 2015, before rebranding its hop on, hop off tour buses services as "TopView".  But in or about early 2016, Madame Tussauds' ultimate parent company, Merlin, became a significant shareholder of Big Bus.  Not only is Big Bus a trade partner of Madame Tussauds, offering the attraction with its Big Pass, Madame Tussauds promotes and sells Big Bus tickets at its own facility and web site.

62.    In 2018, Go New York met with representatives of Madame Tussauds to try to forge a trade partner relationship with Madame Tussauds, but was eventually told that Madame Tussauds was not onboarding additional trade partners.   Upon information and belief, Gray Line is also a trade partner of Madame Tussauds, and the decision to exclude Go New York is part of a deliberate strategy to make Go New York and its Multi-Attraction Passes less attractive to consumers and to minimize its market share.  Upon information and belief, Gray Line and Big Bus have conspired, either explicitly or implicitly, to exclude Go New York from Madame Tussauds.

17

63.     Go New York has also been excluded from Broadway Inbound, an online platform for travel service providers and groups to sell tickets to Broadway shows.  In January 2019, Broadway Inbound opened an account for Go New York.  But a few days later, Broadway Inbound suddenly closed the account, stating that it needed "further time to review" Go New York's account and might reconsider Go New York in six months' time "once we better understand the local market landscape."  Upon information and belief, Broadway Inbound has long-established business relationships with both Gray Line and Big Bus, neither of whose accounts have been closed for further review.

64.     In January 2019, Go New York contacted the companies Coach USA and Short Line (referred to hereinafter as "Coach/Short Line"), which operate a shuttle bus service between New York City and the Woodbury Common Premium Outlet shopping center, to discuss including their shuttle bus service in Go New York's Multi-Attraction Passes.  Coach/Short Line initially expressed interest and began negotiating a trade partner relationship.  But then, Coach/Short Line ceased negotiations and refused to work with Go New York, telling Go New York that "we aren't able to work with you due to other sightseeing company relationships."

65.     Go New York has also tried to have its TopView tours as well as its bicycle rentals included with Leisure Pass Group's "New York Pass" and "New York City Explorer Pass", both of which include Big Bus's hop on, hop off sightseeing tour buses.  Both passes, which share ownership and control with Big Bus, have refused to include Go New York's services.

66.     By excluding Go New York from major tourist attractions, defendants have substantially inhibited or prevented Go New York's ability to offer and sell bundled sightseeing

18

passes that are attractive to customers, and substantially inhibited or prevented Go New York's access to essential distribution channels.

## FIRST CLAIM FOR RELIEF
(Against All Defendants, for Violations of Section 1 of the
Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1, 15)

67. Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 65 as if set forth in their entirety herein.

68. As alleged above, defendants have engaged in concerted action to prevent or impede Go New York's ability to compete in the New York City hop on, hop off sightseeing tour bus market by preventing and/or impeding Go New York's ability to market and sell its services through competitive Multi-Attraction Passes and/or through hotel concierge and guest services, which are essential facilities for competing in said market.

69. In particular, and among other things, with respect to third-party operators of attractions and service providers, some or all of defendants have entered into formal and/or informal agreements for the third parties to refuse to deal with Go New York.

70. Big Bus and Leisure Pass Group, through their common ownership and control, have unlawfully conspired to exclude Go New York from trade partner relationships with major New York City tourist attractions, from the Multi-Attraction Passes offered by Leisure Pass Group in the New York City market, and from other tourist services.

71. Gray Line, Twin America, and Sightseeing Pass, through their common ownership and/or control, have unlawfully conspired to exclude Go New York from trade partner relationships with major New York City tourist attractions and from the Multi-Attraction Passes offered by Sightseeing Pass in the New York City market.

72. Upon information and belief, Gray Line and Big Bus, among themselves and/or together with some or all of their respective affiliated companies, have unlawfully conspired to

19

exclude Go New York from trade partner relationships with major New York City tourist attractions, from the Multi-Attraction Passes offered by Leisure Pass Group and Sightseeing Pass in the New York City market, from hotel concierges and guest services, and from other tourist services.

73.     There is no legitimate business reason for operators of tourist attractions to refuse to deal with Go New York as a trade partner because they would benefit from Go New York's additional customers; rather, the reason for Go New York's exclusion is unlawful coercion and manipulation by defendants for the purpose of reducing competition.

74.     There is no legitimate business reason for Leisure Pass Group and Sightseeing Pass to exclude Go New York from their respective Multi-Attraction Passes, because they benefit from offering the widest possible variety of options to their customers; rather, the reason for Go New York's exclusion is unlawful coercion and manipulation by defendants for the purpose of reducing competition.

75.     Defendants' aforesaid improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York in the New York City sightseeing bus tour market and to maintain artificially high prices for consumers, and defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York to lose market share, customers, and revenues.

76.     Defendants by their aforesaid unlawful conduct have caused actual injury to Go New York by causing Go New York to lose market share, customers, and revenues.

77.     Defendants have thereby engaged in unreasonable restraint of trade in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and section 4 of the Clayton Act, 15 U.S.C. § 15.

20

78.     Therefore, Go New York is entitled to recover its damages from defendants including treble damages, costs of suit including reasonable attorney fees, and interest, to the fullest extent permitted by law.

## SECOND CLAIM FOR RELIEF
(Against Defendants Gray Line and Big Bus, for Violations of Section 2
of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 2, 15)

79.     Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 77 as if set forth in their entirety herein.

80.     Defendant Gray Line possesses monopoly power in the New York City hop on, hop off tour bus market, in that it dominates and is the largest of three competing companies in that market, shares common control with defendant Sightseeing Pass which aids in Gray Line's domination, and is affiliated with and aided by Gray Line Worldwide which purports to be the world's largest provider of sightseeing bus tours.

81.     Defendant Big Bus possesses monopoly power in the New York City hop on, hop off tour bus market, in that it dominates and is the second largest of three competing companies in that market, shares common control with Leisure Pass Group which aids in Big Bus's domination, and is part of and aided by the purportedly largest operator of open-top sightseeing tour buses in the world.

82.     Gray Line and Big Bus have each maintained and sought to increase their monopoly positions, working individually, together, and/or with their respective affiliated companies, by improperly excluding Go New York and, in some cases, each other, from beneficial trade partner relationships and sales venues.

83.     In so doing, Gray Line and Big Bus have improperly prevented or impeded Go New York's ability to compete in said market by offering competitive Multi-Attraction Passes

21

and from participating in other Multi-Attraction Passes, which are an essential facility for competing in the New York City sightseeing tour bus market.

84.     Gray Line's and Big Bus's aforesaid improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York in the New York City sightseeing tour bus market and to maintain artificially high prices for consumers, and defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York to lose market share, customers, and revenues.

85.     Gray Line and Big Bus each engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York to lose market share, customers, and revenues.

86.     Gray Line's and Big Bus's aforesaid improper conduct has caused and will continue to harm competition in said market and thereby to harm consumers, and loss of market share, customers, and revenues to Go New York. Defendants by their aforesaid unlawful conduct have caused actual injury to Go New York by causing Go New York to lose market share, customers, and revenues.

87.     Defendants have thereby engaged in unreasonable monopolization of trade in violation of section 2 of the Sherman Act, 15 U.S.C. § 2, and section 4 of the Clayton Act, 15 U.S.C. § 15.

88.     Therefore, Go New York is entitled to recover its damages from defendants Gray Line and Big Bus including treble damages, costs of suit including reasonable attorney fees, and interest, to the fullest extent permitted by law

**THIRD CLAIM FOR RELIEF**
(Against All Defendants, for Violations of the
Donnelly Act, New York Gen. Bus. L. § 340, *et seq*.)

89.     Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 87 as if set forth in their entirety herein.

90.     As alleged above, each of defendants has conspired to exclude, and/or entered into contracts for the purpose of excluding, Go New York from trade partner relationships, from participating in Multi-Attraction Passes and/or from hotel concierge and guest services, which are essential facilities in the New York City sightseeing tour bus market.

91.     Defendants' aforesaid improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York in the New York City sightseeing tour bus market and to maintain artificially high prices for consumers, and defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York to lose market share, customers, and revenues.

92.     Defendants have each engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York to lose market share, customers, and revenues, and have caused such actual injury to Go New York.

93.     For the foregoing reasons, defendants have engaged in unreasonable restraint of trade in violation of the Donnelly Act, New York Gen. Bus. L. § 340.

94.     Therefore, Go New York is entitled to recover its damages from defendants including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

23

## FOURTH CLAIM FOR RELIEF
(Against All Defendants, for
Common Law Unfair Competition)

95.     Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 93 as if set forth in their entirety herein.

96.     As alleged above, defendants have wrongfully prevented Go New York from offering a competitive bundled sightseeing pass and excluded Go New York from participation in Multi-Attraction Passes, thereby increasing their own market share at the expense of Go New York and preventing Go New York from offering and selling its services and products.

97.     By reason of the foregoing, defendants have wrongfully diverted business from Go New York to themselves, thereby damaging Go New York in an amount to be determined at trial, which Go New York is entitled to recover from defendants.

## FIFTH CLAIM FOR RELIEF
(Against Gray Line and Big Bus,
for Tortious Interference with Contract)

98.     Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 96 as if set forth in their entirety herein.

99.     Go New York and the Intrepid entered into a binding trade partner agreement.

100.    Gray Line and Big Bus each knew about the contract between the Intrepid and Go New York, and wrongfully induced the Intrepid to breach that agreement by unilaterally terminating it and refusing to deal with Go New York.

101.    Gray Line and Big Bus induced the Intrepid's breach by persuading the Intrepid to exclude Go New York as a trade partner, for the improper purpose of harming competition in the New York City hop on, hop off tour bus market.

24

102.   As a result of Gray Line's and Big Bus's inducement of the Intrepid's breach of its contract with Go New York, Go New York has been damaged in an amount to be determined at trial, which Go New York is entitled to recover from Gray Line and Big Bus.

**SIXTH CLAIM FOR RELIEF**
(Against All Defendants, for Tortious
Interference with Prospective Business Relations)

103.   Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 101 as if set forth in their entirety herein.

104.   As alleged above, all of defendants have undertaken to exclude Go New York from major New York City tourist attractions and/or Multi-Attraction Passes, for the improper purposes of reducing competition in the New York City hop on, hop off tour bus market, preventing Go New York from forming beneficial contractual relationships with New York City attractions and companies offering Multi-Attraction Passes, preventing Go New York from offering a competitive bundled sightseeing pass product, and preventing Go New York from offering and selling its services and products to consumers.

105.   By reason thereof, Go New York has been damaged in an amount to be determined at trial, and is entitled to recover its damages from defendants.

**WHEREFORE,** plaintiff Go New York Tours, Inc. demands Judgment in its favor and against defendants Gray Line New York Tours, Inc., Twin America, LLC, Sightseeing Pass LLC, Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc., Leisure Pass Group Holdings Limited, Leisure Pass Group limited, and Leisure Pass Group, Inc., as follows:

A.   Awarding plaintiff Go New York its actual damages and treble damages for violations of the Sherman and Clayton Acts, and of the Donnelly Act;

25

B.      Awarding plaintiff Go New York its costs of suit, including reasonable attorneys' fees, under the Clayton Act and the Donnelly Act, and as may otherwise be permitted by law;

C.      Awarding plaintiff Go New York interest under the Clayton Act, and as may otherwise be permitted by law;

D.      Awarding plaintiff Go New York its damages, costs of suit, and interest for unfair competition, tortious interference with contract, and tortious interference with prospective business relations under New York common law, and its interests and costs as may be permitted by law; and

E.      Such other and further relief as the Court may deem just and proper.

Plaintiff hereby demands a trial by jury of all claims and issues herein.

Dated: New York, New York
          May 23, 2019

**BARTON LLP**

By: ___/s/ Maurice N. Ross /s/___
          Maurice N. Ross
          Randall L. Rasey

711 Third Avenue, 14th Floor
New York, NY 10017
(212) 687-6262
mross@bartonesq.com
rrasey@bartonesq.com
*Attorneys for Plaintiff*
*Go New York Tours, Inc.*

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby demands trial by jury of all issues raised by the foregoing complaint.

Dated: New York, New York
          April 29, 2019

**BARTON LLP**

By: ___/s/ Maurice N. Ross /s/___
          Maurice N. Ross
          Randall L. Rasey

26

## VERIFICATION

I, ASEN KOSTADINOV, am the president of GO NEW YORK TOURS, INC., the plaintiff in the foregoing complaint.  I have read the complaint and know its contents, and the facts stated therein are true based on my own knowledge, except for fact stated upon information and belief and/or pertaining only to the defendants, and as to those facts I believe them to be true.

I declare and verify under penalty of perjury that the foregoing is true and correct.

Executed on May 23, 2019 in New York, New York.

_____
ASEN KOSTADINOV

State of New York
County of New York

Sworn before me this 23rd day of May, 2019

_____
Notary Public

LAURA-MICHELLE HORGAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 02HO6293595
Qualified in Westchester County
My Commission Expires December 16, 20~~XX~~ 22

27