# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GO NEW YORK TOURS, INC.,

                 Plaintiff,

           -against-

GRAY LINE NEW YORK TOURS, INC., TWIN
AMERICA, LLC, SIGHTSEEING PASS LLC, BIG BUS
TOURS GROUP HOLDINGS LIMITED, BIG BUS TOURS
GROUP LIMITED, BIG BUS TOURS LIMITED, OPEN
TOP SIGHTSEEING USA, INC., TAXI TOURS, INC.,
LEISURE PASS GROUP HOLDINGS LIMITED, LEISURE
PASS GROUP LIMITED, LEISURE PASS GROUP, INC.,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19-cv-02832 (LAK)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/7/2019

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff, a New York City "hop on, hop off" tour bus company, brings federal and New York State antitrust claims and New York State tort claims against two competitors and affiliated companies. Several of these defendants moved to dismiss the First Amended Complaint ("FAC") on res judicata grounds [DI-68]. Several others moved to dismiss for lack of personal jurisdiction [DI-63]. And all defendants moved to dismiss for failure to state a claim [DI-66].

        "*Res judicata* bars re-litigation if (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."[1] The third element is satisfied when the second lawsuit involves "the same claim – or nucleus of operative facts – as the first suit."[2] This inquiry involves consideration of "(1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient

---

[1]         *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018) (citation and quotation marks omitted).

[2]         *Id.* (citation omitted).

2

trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations."[3]

The defendants that claim res judicata refer to a prior lawsuit between themselves and plaintiff that resulted in a stipulated dismissal with prejudice.[4] While that lawsuit is an adjudication on the merits involving the same parties, it arose from an entirely different set of facts. It concerned allegations that the relevant defendants' ticket agents disparaged and defamed plaintiff to potential customers. The claims in this lawsuit concern defendants' allegedly anticompetitive practices surrounding the "Multi-Attraction Passes" offered by plaintiff and certain defendants. There is no common nucleus of operative facts and, hence, the claims in this lawsuit neither were nor could have been raised in the prior action such that res judicata precludes plaintiff from raising them here.

The motion to dismiss for failure to state a claim challenges the sufficiency of each of the FAC's claims:

*1. Sherman Act § 1.*[5] Plaintiff alleges that its two competitors conspired with each other (a "horizontal conspiracy") to restrain trade in a New York City "Multi-Attraction Pass" market. The closest the FAC comes to alleging a horizontal agreement is a conclusory allegation that, "[u]pon information and belief, [defendants], among themselves and/or together with some or all of their respective affiliated companies, have unlawfully conspired to exclude [plaintiff] from trade partner relationships."[6] Absent direct evidence of a horizontal agreement, which is lacking here, a court may infer a conspiracy based on "conscious parallelism, when . . . interdependent conduct is accompanied by circumstantial evidence and plus factors."[7] "Plus factors" can include "a common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of interfirm

---

[3]

*Id.* (citation omitted).

[4]

*See Go New York Tours, Inc. v. Grey Line New York Tours, Inc.*, No. 18-cv-06915 (RA) (S.D.N.Y.).

[5]

The parties agree that plaintiff's New York antitrust claims are subject to the same analysis as the federal antitrust claims. I assume without deciding that this is correct. The analysis of the Sherman Act claims applies therefore to the New York antitrust claims, as well.

[6]

FAC ¶ 72.

[7]

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013) (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001)).

3

communications."[8] On a generous reading of the FAC, the existence of any plus factors or similar indicia of a conspiracy is implausible. Plaintiff must make more than inferential allegations that the success of defendants' businesses relative to plaintiff's implies the existence of an unlawful conspiracy.

With regard to the alleged "vertical conspiracies" between defendants and third parties with which plaintiff wishes to do business, plaintiff relies on an inference that "there is no rational business reason for [the third-parties] to reject [plaintiff] as a trade partner, other than that [defendants] demanded exclusivity."[9] In fact, there are many logical and permissible business reasons that the third parties might have chosen not to do business with plaintiff. This faulty inference and the FAC's otherwise sparse details about the alleged vertical conspiracies do not amount to a plausible claim for unlawful restraint of trade.

Plaintiff alleges also the existence of conspiracies within the two corporate networks of defendants – in other words, conspiracies between companies under common ownership. Intraenterprise conspiracy suffices under Section 1 only where the conspiring entities employ "independent centers of decisionmaking."[10] Plaintiff makes no allegation of such independence. In fact, the FAC repeatedly states that the alleged conspirators are "owned *and controlled*" by the same parent companies.[11]

*2. Sherman Act § 2.* Plaintiff alleges that each of the two groups of defendants has monopoly power and has exercised it in violation of Section 2 of the Sherman Act. But as the prefix "mono" suggests – and as anyone who has been price gouged at a hotel on Park Place or Boardwalk in the game "Monopoly" is aware – there can be only one monopolist. Section 2 does not permit a "shared monopoly" theory of the kind plaintiff alleges.[12] To the extent the FAC could be

---

[8] *Id.* (quoting *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 114 (2d Cir.2005), *rev'd on other grounds, Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[9] FAC ¶ 52.

[10] *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 194 (2010) (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984)).

[11] *See* FAC ¶¶ 6-16 (emphasis added).

[12] *See, e.g., Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 454 (1993) ("While § 1 of the Sherman Act forbids contracts or conspiracies in restraint of trade or commerce, § 2 addresses the actions *of single firms* that monopolize or attempt to monopolize, as well as conspiracies and combinations to monopolize." (emphasis added)). It may be that shared monopoly is never a viable theory under Section 2. Some courts, however, have speculated

4

reinterpreted to allege on an alternative basis that one of the two networks of defendants forms a monopoly, such a theory would fail as well. The FAC paints an unambiguous picture of a market consisting of *two* large competitors and plaintiff, a smaller upstart.[13]

       *3. Tortuous Inducement of Breach of Contract.*[14] "Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, [the] defendant's knowledge of that contract, [the] defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom."[15] Plaintiff alleges defendants interfered with its contract with the Intrepid Sea, Air, & Space Museum, but it does not plead that the Intrepid breached the contract or explain how defendants induced any presumed breach.[16] Absent allegations of this kind, the claim fails.

       *4. Tortuous Interference with Prospective Business Relations.* Tortious interference with prospective business relations requires allegations that "(i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship."[17] To satisfy the third element, the plaintiff must allege that the defendant employed "wrongful means," which can include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure."[18] The FAC makes only a cursory allegation that defendants "induced the Intrepid's breach by persuading the Intrepid [to back out of its contract with plaintiff] . . . for the improper purpose of

---

that such a claim may survive if the goal of a conspiracy was forming a single entity. *See Klickads, Inc. v. Real Estate Bd. of New York, Inc.*, No. 04-cv-8042 (LBS), 2007 WL 2254721, at *9 (S.D.N.Y. Aug. 6, 2007) (citing cases). I express no opinion on the viability of this theory, as plaintiff does not allege that its competitors had such plans.

[13] *See, e.g.*, FAC ¶ 1.

[14] The parties assume New York law applies to the tort claims. I make the same assumption.

[15] *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996).

[16] Plaintiff concedes this defect to some degree. *See* Plaintiff's Memorandum in Opposition to Defendants' Joint Motion to Dismiss the Complaint 16 n.2.

[17] *Scutti Enters., LLC. v. Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003) (citation omitted).

[18] *Id.* at 216 (quoting *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 622 (1996)).

5

harming competition."[19] "[P]ersuasion alone," even if "knowingly directed at interference with the [prospective] contract," does not suffice.[20]

\* \* \*

The motion to dismiss on res judicata grounds [DI-68] is denied. The joint motion to dismiss for failure to state a claim [DI-66] is granted. The motion to dismiss motion for lack of personal jurisdiction [DI-63] is denied as moot.

This action is dismissed without prejudice[21] to plaintiff, on or before December 5, 2019, filing a second amended complaint. If plaintiff exercises this option, the parties shortly thereafter should propose a briefing schedule for any motions to dismiss.[22]

SO ORDERED.

Dated:          November 7, 2019

_____
Lewis A. Kaplan
United States District Judge

---

[19] FAC ¶ 101.

[20] *Scutti Enters.*, 322 F.3d at 216 (second brackets in original) (quoting *NBT Bancorp*, 87 N.Y.2d at 624).

[21] Plaintiff raised, but withdrew, a claim for unfair competition under New York law. Plaintiff's Memorandum in Opposition to Defendants' Joint Motion to Dismiss the Complaint 2 n.1. That claim is dismissed with prejudice.

[22] Such a briefing schedule should ensure that all motions to dismiss and responsive papers are filed on the same timeline. Thus, if the defendants that moved under Rule 12(b)(2) intend to file a similar motion with regard to a possible second amended complaint, the briefing schedule should ensure that this and any other motions to dismiss are due after the close of any further jurisdictional discovery.