# Exhibit C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| GO NEW YORK TOURS, INC.,<br><br>         Plaintiff,<br><br>-against-<br><br>GRAY LINE NEW YORK TOURS, INC., TWIN AMERICA, LLC, SIGHTSEEING PASS LLC, BIG BUS TOURS GROUP HOLDINGS LIMITED, BIG BUS TOURS GROUP LIMITED, BIG BUS TOURS LIMITED, OPEN TOP SIGHTSEEING USA, INC., TAXI TOURS, INC., LEISURE PASS GROUP HOLDINGS LIMITED, LEISURE PASS GROUP LIMITED, and LEISURE PASS GROUP, INC.,<br><br>         Defendants. | 19-cv-02832 (LAK)(BCM)<br><br>**SECOND AMENDED COMPLAINT**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff Go New York Tours, Inc. ("Go New York"), by its undersigned counsel, hereby alleges, as against defendants Gray Line New York Tours, Inc., Twin America, LLC, Sightseeing Pass LLC, Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc., Leisure Pass Group Holdings Limited, Leisure Pass Group Limited, and Leisure Pass Group, Inc., as follows:

**NATURE OF ACTION**

1.  This is an action for anticompetitive antitrust violations by the two dominant companies in the New York City hop on, hop off sightseeing tour bus market targeted against the third and only other company currently operating in that market, plaintiff Go New York. As alleged below, defendants are conspiring to minimize competition in the hop on, hop off sightseeing market at the expense of consumers – meaning customers are being forced to pay higher prices than they would absent the anticompetitive behavior. The anticompetitive behavior also directly damages Go New York because it has been rendered less competitive and has lost

market share, customers, and revenues.  Defendants' anti-competitive conduct violates federal and New York state antitrust statutes and New York state common law.  Plaintiff Go New York asserts herein claims against defendants for violations of Section 1 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1 and 15, and the Donnelly Act, New York General Business Law § 340, and for unfair competition and tortious interference under New York common law.  Plaintiff Go New York seeks damages from all defendants, including treble damages, costs and attorneys' fees under the Clayton and Donnelly Acts.

## PARTIES

### *Go New York*

2.      Plaintiff Go New York is a New York corporation with its main offices located at 2 East 42nd Street, New York, New York.

### *Gray Line*

3.      Defendant Gray Line New York Tours, Inc. is a New York corporation with its main offices located at 1430 Broadway, New York, New York.

4.      Defendant Twin America, LLC ("Twin America") is a Delaware limited liability company registered with the New York State Department of State to do business in New York State, with its main offices located at 1430 Broadway, New York, New York.  Upon information and belief, Twin America operates and controls Gray Line New York Tours, Inc.  (Hereinafter, Gray Line New York Tours, Inc. and Twin America are referred to herein collectively as "Gray Line".)

5.      Defendant Sightseeing Pass LLC ("Sightseeing Pass") is a Delaware limited liability company registered with the New York State Department of State to do business in New York State, with, upon information and belief, its main offices located at 1430 Broadway, New

2

York, New York.  Upon information and belief, Sightseeing Pass shares common ownership and control with Gray Line, and/or is owned and/or controlled by Gray Line.

### *Big Bus*

6. Defendant Big Bus Tours Group Holdings Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road, London, United Kingdom.

7. Upon information and belief, non-party Exponent Private Equity LLP ("Exponent"), a London-based private equity firm organized and existing under the laws of the United Kingdom, owns, directly and/or indirectly, approximately 85 percent of and controls Big Bus Tours Group Holdings Limited.

8. Upon further information and belief, non-party Merlin Entertainments plc ("Merlin"), a company organized and existing under the laws of the United Kingdom with its main offices located in Dorset, United Kingdom, owns, directly and/or indirectly, approximately 15 percent of and as such exerts control over Big Bus Tours Group Holdings Limited.  Upon further information and belief, Merlin owns and controls, directly and/or indirectly, various companies which own and operate "Madame Tussauds" wax museum tourist attractions located around the world, including the Madame Tussauds wax attraction located on West 42nd Street in the Times Square area of New York City.

9. Defendant Big Bus Tours Group Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road, London, United Kingdom.  Upon information and belief, Big Bus Tours Group Limited is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited, and ultimately by Exponent and Merlin.

3

10.     Defendant Big Bus Tours Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road, London, United Kingdom.  Upon information and belief, Big Bus Tours Limited is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited and/or Big Bus Tours Group Limited, and ultimately by Exponent and Merlin.

11.     Defendant Open Top Sightseeing USA, Inc., is a Delaware corporation which is registered with the New York State Department of State to do business in New York State, and with its offices located in New York, New York.  Upon information and belief, Open Top Sightseeing USA, Inc. is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, and Big Bus Tours Limited, and ultimately by Exponent and Merlin.

12.     Defendant Taxi Tours, Inc. ("Taxi Tours") is a New York corporation with its principal office located at 723 Seventh Avenue, New York, New York.  Upon information and belief, Taxi Tours' CEO, Patrick Waterman, is also an officer and/or director of Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, and Big Bus Tours Limited, and resides in the United Kingdom.  Upon further information and belief, Taxi Tours, Inc. is owned and controlled, directly and/or indirectly, by Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, and/or Open Top Sightseeing USA, Inc., and, ultimately, by Exponent and Merlin.  (Hereinafter, Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., and Taxi Tours are referred to herein collectively as "Big Bus".)

4

### *Leisure Pass Group*

13.     Defendant Leisure Pass Group Holdings Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at Link House, 25 West Street, Poole, Dorset, United Kingdom.

14.     Upon information and belief, Leisure Pass Group Holdings Limited is controlled and principally owned directly and/or indirectly by Exponent, which, as alleged above, is also the principal owner and controller, directly or indirectly of Big Bus.  Upon further information and belief, Big Bus Tours Group Holdings Limited owns a significant minority stake in, and as such exerts control over, Leisure Pass Group Holdings Limited.

15.     Defendant Leisure Pass Group Limited is a company organized and existing under the laws of the United Kingdom with its main offices located at Link House, 25 West Street, Poole, Dorset, United Kingdom.  Upon information and belief, Leisure Pass Group Limited is owned and controlled, directly or indirectly, by Leisure Pass Group Holdings Limited, Exponent, and Big Bus Tours Group Holdings Limited, and, ultimately, by Exponent.

16.     Defendant Leisure Pass Group, Inc. is a company organized and existing under the laws of the State of Delaware, is registered with the New York State Department of State to do business in New York State, and maintains a registered office in New York City.  Upon information and belief, Leisure Pass Group, Inc. is owned and controlled directly and/or indirectly by Leisure Pass Group Holdings Limited, Leisure Pass Group Limited, and Big Bus Tours Group Holdings Limited, and, ultimately, by Exponent.  (Hereinafter, Leisure Pass Group Holdings Limited, Leisure Pass Group Limited, and Leisure Pass Group, Inc. are referred to collectively as "Leisure Pass Group".)

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United states), 15 U.S.C. § 15 (action arising under Sherman and Clayton Acts), and 28 U.S.C. § 1337 (supplemental jurisdiction).

18.     Jurisdiction is proper over defendant Gray Line New York, Inc. because it is a New York corporation and maintains its principal offices in New York, New York.  Jurisdiction is proper over defendants Twin America, LLC and City Sightseeing LLC because each of them is registered with the New York State Department of State to do business in New York State and maintains its principal offices in New York, New York, and each of them regularly transacts business in New York State.

19.     Jurisdiction is proper over defendants Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, and Big Bus Tours Limited because they regularly transact business in New York State and have engaged in conduct directed toward New York State which has caused and is causing injury in New York State.

20.     Jurisdiction is proper over defendant Open Top Sightseeing USA, Inc. because it is registered to do business in New York State, maintains its offices in New York, New York, regularly transacts business in New York State, and has engaged in conduct directed toward New York State which has caused and is causing injury in New York State.  Jurisdiction is proper over defendant Taxi Tours, Inc. because it is a New York corporation, maintains in New York, New York, regularly transacts business in New York State, and has engaged in conduct directed toward New York State which has caused and is causing injury in New York State.

21.     Jurisdiction is proper over defendant Leisure Pass Group, Inc. because it is authorized to do business and regularly transacts business in New York State.  Jurisdiction is proper over defendants Leisure Pass Group Holdings Limited and Leisure Pass Group Limited

because they regularly transact business in New York State and have engaged in conduct directed toward New York State which has caused and is causing injury in New York State.

22.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b)(1)-(2) and (c)(2) because each of defendants either has its offices and/or regularly transacts business in this district and is subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## BACKGROUND

23.     Go New York owns and operates a fleet of double-decker, "hop on, hop off" sightseeing tour buses in New York City under the brand name "TopView."  Hop on, hop off bus tours allow tourists and other customers to "hop off" a tour bus at attractions that interest them (such as Madame Tussaud's, for example) and then "hop on" another bus operated by the same company when they are ready to resume their tour.

24.     Go New York is one of three "hop on, hop off" sightseeing tour bus businesses presently operating in the New York City market, together with Gray Line and Big Bus.  Go New York historically has been the smallest of the three businesses, in terms of both revenues and the number of buses in its fleet.

25.     Unlike Gray Line and Big Bus, which are affiliated with large, international business operations, Go New York does not presently conduct any tour bus or other relevant business activities outside of the New York City area, either directly or indirectly, and has no corporate parent.

26.     Go New York began its operations in New York City in 2012, doing business under the name "Go New York Tours" with four double decker sightseeing tour buses, and has since increased its fleet to more than 40 buses and expanded its tourist offerings to include boat tours, bicycle rentals, and other tourist-oriented services.

7

27.     Go New York is a member of NYC & Company, the official destination marketing organization for New York City, as are Gray Line, Big Bus, and Leisure Pass Group.

28.     Go New York, Gray Line, and Big Bus are direct competitors of each other, offering similar types of tourist-oriented services in addition to their hop on, hop off sightseeing bus tours. Although other companies may also operate sightseeing bus tours in New York City, they tend to focus on specialized markets and do not presently offer the same hop on, hop off services as Go New York, Gray Line, and Big Bus.

### Gray Line's Dominance in the New York City Sightseeing Tour Bus Market

29.     Gray Line is the largest hop on, hop off sightseeing company operating in New York City, in terms of both sales revenues and the size of its bus fleet, and has been operating in New York City since the 1990s.

30.     Gray Line is a licensee and/or franchisee of Gray Line Worldwide, which promotes itself as "the largest provider of sightseeing tours on the planet", offering "thousands of tours and experiences in more than 700 locations, spanning six continents".[1]

31.     Gray Line has maintained its dominance in the New York City sightseeing tour bus market in large part through acquisition and market consolidation. In 2009, Gray Line joined forces with its then-largest competitor, CitySights, combining their assets and operations to form Twin America. Gray Line is no stranger to anti-competitive activities. In 2012, the United States Department of Justice and the New York State Attorney General jointly sued Twin America and related companies in the United States District Court for the Southern District of New York for various antitrust violations.[2] The lawsuit resulted in a consent judgment issued on November 17,

---

[1]     *See* https://www.grayline.com/about-us (last viewed on March 7, 2019).

[2]     *See United States of America, et al., v. Twin America, LLC, et al.*, S.D.N.Y., 12-CV-8989.

2015, pursuant to which, among other things, Twin America was required to forfeit 47 sightseeing bus stops in Manhattan which the New York City Department of Transportation had previously assigned to CitySights, and to disgorge profits in the amount of $7.5 million.

### Big Bus's Dominance in the New York City Sightseeing Tour Bus Market

32.     Big Bus owns and operates the second largest hop on, hop off sightseeing tour bus business in New York City.  Big Bus is based in the United Kingdom and bills itself as "the largest operator of open-top sightseeing tours in the world, providing sightseeing tours in 19 cities across three continents".[3]

33.     Like Gray Line, Big Bus secured its dominant position in the New York City sightseeing tour bus market largely through acquisition and market consolidation.  In or about January 2014, Big Bus's (via its predecessor) entered the New York City market by purchasing an existing company, Taxi Tours LLC d/b/a Big Taxi Tours.  About one year later, in March 2015, Big Bus acquired an existing tour bus operator, Skyline Tours LLC.  In 2017, Big Bus acquired Open Loop New York ("Open Loop"), making it the second largest of only three companies offering "hop on, hop off" sightseeing tour bus services in New York City.

### Distribution Channels in the New York City Sightseeing Tour Bus Market

34.     Go New York attempts to compete against Gray Line and Big Bus for the same consumers, offering the same types of hop-on, hop off sightseeing bus tours in New York City.

35.     A primary means employed by Go New York, Gray Line, and Big Bus to market and sell their services and products within New York City is through individual, uniformed sales representatives located near popular tourist attractions throughout Manhattan.      Sales

---

[3]     *See* https://www.bigbustours.com/about-big-bus-tours/ (last visited on March 7, 2019).

representatives from each of the three companies often work side by side with representatives of the other companies on the streets of Manhattan, each promoting his or her company's services and products and trying to persuade tourists to choose to purchase the services and products of his or her company over those of the other two companies.

36.   Each of the three companies also markets and sells its services and products available in New York City online through their respective web sites, through which a consumer located virtually anywhere within or outside the United States can purchase a company's services and products to be enjoyed when the consumer visits New York City.

37.   In addition, each of the three companies sells its services and products to consumers at their respective offices and/or visitor centers in Manhattan.

38.   Another significant means of marketing and selling the companies' services and products is through the concierge services and guest service desks in hotels, which promote and arrange for the purchase of sightseeing and activities for hotel guests.  Both Gray Line and Big Bus have arrangements with hotels and/or concierge and guest service providers to market and sell their tourist-oriented services and products to hotel guests.

39.   Go New York has been largely shut out of such arrangements and improperly prevented from having its services and products marketed and sold through hotels and/or concierge and guest service providers.

### *The Sale of Sightseeing Tour Bus and Other Services by Means of Multi-Attraction Passes*

40.   The sightseeing tour bus companies also sell their services via bundled, multi-attraction sightseeing passes (referred to generally hereinafter as the "Multi-Attraction Pass").  The Multi-Attraction Pass combines admissions to various New York City attractions and activities for a single price which is substantially discounted from the total cost of the attractions and activities

if they were purchased separately, thereby reducing the overall expenses of and providing greater value to consumers who wish to sightsee in New York City.

41.     Go New York, Gray Line, and Big Bus each offer Multi-Attraction Passes which combine various New York City attractions with their own respective hop on, hop off sightseeing bus tours and other services for a single price.  Other companies that do not own attractions or operate their own tourist services, including Leisure Pass and Sightseeing Pass, also offer Multi-Attraction Passes which may (but do not necessarily) include sightseeing bus tours.

42.     In order for a company to be able to offer Multi-Attraction Passes that bundle attractions and/or services of other companies, it generally must enter into "trade partner" agreements with them.  Generally, trade partners agree to make admission to their attractions or their services available at a discounted "net rate" when bundled into a partner's Multi-Attraction Pass, with the seller of the Multi-Attraction Pass paying its partner at the agreed net rate for each pass used at that attraction or to use its services.  The net rate accounts for a commission-type fee retained by the seller of the Multi-Attraction Pass for each such use.  The trade partner that owns the attraction or operates the service being used benefits by gaining additional customers, while the partner selling the Multi-Attraction Pass earns commissions.

43.     The Multi-Attraction Pass is a natural fit for hop-on, hop-off sightseeing tour bus companies, whose very business model involves transporting tourists comfortably and efficiently between tourist attractions.  The sightseeing tour bus companies benefit not just from commissions from passes used at tourist attractions, but also from selling their own sightseeing tours and other services.  The Multi-Attraction Pass has become a primary and essential facility for Go New York, Gray Line, and Big Bus to offer and sell their services and to compete in the New York City market.

44. Go New York offers Multi-Attraction Passes under various names, including its brand name "Attraction Pass", which allows the consumer to choose among various tourist attractions and activities offered with the pass, while traveling and sightseeing on Go New York's hop-on, hop-off tour buses during a determined period of time ranging from one to several days, at a price substantially less than it would cost the consumer to purchase them separately.

45. Big Bus offers its "Big Pass", which allows the consumer to choose among various tourist attractions and activities while traveling and sightseeing on Big Bus's hop-on, hop-off tour buses during a determined period of time ranging from one to several days.

46. Gray Line offers similar Multi-Attraction Passes that combine admissions to various New York City tourist attractions with Gray Line's tour bus and other services during specific time periods, under various brand names, including "Freestyle", "Flexpass", "Citysightseeing", and "Sightseeingpass".

47. Leisure Pass Group offers Multi-Attraction Passes in cities around the world. In the New York City market, Leisure Pass Group offers Multi-Attraction Passes under the brand names "New York City Explorer Pass" and the "New York Pass", which allow the consumer to pick and choose among various attractions and services to bundle and pay for in a single pass. Although Leisure Pass Group offers around 100 various attractions and activities to include in its passes, it offers the services of only one hop on, hop off sightseeing tour bus company, Big Bus, which shares common ownership and control with Leisure Pass Group.

48. Sightseeing Pass offers Multi-Attraction Passes in various cities throughout the United States. In the New York City market, Sightseeing Pass offers Multi-Attraction Passes under the same brand names used by Gray Line, with which it shares common ownership and control. Sightseeing Pass offers around 100 various attractions and activities included in its

12

various passes, but offers the services of only one hop on, hop off sightseeing tour bus company, Gray Line.

49.     Multi-Attraction Passes are a popular, convenient, and economical means for consumers to plan their sightseeing and tourist activities in New York City, and have become an essential facility for the hop on, hop off sightseeing tour bus companies in the New York City market to market and sell their services and products.

50.     Therefore, the ability of each of Go New York, Gray Line, and Big Bus to compete with each other in New York City, as well as with the multitude of other tourist attractions and activities from which tourists may choose when visiting New York City, depends in substantial part on each company's ability to establish trade partner relationships with other attractions so as be able to offer many popular attractions with their respective Multi-Attraction Passes at the best price, and to access the main distribution channels from which consumers learn about and purchase the passes.

### *Defendants' Anti-Competitive Conduct*

51.     Go New York been able to grow and to differentiate itself from Gray Line and Big Bus in the New York City hop-on, hop-off with by finding operating efficiencies and offering less expensive sightseeing alternatives to tourists.  For example, Go New York introduced recorded audio guides via headsets in its TopView buses in lieu of live tour guides, thereby reducing its operating expenses while giving its customers the option of listening to guides in different languages, or turning them off if they are not interested.  Go New York also introduced GPS tracking of its TopView buses and a mobile app with which customers can track when TopView buses will arrive at their location and plan their activities accordingly.

52.     The prices which Go New York is able to offer consumers for its TopView sightseeing tours regularly undercut the prices offered by Big Bus and Gray Line by around 20 to

13

40 percent or more.  For example, TopView currently offers a one-day "NYS Saver Pass", which includes unlimited same-day hop-on, hop-off tour bus services in Manhattan plus bicycle rental, for $35, while  Big Bus's offers its "Classic Ticket", which includes same-day hop-on, hop-off tour bus services and discounted bike rentals, for $49.50, and Gray Line offers passes including hop-on, hop-off tour bus and boat services starting at $59.

53.     Thus, Go New York has expanded the array of offerings available to consumers in the New York City hop-on, hop-off sightseeing tour bus market, who are free to examine and compare the respective offerings of the three major companies, and to decide whether they wish to pay less for TopView, or to pay more for the specific offerings of Gray Line or Big Bus.

54.     Gray Line and Big Bus, with the help of their respective affiliates Sightseeing Pass and Leisure Pass Group, have reacted to Go New York's success and legitimate price competition by engaging in conduct which is intended to diminish the value and competitiveness of Go New York's Multi-Attraction Passes and to prevent Go New York from participating in Multi-Attraction Passes offered by other companies.  Defendants are thereby substantially inhibiting Go New York's ability to compete and to obtain business through Multi-Attraction Passes, which are an essential facility in the New York City tourism market and, in particular, the New York City hop on, hop off sightseeing tour bus market, and harming competition to the detriment of consumers.

55.     Gray Line and Big Bus, with the help of their respective affiliates Sightseeing Pass and Leisure Pass Group,  have conspired to leverage their substantial market power to require and/or to persuade major New York City attractions to refuse to enter into trade partner agreements with Go New York, and have regularly falsely disparaged TopView "inferior, low cost, low quality" service such that the attractions would risk harming their own reputations by entering into

14

trade partner agreements with Go New York.  In addition, Leisure Pass Group and Sightseeing Pass each present themselves to the consuming public as separate and apart from their affiliated sightseeing tour bus company, but offer the hop on, hop off sightseeing tour bus services of only their own affiliated companies and exclude Go New York.

56.     Gray Line and Big Bus, with the help of their respective affiliates Sightseeing Pass and Leisure Pass Group, have been and are engaging in their aforesaid conduct with the intent to diminish the value and competitiveness of Go New York's Multi-Attraction Passes and to prevent Go New York from participating in Multi-Attraction Passes offered by other companies, thereby substantially inhibiting Go New York's ability to compete and to obtain business through Multi-Attraction Passes, which are an essential facility in the New York City tourism market and, in particular, the New York City hop on, hop off sightseeing tour bus market.  Defendants have thereby harmed competition in the New York City market, to the detriment of consumers.

57.     For example, while both Gray Line and Big Bus include admission to "Top of the Rock", the observatory and tourist facility at Rockefeller Center in midtown Manhattan, in their respective bundled sightseeing passes, during the past few years the operator of Top of the Rock has rebuffed repeated attempts by Go New York to establish a relationship with it.  Top of the Rock rejected Go New York notwithstanding Go New York's proposal that that it would not take any commission or fee for admission of Go New York's customers, passing the entire discounted rate on to Top of the Rock's customers and allowing Top of the Rock to charge a higher net rate. The operator has told Go New York that Top of the Rock is not presently onboarding new trade partners, even though the operator continues to solicit new partners.

58.     Top of the Rock has consistently rejected Go New York as a trade partner, notwithstanding that Go New York has become a major operator in the New York City market,

15

upon information belief, because of deliberate pressure by Gray Line and Big Bus to exclude Go New York. There is no rational business reason for Top of the Rock to reject Go New York as a trade partner, other than that Gray Line and Big Bus demanded that it not do business with Go New York. At one point, a Top of the Rock representative even told Go New York to talk to Gray Line's president, Mark Marmurstein, for help in gaining approval as a trade partner of Top of the Rock.

59.     Go New York has also been shut out of the Empire State Building Observatory (the "ESB Observatory"), notwithstanding Go New York's proposal that it would not take any commission or fee for admission of Go New York's customers to the ESB Observatory, passing the entire discounted rate on to its customers and allowing ESB Observatory to charge a higher net rate.

60.     Big Bus and Leisure Pass Group, upon information and belief, have conspired with the ESB Observatory's operator to exclude Go New York. The operator has told Go New York that it has an exclusive relationship with Leisure Pass Group's "New York Pass", and Leisure Pass Group shares common ownership with Big Bus, which is a trade partner of the ESB Observatory.

61.     There is no apparent rational business reason for ESB Observatory to reject Go New York as a trade partner, other than Big Bus and/or Leisure Pass Group demanded that it not do business with Go New York.

62.     Go New York has also been shut out of the One World Observatory at the World Trade Center in lower Manhattan, upon information and belief because of pressure and demands by Big Bus and Gray Line.

63.     Representatives of the One World Observatory have told Go New York that it has an exclusive relationship with Mark Marmurstein, the president of Gray Line, and, indeed, Gray

16

Line advertises the One World Observatory as one of several attractions offered "exclusively" with Gray Line's Multi-Attraction Passes.  Nevertheless, Big Bus also advertises and sells One World Observatory admission as part its own Big Pass, indicating that proffered explanation for excluding Go New York is a pretext.

64.     The real reason why One World Observatory has declined to enter into a trade partner agreement with Go New York, upon information and belief, is that Gray Line and Big Bus have conspired to pressure and demand that One World Observatory, a major attraction which would be at the top of the list of places to visit for most tourists visiting New York City, exclude Go New York.   By doing so, Gray Line and Big Bus have rendered Go New York's Multi-Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

65.     As another example, Go New York previously executed a trade partner agreement with the Intrepid Sea, Air, and Space Museum (the "Intrepid"), a major tourist attraction located at the west side piers in midtown Manhattan.  Both Gray Line and Big Bus were already trade partners of the Intrepid, and would necessarily have known of the new agreement with Go New York.

66.     The Intrepid unilaterally terminated the agreement just as Go New York began sending its customers there, and in breach of the agreement refused to honor the passes held by Go New York's customers.  An Intrepid representative told Go New York that the Intrepid did not want to make its other trade partners unhappy by dealing with Go New York.

67.     Gray Line and Big Bus, upon information and belief, conspired with each other and the Intrepid to cause the Intrepid to terminate and to breach its trade partner agreement with Go

17

New York, for the purpose of rendering Go New York's Multi-Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

68. Other museums that have refused to work with Go New York include the 9/11 Memorial and Museum and the 9/11 Tribute Museum in lower Manhattan, and the Museum of Modern Art in midtown.

69. Big Bus and Gray Line are trade partners of the 9/11 Memorial and Museum and the 9/11 Tribute Museum, and Big Bus is also a trade partner of the Museum of Modern Art. Gray Line and Big Bus, upon information and belief, have conspired together with these museums and each other to exclude Go New York, for the purpose of rendering Go New York's Multi-Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

70. Go New York previously worked with Madame Tussauds, the wax museum attraction located in the Times Square area of Manhattan prior to 2015, before rebranding its hop on, hop off tour buses services as "TopView". Big Bus a trade partner of Madame Tussauds, offering the attraction with its Big Pass, and Madame Tussauds promotes and sells Big Bus tickets at its own facility and web site. Gray Line is also a trade partner of Madame Tussauds.

71. In 2018, Go New York met with representatives of Madame Tussauds to try to forge a trade partner relationship with Madame Tussauds, but was eventually told that Madame Tussauds was not onboarding additional trade partners. Big Bus and Gray Line, upon information and belief, conspired with Madame Tussauds and each other to exclude Go New York, for the

18

purpose of rendering Go New York's Multi-Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market. There is no other apparent rational business reason for Madame Tussauds to work with both Big Bus and Gray Line while excluding Go New York.

72. Go New York has also been excluded from Broadway Inbound, an online platform for travel service providers and groups to sell tickets to Broadway shows. In January 2019, Broadway Inbound opened an account for Go New York. But a few days later, Broadway Inbound suddenly closed the account, stating that it needed "further time to review" Go New York's account and might reconsider Go New York in six months' time "once we better understand the local market landscape." Broadway Inbound has long-established business relationships with both Gray Line and Big Bus, neither of whose accounts have been closed for further review.

73. Gray Line and Big Bus, upon information and belief, conspired with Broadway Inbound and each other to exclude Go New York, for the purpose of rendering Go New York's Multi-Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market. There is no other apparent rational business reason for Broadway Inbound to continue working with both Big Bus and Gray Line while closing Go New York's account.

74. In January 2019, Go New York contacted the companies Coach USA and Short Line (referred to hereinafter as "Coach/Short Line"), which operate a shuttle bus service between New York City and the Woodbury Common Premium Outlet shopping center ("Woodbury Common"), to discuss including their shuttle bus service in Go New York's Multi-Attraction

Passes. Coach/Short Line initially expressed interest and began negotiating a trade partner relationship. But then, Coach/Short Line ceased negotiations and refused to work with Go New York, telling Go New York that "we aren't able to work with you due to other sightseeing company relationships."

75. Big Bus, Leisure Pass Group, Gray Line, and Sightseeing Pass all have trade partner relationships with Coach/Short Line and offer trips to Woodbury Common with their respective Multi-Attraction Passes (directly and/or through their respective affiliates). Big Bus, Leisure Pass Group, Gray Line, and Sightseeing Pass, upon information and belief, have conspired with Coach/Short Line and each other to exclude Go New York, for the purpose of rendering Go New York's Multi-Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

76. Go New York has been consistently and repeatedly informed by many of the above-referenced attractions that executives of Gray Line and Taxi Tours have told them that Go New York is an "inferior/low cost/low quality" service which operates unsafe and/or unlicensed vehicles and that the attractions are risking their reputations if they contract with Go New York. These false allegations against Go New York have contributed significantly to the unwillingness of many tourist attractions to contract with Go New York.

77. Go New York has also been informed consistently and repeatedly by many of the above attractions that executives of Gray Line and Taxi Tours have told them that if they allow Go New York to include their attractions in Go New York' Multi-Attraction Passes, they will terminate their contractual relationships with such attractions and refuse to include them in their own respective Multi-Attraction Passes.

20

78.     These illegal anti-competitive activities have resulted in a virtual boycott by many leading and popular tourist attractions against Go New York. It is implausible and, indeed, inconceivable that this virtual boycott would occur unless Gray Line and Big Bus were conspiring together to disparage Go New York and demand that the attractions whom they include in their respective Multi-Attraction Passes decline to do business with Go New York.

79.     Defendants' conspiracy to damage Go New York appears to be in retaliation against Go New York's success in operating a lower cost, more efficient tour bus operation, which benefits consumers by offering lower ticket prices while providing an experience for customers or equal or better quality and value than the experience provided by Defendants' operations Defendants achieved this cost advantage by taking advantage of technological advancements and improved operating efficiencies.

80.     For example, Go new York was the first hop-on, hop-off bus company in the New York City market to install GPS in its buses, allowing it to closely monitor the location its buses thereby reducing waiting time for passengers.  Go New York also replaced live tour guides with recorded audio tours in several languages, which many customers prefer over live tours. In so doing, Go New York could improve the experience of customers who speak several different languages from numerous countries worldwide. These audio tours reduced costs by eliminating live tour guides, while actually improving the consistency and quality of the information provided to customers, while at the same time, making such information available simultaneously to customers who speak different languages

81.     Each of defendants conspired to retaliate against Go New York's competitive success by engaging in the aforesaid anticompetitive conduct, including its anticompetitive disparagement of Go New York's operations. Those anti-competitive, disparaging assertions by

21

Defendants are false as is evidenced by Go New York's rapid expansion despite anti-competitive efforts by Go New York's competitors.

82.    Each of defendant's anticompetitive actions, in concert and conspiracy with each other,   have harmed competition in the market and damaged Go New York, because  they have led to a virtual boycott of Go New York by numerous leading tourist attractions in  New York City.

83.    Absent these anti-competitive activities, it is inconceivable and implausible that the major attractions would refuse to enter a lucrative contract with Go New York to draw even more tourists to their locations.

84.    By excluding Go New York from major tourist attractions, defendants have substantially inhibited or prevented Go New York's ability to offer and sell bundled sightseeing passes that are attractive to customers, and substantially inhibited or prevented Go New York's access to essential distribution channels.

85.    Big Bus and Gray Line have also conspired to render Go New York in other ways. For example, upon on information and belief, Big Bus and Gray Line have conspired to block Go New York's buses from using the tour bus stops which the New York City Department of Transportation has assigned to Go New York, by parking their own tour buses in Go New York's designated spots, thereby driving away Go New York Customers and driving up prices in the market.

**FIRST CLAIM FOR RELIEF**
(Against All Defendants, for Violations of Section 1 of the
Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1, 15)

86.    Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 85 as if set forth in their entirety herein.

22

87. As alleged above, defendants have engaged in concerted action to prevent or impede Go New York's ability to compete in the New York City hop on, hop off sightseeing tour bus market by preventing and/or impeding Go New York's ability to market and sell its services through competitive Multi-Attraction Passes, which are essential facilities for competing in said market.

88. In particular, and among other things, with respect to third-party operators of attractions and service providers, some or all of defendants have entered into formal and/or informal agreements for the third parties to refuse to deal with Go New York.

89. Big Bus and Leisure Pass Group have unlawfully conspired with Gray Line and Sightseeing Pass, and all of them have conspired with the operators of New York City tourist attractions, whether directly or through their respective affiliates, to exclude Go New York from trade partner relationships with New York City tourist attractions, from the Multi-Attraction Passes offered by Leisure Pass Group and Sightseeing Pass in the New York City market, from hotel concierges and guest services, and from other tourist services.

90. There is no legitimate business reason for operators of multiple tourist attractions to refuse to deal with Go New York as a trade partner, because they would benefit from Go New York's additional customers; rather, the reason for Go New York's exclusion is unlawful coercion and manipulation by and conspiracies with defendants for the purpose of reducing competition.

91. There is no legitimate business reason for Leisure Pass Group and Sightseeing Pass to exclude Go New York from their respective Multi-Attraction Passes, because they benefit from offering the widest possible variety of options to their customers; rather, the reason for Go New York's exclusion is unlawful coercion and manipulation by and conspiracies with the other defendants for the purpose of reducing competition.

23

92.     Defendants' aforesaid improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York in the New York City sightseeing bus tour market and to maintain artificially high prices for consumers, and defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York to lose market share, customers, and revenues.

93.     Defendants by their aforesaid unlawful conduct have caused actual injury to Go New York by causing Go New York to lose market share, customers, and revenues.

94.     Defendants have thereby engaged in unreasonable restraint of trade in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and section 4 of the Clayton Act, 15 U.S.C. § 15.

95.     Therefore, Go New York is entitled to recover its damages from defendants including treble damages, costs of suit including reasonable attorney fees, and interest, to the fullest extent permitted by law.

### SECOND CLAIM FOR RELIEF
(Against All Defendants, for Violations of the
Donnelly Act, New York Gen. Bus. L. § 340, *et seq*.)

96.     Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 95 as if set forth in their entirety herein.

97.     As alleged above, each of defendants has conspired to exclude, and/or entered into contracts for the purpose of excluding, Go New York from trade partner relationships, from participating in Multi-Attraction Passes and/or from hotel concierge and guest services, which are essential facilities in the New York City sightseeing tour bus market.

98.     Defendants' aforesaid improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York in the New York City sightseeing tour bus market and to maintain artificially high prices for consumers, and

24

defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York to lose market share, customers, and revenues.

99.    Defendants have each engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York to lose market share, customers, and revenues, and have caused such actual injury to Go New York.

100.   For the foregoing reasons, defendants have engaged in unreasonable restraint of trade in violation of the Donnelly Act, New York Gen. Bus. L. § 340.

101.   Therefore, Go New York is entitled to recover its damages from defendants including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

## <u>THIRD CLAIM FOR RELIEF</u>
(Against All Defendants, for
Common Law Unfair Competition)

102.    Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 101 as if set forth in their entirety herein.

103.   As alleged above, defendants have wrongfully prevented Go New York from offering a competitive bundled sightseeing pass and excluded Go New York from participation in Multi-Attraction Passes, thereby increasing their own market share at the expense of Go New York and preventing Go New York from offering and selling its services and products.

104.   By reason of the foregoing, defendants have wrongfully diverted business from Go New York to themselves, thereby damaging Go New York in an amount to be determined at trial, which Go New York is entitled to recover from defendants.

25

## **FOURTH CLAIM FOR RELIEF**
(Against Gray Line and Big Bus,
for Tortious Interference with Contract)

105. Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 104 as if set forth in their entirety herein.

106. Go New York and the Intrepid entered into a binding trade partner agreement.

107. Gray Line and Big Bus each knew about the contract between the Intrepid and Go New York, and wrongfully induced the Intrepid to breach that agreement by unilaterally terminating it and refusing to honor the passes held by Go New York's customers.

108. Gray Line and Big Bus induced the Intrepid's breach by persuading the Intrepid to exclude Go New York as a trade partner, for the improper purpose of harming competition in the New York City hop on, hop off tour bus market.

109. As a result of Gray Line's and Big Bus's inducement of the Intrepid's breach of its contract with Go New York, Go New York has been damaged in an amount to be determined at trial, which Go New York is entitled to recover from Gray Line and Big Bus.

## **FIFTH CLAIM FOR RELIEF**
(Against All Defendants, for Tortious
Interference with Prospective Business Relations)

110. Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 109 as if set forth in their entirety herein.

111. As alleged above, all of defendants have undertaken to exclude Go New York from major New York City tourist attractions and/or Multi-Attraction Passes, for the improper purposes of reducing competition in the New York City hop on, hop off tour bus market, preventing Go New York from forming beneficial contractual relationships with New York City attractions and companies offering Multi-Attraction Passes, preventing Go New York from offering a competitive

26

bundled sightseeing pass product, and preventing Go New York from offering and selling its services and products to consumers.

112. By reason thereof, Go New York has been damaged in an amount to be determined at trial, and is entitled to recover its damages from defendants.

**WHEREFORE,** plaintiff Go New York Tours, Inc. demands Judgment in its favor and against defendants Gray Line New York Tours, Inc., Twin America, LLC, Sightseeing Pass LLC, Big Bus Tours Group Holdings Limited, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc., Leisure Pass Group Holdings Limited, Leisure Pass Group limited, and Leisure Pass Group, Inc., as follows:

A. Awarding plaintiff Go New York its actual damages and treble damages for violations of the Sherman and Clayton Acts, and of the Donnelly Act;

B. Awarding plaintiff Go New York its costs of suit, including reasonable attorneys' fees, under the Clayton Act and the Donnelly Act, and as may otherwise be permitted by law;

C. Awarding plaintiff Go New York interest under the Clayton Act, and as may otherwise be permitted by law;

D. Awarding plaintiff Go New York its damages, costs of suit, and interest for unfair competition, tortious interference with contract, and tortious interference with prospective business relations under New York common law, and its interests and costs as may be permitted by law; and

E. Such other and further relief as the Court may deem just and proper.

Plaintiff hereby demands a trial by jury of all claims and issues herein.

Dated: New York, New York
      December 5, 2019

**BARTON LLP**

By:   /s/ Maurice N. Ross /s/
     Maurice N. Ross
     Randall L. Rasey

711 Third Avenue, 14th Floor
New York, NY 10017
(212) 687-6262
mross@bartonesq.com
rrasey@bartonesq.com
*Attorneys for Plaintiff*
*Go New York Tours, Inc.*

28