# Exhibit F

Case 1:23-cv-04256-ER   Document 96-6   Filed 06/18/25   Page 2 of 33

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 54

|  |  |
|---|---|
| TAXI TOURS, INC., | Index No. 653012/2019 |
| Plaintiff, | |
| -against- | |
| GO NEW YORK TOURS, INC., | |
| Defendant. | **SECOND AMENDED VERIFIED ANSWER AND COUNTERCLAIMS** |
| GO NEW YORK TOURS, INC., | |
| Counterclaim Plaintiff, | |
| -against- | |
| BIG BUS TOURS LIMITED, OPEN TOP SIGHTSEEING USA, INC., TAXI TOURS, INC., GO CITY LIMITED, GO CITY NORTH AMERICA, LLC, GO CITY, INC.,GRAY LINE NEW YORK TOURS, INC., TWIN AMERICA, LLC, and SIGHTSEEING PASS LLC, | |
| Counterclaim Defendants. | |

Defendant GO NEW YORK TOURS, INC., by its attorneys Barton LLP, as and for its amended answer to the Verified Complaint of plaintiff TAXI TOURS, INC., and as and for its amended counterclaims, alleges and avers as follows:

1. Paragraph 1 of the complaint contains general, subjective statements which cannot be objectively admitted or denied.

2. Admits, upon information and belief, that plaintiff operates "hop-on, hop-off" sightseeing tour buses in New York City under the brand name "Big Bus New York" or "Big Bus", and denies the remaining allegations in paragraph 2 of the complaint.

3. Denies the allegations in paragraph 3 of the complaint.

1

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 3 of 33

4.  Denies the allegations in paragraph 4 of the complaint.

5.  Denies the allegations in paragraph 5 of the complaint.

6.  Denies the allegations in paragraph 6 of the complaint.

7.  Denies the allegations in paragraph 7 of the complaint.

8.  Denies the allegations in paragraph 8 of the complaint.

9.  Denies the allegations in paragraph 9 of the complaint.

10.  Denies the allegations in paragraph 10 of the complaint.

11.  Admits, upon information and belief, that plaintiff operates "hop-on, hop-off" sightseeing tour buses in New York City under the brand name "Big Bus New York" or "Big Bus", admits the general description of how customers may utilize "hop-on, hop-off" tour buses for sightseeing, and denies the remaining allegations in paragraph 11 of the complaint.

12.  Denies the plaintiff's description and characterization of defendant's buses, and admits the remaining allegations in paragraph 12 of the complaint.

13.  Admits that the parties are subject to the jurisdiction of this Court.

14.  Admits that venue is proper in this Court.

15.  Paragraph 15 of the complaint contains general, subjective statements which cannot be objectively admitted or denied.

16.  Denies knowledge or information sufficient to admit or deny the allegations in paragraph 16 of the complaint.

17.  Denies the allegations in paragraph 17 of the complaint.

18.  Denies knowledge or information sufficient to admit or deny the allegations in paragraph 18 of the complaint.

19.  Denies the allegations in paragraph 19 of the complaint.

2

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 4 of 33

20.     Denies the allegations in paragraph 20 of the complaint.

21.     Admits that defendant rebranded its business in around January 2017 and began using the color red on its buses and uniforms instead of green, and denies the remaining allegations in paragraph 21 of the complaint.

22.     Denies the allegations in paragraph 22 of the complaint.

23.     Admits that the New York City Department of Transportation ("NYCDOT") assigns authorized bus stops to designated sightseeing tour bus operators, admits that the assignments of bus stops facilitates traffic flow, denies that all bus stops are designated for the exclusive use of a single operator, and denies knowledge or information sufficient to admit or deny the remaining allegations in paragraph 23 of the complaint.

24.     Denies the allegations in paragraph 24 of the complaint.

25.     Denies the allegations in paragraph 25 of the complaint.

26.     Denies the allegations in paragraph 26 of the complaint.

27.     Denies the allegations in paragraph 27 of the complaint.

28.     Paragraph 28 of the complaint contains general, subjective statements which cannot be objectively admitted or denied.

29.     Admits the general description of "astroturfing" and that at least one prior New York State Attorney General has targeted the practice, and denies knowledge or information sufficient to admit or deny the remaining allegations in paragraph 29 of the complaint.

30.     Denies the allegations in paragraph 30 of the complaint.

31.     Denies the allegations in paragraph 31 of the complaint.

32.     Denies knowledge or information sufficient to admit or deny the allegations in paragraph 32 of the complaint.

3

33. Denies knowledge or information sufficient to admit or deny the allegations in paragraph 33 of the complaint.

34. Denies knowledge or information sufficient to admit or deny the allegations in paragraph 34 of the complaint.

35. Denies the allegations in paragraph 35 of the complaint.

36. Denies knowledge or information sufficient to admit or deny the allegations concerning the alleged disclaimer, and denies the remaining allegations in paragraph 36 of the complaint.

37. Denies the allegations in paragraph 37 of the complaint.

38. Admits the allegations in paragraph 38 of the complaint.

39. Denies the allegations in paragraph 39 of the complaint.

40. Denies the allegations in paragraph 40 of the complaint.

41. Admits that the New York City implemented certain regulations concerning the activities and locations of vendors in the Times Square area, and denies the remaining allegations on paragraph 41 of the complaint.

42. Admits the allegations in paragraph 42 of the complaint.

43. Denies the allegations in paragraph 43 of the complaint.

44. Admits the allegations in paragraph 44 of the complaint.

45. Denies the allegations in paragraph 45 of the complaint.

46. Denies the allegations in paragraph 46 of the complaint.

47. Denies the allegations in paragraph 47 of the complaint.

4

48.    Admits that sightseeing tour buses operating in New York City are subject to safety testing, and denies knowledge or information sufficient to admit or deny the remaining allegations in paragraph 48 of the complaint.

49.    Admits that some of plaintiffs buses have been modified from single-deck to double decker buses, and denies the remaining allegations in paragraph 49 of the complaint.

50.    Denies the allegations in paragraph 50 of the complaint.

51.    Denies the allegations in paragraph 51 of the complaint.

52.    Denies the allegations in paragraph 52 of the complaint.

53.    Admits labor costs are a significant business expense, and denies knowledge or information sufficient to admit or deny the remaining allegations in paragraph 53 of the complaint.

54.    Denies the allegations in paragraph 54 of the complaint.

55.    Denies the allegations in paragraph 55 of the complaint.

56.    Denies the allegations in paragraph 56 of the complaint.

### FIRST, SECOND, AND THIRD CAUSES OF ACTION
(Violations of New York G.B.L. § 349)

57-69.   The Court has granted plaintiff's motion to discontinue its First, Second, and Third Causes of Action, and therefore no responses are required to the allegations in paragraphs 57 through 69 of the complaint, but to the extent any response is required, they are denied.

### FOURTH AND FIFTH CAUSES OF ACTION

71-78.   The Court has stayed plaintiff's Fourth and Fifth Causes of Action, and therefore no responses are required to the allegations in paragraphs 71 through 78 of the complaint, but to the extent any response is required, they are denied.

5

## AFFIRMATIVE DEFENSES

Defendant respectfully reserves its right to assert, and does not intend to waive, any and all potential affirmative defenses in the event it becomes appropriate and/or necessary to assert affirmative defenses to any of plaintiff's discontinued or stayed causes of action.

## COUNTERCLAIMS

1.      Counterclaim plaintiff Go New York Tours, Inc. ("Go New York") brings these counterclaims against plaintiff/counterclaim defendant Taxi Tours, Inc. and its affiliated companies, and against counterclaim defendant Gray Line New York Tours, Inc. and its affiliated companies, in order to call them out and hold them accountable for their anticompetitive, deceptive, unfair, and unlawful conduct and practices in the New York City hop-on, hop-off sightseeing tour bus market, including misconduct directed toward the general public as well as misconduct directed specifically to Go New York.  Contrary to how Taxi Tours, Inc. has tried to portray itself in its Verified Complaint in this action as a virtuous champion of honest competition and fair play, it has in fact tried to minimize competition and engaged in much of the same deceptive and fraudulent conduct of which it wrongly accuses Go New York.  For the reasons alleged below, Go New York asserts counterclaims against Taxi Tours, Inc. and the other counterclaim defendants for statutory violations of state antitrust and consumer protection laws, as well as common law tortious interference.

### The Parties

2.      Counterclaim plaintiff Go New York is a New York corporation with its main offices located in New York, New York, and operates "hop-on, hop-off" open-top, double-decker sightseeing tour buses in New York City under the brand name "TopView".  Go New York is a homegrown New York City company founded in 2011 and still owned by its original founder.

6

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 8 of 33

3.      Big Bus Tours Limited is a private limited company organized under the laws of the United Kingdom with its main offices located at 110 Buckingham Palace Road, London, England, SW1W 9SA.  Big Bus Tours Limited is part of the London, England-based Big Bus Tours group of companies (the "Big Bus group"), which owns and operates sightseeing tour bus businesses under the "Big Bus" brand in cities around the world, and promotes itself as "the world's largest provider of open-top sightseeing bus tours".  Big Bus Tours Limited is the registered owner of the BIG BUS trademark in the United States.

4.      Counterclaim defendant Open Top Sightseeing USA, Inc. ("Open Top") is a Delaware corporation with its main offices located at 723 Seventh Avenue, New York, New York, and is part of the Big Bus Group.  Upon information and belief, Open Top is wholly owned, directly and/or indirectly, by Big Bus Tours Limited, with which it shares common control and management.

5.      Counterclaim defendant Taxi Tours, Inc. ("Taxi Tours") is a New York corporation with its main offices located at 723 Seventh Avenue, 5th Floor, New York, New York, and is part of the Big Bus group.  Upon information and belief, Taxi Tours is wholly owned, directly and/or indirectly, by Big Bus Tours Limited and Open Top with which it shares common control and management.

6.      Upon information and belief, Big Bus Tours Limited, Open Top , and Taxi Tours act in concert though common management to operate "hop-on, hop-off" sightseeing tour buses in New York City under the BIG BUS brand name, and jointly benefit from same, although the specific responsibilities and roles of each of them are presently unknown to Go New York; therefore, Big Bus Tours Limited, Open Top, and Taxi Tours are sometimes referred to herein collectively as  "Big Bus."

7

7.      Go City Limited, formerly known as The Leisure Pass Group Limited, is a private limited company organized under the laws of the United Kingdom with its main offices located at 6 Dryden Street, London, England, WC2E 9NH, and is part of the London, England-based Go City group of companies which offers Multi-Attraction Passes (as defined below) in cities around the world. Go City Limited is the registered owner of the NEW YORK PASS trademark in the United States.

8.      Counterclaim defendant Go City North America, LLC, formerly known as Leisure Pass North America, LLC is a New York limited liability company and part of the Go City group. Upon information and belief, Go City North America, LLC is wholly owned, directly and/or indirectly, by Go City Limited, with which it shares common control and management.

9.      Counterclaim defendant Go City, Inc., formerly known as Leisure Pass Group Inc., is a Delaware corporation authorized to do business in New York, and is part of the Go City group. Upon information and belief, Go City North America, LLC is wholly owned, directly and/or indirectly, by The Go City Group Limited and/or Go City North America, LLC, with which it shares common control and management.

10.     Upon information and belief, Go City Limited, Go City North America, LLC, and Go City Inc. act in concert though common management to create, market, and sell Multi-Attraction Passes in New York City and jointly benefit from same, although the specific responsibilities and roles of each of them are presently unknown to Go New York; therefore, The Go City Limited, Go City North America, LLC, and Go City Inc. are sometimes referred to herein collectively as "Go City".

11.     Upon information and belief, Big Bus and Go City act in concert and jointly benefit, through common ownership and control, from the creation, provision, and marketing of

8

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 10 of 33

sightseeing services, including hop-on, hop-off sightseeing tour bus services and Multi-Attraction Passes, in the New York City area. Taxi Tours and Go City are sometimes referred to herein collectively as "Big Bus/Go City Defendants".

12. Counterclaim defendant Twin America, LLC ("Twin America") is a Delaware limited liability company authorized to do business in New York, and the registered owner of the FREESTYLE PASS, FLEXPASS, THE SIGHTSEEING PASS, and CITYSIGHTS NY trademarks in the United States.

13. Counterclaim defendant Gray Line New York Tours, Inc. ("Gray Line NY") is a New York corporation, and upon information and belief is owned and controlled by Twin America.

14. Counterclaim defendant Sightseeing Pass LLC ("Sightseeing Pass") is a Delaware limited liability company authorized to do business in New York and, upon information and belief, is owned and controlled by Twin America.

15. Upon information and belief, Gray Line NY, Sightseeing Pass, and Twin America act in concert in and jointly benefit from, through common ownership and control, the creation, provision, and marketing of sightseeing services, including hop-on, hop-off sightseeing tour bus services under the "Gray Line" and "City Sightseeing" brand names and Multi-Attraction Passes (as defined below) in the New York City area, and are sometimes referred to herein collectively as the "Gray Line Defendants". Upon further information and belief, some or all of the Gray Line Defendants operate as direct or indirect licensees and/or franchisees of Gray Line Worldwide which, similar to the Big Bus Group, promotes itself as the largest provider of sightseeing tours on the planet. The Gray Line Defendants are sometimes referred to herein collectively with the Big Bus/Go City Defendants as "Counterclaim Defendants".

9

## Facts Common to All Counterclaims

16.     Go New York, Big Bus, and Gray Line NY each operate or have operated "hop-on, hop-off" double decker, open top sightseeing tour buses under their respective "TopView", "Big Bus", and "Gray Line" and "City Sightseeing" brand names in the New York City market. Hop-on, hop-off tour buses follow set routes through areas of general interest to tourists, allowing their customers to "hop off" a bus at an attraction or place that interests them, and then to "hop on" another bus operated by the same company when they are ready to continue their tour.

17.     Go New York, Big Bus, and Gray Line NY comprised the three main operators of hop-on, hop-off sightseeing tour bus businesses in the New York City market.  In contrast to the worldwide Big Bus and Gray Line brands, Go New York began its operations in 2012 and historically has been the smallest of the three businesses in terms of both revenues and the number of buses in its fleet, although it has enjoyed significant growth and is now, upon information and belief, comparable in terms of size and revenues to its main competitors.

18.     Go New York been able to grow and to differentiate itself from Gray Line and Big Bus in the New York City hop-on, hop-off sightseeing tour bus market by finding operating efficiencies and offering less expensive sightseeing alternatives to tourists.  For example, Go New York introduced recorded audio guides via headsets in its TopView buses in lieu of live tour guides, thereby reducing its operating expenses while giving its customers the option of listening to guides in different languages, or turning them off if they are not interested.  Go New York also introduced GPS tracking of its TopView buses and a mobile app with which customers can track when TopView buses will arrive at their location and plan their activities accordingly.

19.     The prices which Go New York is able to offer consumers for its TopView sightseeing tours regularly undercut the prices offered by Big Bus and Gray Line by around 20 to

10

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 12 of 33

40 percent or more.  For example, in December 2019 TopView offered a one-day "NYC Saver Pass", which included unlimited same-day hop-on, hop-off tour bus services in Manhattan plus bicycle rental, for $35, while Big Bus offered its "Classic Ticket", which includes same-day hop-on, hop-off tour bus services and discounted bike rentals, for $49.50, and Gray Line offered same-day passes including hop-on, hop-off tour bus and boat services starting at $59.

20.    Thus, Go New York has expanded the array of offerings available to consumers in the New York City hop-on, hop-off sightseeing tour bus market, who are free to examine and compare the respective offerings of the three major companies, and to decide whether they wish to pay less for TopView, or to pay more for the specific offerings of Big Bus or Gray Line.

21.    By offering lower-priced options to consumers for its hop-on, hop-off sightseeing tour bus services, Go New York has disrupted the business models of its higher-priced competitors and, upon information and belief, gained market share vis-à-vis Taxi Tours.  During the same period in which Taxi Tours alleged that it experienced a decline in ridership on its "Big Bus" buses (*see* Verified Complaint, at ¶ 3), Go New York has enjoyed year-to-year growth in both ridership and revenues.

22.    Unfortunately, Big Bus, itself and in conjunction with Go City, and the Gray Line Defendants have reacted to Go New York's legitimate competition not by "embrac[ing] competition" as Taxi Tours alleged in its complaint (Verified Complaint, at ¶ 10), but by doing just the opposite: engaging in a campaign of anticompetitive and other unlawful efforts to undermine Go New York's competitive advantages, including some of the same unlawful conduct which it accuses Go New York of doing.  Counterclaim Defendants' campaign is not just damaging Go New York's business, but is also injuring the public at large, by unlawfully minimizing

11

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 13 of 33

competition in the New York City hop-on, hop-off sightseeing tour bus market and reducing the choices available to consumers.

### *The Anticompetitive Conduct*

23.     The various companies operating hop-on, hop-off sightseeing tour bus companies, and/or the affiliates of such companies (including Go City and Sightseeing Pass), sell their services in large part via bundled, multi-attraction sightseeing passes (referred to hereinafter as the "Multi-Attraction Pass"). The Multi-Attraction Pass combines hop-on, hop-off sightseeing tour bus services with admissions to various New York City sightseeing attractions and activities (referred generally and collectively hereinafter as "Attractions") for a single price which is substantially discounted from the total cost of the services and Attractions if they were purchased separately, thereby reducing the overall expenses of and providing greater value to consumers who wish to sightsee in New York City.

24.     In order for a company to be able to offer Multi-Attraction Passes that bundle attractions and/or services of other companies, it generally must enter into "trade partner" agreements with them.  Generally, trade partners agree to make admission to their Attractions or services available at a discounted "net rate" when bundled into a partner's Multi-Attraction Pass, with the seller of the Multi-Attraction Pass paying its partner at the agreed net rate for each pass used at that attraction or to use its services.  The net rate accounts for a commission-type fee retained by the seller of the Multi-Attraction Pass for each such use.  The trade partner that owns the Attraction or operates the service being used benefits by gaining additional customers, while the partner selling the Multi-Attraction Pass earns commissions.

25.     The Multi-Attraction Pass is a natural fit for hop-on, hop-off sightseeing tour bus companies, whose very business model involves transporting tourists comfortably and efficiently to, from, and between Attractions.  The sightseeing tour bus companies benefit not just from

12

commissions from passes used at tourist attractions, but also from selling their own sightseeing tours and other services. The Multi-Attraction Pass has become a primary and essential facility for hop-on, hop-off sightseeing bus companies to offer and sell their services and to compete in the New York City market.

26. Go New York offers Multi-Attraction Passes under various names, including its brand name "Attraction Pass", which bundle various Attractions with TopView hop-on, hop-off sightseeing tour bus services.

27. The Big Bus/Go City Defendants offer Multi-Attraction Passes including the "New York Pass" and other Multi-Attraction Passes which bundle Big Bus hop-on, hop-off sightseeing tour bus services with other New York City Attractions, and share a New York City "information desk" at which they promote, market, and sell their Big Bus tickets and Multi-Attraction Passes.

28. Gray Line offers Multi-Attraction Passes, directly and/or through its affiliate Sightseeing Pass, including the "FreeStyle Pass", "The Sightseeing Pass", and "The Sightseeing FlexPass", and other Multi-Attraction Passes which bundle Gray Line hop-on, hop-off Sightseeing tour bus services with other New York City Attractions.

29. Multi-Attraction Passes are a popular, convenient, and economical means for consumers to plan their sightseeing and tourist activities in New York City, and have become an essential facility for the hop on, hop off sightseeing tour bus companies in the New York City market to market and sell their services and products. Therefore, the ability of each of Go New York, Gray Line, and Big Bus to compete with each other in New York City, as well as with the multitude of other tourist attractions and activities from which tourists may choose when visiting New York City, depends in substantial part on each company's ability to establish trade partner relationships with other attractions so as be able to offer many popular attractions with their

13

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 15 of 33

respective Multi-Attraction Passes at the best price, and to access the main distribution channels from which consumers learn about and purchase the passes.

30. Counterclaim Defendants have reacted to Go New York's success and legitimate price competition by conspiring and engaging in conduct which is intended to diminish the value and competitiveness of Go New York's Multi-Attraction Passes by, upon information and belief, conspiring and/or contracting with each other and various Attractions to require and/or to persuade Attractions to refuse to enter into trade partner agreements with Go New York.

31. Counterclaim Defendants, upon information and belief, have falsely disparaged TopView as an "inferior, low cost, low quality" service to Attractions to cause them to believe falsely that they would risk harming their own reputations by entering into trade partner agreements with Go New York, have threatened to refuse to do business with certain Attractions if they partner with Go New York, and have otherwise leveraged their respective and combined market power to persuade Attractions to exclude Go New York.

32. Counterclaim Defendants have done so with the intent to diminish the value and competitiveness of Go New York's Multi-Attraction Passes and to prevent Go New York from participating in Multi-Attraction Passes offered by other companies, thereby substantially inhibiting Go New York's ability to compete and to obtain business through Multi-Attraction Passes, which are an essential facility in the New York City tourism market and, in particular, the New York City hop on, hop off sightseeing tour bus market. Counterclaim Defendants have thereby harmed competition in the New York City market, to the detriment of consumers as well as to Go New York.

33. For example, while both the Gray Line and the Big Bus/Go City Defendants include admission to "Top of the Rock", the observatory and tourist facility at Rockefeller Center in

14

midtown Manhattan, in their respective Multi-Attraction Passes, until recently, the operator of Top of the Rock had rebuffed repeated attempts by Go New York to establish a relationship with it. Top of the Rock rejected Go New York notwithstanding Go New York's proposal that that it would not take any commission or fee for admission of Go New York's customers, passing the entire discounted rate on to Top of the Rock's customers and allowing Top of the Rock to charge a higher net rate. The operator had told Go New York that Top of the Rock was not at that time onboarding new trade partners, even though the operator continued to solicit new partners.

34.     Top of the Rock had consistently rejected Go New York as a trade partner, notwithstanding that Go New York has become a major operator in the New York City market, upon information belief, because of the above-referenced efforts of the Gray Line and Big Bus Defendants to exclude Go New York.  There was no rational business reason for Top of the Rock to reject Go New York as a trade partner, other than that Counterclaim Defendants required that it not do business with Go New York.  At one point, a Top of the Rock representative even told Go New York to talk to Gray Line NY's president, Mark Marmurstein, for help in gaining approval as a trade partner of Top of the Rock.

35.     Go New York has also been shut out of the Empire State Building Observatory (the "ESB Observatory"), notwithstanding Go New York's proposal that it would not take any commission or fee for admission of Go New York's customers to the ESB Observatory, passing the entire discounted rate on to its customers and allowing ESB Observatory to charge a higher net rate. Upon information and belief, Counterclaim Defendants have conspired with the ESB Observatory's operator to exclude Go New York.  Counterclaim Defendants are trade partners of the ESB Observatory, and the operator has told Go New York that it has an exclusive relationship with Go City's "New York Pass".  There is no apparent rational business reason for ESB

15

Observatory to reject Go New York as a trade partner, other than that Counterclaim Defendants required that it not do business with Go New York.

36.    Until recently, Go New York had also been shut out of One World Observatory at the World Trade Center in lower Manhattan, because of the Gray Line and Big Bus/Go City Defendants' conspiratorial efforts to exclude Go New York. Representatives of One World Observatory have told Go New York that it has an exclusive relationship with Mark Marmurstein, the president of Gray Line NY, and, indeed, Gray Line NY advertised the One World Observatory as one of several attractions offered "exclusively" with Gray Line's Multi-Attraction Passes. Nevertheless, even when it was allegedly exclusive to Gray Line, the Big Bus/Go City Defendants also advertised and sold One World Observatory admission as part their own Multi-Attraction Passes, indicating that the proffered explanation for excluding Go New York is a pretext.

37.    As another example, Go New York previously executed a trade partner agreement with the Intrepid Sea, Air, and Space Museum (the "Intrepid"), a major Attraction located at the west side piers in midtown Manhattan. Both Gray Line and Counterclaim Defendants were already trade partners of the Intrepid, and would necessarily have known of the new agreement with Go New York. The Intrepid unilaterally terminated the agreement just as Go New York began sending its customers there.

38.    Although the agreement was terminable at will by either party on 30 days' notice, the Intrepid breached the agreement by refusing to work with Go New York at all. An Intrepid representative told Go New York that the Intrepid did not want to make its other trade partners – *i.e.*, Counterclaim Defendants – unhappy by dealing with Go New York. Counterclaim Defendants, upon information and belief, conspired with each other and the Intrepid to cause the Intrepid to terminate its trade partner agreement with Go New York, for the purpose of rendering

16

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 18 of 33

Go New York's Multi-Attraction Passes less attractive less competitive in the New York City market.

39.    Other Attractions that have inexplicably refused to work with Go New York include the 9/11 Memorial and Museum and the 9/11 Tribute Museum in lower Manhattan, and the Museum of Modern Art in midtown. Counterclaim Defendants are trade partners of the 9/11 Memorial and Museum and the 9/11 Tribute Museum, and Counterclaim Defendants are also a trade partner of the Museum of Modern Art. Counterclaim Defendants, upon information and belief, have conspired together with these museums and each other to exclude Go New York, for the purpose of rendering Go New York's Multi-Attraction Passes less attractive to tourists and less competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

40.    Go New York previously worked with Madame Tussauds, the wax museum attraction located in the Times Square area of Manhattan prior to 2015, before rebranding its hop-on, hop-off tour bus services as "TopView".  In 2018, Go New York met with representatives of Madame Tussauds to try to forge a trade partner relationship, but was eventually told that Madame Tussauds was not onboarding additional trade partners.  Nevertheless, Counterclaim Defendants are both trade partners of Madame Tussauds.  While the Big Bus/Go City Defendants share common ownership with Madame Tussauds, there is no apparent rational business reason for Madame Tussauds to work with not just them but also with the Gray Line Defendants while excluding Go New York, other than that Counterclaim Defendants have conspired to exclude Go New York from Madame Tussauds for anticompetitive reasons.

41.    Go New York has also been excluded from Broadway Inbound, an online platform for travel service providers and groups to sell tickets to Broadway shows. In January 2019,

17

Broadway Inbound opened an account for Go New York. But a few days later, Broadway Inbound suddenly closed the account, stating that it needed "further time to review" Go New York's account and might reconsider Go New York in six months' time "once we better understand the local market landscape." Broadway Inbound has long-established business relationships with Counterclaim Defendants, none of whose accounts have been closed for further review.

42.     Counterclaim Defendants, upon information and belief, have conspired with Broadway Inbound and each other to exclude Go New York, for the purpose of rendering Go New York's Multi-Attraction Passes less attractive to tourists and less competitive in the New York City market. There is no other apparent rational business reason for Broadway Inbound to continue working with Counterclaim Defendants while closing Go New York's account.

43.     In January 2019, Go New York contacted the companies Coach USA and Short Line (referred to hereinafter as "Coach/Short Line"), which operate a shuttle bus service between New York City and the Woodbury Common Premium Outlet shopping center ("Woodbury Common"), to discuss including their shuttle bus service in Go New York's Multi-Attraction Passes. Coach/Short Line initially expressed interest and began negotiating a trade partner relationship. But then, Coach/Short Line ceased negotiations and refused to work with Go New York, telling Go New York that "we aren't able to work with you due to other sightseeing company relationships."

44.     Counterclaim Defendants recently had trade partner relationships with Coach/Short Line and offered trips to Woodbury Common with their respective Multi-Attraction Passes (directly and/or through their respective affiliates). Counterclaim Defendants, upon information and belief, have conspired with Coach/Short Line and each other to exclude Go New York, for the purpose of rendering Go New York's Multi-Attraction Passes less attractive to tourists and less

18

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 20 of 33

competitive in the New York City market, thereby harming competition in the New York City market and preventing Go New York from being able to compete fairly in that market.

45.     Go New York has been consistently and repeatedly informed by Attractions that executives of Counterclaim Defendants have told them that TopView is an "inferior/low cost/low quality" service which operates unsafe and/or unlicensed vehicles and that the attractions are risking their reputations if they contract with Go New York. These false allegations against Go New York have contributed significantly to the unwillingness of many tourist attractions to contract with Go New York.

46.     Go New York has been informed consistently and repeatedly by many Attractions that executives of Counterclaim Defendants have told them that if they allow Go New York to include their attractions in Go New York's Multi-Attraction Passes, they will terminate their contractual relationships with such attractions and refuse to include them in their own respective Multi-Attraction Passes.

47.     Counterclaim Defendants' anti-competitive, conspiratorial activities have resulted in a virtual boycott by many leading and popular tourist Attractions against Go New York. It is implausible and, indeed, inconceivable that this virtual boycott would occur unless Counterclaim Defendants were conspiring together to disparage Go New York and demand that the Attractions whom they include in their respective Multi-Attraction Passes decline to do business with Go New York.

48.     As a result of the foregoing, Counterclaim Defendants have caused and continue to cause harm to the consuming public by unfairly minimizing competition and inflating prices in the New York City hop-on, hop-off sightseeing tour bus market, as well as harm specifically to Go

19

New York by reason of diminishment of its competitive advantage, including lost customers and sales and reputational damage.

### *The Deceptive Consumer Practices and False Advertising*

49.    In addition to Counterclaim Defendants' foregoing unlawful efforts to quash legitimate competition from Go New York, the Big Bus/Go City Defendants have also engaged in deceptive consumer-directed practices and made false statements in its advertising materials about both Big Bus and TopView.

50.    Upon information and belief, based on analyses of consumer reviews of Go New York's TopView tour bus services and Big Bus tour bus services posted on popular travel review web sites such as TripAdvisor.com, Yelp.com, and Goupon.com, the consumer-based ratings of Big Bus which Taxi Tours touts in its complaint in this action (*see* Verified Complaint, at ¶ 16) may be based, at least in part, on the same practice of posting fake positive online consumer reviews – *i.e.*, "astroturfing" – of which Taxi Tours accuses Go New York.

51.    For example, Big Bus's overall ratings for New York City on the TripAdvisor.com appear to have been boosted by anomalously high numbers of positive consumer reviews posted in 2016 and 2017, followed by smaller but still anomalous increases in positive reviews posted periodically since them.  That pattern indicates that purchased fake positive reviews may have been "front-loaded" in 2016 and 2017 in order to boost Big Bus's rating to a desired level, and then smaller numbers of fake positive reviews were posted periodically thereafter as needed to maintain the rating.  There were also anomalously high increases of negative reviews about TopView in 2019, indicating a campaign to damage the TopView's brand's business and reputation by purchasing negative reviews.

20

52.     There is also evidence of patterns of posting of numerous fake negative consumer reviews about TopView in 2018 and 2019.  Many of the suspicious reviews have been posted by groups of empty accounts using similar usernames consisting of the same first name and followed by an initial and series of numbers in sequential orders, indicating that the accounts and associated reviews are not authentic but rather were manufactured for the purpose of manipulating the travel sites to skew the ratings.

53.     Upon information and belief, the Big Bus/Go City Defendants have directed the posting of fake consumer reviews on popular travel sites for the purpose of skewing its consumer ratings on those sites in its favor and to divert customers and sales from its competitors in the New York City hop-on, hop-off sightseeing tour bus market, including Go New York, to Big Bus.

54.     In addition, the Big Bus/Go CityGo City Defendants have published and distributed printed advertising brochures that falsely describe TopView in order to draw purportedly favorable, but actually false, comparisons with Big Bus.  Among other things, the Big Bus/Go City Defendants have misrepresented that Go New York does not offer its customers the ability to track the locations of its TopView tour buses in real time, whereas in reality Go New York pioneered the use of live tracking apps in the New York City market.  the Big Bus/Go City Defendants have also misrepresented the frequency of TopView buses, so as to falsely indicate that customers must wait longer for TopView buses than for Big Bus buses, and has falsely claimed that TopView does not offer tours in certain areas of the city. The Big Bus/Go CityGo City Defendants have also falsely represented the frequency of its own Big Bus buses and the availability of wireless internet service on its buses.

55.     Further, Go City misleadingly promotes and advertises its Multi-Attraction Pass for the New York City market as the "Official New York Pass", so as to imply falsely to consumers

21

that its Multi-Attraction Pass has been officially sanctioned or endorsed by New York City or one of its governmental entities. To bolster that false implication, Go City cites a favorable description of its New York Pass by an officer of "NYC & Company", without bothering to explain that NYC & Company is a non-governmental marketing association (of which Go New York, Taxi Tours, Go City, and Gray Line NY are all members). Big Bus promotes and directs consumers to Go City's so-called "Official" New York Pass and thereby proactively exploits its deceptive use of "Official" to describe and promote it.

56.    As a direct result of the Big Bus/Go City Defendants' astroturfing and posting of fake disparaging reviews of Go New York's TopView, and their false and misleading advertising, Go New York has suffered reputational damage and the loss of customers and sales to customers who were wrongfully diverted from TopView to Big Bus.

### *Big Bus's Street-Level Conduct Violations*

57.    Taxi  Big Bus has, upon information and believed, directed its bus drivers and ticket agents to interfere with Go New York's TopView business by engaging in street-level misconduct designed to intimidate TopView drivers and agents and to inconvenience and alienate actual and potential customers. Such ongoing misconduct by Big Bus's employees is particularly egregious because in February 2019 Taxi Tours and Open Top's parent company Big Bus Tours Limited entered into a heavily negotiated agreement with Go New York and Gray Line NY (the "Conduct Agreement") establishing industry-wide conduct guidelines for the companies' respective street-level ticket agents and bus drivers in New York City which specifically proscribe the recent misconduct of Big Bus's employees. While disputes arising from such misconduct are subject to mandatory alternative dispute resolution process set forth in the Conduct Agreement, the

22

misconduct is nevertheless relevant to Counterclaim Defendants' anticompetitive and other wrongful conduct at issue herein.

58. For example, the New York City Department of Transportation ("DOT") generally requires hop-on, hop-off tour bus companies to pick up and discharge passengers only at designated bus stops which the DOT assigns to each company. The DOT's system of assigned stops avoids the congestion that would result from multiple companies' buses jockeying for curb space, promotes safety by preventing customers from having to walk into traffic to board buses compelled to double park because of a lack of available curb space, and is convenient for customers who can readily identify where to wait for their chosen company's buses.

59. Big Bus's drivers have repeatedly interfered with Go New York's TopView business by parking their Big Bus buses at stops which the DOT has assigned for the exclusive use of Go New York's TopView buses, and then refusing to move when TopView buses approach to pick up and/or discharge passengers. As a result, customers seeking to board a TopView bus at its designated stop may be confused about which bus to board, and may have to walk into the street to board or disembark a TopView bus to which a Big Bus bus has blocked curb access.

60. In addition, Big Bus's street-level ticket agents have interfered with Go New York's TopView business by interrupting and harassing Go New York's TopView agents while they are soliciting customers and solicitations and sales of TopView tickets, by disparaging TopView to customers and potential customers, aggressively encroaching upon TopView agents as they are working so as to intimidate them and their customers, and, in at least one instance, physically attacking a TopView agent. Such misconduct not only hurts Go New York, it is intimidating to customers and other members of the public who witness or experience it, and damages the reputation and popular image of the hop-on, hop-off sightseeing tour bus business overall. Upon

23

information and belief, Big Bus's ticket agents are directly employed by and thereby under the control of Big Bus, which directs and is responsible for their conduct.

61.    Go New York has been attempting to resolve all of the misconduct issues – actual as well as merely alleged – directly with Taxi Tours pursuant to the mandatory alternative dispute resolution procedures of the Conduct Agreement. Nevertheless, upon information and belief, the alleged misconduct is part and parcel of Taxi Tours' concerted efforts to undermine Go New York and to diminish its competitive advantages in the New York City hop-on, hop-off sightseeing tour bus market.

### FIRST COUNTERCLAIM
(Against all Counterclaim Defendants for Violations
of the Donnelly Act, New York Gen. Bus. L. § 340, *et seq*.)

62.    Go New York repeats, realleges and reincorporates the allegations of paragraphs 1 through 61 as if set forth in their entirety herein.

63.    The New York City hop-on, hop-off sightseeing tour bus market constitutes a distinct market for services, because the services offered by each of the main operators of hop-on, hop-off sightseeing tour buses are substantially substitutable for each other but collectively are not readily substitutable with any other readily accessible service, and the market by definition is limited geographically to New York City.

64.    The Multi-Attraction Pass is an essential facility in the relevant market, in that it has become a significant if not necessary means for operators of hop-on, hop-off sightseeing tour buses to market and sell their services, is dependent upon the ability to enter into trade partnership relationships with Attractions, and cannot readily be practically or reasonably duplicated.

65.    As alleged above, Counterclaim Defendants have and are conspiring with each other and with New York City Attractions to exclude, and/or entered into contracts with them for the purpose of excluding, Go New York from trade partner relationships and thereby from being

24

able to offer competitive Multi-Attraction Passes, which are essential facilities in the relevant market.

66.    Counterclaim Defendants' aforesaid improper conduct has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York in the relevant market, by precluding Go New York from including popular tourist attractions in its Multi-Attraction Passes and thereby rendering Go New York's Multi-Attraction Passes less attractive to tourists and therefore less competitive with the Multi-Attraction Passes offered by Taxi Tours and/or its affiliates.

67.    By reason of the foregoing, Counterclaim Defendants have and continue to harm consumers by minimizing competition and enabling itself to maintain artificially high prices in the relevant market.

68.    By reason of the foregoing, Counterclaim Defendants have harmed and continue to harms Go New York by minimizing its competitive advantages and its ability to compete with Taxi Tours as well as Gray Line, and my thereby reducing Go New York's grown and revenues.

69.    Counterclaim Defendants have engaged in the aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York to lose market share, customers, and revenues.

70.    For the foregoing reasons, Counterclaim Defendants are engaging in unreasonable restraint of trade in violation of the Donnelly Act, New York Gen. Bus. L. § 340, *et seq.*

71.    Therefore, Go New York is entitled to recover its damages from Counterclaim Defendants including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

25

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 27 of 33

72. Further, Go New York seeks injunctive relief enjoining Counterclaim Defendants from engaging in the continuing anticompetitive practices alleged herein, as available remedies at law are insufficient to correct the impact of Counterclaim Defendants' ongoing anti-competitive impact on consumers and the market or to remedy the impact on Go New York.

### SECOND COUNTERCLAIM
(Against all Counterclaim Defendants, for
Tortious Interference with Prospective Business Relations)

73. Go New York repeats, realleges and reincorporates the allegations of paragraphs 1 through 72 as if set forth in their entirety herein.

74. As alleged above, Counterclaim Defendants are undertaking to exclude Go New York from trade partner relationships with Attractions for the improper purposes of rendering Go New York's Multi-Attraction Passes less attractive to consumers, less competitive with the Multi-Attraction Passes of Counterclaim Defendants, and reducing competition in the relevant market.

75. Counterclaim Defendants are doing the foregoing by, *inter alia*, wrongfully and falsely disparaging Go New York to Attractions, and by threatening that Counterclaims would suspend doing business with Attractions and/or falsely representing that they would do so, for the improper purpose of harming competition in the relevant market.

76. By reason thereof, Go New York has been damaged in an amount to be determined at trial, and is entitled to recover its damages from Counterclaim Defendants.

### THIRD COUNTERCLAIM
(Against the Big Bus/Go City Defendants,
for Deceptive Practices in Violation of Gen. Bus. L. § 349)

77. Go New York repeats, realleges, and reincorporates the allegations of paragraphs 1 through 76 as if set forth in their entirety herein.

78. As alleged above, Counterclaim Defendants have engaged in deceptive acts and practices directed to consumers by, among other things, engaging in a pattern and practice of

26

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 28 of 33

astroturfing, posting fake disparaging reviews, and making false and/or misleading representations about both TopView and Big Bus in its advertising materials

79.    By reason of the foregoing, Counterclaim Defendants have engaged in deceptive acts and practices in the conduct of its business, trade, and commerce and in the furnishing of services in New York State, in violation of Gen. Bus. L. § 349, entitling Go New York to recover damages in an amount to be determined at trial, including, without limitation statutory damages, damages from the loss of customers and sales, damages from the loss of economic and business advantage, and reputational damage and loss of good will, as well as recover of its legal expenses and costs, including reasonable attorneys' fees.

80.    Further, Go New York seeks injunctive relief enjoining Counterclaim Defendants from engaging in the deceptive practices alleged herein, as Go New York's available remedies at law are insufficient to protect consumers or to compensate Go New York for the damage to its reputation and ability to compete.

## FOURTH COUNTERCLAIM
(Against the Big Bus/Go City Defendants,
for False Advertising in Violation of Gen. Bus. L. § 350)

81.    Go New York repeats, realleges and reincorporates the allegations of paragraphs 1 through 80 as if set forth in their entirety herein.

82.    As alleged above the Big Bus/Go City Defendants have engaged in false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

83.    As alleged above, the Big Bus/Go City Defendants have engaged in false advertising directed to consumers by, among other things, engaging in a pattern and practice of

27

astroturfing, posting fake disparaging reviews, and making false and/or misleading representations about both TopView and Big Bus in its advertising materials

84.     By reason of the foregoing, the Big Bus/Go City Defendants have engaged in false advertising in the conduct of its business, trade, and commerce and in the furnishing of services in New York State, in violation of Gen. Bus. L. § 350, entitling Go New York to recover damages in an amount to be determined at trial, including, without limitation statutory damages, damages from the loss of customers and sales, damages from the loss of economic and business advantage, and reputational damage and loss of good will, as well as recover of its legal expenses and costs, including reasonable attorneys' fees.

85.     Further, Go New York seeks injunctive relief enjoining the Big Bus/Go City Defendants from engaging in the deceptive practices alleged herein, as Go New York's available remedies at law are insufficient to protect consumers or to compensate Go New York for the damage to its reputation and ability to compete.

## FIFTH COUNTERCLAIM
(Against All Counterclaim Defendants, for Unreasonable Restraint of Trade
In Violation of the Donnelly Act, New York Gen. Bus. L. § 340, *et seq.*))

86.     Counterclaim Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 85 as if set forth in their entirety herein.

87.     The Attraction Pass sub-market is a natural fit for hop-on, hop-off sightseeing tour bus companies, whose very business model involves transporting tourists comfortably and efficiently between tourist attractions. The sightseeing tour bus companies benefit not just from commissions from passes used at tourist attractions, but also from selling their own sightseeing tours and other services as a component of Attraction Passes. Attraction Passes constitute a distinct sub-market within the New York City Hop-on, Hop-Off Tour market. Further, the market for

28

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 30 of 33

Attraction Passes has become a separate and distinct market within the New York City tourism industry.

88.    As alleged above, Counterclaim Defendants have engaged and are engaging in a conspiracy to unreasonably restrain trade in the Attraction Pass market.

89.    Big Bus and Go City have unlawfully conspired and are conspiring with Gray Line and Sightseeing Pass, and all of them have conspired with the operators of New York City tourist attractions, whether directly or through their respective affiliates, to exclude Go New York and its affiliates from trade partner relationships with New York City tourist attractions, from the Attraction Passes offered by Go City and Sightseeing Pass in the New York City market, from hotel concierges and guest services, and from other tourist services. For example, Big Bus and Go City, and their affiliates, have recently entered into exclusive marketing and ticket selling arrangements for tour bus and Attraction Pass services with the Marriot Marquis hotel in New York City while conspiring to exclude Go New York from such ticket selling arrangements.

90.    Counterclaim Defendants' aforesaid improper concerted action has already had and/or is likely to have the effect of substantially reducing or eliminating competition from Go New York and its affiliates in the Attraction Pass market to maintain artificially high prices for consumers, and defendants have engaged in their aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in said market and to cause Go New York and its affiliates to lose market share, customers, and revenues.

91.    Counterclaim Defendants by their aforesaid unlawful conduct have caused and are causing actual injury to Go New York by causing Go New York and its affiliates to lose market share, customers, and revenues, including but not limited to sales of the Attraction Pass product,

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 31 of 33

its hop-on hop off tour bus services, the bike rental services of its affiliate, ASK Transit, and the boat tour services of its affiliate, Liberty Cruise.

92.    Counterclaim Defendants have thereby engaged and continue to engage in unreasonable restraint of trade of the Attraction Pass market in violation of the Donnelly Act, New York Gen. Bus. L. Big Bus/Go City§ 340, *et seq*.

**WHEREFORE**, defendant/counterclaim plaintiff Go New York prays that this Court enter judgment in its favor and against plaintiff/counterclaim Defendants as follows:

(a) Dismissing Taxi Tours' Verified Complaint for Damages and Injunctive Relief in its entirety;

(b) Permanently enjoining Big Bus from violating General Business Law Sections 349 and 350 and from engaging in other unlawful acts and practices against consumers and against Go New York as alleged herein;

(c)  Awarding Go New York its damages as alleged against all Counterclaim Defendants in amounts to be proved at trial, treble damages for violations of the Donnelly Act, and general, compensatory, exemplary, punitive and statutory damages;

(d) Awarding Go New York its legal expenses and costs, including reasonable attorneys' fees:

(e) Awarding Go New York pre and post-judgment interest, and costs; and

(f) Granting such other and further relief as the Court may deem just and proper.

30

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 32 of 33

Dated: October 4, 2024        **BARTON LLP**

By:    /s/ Maurice N. Ross

       Maurice N. Ross
       Randall L. Rasey
       Barak F. Bacharach

711 Third Avenue, 14th Floor
New York, NY  10017
(212) 687-6262
mross@bartonesq.com
rrasey@bartonesq.com
bbacharach@bartonesq.com
*Attorneys for Defendant-Counterclaim*
*Plaintiff Go New York Tours, Inc.*

31

Case 1:23-cv-04256-ER    Document 96-6    Filed 06/18/25    Page 33 of 33

## VERIFICATION

I, ASEN KOSTANDINOV, am the president of GO NEW YORK TOURS, INC., the defendant and counterclaim plaintiff in this action. I have read the foregoing amended answer and counterclaims, and the facts stated therein are true to my own knowledge, except for facts stated upon information and belief, and as to those I believe them to be true.

_____
Asen Kostadinov

Sworn to before me on October 4, 2024.

_____
Notary Public

AMITH ARCOT
Notary Public, State of New York
No. 02AR6433957
Qualified in New York County
Commission Expires May 31, 2026