# Exhibit G

Case 1:23-cv-04256-ER   Document 96-7   Filed 06/18/25   Page 2 of 20

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 54

| | |
|---|---|
| TAXI TOURS, INC., <br><br>        Plaintiff, <br><br> -against- <br><br> GO NEW YORK TOURS, INC., <br><br>        Defendant. | Index No. 653012/2019 |
| GO NEW YORK TOURS, INC., <br><br>        Counterclaim Plaintiff, <br><br> -against- <br><br> BIG BUS TOURS LIMITED, OPEN TOP SIGHTSEEING USA, INC., TAXI TOURS, INC., GO CITY LIMITED, GO CITY NORTH AMERICA, LLC, GO CITY, INC., GRAY LINE NEW YORK TOURS, INC., TWIN AMERICA, LLC, and SIGHTSEEING PASS LLC, <br><br>        Counterclaim Defendants. | Mot Seq. __ |

**DEFENDANT/COUNTERCLAIM PLAINTIFF GO NEW YORK
TOURS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR LEAVE TO AMEND ITS ANSWER AND COUNTERCLAIMS**

**BARTON LLP**
711 Third Avenue, 14th Floor
New York, NY  10017
(212) 687-6262
mross@bartonesq.com
rrasey@bartonesq.com
*Attorneys for Defendant/Counterclaim
Plaintiff Go New Your Tours, Inc.*

Dated: May 28, 2025

## Contents

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 5

    A.   The Attraction Pass Counterclaims ................................................................. 5

    B.   Twin America's and Big Bus's Anticompetitive Conspiracy ............................... 7

    C.   Go New York Seeks To Amend its Pleading Again ........................................... 7

    D. The New York Attorney General's Investigation ............................................. 9

    E.   The Proposed Amended Pleading ..................................................................11

ARGUMENT ................................................................................................................. 12

    I.   Go New York's Proposed Amended Counterclaims are Not "Palpably Devoid of Merit"13

    II.  There Has Been No Delay in Seeking Leave to Amend, and Therefore, No Surprise ..... 15

CONCLUSION ............................................................................................................... 16

**Cases**

*Fahey v. Ontario Cty.*, 44 N.Y.2d 934, 935 (1978) ............................................................... 14

*Fleming v. Barnwell Nursing Home & Health Facilities, Inc.*, 309 A.D.2d 1132, 1133 (3d Dep't 2003)................................................................................................................................ 14

*Hospital for Joint Diseases Orthopaedic Inst. v. Katsikis Envtl. Contrs.,* 173 A.D.2d 210, 210 (1st Dep't 1991) ............................................................................................................. 14

*Laham v. Chambi*, 299 A.D.2d 151, 152 (1st 2002) ........................................................... 14

*MBIA Ins. Corp. v. Greystone & Co., Inc.,* 74 A.D.3d 499, 500 (1st Dep't 2010) ...................... 14

*Miller v. Cohen*, 93 A.D.3d 424, 425 (1st Dep't 2012)........................................................ 14

*Pier 59 Studios, L.P. v. Chelsea Piers, L.P.*, 40 A.D.3d 363, 365–66 (1st Dep't 2007)................ 14

**Statutes**

CPLR 3025(b)............................................................................................................. 14

Donnelly Act .............................................................................................................. 14

**Rules**

CPLR § 3025................................................................................................................. 2

Defendant and Counterclaim Plaintiff Go New York Tours Inc. ("Go New York"), by and through its attorneys LLP, respectfully submits this memorandum of law in support of its motion for leave to amend its counterclaims and file its proposed Third Amended Counterclaims pursuant to CPLR § 3025(b).

## PRELIMINARY STATEMENT

On April 16, 2025, the Office of the Attorney General of the State of New York (the "NYAG") announced the consent resolution of an investigation into Defendants concerning claims of antitrust violations by Counterclaim Defendants Twin America, LLC, Gray Line New York Tours, Inc., and Sightseeing Pass LLC, , and their affiliated companies CitySights, LLC, City Sights Twin, LLC, and CSA Tickets, LLC (collectively, "Twin America") and Counterclaim Defendants Open Top Sightseeing USA, Inc., and Taxi Tours, Inc., and their parent company Big Bus Tours Limited[1] (collectively, "Big Bus").[2]  The NYAG announced its investigation after it had finalized settlements with Twin America and Big Bus, memorialized in an "Assurance of Discontinuance" ("AOD") between the NYAG and each of Twin America and Big Bus.[3]  As a result of these agreements, the NYAG found that Twin America's and Big Bus's entered into a series of nine agreements between August 2020 and February 2023, the effect of which *reduced competition* in the New York City hop-on, hop-off tour bus market (the "NYC Market") and "*likely*

---

[1]    This Court previously dismissed named counterclaim defendants Big Bus Tours Limited and Go City Limited from this case on personal jurisdiction grounds. (*See* Dkts. 238, 293.) Therefore, the collective term "Counterclaim Defendants" as used herein is meant to exclude Big Bus Tours Limited and Go City Limited. Notwithstanding their dismissal from this case, Go New York alleges that Big Bus Tours Limited and Go City Limited were involved in the anticompetitive and other misconduct at issue herein.

[2]    *See* NYAG Press Release, "Attorney General James Secures Over $2.5 Million from New York City Bus Tour Companies for Colluding to Limite Competitions", dated April 16, 2025, available at https://ag.ny.gov/press-release/2025/attorney-general-james-secures-over-25-million-new-york-city-bus-tour-companies (last viewed on May 28, 2025)..

[3]    The proposed new Counterclaim Defendants Citylights LLC, City Sights Twin, LLC, and CSA Tickets, LLC are named by the NYAG in the Twin America AOD.

1

Case 1:23-cv-04256-ER    Document 96-7    Filed 06/18/25    Page 5 of 20

*violate[d]*" Section 1 of the Sherman Act and the New York Donnelly Act, among other statutes. (Ex 1, § 8; Ex. 2 § 8.)[4]  According to the NYAG's "Findings" the anticompetitive behavior to which Defendants agreed included (i) causing competitive harm to consumers by wrongly merging and/or combining their operations; (ii) deceiving the Department of Transportation (the "DOT") so that Twin America could retain its DOT-authorized sightseeing bus stop permits for use by Big Bus and to prevent the DOT from reassigning bus stops from Twin America to their competitors, such as Go New York; and (iii) wrongly misleading consumers who thought they were purchasing Gray Line or City Sights products when, in fact, they were purchasing tours operated by Big Bus, for which Big Bus would pay Twin America higher commission rates than in other cities.  (*See* Ex 1, §§ 5-8; Ex. 2 §§ 5-8; *see also* Ex. 5.)  The NYAG found no "procompetitive justification" for the agreements. As a result, Twin America and Big Bus were compelled to terminate their anticompetitive agreements and arrangements and pay a combined stipulated penalty of $2.5 million.  (Ex 1, § 7; Ex. 2 § 7.)

The NYAG's findings are substantially similar to the allegations in Go New York's proposed Second Amended Counterclaims, which this court rejected. In September of 2024, Go New York moved for leave to amend to add counterclaims in this action alleging that Big Bus and Twin America had entered into a series of anticompetitive agreements whereby Counterclaim Defendants merged their New York hop-on, hop-off operations in order to prevent competition in and monopolize the NYC Market. In response, Counterclaim Defendants represented that these allegations were "implausible" and "wholly conclusory." (Dkt. No. 492 at 8.)  Yet at the time that they made those statements, Twin America and Big Bus were obviously aware that they had

---

[4]    The NYAG did not publicly disclose either AOD until mid-April 2025.  Copies of the NYAG's AOD with Big Bus dated September 24, 2024 and AOD with Twin America dated April 10, 2025, are submitted as Exhibits 1 and 2, respectively to the accompanying supporting Affirmation of Randall L. Rasey (the Rasey Aff."). Citations to "Ex. __" are to the Exhibits to the Rasey Aff.  Citations to "Dkt. __." are to the NYSCEF Docket in this matter.

Case 1:23-cv-04256-ER    Document 96-7    Filed 06/18/25    Page 6 of 20

entered into a series of agreements between August 2020 and February 2023. And Twin America and Big Bus have been aware of the NYAG's investigation into their anticompetitive conduct since that investigation's inception. Yet, prior to April of 2025, Big Bus and Twin America repeatedly denied that they had entered into additional anticompetitive agreements subsequent to a single Memorandum of Understanding dated August 27, 2020 (the "August 2020 MOU"). Worse, in their opposition to Go New York's previous motion for leave to amend its counterclaims, Counterclaim Defendants implicitly represented to this Court that the only agreement between them was the August 2020 MOU, which they mischaracterized as "a simple ticket reseller relationship." (Dkt. No. 492 at 5.)

On September 9, 2024, the NYAG issued its AOD with Big Bus, stating its findings that Big Bus had likely violated federal and state antitrust statutes and identifying nine separate agreements between Big Bus and Twin America which the NYAG found reduced competition for hop-on, hop-off bus tours in New York City, and Big Bus's agreement to terminate those agreements in order to settle the NYAG's claims. Eighteen days later, on September 27, 2024, this Court issued its Decision and Order denying Go New York's most recent motion for leave to amend its counterclaims. (*See* Dkt. 507.) Had Go New York and this Court had known about the NYAG's findings and the nine separate agreements identified in the AOD, Go New York could have alleged sustainable new counterclaims and this Court would likely have granted Go New York leave to amend.

Lacking knowledge of the nine separate anticompetitive agreements between Twin America and Big Bus – let alone of the NYAG's findings of likely antitrust violations as stated in the AOD – this Court denied Go New York leave to amend, holding that Go New York's proposed amended counterclaims were "implausible" and that there was "no merit" in Go New York's

3

allegations of a series of anticompetitive operating agreements resulting in competitive harm. (*See* Dkt. No, 505 at 2.)  It is now clear that Go New York's allegations were not only plausible, but they were *credible* and indeed, correct. Therefore, this Court should grant leave to assert Go New York's new proposed amended counterclaims, which have been sharpened based on the NYAG's findings.

Moreover, the NYAG's recent statements have laid bare how Twin America misrepresented its operating status to the regulators and consumers, as well as this Court. This had the effect of confusing consumers as to whether they were taking a Gray Line bus tour or a Big Bus tour. Thus, Go New York seeks to amend its extant Gen Bus. L. §§349 and 350 counterclaims to account for Counterclaim Defendants' misrepresentation to consumers.

While the NYAG's penalties dealt with the harm to consumers from Twin America and Big Bus's anticompetitive conduct, the harm to competitors, such as Go New York, has not been adequately addressed. Indeed, this case involves anticompetitive behavior in a core market for the New York City tourism industry, and there are substantial public policy rationales for permitting Go New York to assert the claims which have been vindicated by the NYAG's public findings.

For all of these reasons, as well as the reasons delineated below, this Court should grant leave for Go New York to amend its counterclaims and file its proposed Third Amended Counterclaims.

4

## FACTUAL BACKGROUND

**A.      The Attraction Pass Counterclaims**

Go New York (operating under its "TopView" brand name), Twin America, and Big Bus are the main participants and ostensible competitors in the New York City hop-on, hop-off sightseeing tour bus market (the "NYC Market"). As alleged in Go New York's current Second Amended Counterclaims, all three companies utilize "Attraction Passes," which bundle passage on their respective tour buses with admission to one or more New York City sightseeing attractions and activities  for a single, discounted price. Attraction Passes are a significant means for hop-on, hop-off sightseeing tour bus companies to offer and sell their services and to compete in the NYC Market. (*See* Dkt. 523, at ¶¶ 23-25, 64.)[5]

To be able to offer and sell its Attraction Pass, a company generally must enter into a "trade partner" agreement with an included attraction. Trade partners agree to make admission to their attractions available at a discounted "net rate" when bundled into a hop-on, hop-off sightseeing tour bus company's Attraction Pass, which the company pays when its customer uses its Attraction Pass at the attraction. Go New York alleges that Twin America and "Big Bus-Go City"[6] conspired and/or entered into arrangements to exclude Go New York from trade partner relationships with Attractions, thereby inhibiting Go New York from being able to offer competitive Attraction Passes and minimizing competition from Go New York in the New York City Market. (*See* Dkt. 523, at ¶¶ 31-49, 65.)

---

[5]      Go New York's currently operative pleading is its "(Corrected) Second Amended Counterclaims," which can be found at Dkt. 523.

[6]      "Big Bus-Go City" refers to the Big Bus Counterclaim Defendants along with their corporate affiliates Go City North America LLC and Go City Inc. (collectively, "Go City"). Go City is comprised of the corporate Big Bus affiliates responsible for creating and marketing Attraction Passes under the Big Bus corporate umbrella. Go New York is not seeking leave to assert additional claims against the Go City Counterclaim Defendants by way of this motion.

5

Taxi Tours, Inc. ("Taxi Tours") commenced this action on May 21, 2019 asserting causes of action for alleged violations of New York's deceptive consumer practices and false advertising statutes, Gen. Bus. L. §§ 349 and 350, and common law causes of action for unfair competition, defamation per se, and injurious falsehood. (Dkt. 1.)

On February 6, 2020, Go New York filed its initial Answer with Counterclaims, asserting Counterclaims against Taxi Tours for antitrust violations under the Donnelly Act, tortious interference, and violations of New York's deceptive consumer practices and false advertising statutes. (Dkt. 31.) Taxi Tours then moved to discontinue its causes of action without prejudice. By Decision and Order dated October 20, 2020, this Court granted Taxi Tours' motion. (Dkt. 67.)

On May 28, 2021, Go New York filed its Amended Answer with Counterclaims, adding the Twin America Defendants and the remaining Big Bus-Go City Defendants as Counterclaim Defendants in addition to Taxi Tours. (Dkt. 119.) Go New York asserted its First and Second Causes of Action, for antitrust violations under the Donnelly Act and tortious interference with prospective business relations, respectively, against all Counterclaim Defendants. Go New York asserted its Third and Fourth Causes of Action, for violations of New York's deceptive consumer practices and false advertising statutes, against Big Bus-Go City. By Decision and Order dated January 3, 2022 (Dkt. 239), this Court granted Twin America's motion to dismiss the First and Second Causes of Action for failure to state a cause of action, thereby dismissing Twin America from this case entirely and leaving only the Third and Fourth Causes of Action against Big Bus-Go City.

On appeal, the Appellate Division affirmed the dismissal, and Go New York was granted leave to appeal to the Court of Appeals. On March 14, 2024, the Court of Appeals reversed the Appellate Division. *See Taxi Tours, Inc. v. Go New York Tours, Inc.*, 41 N.Y.3d 991 (2014).

6

Accordingly, Go New York's First and Second Causes of Action, for violations under the Donnelly Act and tortious interference, respectively, were reinstated against Twin America and Big Bus-Go City. *See* Remittitur dated March 14, 2024 (Dkt. 398).

**B.        Twin America's and Big Bus's Anticompetitive Conspiracy**

While this case was ongoing, however, new developments emerged regarding Counterclaim Defendants' ongoing anticompetitive actions. Beginning in the summer of 2020, Big Bus and Twin America entered into a series of agreements and arrangements by which they conspired to effectively merge their respective hop-on, hop-off bus tour operations into a single operation by Big Bus while maintaining the false appearance to consumers that Twin America continued to operate and to compete with Big Bus in the NYC Market, thereby enabling Big Bus to attempt to monopolize the NYC Market while substantially reducing competition in the market. (*See* Exs. 1-2, 5.)  Their anticompetitive collusion continued until at least around late 2024, when Twin America and Big Bus were compelled to terminate their anticompetitive agreements and arrangements to resolve an antitrust investigation by the NYAG.  (*Id.*)

**C.        Go New York Seeks To Amend its Pleading Again**

On August 16, 2024, this Court issued an order limiting the scope of discovery to documents concerning events that occurred prior to Go New York's filing of its pleadings. (Dkt. 469.)  However, in so doing, the Court made it clear that it would entertain a motion for leave to amend concerning these new developments, stating "To the extent Go New York has a factual basis to assert claims or seek relief regarding matters beyond their complaint it should move for leave to amend…" *Id.*

Therefore, in keeping with this Court's order of August 16, 2024, just five days later, on August 21, 2024, Go New York moved for leave to amend to add counterclaims concerning

7

monopolization, attempted monopolization and conspiracy to monopolize under the Donnelly Act, Gen Bus. L. §340 *et seq.* (*See* Dkt. 479.) In that proposed pleading, Go New York alleged that Counterclaim Defendants had effectively merged into an anticompetitive entity whose goal was to restrain trade and/or monopolize the NYC Market, through a series of operating agreements, beginning with a Memorandum of Understanding dated August 27, 2020 (the "August 2020 MOU"). (*Id.,* at □118.) Go New York also specifically alleged that subsequent to the August 2020 MOU, "there have been several other agreements between Big Bus and [Twin America], both formal and informal". (*Id.*, at □119.) Go New York noted that "although the [August 2020 MOU] contemplates [Twin America] using Big Bus's intellectual property 'solely to the extent necessary for the resale of tickets,' the opposite has happened. Indeed, Big Bus has been putting [Twin America's] logo in prominent places on its buses…" (*Id.*)

Twin America and Big Bus opposed Go New York's motion for leave to amend, arguing, as they did in the District Court, that the August 2020 MOU represented "an innocuous ticket reseller agreement." (Dkt. 492 at 5.) On September 30, 2024, this Court denied Go New York leave to amend to brings its new claims related to Counterclaim Defendants' post pandemic anticompetitive behavior. (Dkt. 505.) The Court stated that there was no merit in "portion of the proposed claims based on supposed "several other agreements,'" citing Judge Ramos' decision. (*Id.* at 2.) The Court claimed that Go New York's allegations of a series of agreements was "contradicted by documentary evidence." *Id.*

8

Case 1:23-cv-04256-ER    Document 96-7    Filed 06/18/25    Page 12 of 20

**D. The New York Attorney General's Investigation**

As noted above, prior to April 2025, Big Bus and Twin America only publicly disclosed that they had entered into an August 2020 MOU, which they mischaracterized to this Court and elsewhere as a mere ticket-reselling arrangement with no anticompetitive impact. On around April 16, 2025, however, the NYAG announced that it had commenced an investigation pursuant to the Donnelly Act, N.Y. Gen. Bus. Law § 340, *et seq.*, and Section 1 of the Sherman Act, 15 U.S.C. § 1, "into the use of reseller and operation management agreements for the provision of" hop-on, hop-off tour buses in New York City, and identified eight agreements in addition to the MOU as part of the collusion between Twin America and Big Bus to reduce competition in the NYC Market.

The NYAG announced its investigation after it had finalized settlements with Twin America and Big Bus, memorialized in the AODs. The AODs identified the written agreements entered into among Twin America and Big Bus subsequent to the MOU in furtherance of their anticompetitive collusion and arrangements (together with the MOU, the "Agreements"), as follows:

- Extension of Memorandum of Understanding, dated March 1, 2021;
- Updated Memorandum of Understanding, dated December 1, 2021;
- Reseller Ticket Agreement, dated December 1, 2021 (the "Reseller Ticket Agreement");
- Vehicle-Specific Operation and Management Agreement, dated January 1, 2022;
- Global Reseller Ticket Agreement, dated January 1, 2023 (the "Global Reseller Ticket Agreement");
- Operation and Management Agreement, dated February 21, 2023;
- Memorandum of Understanding, dated February 21, 2023; and
- Amendment to Vehicle-Specific OMA, dated February 21, 2023.

(Ex 1, § 4; Ex. 2 § 4.) Crucially, these are the "subsequent related operating agreements" which this Court found Go New York was unable to allege with sufficient particularity to sustain its

9

antitrust claims. (*See* Dkt. 505, at 2 ("Nor is there merit in the portion of the proposed claims based on supposed 'several other agreements.'").)

The AODs further find that, pursuant to a series of written agreements and other arrangements entered into between August 2020 and February 2023, Twin America and Big Bus agreed, as follows: (a) Big Bus would operate its hop-on, hop-off tour buses within New York City; (b) Twin America would not resume its own hop-on, hop-off tour bus operations within New York City; (c) Big Bus would operate between one and four of Twin America's hop-on, hop-off tour buses in order that Twin America could retain its DOT-authorized sightseeing bus stop permits for use by Big Bus and to prevent the DOT from reassigning bus stops from Twin America to their competitors, such as Go New York; (d) Twin America and Big Bus were authorized to use each other's brand names, trademarks, and other intellectual property; and (e) Twin America would continue to promote and sell hop-on, hop-off bus tour tickets and Attraction Passes under its Gray Line, CitySightseeing, and/or other brand names, including on Twin America's existing web sites, but would direct purchasers to buses operated by Big Bus, for which Big Bus would pay Twin America higher commission rates than in other cities. (*See* Ex 1, §§ 5-7; Ex. 2 §§ 5-7.)

The NYAG found that Twin America's and Big Bus's entry into the Agreements reduced competition in the NYC Market and "likely violate[d]" Section 1 of the Sherman Act and the New York Donnelly Act, among other statutes. (*See* Ex 1, § 8; Ex. 2 § 8.) In order to settle the NYAG's allegations, Twin America and Big Bus each agreed, among other things, to terminate and cease performance under the Agreements and all other "existing agreements, assurances, and understands" among them "related on the New York City metropolitan area, whether oral or

10

written, and whether formal or written", and to pay a combined stipulated penalty of $2.5 million. (*See* Ex. 5.)[7]

### E.    The Proposed Amended Pleading

Given the explosive revelations of heretofore undisclosed anticompetitive agreements among the Defendants revealed by the NYAG on April 16, 2025, one week later Go New York sought leave to file the present motion for relief from this Court's Judgment, and for leave to further amend its pleading. (Dkt. No. 548.) Permission was granted on April 28, 2025. (Dkt. No. 552.)

Attached as Exhibit 3 to Rasey Aff. is Go New York's proposed Third Amended Verified Answer and Counterclaims. This pleading asserts two new causes of action against all Twin America and Big Bus based on information available to Go New York earlier, as well as information specifically revealed by the NYAG's investigation. These causes of action are: (I) Counterclaim Two for Violations of the Donnelly Act, New York Gen. Bus. Law § 340; and (II) Counterclaim Six for Deceptive Acts and Practices in Violation of N.Y. Gen. Bus. Law § 349. The proposed Third Amended Verified Answer and Counterclaims also asserts an additional cause of action, Counterclaim Seven, against Defendant Twin America for False Advertising in Violation of N.Y. Gen. Bus. Law § 350. Crucially, as detailed above, Go New York still lacks critical information because Defendants refuse to turn over any of the agreements delineated in the NYAG's AODs, with the exception of the 2020 MOU.

---

[7]    On or about May 15, 2025, Go New York's counsel reached out to Defendants' counsel to see if they would be willing to turn over the eight undisclosed agreements to sharpen the issues ahead of the instant forthcoming motion and avoid potentially unnecessary motion practice. Defendants counsel refused. (*See* Rasey Aff., ¶ 6.) Thus, the only details regarding the series of allegedly anticompetitive agreements available to Go New York must be gleaned from OAG's statements.

11

## ARGUMENT

Under Rule 3025(b), "[a] party may amend his or her pleading … at any time by leave of court or by stipulation of all parties.  Leave shall be freely given upon such terms as may be just …"  Here, the only objection raised by Taxi Tours as precluding its consent to Go New York's proposed amendment of its answer and counterclaims is to the reassertion of Go New York's first counterclaim for antitrust violations under New York's Donnelly Act.

It is well established that "[l]eave to amend the pleadings 'shall be freely given' absent prejudice or surprise resulting directly from the delay", *Fahey v. Ontario Cty.*, 44 N.Y.2d 934, 935 (1978) (quoting CPLR 3025(b)), or "the proposed amendment is wholly devoid of merit". *Fleming v. Barnwell Nursing Home & Health Facilities, Inc.*, 309 A.D.2d 1132, 1133 (3d Dep't 2003). "Mere lateness is not a barrier, in the absence of a substantiated claim by plaintiff that he would be prejudiced by the proposed amendment." *Laham v. Chambi*, 299 A.D.2d 151, 152 (1st 2002).

"On a motion for leave to amend a pleading, movant need not establish the merit of the proposed new allegations, but must "simply show that the proffered amendment is not palpably insufficient or clearly devoid of merit.' " *Miller v. Cohen*, 93 A.D.3d 424, 425 (1st Dep't 2012) (quoting *MBIA Ins. Corp. v. Greystone & Co., Inc.,* 74 A.D.3d 499, 500 (1st Dep't 2010)).  "[I]n considering the proposed amendment,

> "the court should examine, but need not decide, the merits of the proposed new pleading unless it is patently insufficient on its face.  Once a prima facie basis for the amendment has been established, that should end the inquiry, even in the face of a rebuttal that might provide the ground for a subsequent motion for summary judgment.

*Pier 59 Studios, L.P. v. Chelsea Piers, L.P.*, 40 A.D.3d 363, 365–66 (1st Dep't 2007) (quoting *Hospital for Joint Diseases Orthopaedic Inst. v. Katsikis Envtl. Contrs.,* 173 A.D.2d 210, 210 (1st Dep't 1991)).

12

## I.    Go New York's Proposed Amended Counterclaims are Not "Palpably Devoid of Merit"

Go New York has clearly established a "prima facie basis" for its proposed amendments, as the facts in the NYAG's recent statements unmistakably establish Go New York's proposed amendments' credibility. Indeed, one could argue that the NYAG's assertions that Counterclaim Defendants conduct "likely violates the Donnelly Act, Gen. Bus. Law § 340 *et. seq.*; the Sherman Act, 15 U.S.C. § 1; and New York Executive Law § 63(12)," alone is enough to sustain Go New York's proposed Third Amended Counterclaims. But the NYAG's recent statements contain much more to support Go New York's proposed counterclaims.

As the NYAG Findings – and the proposed Third Amended Counterclaims – make clear, Big Bus and Twin America entered into *eight* subsequent written agreements, as well as "other oral and written assurances" concerning their operations. As a result of the newly discovered NYAG investigation, and the AOD's, Go New York can now specifically allege the precise effect that Defendants' agreements had on competition in the New York Market. For example, the NYAG found that Big Bus and Twin America, through the series of operating agreements, caused competitive harm to consumers by wrongly merging and/or combining their operations. Defendants achieved this by agreeing that (a) Big Bus would operate its hop-on, hop-off tour buses within New York City; (b) Twin America would not resume its own hop-on, hop-off tour bus operations within New York City; while (c) Twin America and Big Bus were authorized to use each other's brand names, trademarks, and other intellectual property. (*See* Ex 1, §§ 5-7; Ex. 2 §§ 5-7.)

Moreover, the NYAG found that Defendants deceived the DOT by having Big Bus operate between one and four of Twin America's hop-on, hop-off tour buses in order that Twin America could retain its DOT-authorized sightseeing bus stop permits for use by Big Bus and to prevent the

13

DOT from reassigning bus stops from Twin America to their competitors, such as Go New York. (*See* Ex 1, § 5; Ex. 2 § 5.) Finally, the NYAG found that the Defendants wrongly misled consumers through Twin America continuing to promote and sell hop-on, hop-off bus tour tickets and Attraction Passes under its Gray Line, CitySightseeing, and/or other brand names, including on Twin America's existing web sites, but then directing purchasers to buses operated by Big Bus, for which Big Bus would pay Twin America higher commission rates than in other cities. (*Id.*) In other words, consumers thought that they were purchasing a Gray Line or CitySightseeing product or service but were instead purchasing a Big Bus tour.

The NYAG found that the above constituted anticompetitive behavior, reduced competition in the NYC Market and likely violated antitrust law. (*See* Ex 1, § 8; Ex. 2 § 8, ("The [NYAG] finds that Big Bus's entry into the Agreements likely violates the Donnelly Act, Gen. Bus. Law § 340 *et seq.*; the Sherman Act, 15 U.S.C., § 1; and Executive Law § 63(12).").) The NYAG's Findings make it clear that Go New York's allegations, made in its Amended Complaint, concerning the Defendants' agreement and subsequent anticompetitive behavior were not only plausible, but that those allegations turned out to be true. (*See* Exs. 2-3, 5.) Moreover, in order to settle the NYAG's allegations, Twin America and Big Bus each agreed, among other things, to terminate and cease performance under the Agreements and all other "existing agreements, assurances, and understands" among them "related on the New York City metropolitan area, whether oral or written, and whether formal or written", and to pay a combined stipulated penalty of $2.5 million. (*See* Ex. 5.)

Go New York's proposed Third Amended Counterclaims clearly lay out how Counterclaim Defendants' anticompetitive combination of their operations was effectuated and how it harmed Go New York, with detailed citations to both the NYAG's findings and other evidence which

14

supports Go New York's proposed counterclaims for violations of the Lanham Act and new violations the Donnelly Act, Gen. Bus. L. § 340, and New York's deceptive practices and false advertisings laws, Gen Bus. L. §§349-350. (*See* Ex 1, § 8; Ex. 2 § 8.) As such, Go New York's Proposed Third Amended Counterclaims are not palpably devoid of merit. To quote the Court of Appeals, Go New York's "factual assertions and all the possible inferences to be drawn therefrom are sufficient to support a cognizable Donnelly Act counterclaim under our liberal notice pleading standards…" Taxi Tours Inc. v. Go New York Tours, Inc., No. 27, 2024 WL 1097270, at *4 (Ct. App. N.Y. Mar. 14, 2024).

## II. There Has Been No Delay in Seeking Leave to Amend, and Therefore, No Surprise

Go New York has not delayed in the least in seeking leave to amend. The NYAG's office publicly announced the results of its investigations into Big Bus and Twin America on April 16, 2025. Less than *one week* later, on April 22, 2025, Go New York wrote to this Court apprising it of its intentions to make this present motion. (Dkt. No. 554.) On May 9, 2025, this Court stated that Go New York "may" brief this present motion "on the same schedule as the federal motion." (Dkt 558.) Go New York promptly prepared and filed this motion and its proposed amended pleadings just three weeks later, on May 28, 2025, the same date its Fed R. 60(b) motion was due in Federal court. There has clearly been no delay.

Further, Counterclaim Defendants cannot credibly claim surprise or prejudice. Go New York has been making similar allegations for *years*, which Counterclaim Defendants have steadfastly denied, thwarting Go New York's ability to state its desired antitrust claims. It was therefore natural and foreseeable that Go New York would seek to assert these claims once the NYAG announced the settlements with Counterclaim Defendants. Neither Big Bus nor Twin America can be said to be surprised by the foreseeable results of a settlement which they

15

themselves acquiesced to. Nor can Big Bus or Twin America demonstrate prejudice. "Prejudice ... is not found in the mere exposure of the defendant to greater liability. Instead, there must be some indication that the defendant has been hindered in the preparation of his case or has been prevented from taking some measure in support of his position." *Abdelnabi v. N.Y.C. Transit Auth.*, 273 A.D.2d 114, 115 (1st Dep't 2000). Go New York has long sought leave to amend to bring these claims and was only unable to because of Counterclaim Defendants' deliberate concealment of the series of anticompetitive operating agreements and the NYAG's investigation. Had Counterclaim Defendants been candid with Go New York and this Court when Go New York made its motion to amend in August of 2024, the present motion may well have been unnecessary.

## CONCLUSION

For all the above reasons, Go New York should be granted leave to amend.

Dated May 28, 2025 in New York, New York

**BARTON LLP**

By: */s/ Maurice Ross*
    Maurice N. Ross
    Randall L. Rasey
    A.J. Monaco
    Barak F. Bacharach

711 Third Avenue, 14th Floor
New York, New York 10017
(212) 687-6262
mross@bartonesq.com
rrasey@bartonesq.com
ajmonaco@bartonesq.com
bbacharach@bartonesq.com
*Attorneys for Defendant/Counterclaim-Plaintiff*
*Go New York Tours, Inc.*

16

## <u>CERTIFICATE OF COMPLIANCE WITH COMMERCIAL RULE 17</u>

I certify that this memorandum of law complies with the word limit of Commercial Division Rule 17 because it contains 4290 words, excluding those sections of the memorandum of law exempted by Rule 17. In preparing this certification, I have relied on the word count feature of the word processing software used to prepare this memorandum of law.

Dated:          May 28, 2025
                New York, New York


                                    <u>*/s/ A.J. Monaco*</u>
                                    A.J. Monaco

17