UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GO NEW YORK TOURS, INC.,

                 Plaintiff,

       – *against* –

GRAY LINE NEW YORK TOURS,
INC., TWIN AMERICA, LLC,
SIGHTSEEING PASS LLC, BIG BUS
TOURS GROUP LIMITED, BIG BUS
TOURS LIMITED, OPEN TOP
SIGHTSEEING USA, INC., TAXI
TOURS, INC., LEISURE PASS GROUP
HOLDINGS LIMITED, THE LEISURE
PASS GROUP LIMITED, *and* LEISURE
PASS GROUP, INC.,

                 Defendants.

**OPINION & ORDER**

23-cv-4256 (ER)

R<small>AMOS</small>, D.J.:

    Go New York Tours, Inc. ("Go New York"), a "hop-on, hop-off" tour bus service that also bundles admission to numerous New York City tourist attractions, brought this action against three competitors and related companies: Gray Line New York Tours, Inc. ("Gray Line"), Twin America, LLC ("Twin America"), and Sightseeing Pass LLC ("Sightseeing Pass") (collectively, the "Gray Line Defendants"); Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc. (collectively, the "Big Bus Defendants"); and Go City Holdings (f/k/a Leisure Pass Group Holdings Limited), Go City Limited (f/k/a The Leisure Pass Group Limited), Go City, Inc. (f/k/a Leisure Pass Group, Inc.) (collectively, the "Go City Defendants," and with the entities listed above, the "Defendants"). In its first amended complaint, Go New York alleged that the Defendants violated multiple federal and New York state antitrust laws and asserted a claim for unfair competition under New York common law. *See* Doc.

59.  The Court dismissed the amended complaint in its entirety on August 27, 2024, Doc. 78, and the Second Circuit affirmed on April 21, 2025, Doc. 86.

Go New York now seeks to vacate the Court's order dismissing its claims against the Gray Line Defendants and the Big Bus Defendants pursuant to Federal Rule of Civil Procedure 60(b) (collectively, the "Rule 60(b) Defendants"), and further amend its complaint pursuant to Federal Rule of Civil Procedure 15(a).  Doc. 92; Doc. 93 at 1 n.1. For the reasons set forth below, the motion is DENIED.

## I.    PROCEDURAL HISTORY

The Court assumes familiarity with the facts, which are set forth in its previous opinion, *Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*, No. 23-cv-4256 (ER), 2024 WL 3952190, at *1-5 (S.D.N.Y. Aug. 27, 2025), and recites only the relevant procedural history.

Go New York filed this action on May 22, 2023, Doc. 1, and amended its complaint on October 11, 2023 (the "First Amended Complaint"), Doc. 59.  The First Amended Complaint alleged seven causes of action:  (1) monopolization in violation of the Sherman Act § 2, *id.* ¶¶ 86–92; (2) attempted monopolization in violation the Sherman Act § 2, *id.* ¶¶ 93–97; (3) conspiracy to monopolize in violation of the Sherman Act § 2, *id.* ¶¶ 98–104; (4) unreasonable restraint of trade in violation of the Sherman Act § 1, *id.* ¶ 105–111; (5) anticompetitive merger in violation of the Clayton Act § 7, 15 U.S.C. § 18, *id.* ¶¶ 112–115; (6) unreasonable restraint of trade in violation of the Donnelly Act, *id.* ¶¶ 116–121; and (7) unfair competition under New York common law, *id.* ¶¶ 122–124.[1]

The Defendants moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on November 13, 2023.  Doc. 66.  The same day, a subset of the Defendants that were incorporated in the United Kingdom—Big Bus Tours

---

[1]  Each Sherman and Clayton Act claim also alleged a violation of the Clayton Act § 4, which relates to the availability of treble damages for antitrust violations.  *See* 15 U.S.C. § 15.

Group Limited, Big Bus Tours Limited, Leisure Pass Group Holdings Limited, and The Leisure Pass Group Limited (collectively, the "Foreign Defendants")—separately moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Doc. 64.

The Court granted the Defendants' motion to dismiss for failure to state a claim and denied the Foreign Defendants' motion to dismiss the claim for lack of personal jurisdiction as moot. *Go New York Tours*, 2024 WL 3952190, at *1. It held, specifically, that Go New York's Sherman Act claims and common law unfair competition claims were barred by res judicata because they were previously dismissed by a federal court in 2019 (the "Prior Federal Action"). *Id.* at *6–10. In doing so, the Court rejected Go New York's argument that its claims differed from those in the Prior Federal Action because they were premised on allegations that post-dated the Prior Federal Action: namely, that the Gray Line Defendants and the Big Bus Defendants merged their operations into a single entity, "memorialized" this merger in an August 27, 2020, MOU, and entered into "several other agreements" "[i]n order to implement the MOU." Doc. 59 ¶¶ 55, 56; *see Go New York Tours*, 2024 WL 3952190, at *8–10.

In doing so, the Court recognized that Go New York was unable to assert allegations regarding these agreements in the Prior Federal Action; however, it noted that, to survive a motion to dismiss based on res judicata, the relevant question was whether the Defendants' conduct in entering these agreements "can support a cause of action on its own." *Id.* at *7 (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 503 (2d Cir. 2014)). If so, the Court explained, then Go New York's claims were not barred by res judicata. *Id.*

Employing this inquiry, the Court concluded that the "new conduct alleged in the . . . action—specifically, the MOU and the unspecified subsequent operating agreements—d[id] not support a new cause of action for the Sherman Act violations and the unfair competition claim." *Id.* at *9. The Court reasoned that Go New York's

allegation that the MOU resulted in a merger of the Defendants' companies and formalized a price-fixing conspiracy was not plausible, because the text of the MOU does not purport to achieve either result. *Id.* at *7–8. And the Court held that "Go New York's reference to 'subsequent related operating agreements' fail[ed] to bolster its argument," because the allegations regarding these agreements were "wholly conclusory" in that they failed to allege "the terms of the[] agreements, the parties to them, when they were entered into, or even their subject matter." *Id.* at *8. The Court further explained that, insofar as Go New York's reference to the "subsequent related operating agreements" was meant to encompass its allegations that the Gray Line and Big Bus Defendants entered agreements to cross-license trademarks, use certain bus stops, and make payments to sales representatives, these allegations also failed to plausibly allege a merger. *Id.* at *8 n.12. Because the allegations regarding the MOU and subsequent agreements did not independently state a claim for relief—and the remaining factual allegations concerned the same nucleus of operative facts as those in the Prior Federal Action—the Court held that res judicata barred Go New York's Sherman Act and unfair competition claims.[2] *Id.* at *9–10.

Go New York appealed the dismissal of the Sherman Act claims on September 9, 2024.[3] Doc. 80. On April 21, 2025, the Second Circuit affirmed. *See Go New York Tours Inc. v. Gray Line New York Tours, Inc.*, No. 24-2392, 2025 WL 947083 (2d Cir. Mar. 27, 2025), *cert. denied*, 146 S. Ct. 123 (2025). It agreed that res judicata barred the Sherman Act claims because they were based on allegations of a "conspiracy between Big Bus and Gray Line to pressure attractions not to do business with Go New York" that

---

[2] Separately, the Court also dismissed Go New York's claim pursuant to Section 7 of the Clayton Act, because it concluded that the First Amended Complaint failed to plausibly allege a merger between Gray Line and Big Bus. Doc. 78 at 17–18. And it declined to exercise supplemental jurisdiction over Go New York's remaining claim based on New York's antitrust statute, the Donnelly Act. *Id.* at 18–19.

[3] The Second Circuit noted that Go New York abandoned any arguments related to the Court's dismissal of the Clayton Act or remaining state law claims because it failed to adequately present arguments challenging these dismissals in its opening appellate brief. Doc. 86 at 3 n.1.

were raised in the Prior Federal Action. *Id.* at *2. The Second Circuit also held that, even if res judicata did not bar Go New York's merger-based claims, dismissal was proper because the new conduct alleged in the amended complaint failed to independently state a plausible claim for relief. *Id.* at *2–3.

Four days later, Go New York requested a conference to discuss its anticipated motion to set aside the judgment against the Rule 60(b) Defendants pursuant to Rule 60(b) and for leave to file a second amended complaint pursuant to Rule 15. Doc. 87. The Court held the conference on May 7, 2025, and granted Go New York leave to file the motion. Go New York filed the motion on May 28, 2025. Doc. 92.

## II.    LEGAL STANDARD

In general, "[a] party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Fed.R.Civ.P. . . . 60(b)." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). Federal Rule of Civil Procedure 60(b) permits a court to "relieve a party . . . from a final judgment, order or proceeding." Fed.R.Civ.P. 60(b). "A [Rule 60(b)] motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. International Brotherhood of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). "In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality." *Kotlicky v. United States Fidelity & Guaranty Co.*, 817 F.2d 6, 9 (2d Cir. 1987) (citation omitted). Moreover, Rule 60(b) motions are left to the sound discretion of the district judge. *See National Petrochemical Co. of Iran v. The M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991). The burden of proof is on the party seeking relief from the judgment. *Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004).

Here, Go New York seeks relief pursuant to Rule 60(b)(2). Rule 60(b)(2) permits relief from a judgment based on "newly discovered evidence which by due diligence could not have been discovered in time" for the prior disposition. Fed.R.Civ.P. 60(b)(2).

A movant seeking relief under Rule 60(b)(2), must meet an "onerous standard" by showing that: (1) the newly discovered evidence is of facts that existed at the time of trial or other dispositive proceeding; (2) the moving party is justifiably ignorant of the facts despite using due diligence to learn about them; (3) the newly discovered evidence is admissible and of such importance that it probably would have changed the outcome; and (4) the newly discovered evidence is not merely cumulative or impeaching. *International Brotherhood of Teamsters*, 247 F.3d at 392. These requirements must be "strictly met." *United States v. All Right, Title & Interest in Property and Premises Known as 710 Main Street, Peekskill, N.Y.*, 753 F. Supp. 121, 126 (S.D.N.Y. 1990). Moreover, the newly discovered evidence must be "highly convincing." *Kotlicky*, 817 F.2d at 9.

## III.    DISCUSSION

Go New York moves for relief based on "newly discovered evidence" of two settlement agreements between the New York Attorney General ("NYAG") and the Rule 60(b) Defendants.[4] The agreements—which were memorialized in Assurances of Discontinuance ("AODs") dated September 9, 2024, and April 10, 2025, Docs. 94-1, 94-2—were first announced and published by the NYAG on April 16, 2025, Doc. 93 at 1–4.[5]

The AODs set forth the findings of an investigation conducted by the NYAG pursuant to the Section 1 of the Sherman Act, the Donnelly Act, and Section 63(12) of the New York Executive Law into "the potential impact on competition caused by the use of reseller and operation management agreements for the provision of hop-on/hop-off ('HOHO') bus tour services in New York City." Doc. 94-1, 94-2 at 1–2. The AODs also

---

[4] While, in its previous filings, Go New York referred to the Gray Line Defendants as "Gray Line," in the instant motion, Go New York now refers to the same defendants as "Twin America." To avoid any confusion, the Court continues to refer to these defendants as the Gray Line Defendants.

[5] *See* Press Release, New York State Attorney General, Attorney General James Secures Over $2.5 Million from New York City Bus Tour Companies for Colluding to Limit Competition (April 16, 2025), https://ag.ny.gov/press-release/2025/attorney-general-james-secures-over-25-million-new-york-city-bus-tour-companies. The Court may take judicial notice of the press release and the AODs as matters of public record. *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 595–96 & n.9 (E.D.N.Y. 2017).

describe certain "relief agreed to by" the NYAG and the Rule 60(b) Defendants "for the sole purpose of resolving the . . . [i]nvestigation."[6]  *Id.* at 2.  The AODs explicitly state that the Rule 60(b) Defendants "neither admit[] nor den[y] the . . . findings, and [that] th[e] Assurance[s] do[] not create any rights for any third party."  *Id.*

### A. Go New York May Only Rely on Facts in Existence at the Time of the Court's Order.

The Rule 60(b) Defendants contend that, as a threshold matter, Go New York cannot rely on the AODs as "newly discovered evidence" because they were entered after this Court's dismissal order.  Doc. 95 at 14–17.  In general, "[n]ewly discovered evidence must be of 'facts that existed at the time of trial or other dispositive proceeding.'"  *Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 146 (2d Cir. 2020) (quoting *Mirlis v. Greer*, 952 F.3d 36, 50 (2d Cir. 2020)) (emphasis omitted).  "Therefore, evidence and facts that have come into existence *after* the original judgment cannot then be used to vary the terms of that judgment."  *Saba Capital Master Fund, Ltd. v. ASA Gold & Precious Metals, Ltd.*, No. 24-CV-690 (JGLC), 2025 WL 1115018, at *3 (S.D.N.Y. Apr. 15, 2025).

Here, the Court issued the dismissal order on August 27, 2024, Doc. 78, and the parties to the AODs entered those agreements on September 9, 2024, and April 10, 2025, Docs. 94-1, 94-2.  Thus, the AODs "c[a]me into existence *after* the original judgment."  *Saba Capital Master Fund, Ltd.*, 2025 WL 1115018, at *3.  That fact does not necessarily end the inquiry, however, because the AODs may still provide evidence of facts that *did* exist at the time of the Court's ruling and thus may "be used to vary the terms of that judgment."  *Id.*  In other words, the Court must distinguish between facts that existed on or before August 27, 2024, but were newly revealed by the AODs, and facts that came

---

[6]  The AODs were also entered into by parties outside of the Rule 60(b) Defendants, some of whom Go New York seeks to name as defendants in its proposed amended complaint.  Doc. 93 at 10–11.

into existence solely by virtue of the AODs.  Only the former can constitute "newly discovered evidence" pursuant to Rule 60(b)(2).

In support of its motion, Go New York seeks to rely on evidence from the AODs of three supposed "facts":  (1) the existence of certain agreements between the Big Bus Defendants and the Gray Line Defendants, (2) the anti-competitive effect of the agreements, and (3) the existence of the NYAG's investigation.  Doc. 93 at 3.

In support of the first category, Go New York relies on the NYAG's finding that "affiliates of" the Big Bus Defendants and the Gray Line Defendants "entered into" the following "series of written agreements":

- Memorandum of Understanding, dated August 27, 2020;
- Extension of Memorandum of Understanding, dated March 1, 2021;
- Updated Memorandum of Understanding, dated December 1, 2021;
- Reseller Ticket Agreement, dated December 1, 2021 (the "Reseller Ticket Agreement");
- Vehicle-Specific Operation and Management Agreement, dated January 1, 2022 [(the "Vehicle-Specific OMA")];
- Global Reseller Ticket Agreement, dated January 1, 2023 (the "Global Reseller Ticket Agreement");
- Operation and Management Agreement, dated February 21, 2023;
- Memorandum of Understanding, dated February 21, 2023; and
- Amendment to [the] Vehicle-Specific OMA, dated February 21, 2023.

Doc. 94-1 ¶ 4; Doc. 94-2 ¶ 4; Doc. 93 at 8.  Because this finding describes agreements entered before August 27, 2024, it plainly provides evidence of facts that existed at the time of the Court's order.  Thus, Go New York may rely on these facts to support its motion to the extent they are newly discovered.

By contrast, Go New York's reliance on the NYAG's findings regarding the legal *effect* of the agreements is improper.[7]  Here, Go New York seeks to rely on the NYAG's

---

[7]  Indeed, Go New York implicitly concedes this point in its reply.  *See* Doc. 98 at 2 ("Go New York relies on the AODs not as evidence in and of themselves, but because they identify with particularity Defendants'

8

conclusions that the agreements reduced competition for hop-on/hop-off bus tour services in New York City and likely violated the Sherman Act, the Donnelly Act, and New York Executive Law § 63(12). Doc. 93 at 16 (citing Doc. 94-1 ¶¶ 7–8). But these are legal conclusions, not evidence of facts in prior existence.[8] And because these conclusions were apparently reached for the first time in the AODs, they did not exist at the time of the Court's order. Thus, they cannot support a Rule 60(b)(2) motion. Insofar as Go New York contends that the Rule 60(b) Defendants' agreement to certain remedies further supports these conclusions, this argument fails for the same reason. *Id.* at 17.

Go New York finally cites the AODs for evidence of "the fact of the NYAG's investigation of [the Rule 60(b)] Defendants." Doc. 98 at 2; Doc. 93 at 14. Here, too, the existence of that fact at the time of the Court's order is doubtful. At bottom, the AODs only state that the NYAG "commenced an investigation" at some unspecified time. Doc. 94-1 at 1; Doc. 94-2 at 1. Thus, they do not themselves show that an investigation was ongoing at the time of the Court's order. Perhaps in recognition of this infirmity, Go New York speculates that, given the date of the AODs, the NYAG must have commenced an investigation before the Court's order. It asserts that "although [the Rule 60(b)] Defendants have not provided information as to when the NYAG's investigation commenced, it is certain that the investigation was ongoing as of August 2024, because [the first] AOD is dated September 9, 2024." Doc. 93 at 14. But, as the party seeking relief from the judgment, Go New York bears the burden of showing that the evidence on

---

anticompetitive agreements entered into subsequent to the MOU and disclose the fact of the NYAG's investigation of Defendants, all of which indisputably existed prior to the Court's issuance of the dismissal Order.").

[8] Although the NYAG's finding that "the Agreements reduced competition for [hop-on/hop-off] bus tour services in New York City" could arguably be considered factual, the only evidence that the NYAG supported for this conclusion was the fact that the Gray Line Defendants "ha[ve] not operated [hop-on/hop-off] bus tours in New York City since the Agreements have been in effect." Doc. 94-1 ¶ 7. But Go New York cannot assert that the fact that the Gray Line Defendants stopped operating its buses in the summer of 2020 is newly discovered because Go New York included this allegation in its amended complaint. *See* Doc. 59 ¶ 55.

which it seeks to rely is of facts in existence at the time of the judgment. *Pichardo*, 374 F.3d at 55; *710 Main Street, Peekskill, N.Y.*, 753 F. Supp. at 126 (explaining that Rule 60(b)(2)'s requirements must be "strictly met"). Thus, Go New York's supposition that the investigation existed at the time of the Court's ruling cannot support its Rule 60(b)(2) motion. In sum, the only evidence that Go New York may rely on from the AODs is of the fact and details of the agreements.

### B. Most of the Facts Recited in the AODs About the Agreements Were Not Newly Discovered.

Of course, to support a Rule 60(b)(2) motion, a party must do more than present evidence of facts in existence at the time of the Court's ruling; it must also show that those facts are newly discovered. And here, the facts that Go New York first discovered from the AODs are quite limited: the only new information that Go New York obtained from the AODs is the names and dates of the agreements. Indeed, Go New York concedes as much in its reply, explaining that it "relies on the AODs . . . because they identify with particularity Defendants' anticompetitive agreements entered into subsequent to the MOU." Doc. 98 at 2; *see also id.* at 3 ("[I]t is the dates and existence of the[] anticompetitive agreements . . . that matter . . . .").

To be sure, the AODs do also include a substantive description of the agreements. They state that, through the written and other agreements, the Rule 60(b) Defendants

> agreed that (i) [the Gray Line Defendants] would re-sell tickets for Big Bus [hop-on/hop-off] bus tours in New York City and Big Bus would pay [the Gray Line Defendants] higher commission rates than in any other city in which [the Gray Line Defendants] re-sell[] Big Bus [hop-on/hop-off] bus tour tickets; and (ii) Big Bus would operate between one and four [hop-on/hop-off] buses owned by [the Gray Line Defendants] to enable [the Gray Line Defendants] to maintain [their] authorized bus stop permits in New York City.

Doc. 94-1 ¶ 5; Doc. 94-2 ¶ 5. The problem for Go New York, however, is that the First Amended Complaint includes substantively identical allegations. *See* Doc. 59 ¶¶ 55–56, 60 (ticket re-sale and commission allocation); *id.* ¶¶ 56–57 (Big Bus's use of Gray Line's

10

buses); *id.* ¶ 58 ("Gray Line permitted Big Bus to use its designated bus stops" to prevent the "reassign[ment] [of] access to bus stops"). Thus, Go New York cannot suggest that the facts included in the description of the agreements are newly discovered.[9] Therefore, only the names and dates of the agreements constitute "newly discovered evidence" pursuant to Rule 60(b)(2).

### A. The Newly Discovered Facts Regarding the Agreements Would Not Change the Outcome.

To prevail on its Rule 60(b)(2) motion, Go New York must show that this newly discovered evidence—*i.e.*, the names and dates of the agreements—would likely change the Court's decision to dismiss the First Amended Complaint. In arguing that this newly discovered evidence would have that effect, Go New York relies on the following passage from the Court's opinion:

> Second, Go New York's reference to "subsequent related operating agreements" fails to bolster its argument. The allegations are wholly conclusory. The First Amended Complaint does not allege the terms of these agreements, the parties to them, when they were entered into, or even their subject matter. [Doc. 59] ¶ 56. *See Iqbal*, 556 U.S. at 662 (citing *Twombly*, 550 U.S. at 544) (pleadings must allege facts that are plausible and not merely conclusory statements).

*Go New York Tours*, 2024 WL 3952190, at *8; *see* Doc. 93 at 13–14. In Go New York's view, this passage shows that the Court ignored its allegations regarding the existence and content of subsequent agreements entirely. Doc. 98 at 3. And because it "can now allege with specificity the details of each of these agreements," Go New York suggests that the

---

[9] Although Go New York suggests that the AODs include descriptions of additional substantive agreements, this suggestion is plainly belied by the AODs. Indeed, as the Rule 60(b) Defendants note, *see* Doc. 95 at 9–11, the AODs' only substantive description of the agreements is the passage set forth above. Doc. 94-1 ¶ 5; Doc. 94-2 ¶ 5. And that passage does not support Go New York's characterization of the agreements. *See, e.g.*, Doc. 93 at 16 (suggesting that the AODs describe an agreement between the Rule 60(b) Defendants in which the Gray Line Defendants "would not resume its own hop-on, hop-off tour bus operations within New York City" and the Rule 60(b) Defendants "were authorized to use each other's brand names, trademarks, and other intellectual property"); *id.* (arguing that "the NYAG found that the Defendants wrongly misled consumers through [the Gray Line Defendants] continuing to promote and sell hop-on, hop-off bus tour tickets and Attraction Passes under its Gray Line, CitySightseeing, and/or other brand names, including on [the Gray Line Defendants'] existing web sites, but then directing purchasers to buses operated by Big Bus"); *see also* Doc. 95 at 18 (noting other discrepancies).

11

Court would accept the allegations that it supposedly "ignored" and grant the motion to dismiss. Doc. 93 at 15.

Of course, what this argument obscures is that the Court *did* explicitly consider Go New York's allegations regarding the content of the agreements. Just after that passage, the Court explained that "[t]o the extent Go New York means the other agreements it describes in the First Amended Complaint, namely Gray Line and Big Bus' cross-licensing of trademarks, use of certain bus stops, and payments to sales representatives, these allegations are also not sufficient evidence of a merger." *Go New York Tours*, 2024 WL 3952190, at \*8 n.12. In other words, the Court accepted Go New York's allegations regarding the content of the agreements but concluded that these allegations nonetheless failed to render the claims plausible. *See also id.* at \*9 ("[T]he Court finds that the new conduct alleged in the instant action—specifically, the MOU *and the unspecified subsequent operating agreements*—do not support a new cause of action for the Sherman Act violations and the unfair competition claim." (emphasis added)). Thus, Go New York's contention that the Court failed to credit these allegations for lack of specificity lacks merit. It follows that the fact that Go New York can now allege the names and dates of these agreements would not change the Court's ruling.

As a result, Go New York's motion to partially vacate the Court's dismissal order is denied. And because there is no "valid basis to vacate the previously entered judgment, it would be contradictory to entertain [Go New York's] motion to amend the complaint." *National Petrochemical Co. of Iran*, 930 F.2d at 245. Thus, the Court also denies Go New York's request to amend the complaint.

## IV.    CONCLUSION

For the reasons set forth above, the motion to vacate the Court's order dismissing the claims against the Rule 60(b) Defendants and amend the complaint is DENIED. The Clerk of the Court is respectfully directed to terminate the motion. Doc. 92.

It is SO ORDERED.

Dated:    March 24, 2026
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

13